UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA HAMILTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC., a corporation, WAL-MART ASSOCIATES, INC., a corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. ED CV 17-01415-AB (KKx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

Pending before the Court is Plaintiff Chelsea Hamilton's Motion to Remand. (Dkt. No. 15.) Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. filed an Opposition, (Dkt. No. 26), and Plaintiff filed a Reply, (Dkt. No. 34). The Court heard oral argument from the parties on September 15, 2017, and requested the parties submit additional evidence in support of their arguments, specifically evidence of the average wage of the putative class during the relevant period. (Dkt. No. 40.) Defendants submitted a supplemental declaration providing the wage information,

(Dkt. No. 42), and Plaintiff filed a supplemental brief, (Dkt. No. 44).  For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Remand.

## I. BACKGROUND

On June 13, 2017, Plaintiff Chelsea Hamilton ("Plaintiff"), a former employee of Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc., (collectively "Defendants"), filed a class action Complaint seeking violations of California wage and hour laws in San Bernardino Superior Court.  (Dkt. No. 1-1, Ex. A ("Compl.") ¶ 9.)

Plaintiff identified the class in her Complaint as, "all Defendants' non-exempt 'associate' employees who worked at their Chino facility . . . during the period from June 13, 2013, to the present."  (Compl. ¶15.)  On behalf of herself and the Class, Plaintiff alleged Defendants: (1) failed to pay minimum and overtime wages earned in violation of Labor Code sections 1194 and 510 (*id.* at ¶¶ 27-31); (2) failed to provide second meal periods in violation of Labor Code sections 226.7 and 512 (*id.* at ¶¶ 32-36); (3) failed to pay wages upon discharging employees in violation of Labor Code section 203 (*id.* at ¶¶ 37-41); (4) failed to provide accurate wage statements in violation of Labor Code section 226 (*id.* at ¶¶ 42-44); and (5) violated California's Unfair Competition Law under Business and Professions Code section 17200 et seq. (*id.* at ¶¶ 45-50).

Defendants filed a Notice of Removal on July 14, 2017, asserting this Court has jurisdiction under the Class Action Fairness Act ("CAFA").  (Dkt. No. 1, Notice of Removal ("Notice") at 4.)  Plaintiff filed the instant Motion to Remand on August 14, 2017.  (Dkt. No. 15, Motion to Remand ("Mot. to Remand").)

## II. LEGAL STANDARD

CAFA allows federal courts to exercise jurisdiction over state law class actions when (1) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) "any member of a class of plaintiffs is a citizen of a State

different from any defendant," and (3) the plaintiff's putative classes include at least 100 total members. 28 U.S.C. § 1332(d). As in all removal cases, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

## III. DISCUSSION

Plaintiff does not dispute that the putative class size is over 100 members or that minimum diversity is met. Accordingly, the Court considers only whether the amount in controversy is established.

### A. Amount in Controversy

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Armstrong v. Ruan Transp. Corp.*, No. EDCV- 16-1143-VAP(SPx), 2016 WL 6267931, at *2 (C.D. Cal. Oct. 25, 2016) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). When damages are unstated in a plaintiff's complaint, a defendant seeking removal has the burden of establishing that the aggregate amount in controversy from the plaintiff's claims exceeds $5,000,000. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). A removing defendant must make this showing by the preponderance of the evidence, *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013), which a removing defendant may establish by providing summary-judgment-type evidence indicating that the aggregate amount in controversy exceeds $5,000,000. *Ibarra*, 775 F.3d at 1197. This evidence cannot be speculative or conjectural. *Id.*

#### 1. Defendant's Evidence

In its Notice, Defendants calculate the amount in controversy based on the allegations in Plaintiff's third and fourth causes of action, in addition to statutory

3.

penalties and attorneys' fees. (Notice at 7-11.) There, it bases its calculations on information provided by John Bigan, one of Wal-Mart's Senior Human Resources Managers. (Declaration of John Bigan in Support of Defendants' Notice of Removal ("Bigan Decl.") ¶ 2.) Bigan testifies that 686 non-exempt associates at Wal-Mart's Chino facility were terminated between July 7, 2016 and July 7, 2017. (*Id.* at ¶ 6.) Bigan further confirms that Plaintiff's lowest hourly wage during her employment was $14.85. (*Id.* at ¶ 9.) In their calculation of wage statement penalties, Defendants assert there were 28 pay periods during this relevant one-year period. (Notice at 9.)

However, in its Corrected Opposition to Plaintiff's Motion to Remand ("Opposition"), Defendants rely on new figures provided by David Alvarado, a Senior Director of Human Resources at Wal-Mart. (Dkt. No. 26 ("Opp'n") at 6-7, 11-12, 14-15; *see* Dkt. No. 33-2, Declaration of David Alvarado in Support of Defendants' Opposition to Plaintiff's Motion to Remand ("Alvarado Decl.") ¶¶ 6, 7, 10-12.) Mr. Alvarado testifies the average wage in 2017 for non-exempt associates was $15.10, (Alvarado Decl. at ¶ 10), "the average hours worked per two-week pay period at the Facility for periods of time when the facility opened in 2015 through July 23, 2017 was 64.72 hours," (*id.* at ¶ 12), and that 40,925 wage statements were issued to non-exempt employees from the time the facility opened in 2015 until July 23, 2017, (*id.* at ¶ 11). Defendants use these new statistics to recalculate the figures pertaining to Plaintiff's third and fourth causes of action, and add new totals relating to Plaintiff's first and second causes of action.

In his Supplemental Brief, pursuant to the Court's request, Mr. Alvarado confirms that "the average hourly wage for the putative class members during the relevant period is $15.10." (Dkt. No. 42, Declaration of David Alvarado in Response to Order Requesting Additional Evidence ("Alvarado Suppl. Decl.") ¶ 4.)

### 2. Defendants' Proposed Violation Rate

With respect to Plaintiff's first, second, and third claims, Defendants assume a

violation rate of one violation per week. (*See* Opp'n at 12-15.) The Court does not consider the Defendants' calculation in isolation; rather, the Court considers the Defendants' calculation in light of the Plaintiff's Complaint. *See Ibarra*, 775 F.3d at 1198-99. Although Plaintiff alleges that Defendants engaged in a pattern and practice of wage-and-hour violations, Plaintiff also broadly alleges other facts that indicate a higher frequency of violations. Plaintiff's Complaint includes allegations that:

> Defendants *administered a corporate policy, practice and/or procedure* of (1) failing to pay all meal period wages and rest break wages, (2) failing to pay all minimum and overtime wages, (3) failing to pay all wages due and owing upon termination of employment, and (4) failing to provide accurate wage statements. Plaintiff alleges this corporate conduct is accomplished with the advance knowledge and designed intent to willfully withhold appropriate wages for work performed." (Compl. ¶ 18 (emphasis added); *see also* Compl. ¶¶ 2 ("systematic"), 19 ("regularly"), 24 ("pattern, practice and administration of corporate policy").)

In light of the facts that, (1) Defendants do not assume a 100% violation rate, (2) Plaintiff's pleadings contain allegations of *regular, systemic*, and otherwise wide-ranging policy, practice, and pattern, (3) Plaintiff's allegations do not allege a more precise calculation of violation frequency, and, (4) Plaintiff fails to offer any other evidence of the frequency with which the alleged violations occurred, the Court finds Defendants' reliance upon an assumption of a weekly violation rate to be reasonable under the circumstances. *See Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) ("In this case, plaintiff does not allege that class members were 'never' permitted breaks, but plaintiff does allege that he 'regularly' missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest break violations. Brinderson's assumption of one violation per week is reasonable

5.

based on the allegations of the SAC." (internal citations omitted)); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14–CV–09809–SVW–PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[Defendants' assumed rates of violation] are sufficiently supported by [plaintiff]'s allegations and [d]efendants' evidence . . . . [A] removing defendant is not required to go so far as to prove [p]laintiff's case for him by proving the actual rates of violation . . . . Notably, [p]laintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation.") (citations omitted).

### 3. First Cause of Action: Unpaid Overtime Wages

Plaintiff asserts that "as a pattern and practice" Defendants "failed to compensate Plaintiff and the Class and Subclasses for all minimum and overtime wages earned, including, but not limited to all overtime hours in excess of eight (8) hours worked each day, and all minimum and overtime wages for the off-the-clock time spent passing through security checks following each shift." (Compl. ¶ 29.) The putative class worked approximately 81,850 weeks between the time the facility opened in 2015 until July 23, 2017. (Opp'n at 14; Alvarado Decl. ¶ 11.) The average hourly rate of pay for the putative class is $15.10. (Alvarado Suppl. Decl. ¶ 4.) Overtime pay is calculated by multiplying the wage rate by one and one-half. *See* Cal. Labor Code § 510. Defendants calculated Plaintiff's minimum wage and overtime claim by multiplying the overtime pay rate for one hour ($22.65) by the number of weeks the putative class worked during the relevant time period (81,850). (Opp'n at 14-15.) Consequently, Defendants estimate the amount in controversy for this cause of action is $1,853,902.50. (*Id.* at 15.)

Based on Plaintiff's allegations that Defendants engaged in a "pattern, practice,

and administration of corporate policy regarding illegal employee compensation" from June 13, 2013 to the present, (*see* Compl. ¶¶ 15(a), 30), Defendants argue that a violation rate of one overtime violation per class member per week is reasonable, (Opp'n at 14-15). The Court agrees. Plaintiff's Complaint does not state the exact frequency at which the alleged violations occurred. Specifically, Plaintiff states that her claims are typical of all members of the class and that she worked "at least one shift in excess of eight hours and one workweek in excess of forty hours during which she was not paid all minimum and overtime wages." (Compl. ¶ 20.) She further claims that Defendants engaged in a pattern and practice of failing to compensate her and the Class for all minimum and overtime wages earned. (Compl. ¶ 29.) These assertions support Defendants' estimate of one violation per week per putative class member. *See Arreola v. Finish Line*, No. 14–CV–03339–LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent" practice supports assumption that every class member "experienced at least one violation once per week"); *Francisco v. Emeritus Corp.*, No. CV 17-2871-BRO (SSx), 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable." (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648-49 (9th Cir. 2012)); *see also Jasso v. Money Mart Exp., Inc.*, No. 11–CV–5500, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (examining how the complaint informs what is a reasonable amount-in-controversy calculation and holding that a "policy" of violations permits a defendant to assume one violation per week). Therefore, the Complaint provides sufficient support for Defendants' proposed rate.

Based on this claim, the Court finds Defendants have placed $1,853,902.50 in controversy.

7.

### 4. Second Cause of Action: Failure to Pay Meal Period Premiums

Plaintiff claims that "[a]s a pattern and practice, Defendants regularly failed to provide plaintiff and the Class and Subclasses a second duty-free meal period for all 'associate' employees that worked shifts in excess of ten (10) hours, and did not provide proper compensation for this failure." (Compl. ¶ 34.) In compliance with California Labor Code Section 226.7 and Industrial Wage Commission ("IWC") Wage Order, Plaintiff seeks the balance of the allegedly unpaid premium compensation. (Compl. ¶ 35.) Under California law, employers must provide a second meal period to all employees who work more than ten hours in a day. Cal. Labor Code § 512(a). An employee who is denied a required second meal period is entitled to one hour of pay at the employee's regular rate of compensation. Cal. Labor Code § 226.7.

Again, Defendants estimate that members of the putative class worked 81,850 weeks during the relevant time period. (Alvarado Decl. ¶ 11; Opp'n at 14.) The number of weeks (81,850) multiplied by the average hourly rate ($15.10) equals $1,235,935. (Opp'n at 14.)

As explained above, because Plaintiff claims that the violations occurred regularly, as a pattern and practice, (*see* Compl. ¶¶ 34, 35), the Court finds Defendants' estimation of one violation per work week reasonable and conservative. *See Campbell*, 471 F. App'x at 648-49 (reasoning that when a complaint alleges routine and regular violations, defendant is reasonable to assume a rate of one violation per week); *see also Garza*, 178 F. Supp. 3d at 911-12 (holding a weekly-violation-rate calculation reasonable when complaint alleges defendants maintained a "policy or practice" of both meal and rest break violations).

Accordingly, the Court finds Defendants have placed $1,235,935 in controversy for this claim.

### 5. Third Cause of Action: Failure to Timely Pay Wages at Termination

Plaintiff alleges that Defendants "regularly failed to pay Plaintiff and the Class and Subclasses their final wages pursuant to Labor Code §§ 201 to 204." (Compl. ¶ 39.) Plaintiff further asserts that Defendants' failure to provide such wages "results in a continuation of wages up to thirty (30) days from the time the wages were due." (*Id.* at ¶ 41.) Based on this allegation and Plaintiff's contention that her claims are "typical of the claims of all members of the Class," (*id.* ¶ 20), Defendants initially calculated waiting penalty damages by multiplying Plaintiff's lowest hourly wage ($14.85) by 8 hours per day by 30 days, for a total of $3,564 per class member. (*See* Notice at 8.) Plaintiff objected to the assumption that all class members earned an average hourly rate of $14.85, worked an average of eight hours a day, and are entitled to penalties for the 30-day maximum. (Mot. to Remand at 4.)

In an attempt to address Plaintiff's concerns, Defendants' Opposition presented new statistics specific to the putative class in this case. (Opp'n at 6; Alvarado Decl. ¶ 10; Alvarado Suppl. Decl. ¶ 4.) As noted above, the average hourly wage for the putative class for the relevant period was $15.10. (Alvarado Suppl. Decl. ¶ 4.) Defendants also estimate that the average hours worked per two-week pay period was 64.72. (Alvarado Decl. ¶ 12.) Instead of assuming that each class member was entitled to the full thirty day maximum, Defendants presented evidence that of the 686 associates who were terminated between July 7, 2016 and July 7, 2017, 68 would be entitled to penalties for only twenty as opposed to thirty days based on their termination date. (*Id.*; Opp'n at 7.) Defendants then multiplied 618[1] employees, by

---

[1] The Court notes that Defendants actually used 620 in this calculation; however, based on the total number of terminated employees (686) and the number who would be entitled to only twenty days' worth of penalties (68), the correct figure is 618.

30 days, by 6.472[2] hours, by $15.10, for a total of $1,811,862.29. (*See* Opp'n at 6.) Defendants then repeated the same calculation, substituting 68 employees and 20 hours, for a total of $132,908.99. (*Id.*) Adding these two figures, Defendants propose $1,944,771.28 as the amount in controversy for this claim.

Thus, the Court finds that Defendants have placed $1,944,771.28 in controversy for this claim.

### 6. Fourth Cause of Action: Wage Statement Penalties

Finally, Plaintiff alleges that Defendants "failed to keep *accurate* records regarding the rates of pay for their California Employees" including accurate records of "gross wages earned, total hours worked, net wages earned, and all applicable hourly rates and the number of hours worked at each hourly rate." (Compl. ¶ 43.) The Labor Code permits employees to recover the greater of their actual damages or fifty dollars for the initial pay period violation and 100 dollars for every pay period violation thereafter, not to exceed an aggregate penalty of $4,000. Cal. Labor Code § 226(e)(1). Claims for penalties under section 226 are subject to a one-year statute of limitations. (Cal. Civ. Proc. Code § 340(a).)

In their Notice, Defendants calculate the amount in controversy for this cause of action using a one-year period based on the statute of limitations, during which time they allegedly issued 28 wage statements. (*See* Notice at 9.) However, in their Opposition, Defendants calculate penalties for the entire period the facility has been in operation, during which time they issued 40,925 wage statements. (Opp'n at 11; Alvarado Decl. ¶ 11.) Defendants contend this is the appropriate calculation because "Plaintiff has alleged that a 3-year statute of limitations applies to this claim." (*Id.*) In

---

[2] Defendants assert that associates worked an average of 64.72 hours "per two-week pay period at the Facility for periods of time when the facility opened in 2015 and through July 23, 2017." (Alvarado Decl. ¶ 12.) Accordingly, this translates to an average of 32.36 hours per week and 6.472 hours per day. (*See* Opp'n at 6.)

10.

her Reply, Plaintiff contends that the period of time stated in paragraph 15(e) of the Complaint (July 13, 2014 to the present) pertains to her claim for "*damages* incurred as the result of Defendants' alleged violation" of Labor Code section 226, not the possible penalties incurred. (Reply at 3.)

Defendants' argument is unpersuasive. Under the statute, Plaintiff is entitled to actual damages for the alleged period *or* penalties. *See* Cal. Lab. Code § 226(e)(1). Since Defendants calculation for this claim focuses exclusively on the possible penalties, the one year statute of limitations is applicable. Regardless, the Court does not analyze the potential amount in controversy for this claim because the total amount raised by the prior claims already equals $5,034,608.78.

### 7. Attorneys' Fees

Lastly, Defendants contend attorneys' fees are properly included when calculating the amount in controversy under CAFA and assume a benchmark rate of 25% of potential damages. (Notice at 10; Opp'n at 15-16.)

Plaintiff's Complaint seeks attorneys' fees under California Labor Code sections 218.6, 226, and 1194, and under California Code of Civil Procedure section 1021.5. (Compl. at 13.) The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA. *See, e.g., Sanchez v. Russel Sigler Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015). Since Defendant has established by a preponderance of the evidence an amount in controversy of at least $5,034,608.78 ($1,853,902.50 for Plaintiff's first cause of action for overtime wages + $1,235,935 for Plaintiff's second cause of action for meal period premiums + $1,944,771.28 under Plaintiff's third cause of action for alleged violations of Labor Code section 203), the Court includes an additional $1,258,652.19 (25% of $5,034,608.78) for attorneys' fees.

**8. Total Amount in Controversy**

Based on Plaintiff's Complaint and the evidence provided by Defendants, the Court calculates an amount in controversy of at least $6,293,260.97. Since this exceeds CAFA's $5,000,000 minimum, the Court concludes jurisdiction is proper.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants have established by a preponderance of the evidence that the amount in controversy in this case exceeds $5,000,000. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

Dated: September 29, 2017   _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE