1           UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   CHELSEA HAMILTON,                )
    INDIVIDUALLY AND ON BEHALF OF    )
6   ALL OTHERS SIMILARLY SITUATED,   )
    AND ALYSSA HERNANDEZ,            )
7   INDIVIDUALLY AND ON BEHALF OF    )
    ALL OTHERS SIMILARLY SITUATED,   )
8                                    )
                 PLAINTIFFS,         )
9                                    )
           vs.                       ) No. CV 17-1415-AB
10                                   )
    WAL-MART STORES, INC., A         )
11  CORPORATION, WAL-MART            )
    ASSOCIATES, INC., A              )
12  CORPORATION AND DOES 1 THROUGH   )
    50, INCLUSIVE,                   )
13                                   )
                 DEFENDANTS.         )
14  _____ )

15

16

17           REPORTER'S TRANSCRIPT OF PROCEEDINGS

18              FRIDAY, JANUARY 18, 2019

19                   11:55 A.M.

20              LOS ANGELES, CALIFORNIA

21

22  _____

23         **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
           FEDERAL OFFICIAL COURT REPORTER
24         350 WEST FIRST STREET, ROOM 4311
           LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFFS:

 3           YOON LAW, APC
             BY:  KENNETH H. YOON, ATTORNEY AT LAW
 4           AND  STEPHANIE E. YASUDA, ATTORNEY AT LAW
             ONE WILSHIRE BOULEVARD
 5           SUITE 2200
             LOS ANGELES, CALIFORNIA 90017
 6           213-612-0988

 7   FOR THE PLAINTIFFS:

 8           LAW OFFICES OF G. SAMUEL CLEAVER
             BY:  G. SAMUEL CLEAVER, ATTORNEY AT LAW
 9           5670 WILSHIRE BOULEVARD
             18TH FLOOR
10           LOS ANGELES, CALIFORNIA 90036
             310-388-7289
11
     FOR THE PLAINTIFFS:
12
             FERNANDEZ & LAUBY LLP
13           BY:  PETER J. CARLSON, ATTORNEY AT LAW
             AND BRIAN J. MANKIN, ATTORNEY AT LAW
14           4590 ALLSTATE DRIVE
             RIVERSIDE, CALIFORNIA 92501
15           951-320-1444

16   FOR THE DEFENDANTS:

17           GREENBERG TRAURIG, LLP
             BY:  MARK D. KEMPLE, ATTORNEY AT LAW
18           AND MATTHEW R. GERSHMAN, ATTORNEY AT LAW
             AND NAOMI BEER, ATTORNEY AT LAW
19           AND BRYAN W. PATTON, ATTORNEY AT LAW
             1840 CENTURY PARK EAST
20           SUITE 1900
             LOS ANGELES, CALIFORNIA 90067
21           310-586-7776

22

23

24

25
```

```
 1           LOS ANGELES, CALIFORNIA; FRIDAY, JANUARY 18, 2019

 2                         11:55 A.M.

 3                           - - -

 4           THE CLERK:  Calling Civil Case 17-1415, Chelsea

 5   Hamilton versus Walmart Stores.

 6           Counsel, please state your appearances.

 7           MR. YOON:  Kenneth Yoon for plaintiff.

 8           MS. YASUDA:  Good afternoon, Your Honor.

 9   Stephanie Yasuda, also on behalf of plaintiffs.

10           MR. CLEAVER:  Good afternoon, Your Honor.

11   Sam Cleaver on behalf of plaintiffs.

12           MR. MANKIN:  Good afternoon, Your Honor.

13   Brian Mankin for plaintiff.

14           MR. CARLSON:  And good afternoon, Your Honor.

15   Peter Carlson on behalf of plaintiffs.

16           THE COURT:  All right.  I think it's still

17   morning.  So whether -- good morning or afternoon to you

18   all.  So go ahead.

19           MR. KEMPLE:  Good morning.  Mark Kemple on behalf

20   of Walmart.  I'm joined by my partner, Matthew Gershman;

21   Naomi Beer, who is national coordinating counsel for

22   Walmart; and Bryan Patton who is the brains behind the

23   outfit.

24           THE COURT:  All right.  Good afternoon.  I'm

25   sorry.  Good morning to you all.  I'm sorry.  It's just been
```

1   an interesting morning, as you might have seen, and so let

2   me just get my notes here.

3           Couple, sort of, observations before we sort of

4   begin.  One obvious one is Mr. Patton and I know each other

5   from -- was it last year or the year before?  I can't

6   remember when he was a law clerk to our floor, and he had to

7   suffer in doing some work with me.  So I just wanted both

8   sides to know that.  I just noticed that this morning.

9           And then also, I will note that, in looking at the

10  papers, there is a declaration in which the declarant -- I

11  think it was Mr. Jose Aguilar -- indicates that he had a

12  meeting with an associate at Greenberg Traurig by the name

13  of Michael Augustine.  Michael was one of my first law

14  clerks when I started four years ago.  I didn't know he was

15  on this case.  He and I have never talked about the case,

16  but I did note that when I was going through the papers; so

17  I wanted the parties to know that.

18          So all right.  With that, let's move forward.

19  I've got a number of questions.  We've got a lot of issues

20  to discuss here.  You know, I guess it was August of last

21  year where I certified six subclasses.  I won't go through

22  all of those.

23          We've got a number of issues here today -- motion

24  to strike, the motion for decertification, the motion for

25  partial summary judgment and a -- I'm sorry.  Walmart's

CHIA MEI JUI, CSR 3287, CRR, FCRR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1  motion for partial summary judgment and then plaintiffs'
 2  motion for partial summary judgment.  I'm going to try to go
 3  over at least my tentatives as it relates to them in order.
 4          We'll start with the motion to strike.  So if I
 5  understand correctly, Walmart's moving to strike the --
 6  Dr. Kriegler's, K-r-i-e-j -- I'm sorry, K-r-i-e-g-l-e-r, and
 7  Dr. Bonin's, B-o-n-i-n, their expert reports and then
 8  barred -- as well as barring their testimony under Rule 37
 9  for failure to comply with Rule 26(a)(2)(B).
10          I guess the issue really is was there substantial
11  justification or was the failure to notify harmless.
12          Walmart argues on the one hand that the
13  plaintiffs' initial disclosures didn't contain a complete
14  statement of all the expert -- or all the opinions that the
15  experts were going to express.
16          The plaintiffs come back and say that Walmart had
17  not yet produced all the necessary surveillance video, that
18  Kriegler needed to calculate damages.
19          And then Dr. Bonin was still waiting on permission
20  to conduct the site inspection at the facility that was
21  necessary to calculate the average time that it took
22  employees to go back and forth.
23          My tentative is to grant this in part and deny it
24  in part.  It seems to me that wholesale exclusion of
25  Dr. Kriegler and Dr. Bonin's testimony doesn't, at least in
```

```
 1    this Court's opinion, appear warranted.
 2           But to the extent that Dr. Kriegler's supplemental
 3    report contains sort of surrebuttable opinions, if you will,
 4    in response to Walmart's rebuttal expert reports, then those
 5    would be -- I think those would become more problematic.
 6           And so let me start with the plaintiffs.  What is
 7    the status regarding the surveillance videos and the site
 8    inspection?  Is it -- Mr. Yoon, are you going to take the
 9    lead or --
10           MR. YOON:  Yes.  Yes, Your Honor, I will take the
11    lead.
12           THE COURT:  All right.
13           MR. YOON:  The question is what is the extent --
14           THE COURT:  Or the status regarding the
15    surveillance videos and the site inspection.
16           MR. YOON:  So after we filed our motion, there was
17    some dispute about our first filing through which we
18    withdrew.  Then we had a second filing on the video.  Then
19    we learned at that time that the video was in large part
20    destroyed and that what we were seeking to compel didn't
21    exist, at which point the video becomes fairly moot.
22           We can't compel something that doesn't exist.  But
23    we did get and are continuing to get on a rolling basis a
24    sampling of the video that does exist, which is about -- so
25    we got -- originally, we got some video, and that was about
```

CHIA MEI JUI, CSR 3287, CRR, FCRR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    three months.  And then there was another two months or so
2    right after that that exists, and we're getting a sampling
3    of that roughly two-month period from these limited camera
4    views.
5             There's a lot of cameras in the facility.  I don't
6    know exactly how many but well over a hundred.  We have
7    about -- we've seen so far the camera views for about ten
8    cameras.  And of those cameras, we're now sampling --
9    because we don't care about most of those ten cameras, I
10   think -- we're getting some sampling of the two-month
11   additional period of a few cameras that really are the ones
12   that matter of the ten video camera feeds that exist for a
13   period of about five months.
14            Exclusive of that, there's no video camera
15   footage, as far as I understand it, and we can't get it
16   because it doesn't exist.
17            THE COURT:  Right.  And I'm just curious, from
18   your perspective.  You know, there was a lot of e-mails
19   going back and forth between the parties.  It seems to me
20   that this could have been resolved earlier.  I'm just
21   wondering why you waited till now to seek Court
22   intervention.
23            MR. YOON:  The reason we waited is because there
24   was -- so fairly early in the case, we got the indication
25   that there was some video evidence and that they were saving
```

1    it.  And we told them -- then they said -- the Walmart said

2    through counsel, "We're not going to save it, or we're going

3    to plan on destroying it," and we said to them, "No, that's

4    not a good idea.  Let's talk about it, though."  And right

5    around that time the counsel changed.  And that was,

6    basically, the last we heard of it for a while in terms of

7    the extent of the video available.

8            Then we wanted to see -- as the case progressed,

9    we wanted to see more of this video.  And for -- for

10   certification purposes, the existence of the video is

11   important.  Actually, looking at all of it isn't as

12   important.  It's a -- more of a merits issue than a

13   certification issue.

14           We have a lot of push back on the video, and we

15   have a lot -- in terms of the extent of the video available.

16   We are proceeding on the assumption for much of the case

17   that the video existed.  It might not be in a producible

18   form, immediately producible form, but that it was being

19   maintained somewhere on some server or some storage

20   facility, something like that and that we wanted to see it.

21           We had some negotiations and meet-and-confers on

22   this because we understand that it takes time to produce

23   this.  There is a burden, obviously -- I don't think it's

24   unduly burdensome, but there's a burden, and we want to

25   really focus on what matters.

```
 1          Defendants pushed back very hard on this, wanted

 2    us to look through the video camera angles, pick out certain

 3    video cameras and not pick out certain video cameras that

 4    they will then go back to produce footage from.

 5          We went back and forth on this.  When I say "back

 6    and forth," I don't mean to suggest that this is a constant

 7    thing that we did on a daily or even weekly basis.  We went

 8    back and forth.  There might be periods of time between the

 9    back and forth.  We went back and forth on this.

10          And then we ultimately -- we filed, and we entered

11    into more serious discussions on a stipulation to compel

12    this because we were running out of time, but we are still

13    negotiating about this video.

14          When we filed the motion is when we learned that

15    what we were fighting about doesn't exist.

16          THE COURT:  Okay.

17          MR. YOON:  And that's -- that's when we realized,

18    oh, I guess, at that point my expert needs to start looking

19    at what does exist because the issue for our delay is that

20    you can't -- or science of sampling dictates that you need

21    to know -- the -- the sampler needs to know the population

22    before the sampler can determine the sample.  If you don't

23    know the population, then you can't determine the sample.

24          There -- we were waiting to -- to get the

25    population so that we can draw upon the sample.  We had
```

1  three months' of video for quite a long time, but we didn't

2  know how many of those days do we need to pick because we

3  didn't know the full population of the video.

4         We had been proceeding under the assumption that

5  the -- we don't have possession, that Walmart has possession

6  of all the days of video, and we can pick a sample of those

7  days.  Some of those days sampled will, on percentage --

8  percentage chance, include the three months we already have,

9  and many of those days sampled will likely include days

10  outside the three months we already have.

11         THE COURT:  But when did you find out that -- that

12  the items were destroyed?  Wasn't that just two days before

13  the reports were due?

14         MR. YOON:  It might have been later than that,

15  Your Honor.

16         THE COURT:  Okay.

17         MR. YOON:  I don't -- I don't have the exact

18  dates, but it was very, very late in the discovery process.

19  It might have been that or even later.  The date is in the

20  papers, but it was extremely late, yes.

21         And we didn't -- I guess, we -- we expected that,

22  based upon the meet-and-confers and arguments about the

23  scope of the production, that we were arguing about days

24  that existed.

25         THE COURT:  And let me -- have you made either of

```
 1    these doctors available for deposition?  Has that been --

 2            MR. YOON:  They -- they've been available -- well,

 3    Ms. Bonin, I believe we've given some dates, those dates

 4    passed.  Dr. Kriegler we gave those dates, those dates

 5    passed.  We've agreed to provide them later.  If we are

 6    allowed to do a supplemental declaration for them, they can

 7    to depose them at that time.

 8            We've also said they can depose them now, and if

 9    they want to depose them again later, they can -- basically,

10    they can depose them as much as they like.  It's not really

11    a concern on our point in terms of limiting the defendants'

12    ability to depose our two proposed experts.

13            THE COURT:  Okay.

14            MR. YOON:  On Ms. Bonin -- never mind.  I --

15            THE COURT:  Dr. Bonin?

16            MR. YOON:  Dr. Bonin.  On Dr. Bonin, I don't --

17    actually, I don't think the Court had the question on

18    Dr. Bonin or --

19            THE COURT:  No, I just was -- have you made them

20    available for -- both of them available for deposition?

21    That was my question.

22            MR. YOON:  Yes.  Yes, we have.  On Dr. Bonin --

23            THE COURT:  Oh, my question on Dr. Bonin, did

24    Dr. Bonin, did she supplement her report as well?

25            MR. YOON:  We -- we are -- the position of the
```

```
 1    defendant is that, because today's hearing could be
 2    dispositive to her ability to testify, that they didn't want
 3    to produce her.
 4            They were going to -- defendants agreed to
 5    produce -- I'm sorry.  Agreed to allow a site inspection
 6    this month along a lot of terms, but since part of this
 7    month includes after today, defendant's taking the position
 8    that the inspection should be after today -- there's enough
 9    time after today, and it will depend upon whether Dr. Bonin
10    is allowed to testify, whether she can be part of that site
11    inspection or not or whether it makes sense for her to be
12    part of the site inspection or not based upon today's
13    hearing.
14            THE COURT:  Okay.  Now, let me see if there's any
15    other questions I had on this issue.  All right.  Let me
16    hear from Walmart at this time.  Is it Mr. Gershman?
17            MR. KEMPLE:  Mr. Kemple, Your Honor.
18            THE COURT:  Mr. Kemple.  I'm sorry.  Okay.
19            MR. KEMPLE:  Thank you, Your Honor.
20            The chronology really matters here because
21    regrettably what the Court just heard is simply not
22    consistent with the facts in this case.
23            THE COURT:  Got it.
24            MR. KEMPLE:  On January 24th, 2018, not two days
25    before September 21, 2018, not after that date, on
```

1    January 24, 2018, in Exhibit 8 to the motion, Walmart wrote

2    a detailed letter explaining exactly what we had and what we

3    didn't have and that we weren't going to be creating

4    evidence for defendants and inviting a discussion.  That

5    discussion didn't come.

6            On March 22nd, 2018, Exhibit 9, we produced three

7    days of video.  On May 16th we produced 70 days of video.

8    No request for production, no discovery request.  We

9    voluntarily produced these materials to defendant.

10           On June 1, we produced additional screenshots.  On

11   August 27 -- that's incorrect.  The expert deadline to

12   produce reports is September 21.  On August 17th, for the

13   first time, plaintiff requested video in a discovery request

14   of us.

15           The reports came due on September -- and then

16   they withdrew -- there was a motion and then -- then they

17   withdrew it because they realized they hadn't made a request

18   of us.  Then the reports come due.

19           The time between May and September is many

20   months -- I haven't counted them in my head.  Plaintiffs

21   literally did not give the video to their experts.  They did

22   nothing with them.

23           On September 18th, plaintiffs came to this Court

24   on an ex parte basis to have the discovery -- the disclosure

25   deadline continued.  They made arguments it would be

1    impossible for their experts to comply -- oh, by the way,

2    the discovery expert deadline was set -- proposed by

3    plaintiffs and set by this Court back in May, ample -- and

4    they repeatedly represented that they could comply with it.

5             So September 18th comes forward.  They file an

6    ex parte application claiming it's impossible,

7    impractical -- they just can't do the expert reports, which,

8    by the way, the subsequent expert reports bear out was

9    accurate and that they haven't given them the video.

10            This Court rejected their ex parte, saying, "You

11   failed to act.  You had plenty of time to do so, and you

12   didn't do anything with it."

13            So simply, they didn't comply fundamentally with

14   their obligations.  The reports that were then filed on

15   September 21 are both expressly labeled preliminary reports,

16   which the case law makes very plain is impermissible under

17   Rule 26 and leads to Rule 37 sanctions.  Preliminary -- I

18   will provide, I will base an opinion upon, I expect to be

19   able to come up with opinions, I expect to update this,

20   that, and the other thing.

21            Absent completely from this report is what's

22   required, which is you are to state your opinions in full

23   and recite the facts, the exhibits that will support your

24   opinions.  You're supposed to have done your analysis and

25   reported it and, importantly, for statistical analysis,

1    demonstrate that a scientifically, statistically sound --

2    there was a sound practice behind this.

3           They didn't even do the work, much less

4    demonstrate the results, much less state why this would be

5    admissible under pertinent standards.

6           They completely failed on September 21.  The case

7    law regarding Rule 37 is -- I mean, it's clear that they

8    should be excluded.

9           But what happened next?  September 21, as I

10   mentioned, comes and goes.  They then file a motion for

11   further production for the first time, which eventually they

12   withdrew again, by the way, and they ask for still

13   additional video.

14          Rolling forward to November 15th, their expert

15   files a supplemental report in which he says, "It is not

16   possible for me to view even the stuff they produced way

17   back in May.  It's physically impossible.  There's so much

18   material.  It would take hundreds of hours to review" --

19   this is their expert.  "I can't even do what they did back

20   in May."

21          There is no excuse, no justification whatsoever

22   for having sat on the video from May until September -- as

23   this Court has already found -- from May until September and

24   do nothing with it, much less totally fail to comply with

25   the Rule 26 standards.

```
 1           By the way, they then refused to make their

 2   experts available for deposition prior to our rebuttal

 3   expert dates.  They refused to make their experts available

 4   for deposition before our rebuttal expert dates.

 5           This statement, "Oh, they've been available,

 6   they're free, here they are, go take them," that's -- you

 7   know, we have timelines.  We have requirements.  We have a

 8   filing deadline for this motion to decertify to comply with.

 9   We have a trial date.  We have an MSJ date.  This is highly

10   prejudicial to Walmart.

11           And this statement -- by the way, their expert on

12   November 15th actually said that he is -- just received new

13   video from Walmart and that's why he's still unable to offer

14   opinions because he hasn't reviewed it yet.  Not true.

15           We had not produced anything to them since May

16   because that's what we agreed to give them, that's what we

17   gave them.  There was no order, there was no motion, there

18   was no resolution to give more.

19           We did supplement in December, voluntarily,

20   pursuant to a stipulation agreed to by -- between the

21   parties, but their expert can't even review this stuff.  He

22   admits it's far too voluminous for him to go through.

23           So simply put, plaintiffs sat on their rights --

24   or "rights" is not the right word.  They just didn't do

25   their job, and there's simply no reason now to -- to not
```

```
 1    follow Rule 37 and clear Ninth Circuit case law requiring
 2    that their experts now be excluded.  They wholly failed to
 3    comply with their obligations.
 4           Even they admitted it when two days before they
 5    were due they came and said it's not possible.  And then two
 6    weeks after that, they filed a motion to compel, which they
 7    later withdrew, again stating "It's not possible for our
 8    experts to offer opinions."
 9           As this Court stated on September 20, you've had
10    this information since May.  You needed to act on it.  It is
11    highly prejudicial to Walmart to now allow this to go
12    forward.
13           Our experts have not seen their opinions, much
14    less the basis for those opinions.  We have not been able to
15    depose their experts because not only did they not give us
16    proper reports, they then refused to make them available
17    prior to our rebuttal expert deadline.
18           THE COURT:  Well, counsel's saying -- at least now
19    he's saying he's willing to make them available.  Does that
20    change the analysis?
21           MR. KEMPLE:  Of course not.  Deadlines matter.
22    You know, you have to have good cause, with capital G and C,
23    to change those.  This Court has already rules they didn't
24    have that, there was no basis to do this.
25           And now, Your Honor, we're at the point where we
```

| | |
|---|---|
| 1 | have briefed -- I don't know how high the stacks of |
| 2 | materials are that are before the Court. |
| 3 | THE COURT:  I do, but -- |
| 4 | MR. KEMPLE:  Yeah.  You know, this should have |
| 5 | been done a long time ago.  It should have accompanied their |
| 6 | motion in the first instance to certify a class.  They |
| 7 | should have had a proper trial plan -- and we'll get into |
| 8 | that in a moment.  At latest, it should have gotten happened |
| 9 | on the disclosure date for the experts. |
| 10 | It didn't happen by the time we had to rebut those |
| 11 | experts.  It didn't happen by the time we filed our |
| 12 | decertification motion.  It didn't happen by the time they |
| 13 | filed their opposition to our decertification motion.  It |
| 14 | hasn't happened today. |
| 15 | Note when they came in on September 20th and asked |
| 16 | for an extension of the deadlines, which you correctly |
| 17 | rejected, they wanted through January 8th.  January 8th is |
| 18 | gone.  I mean, every possible opportunity to step up to the |
| 19 | plate has passed, and it should have happened long ago. |
| 20 | I cannot think of a stronger case for Rule 37 |
| 21 | sanctions which are self-executing and automatic.  They |
| 22 | admit their expert reports are deficient. |
| 23 | THE COURT:  All right.  Thank you, Counsel. |
| 24 | All right.  Let's talk about the next issue on the |
| 25 | table here, and that is the motion for -- Walmart's motion |

CHIA MEI JUI, CSR 3287, CRR, FCRR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   for decertification.

 2             MR. YOON:  Your Honor, may I be heard on the last

 3   point?

 4             THE COURT:  All right.  Briefly.

 5             MR. YOON:  The timeline is in the papers, but the

 6   way I would look at it is very different than the way

 7   defendant's looking at it.

 8             We had a -- we were doing -- we had requested the

 9   video from the beginning of the case in an RFP.  Defendant

10   was giving us some of this video -- they were saying

11   informally.  We believe it was pursuant to RFP.

12             At the end of the day, we decided to submit a

13   specific RFP labeling exactly what we wanted -- video

14   surveillance evidence, labeling it the right way rather

15   than, I think, as we originally labeled it as documents

16   relevant to the security check claim.  But we labeled it

17   very clearly.

18             That's part of the reason for the first motion to

19   compel, our stipulation regarding discovery dispute.

20             We withdrew the second discovery dispute because

21   we learned at that point that the video was gone.  Defendant

22   cites to this letter in January about a year ago as evidence

23   that they were going to destroy evidence.  That's not the

24   way I looked at it.

25             Generally speaking, when I get lawyers [sic] from
```

```
 1   defendants, counsel, they don't say, "We're destroying
 2   evidence."  They just mention -- well, anyways, it is what
 3   it is.  It's in the record.
 4        But that's not how I read it, and that's not how
 5   the parties negotiated asking for additional video because,
 6   generally speaking, when I ask for something, informal or
 7   formal, and the other side says, "Here are some problems
 8   with that," I don't expect at the end to hear, "It's gone.
 9   It never existed."
10        I don't think that's a reasonable assumption for
11   me to assume that everything defendant tells me is an
12   argument about something that doesn't exist.
13        And to say that it's my fault for not filing a
14   motion earlier because I believed the defense lawyer, maybe
15   not express language, but implied language that I'm fighting
16   about something that exists is terribly offensive, and it
17   suggests an incompetence on my part.
18        And I think that the Ninth Circuit -- I'm sorry,
19   the Court -- Central District expects a meet-and-confer to
20   be had in good faith.  I handled my meet-and-confers in good
21   faith.  I assumed good faith on the other side.  And when
22   I'm told that the documents didn't exist, I did withdraw the
23   motion, and at that point, we worked out the discovery.
24        It takes time to produce the limited discovery
25   they were agreeing to produce.  And when we get that and
```

```
 1    if -- you know, with the Court's guidance today, we will
 2    have the experts analyze that.  We have analyzed the dates.
 3    So far, we've given some partial -- partial reports upon
 4    what the reports say so far of the discovery that we've
 5    reviewed so far, and the Court has seen that in the papers
 6    on this issue.  In terms --
 7              THE COURT:  Let me ask you, I mean, do you
 8    acknowledge, though, that this Dr. Kriegler did -- when did
 9    he review these videos?
10              MR. YOON:  He reviewed -- that's true.  He
11    reviewed them later.  And the reason for that is because, as
12    I said earlier, you know, I have a duty to -- I have a duty
13    and responsibility to advance costs for the class, and I'm
14    happy to do that.
15              But I think it's prudent upon me to -- to spend
16    that money prudently for the class.  And he's an expert, and
17    he's paid, and if I give him something, he's going to spend
18    money -- or spend the class's advanced fee of costs to do
19    something with that.
20              At the time that the data was produced in May, the
21    three days and then some additional day -- I'm sorry.  The
22    first time we asked was in May.  A little it earlier, there
23    was some --
24              THE COURT:  Hold on.
25              MR. YOON:  I'm sorry.  Very sorry.  I'm sorry.
```

```
 1              When the 70 days was produced in May, at that
 2   point, it was my understanding that there was more than
 3   approximately five months of video for these cameras
 4   available.
 5              THE COURT:  So you wanted to wait until you got
 6   all the video before --
 7              MR. YOON:  No.  What I wanted to do was I wanted
 8   to know what -- I wanted the expert to have the full amount
 9   of video -- let me correct it.
10              Before we look at a day of video, I think it's
11   important that we know that that day's within the sample
12   because he's a -- he's a statistician.  So he wants to pick
13   days that are statistically randomly selected.
14              But in order to randomly select X number of days,
15   you need to know how many days are in the population.  And
16   at that point, we had assumed that there was a -- a large
17   population of days, and it would be expensive for me to
18   review the three months that we had because for every day we
19   review, there's a good chance, better than 50/50, that that
20   day won't end up in that sample population.
21              So that's why we waited because statistically it's
22   not sensible to spend money to review data that's not going
23   to be in your sample.
24              When we learned otherwise, then we focused on the
25   days we did have and started reviewing that.  I think that's
```

```
 1   reasonable -- a reasonable use of the resources.
 2              THE COURT:  But I guess -- we've got a trial date
 3   set, I think, in April.  So when was he going to review the
 4   videos?
 5              MR. YOON:  Well, once we have the video, it's not
 6   terribly difficult to review it.  It takes some time, but
 7   it's -- just put more people on the problem and the problem
 8   will be -- the problem will be answered fairly quickly.
 9              THE COURT:  Okay.
10              MR. YOON:  So that's -- that was the plan.
11              THE COURT:  Okay.  All right.  Thank you, Counsel.
12   Let's move on to the --
13              MR. KEMPLE:  Your Honor, may I be very brief?
14              THE COURT:  No.  We've got a number of issues
15   here.  Let's get to the decertification issue.
16              MR. KEMPLE:  This is a -- a really important point
17   that I --
18              THE COURT:  No.  I'm not sure what part of no you
19   didn't understand.
20              MR. KEMPLE:  Thank you.
21              THE COURT:  I want to get through the rest of this
22   before -- I've got an afternoon calendar, so let's talk
23   about the decertification class.
24              So Walmart's now moving to decertify the security
25   checkpoint subclass, the overtime subclass, the meal break
```

1    subclass, the rate, wage statement penalty subclass, and the

2    waiting time penalty subclass on manageability and

3    predominance grounds.

4           Again, my -- my inkling -- my tentative is -- is

5    to deny the motion for -- for decertification.  I want to go

6    through my thoughts on each subclass so that the parties can

7    be informed and -- and argue appropriately.

8           So the plaintiffs in the -- in the security

9    checkpoint and overtime subclasses, they're arguing two

10   theories:  That there -- the time that was spent the moment

11   they clocked out and the moment that they arrived at the

12   checkpoint always constituted hours worked.  And then the

13   second is that the time spent going through security also

14   constitutes hours worked.

15          So Walmart, on the other hand, is saying, if I

16   understand correctly, that -- that the plaintiffs -- they

17   cannot present a nonindividualized means to measure the time

18   spent traveling, much less what each person was doing during

19   that specific period of the day.  And Walmart also asserts

20   it's basically beyond dispute that the employees perform all

21   the manner of their personal activities during this unknown

22   and unknowable interval of time.

23          Again, I have some concerns about that, but again,

24   I -- my tentative is to deny, but I -- I -- I'm not firm on

25   that.  And so let me again focus on the plaintiffs.

```
 1           Walk me through how you would intend to prove
 2   damages in this case.  Because I think that's a big issue
 3   here.  And, I guess, you know, depending on what I rule with
 4   the experts are you going to -- are you saying that the
 5   experts are going to somehow measure the distance between
 6   the machines or how -- how would you go about doing that?
 7           MR. YOON:  So there's a lot of different data
 8   points that a trier of fact can use to determine this time.
 9   It's really not terribly complicated.  There are some
10   complicating factors, but it's not really that complicated,
11   in our belief.
12           This is how we'll do it.  For purposes of the
13   walking time -- I will define it as walking time and
14   security check time.
15           Walking is you're walking from wherever the end of
16   your shift was to the -- to the line or to the security
17   check area and then the next is the -- to the line or the
18   security check area -- I'm sorry.  I'll try to get better --
19   and then the second half is that security check line time.
20           So, first, the walking.  We have a video plan to
21   take in the facility from the different time clock locations
22   to the front.  We're going to have the Dr. Bonin measure the
23   distance, give an expert opinion on how long it takes to
24   walk that distance at a safe speed.
25           And her expert declaration tells what she will do,
```

1    and it's pretty obvious, I think, that what she's going to

2    do is not terribly difficult to do.

3         We'll also videotape that process so that the jury

4    will see, sort of, the -- the mass and the scale of the

5    facility and how long it takes to walk from the various

6    points, which there aren't that many, Your Honor.  It's less

7    than -- less than a dozen, as I understand it, of time

8    clocks to the security check area.  And then they can

9    determine how long it takes based upon the distance.

10   They'll have the benefit of Dr. Bonin who can say how long

11   it takes to walk that distance.

12        That walking time will exclude other personal

13   time.  I don't believe defendants are making the argument

14   that, if you talk with your coworkers on the way out of the

15   door, that that talking with coworkers then becomes personal

16   time, even though you have to do this walking, you have to

17   get out as quickly as possible, but I don't know.

18        THE COURT:  And I'm sorry.  I just have to ask.

19   How long is all this going to take again?  We've got a trial

20   date in April.  When is this going to happen, and you're

21   just going to say, "Here, Walmart, figure this out"?

22        MR. YOON:  We're going to do -- we have a process

23   for that.  Thank you.  We negotiated a fairly detailed

24   process.  The process will be we will take the video,

25   Walmart will review the video, and we'll have the ability to

1   black out or anonymize the video so any -- any employees'

2   faces are excluded.  They will have the video.  Presumably,

3   they can create their own evidence of -- counteract --

4   counteracting this, but we'll have that video.

5          Taking video -- the process for this inspection

6   should take two hours.  I expect Dr. Bonin's opinion can be

7   generated fairly soon after that as to the times.

8          The process she's already testified in her

9   declaration, but the times she doesn't.  She'll give the

10  times and distances.  We'll have the video of the times and

11  distances.  Defendant will see that video basically as soon

12  as we take it, and then we can determine what parts of the

13  video we want to show the trier of fact.

14         The video -- the walking time here estimated,

15  Your Honor, is a few minutes.  So showing a few minutes of

16  video to a juror shouldn't be that complicated.  Even if we

17  showed multiple locations, it won't be that complicated.

18  And the video pretty much will speak for itself.

19         Dr. Bonin's testimony will be very brief.  And the

20  class members can testify as to how long it takes to walk.

21  It won't be precise, but I believe Mt. St. Clemmons -- Tyson

22  says if it's consistent defendant didn't record the time,

23  we're allowed to give estimations.  The jury can hear those

24  estimations, and it's defendant's burden to say that our

25  estimations are unreasonable and no basis, whatever.  And

CHIA MEI JUI, CSR 3287, CRR, FCRR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    then the jury or the trier of fact can determine what to do

2    with that and determine a number.

3            With that number -- it's a class action -- you

4    multiple it by the class.  Everybody had to do this.

5            Now, some of the -- you know, there's going to be

6    some average amount of time, and we can argue for a low

7    estimate.

8            Another factor is that we have the time from the

9    front to the clocks on the beginning of the shift.

10   Dr. Kriegler's already testified as to that time.  That time

11   isn't, like, directly the proof of the walk time, but I

12   believe that time, the time from the clock -- I'm sorry.

13   From the security check to the clock is relevant evidence of

14   the walking time on the way back.

15           It's not perfect.  Defense probably will say that

16   there's all sorts of problems with it, but it's relevant.

17   It's 350 evidence.  And I don't believe it's unduly

18   prejudicial, though presumably, we might see motion on that.

19   I don't know.

20           THE COURT:  Okay.

21           MR. YOON:  But it's evidence.  We will have this

22   evidence.  The jury can -- the trier of fact can determine

23   it.

24           The second issue is the security check.  Security

25   check is easy to see because we have it all on video.  And

CHIA MEI JUI, CSR 3287, CRR, FCRR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   we can first show the video to the juror of this is what
 2   security check looked like for a few months of the class
 3   period.  It was worse earlier and this is what we have for
 4   the -- for part of the class period.  It's -- this is -- we
 5   believe is good as it gets because we have a spoliation
 6   issue.
 7          The other evidence isn't there.  The jury can --
 8   or the trier of fact can determine what it wants on the
 9   other evidence.  We'll have testimony about that from
10   witnesses who were there at other times when the process
11   might have been slightly different and more time-consuming,
12   but we'll have the video.
13          Dr. Kriegler will have some sampling of that and
14   give us testimony about that.  It's -- it's not that much
15   time, but it is time, and it was unpaid.  That part's
16   undisputed.
17          THE COURT:  You're saying we're going to show the
18   jury the video.  How much time is that going to take?  How
19   much -- what are you going to be showing them?
20          MR. YOON:  Few minutes of the video.  Basically, a
21   few minutes of video here and there and -- I'm sorry.  A few
22   minutes of video from this period of time.  The video is
23   fairly consistent, to be -- to be frank.
24          THE COURT:  Uh-huh.
25          MR. YOON:  So I think what we'll do is, we'll show
```

1    some of the video, and we will let the defendant show their

2    counter-designation of video to show our video is presumably

3    like -- I don't know.  They think our video's not

4    representative or whatever or is not a fair representation

5    of the process.

6              THE COURT:  Let me shift, if we could.  And we're

7    going to talk about the meal breaks stuff, I guess, when we

8    talk about the summary judgment motion.

9              But I want -- on the meal break issue, somewhat

10   related to this, in your opposition, you argue that -- I

11   think, if I got this correctly -- if the employees, they

12   leave the facility during their meal period, they must be

13   permitted to take a full 30-minute meal period in addition

14   to any time that's spent walking to or participating in the

15   security check.

16             The question I have is, what do you mean by "any

17   time spent walking to the security check"?

18             MR. YOON:  I would say the security check time

19   needs to be -- is not -- the security check time is not time

20   where the employee is relieved of all duty because they are

21   working during security check time.  And thus, when they

22   leave the facility on a -- I think this is focused on the

23   30 -- this is focused on the meal breaks when the person

24   actually does leave the facility.

25             THE COURT:  Right.

| | |
|---|---|
| 1 | MR. YOON:  For those meal breaks where the class |
| 2 | members or subclass members actually leave the facility, our |
| 3 | position is that there's a 30-minute meal and that, if they |
| 4 | take -- and we're focusing on the 30-minute meal because |
| 5 | that makes manageability much easier.  When they clock for a |
| 6 | 30-minute meal, that's a meal violation because they were |
| 7 | not -- they -- they were given -- they -- they were given a |
| 8 | less than 30-minute meal on those days without question -- |
| 9 | or with less question, I guess.  I heard some noise on the |
| 10 | defense counsel.  But less question because that's the |
| 11 | strongest case we have.  We want to focus on the strongest |
| 12 | case because -- well, because that's -- that's our position. |
| 13 | We want to focus on the strongest case, and it has to be |
| 14 | limited to that. |
| 15 | THE COURT:  So when the employee travels to the |
| 16 | security check -- I'm just trying to understand -- are they |
| 17 | going -- are they going out of their way to get to the |
| 18 | security check?  Or is there another entrance that they |
| 19 | could go in or -- I'm -- |
| 20 | MR. YOON:  So if the -- to leave the facility, |
| 21 | you -- as an employee, if you want to have a job when you |
| 22 | come back, you have to subject yourself to security, and |
| 23 | that's the security check. |
| 24 | They want to make sure -- Walmart wants to make |
| 25 | sure you're not leaving with any of their property, I think, |

1    is the fundamental reason for the security check.

2          When you come back from your break, there's no

3    check.  So not making -- and I think that's an important

4    fact later on.  But it's important that, when you return,

5    you can just walk in.  When you leave, you have to be

6    searched.

7          The fundamental issue then is, if you leave and

8    you come back in 30 minutes, some of those minutes were

9    subject to the control of the employer, and that's what we

10   want summary judgment for -- or summary adjudication for.

11         THE COURT:  Okay.  All right.  Well, let me hear

12   from the defense on these points, please.

13         MR. KEMPLE:  Thank you, Your Honor.  You asked

14   plaintiffs' counsel how they were going to demonstrate on a

15   class-wide basis for each person and each shift the amount

16   of time that it took between the time they clocked out and

17   the time they arrived at security, and the response was "Our

18   experts will do it sometime in the future."

19         I mean, the expert reports were due on

20   September 21st.  Counsel said the reason they didn't give

21   the videos prior to the deadline this Court orders was

22   because he deemed it prudent not to follow this Court's

23   deadlines, which reminded me of the 7-3 argument I heard

24   earlier this morning.

25         Doesn't work that way.  In fact, they came in and

1    asked the Court for relief, and the Court said no, that they

2    unilaterally deemed it prudent not to give their experts

3    this video.

4           Now, they say, after all this briefing, they still

5    haven't done it, but they'll come up with some sort of video

6    I didn't follow at all.  I mean, this all needed to be in a

7    expert report backing it up, statistical testimony as to why

8    this would be a permissible way of doing X, Y, and Z.  This

9    is entirely aspirational even today.

10          So the method of common proof that they point to,

11   even before we get into its merits, we don't know what it

12   is.  It hasn't even been disclosed yet.

13          Let's talk about the actual method.  First of all,

14   the distance is not known that these people travel because

15   we don't know where they clocked out.  There are a multitude

16   of clocks that they can clock out, and where they clock out

17   is not recorded.  The place where they exit the building is

18   not known because there can be more than one security exit

19   from the -- from the building.

20          So we don't even know the distance being measured

21   by these expert theories that had yet to be done, tested,

22   vetted, given to us, et cetera.  The time is not known,

23   apart from the distance.

24          As this Court made very plain in its prior order

25   denying class certification on the rest break theory, which

1   also relied upon walking back and forth from Point A to

2   Point B -- people walk at different paces.  There's

3   absolutely no way of doing this.

4          They seem to have this notion that they're going

5   to distill it down to some absolute minimum, you know, what

6   an Olympic racer might be able to do, and that's what the

7   class will get.

8          You don't get class certification by eliminating

9   the fact intensive individualized issues to a common

10  denominator that is abstract and artificial.  That's --

11  otherwise, anything could be certified as a class.  That

12  doesn't work.  They don't get to do that.

13         The activity in this time, apart from the

14  distances and time, there is no common method of proof,

15  certainly, not articulated; and all we hear is something

16  they may do someday if they can.

17         The activity is not known.  We know people go to

18  the restroom.  We know they go to the locker.  We know that

19  they socialize.  You have to figure out what time is work.

20         Well, merely being on the campus of an employer,

21  as the U.S. -- the California Supreme Court has made

22  perfectly clear, is not work.  Even when subject to the

23  rules, it's not work.

24         So there's no way, there's no method that's been

25  proposed to demonstrate how they're going to cleave out of

```
1    what was work, if anything was work during this time period,
2    much less how long it took, et cetera, et cetera.  And,
3    again, I think the key point here is they're still pointing
4    to something they hope to do maybe some day in the future.
5              And, by the way, this notion that we were
6    destroying evidence, this is a closed circuit loop that
7    loops over -- you know, you've heard this a thousand times.
8              Now, I would note that even plaintiffs in their
9    opposition -- this is how they say they're going to do it,
10   which is individualized testimony.  Quote, "in an individual
11   employment action for unpaid wages, the plaintiff" --
12             THE COURT:  Slow down.
13             MR. KEMPLE:  Forgive me.
14             "In an" -- I even blew that.  "In an individual
15   employment action for unpaid wages, the plaintiff employee
16   would not be expected to remember the precise amount of
17   off-the-time he or she worked every single day.  Rather, the
18   employee would be permitted to testify as to the amount of
19   off the" top -- "off-the-clock time worked on average, and
20   the jury would be permitted to believe the testimony or not
21   and award damages accordingly.  The standard does not change
22   simply because this is a class action."
23             Their opposition at page 14.  "We'll just have
24   everybody testify as a" -- this class should be decertified,
25   respectfully, Your Honor.
```

```
 1                THE COURT:  All right.  Let --

 2                MR. KEMPLE:  The second --

 3                THE COURT:  Go ahead.

 4                MR. KEMPLE:  Yeah.  And so I wanted to cover all

 5      your points.

 6                The security line checkpoint.  Their expert so far

 7      as looked at five people.  They had it since May.  He's

 8      looked at five people going through the security checkpoint.

 9                According to his written report, those five people

10      all took less than a minute to go through security and had

11      no wait at all.  They literally walked right through.

12                We have submitted test -- video to Your Honor

13      demonstrating literally that walking is just walking

14      through.  It's zero -- not even de minimis -- zero time

15      spent in the security line.

16                There is no way to determine by tracking people

17      through video and, you know, for hundreds of thousands of

18      events how long it took, if it took any time at all for a

19      person to go through that security line.

20                So there are a gagillion -- that's a legal --

21      actually, it's an actual term -- and I've overstated it --

22      reasons why this is individualized and cannot be determined

23      by the methods that they point to.

24                On the meal break claim, Your Honor, briefly.

25      Counsel made the argument that, if the time records show 30
```

```
 1    minutes only -- I'll make it easier for them.  Let's say
 2    that the time records only showed 28 minutes for the meal
 3    break.  Therefore, it's axiomatic there's a meal violation.
 4          Every decision to look at that has rejected it.
 5    The absence of a meal break entirely does not prove that a
 6    meal was not authorized.  A short meal break does not prove
 7    that the meal was not authorized.
 8          You have to ask why.  And in the instance where
 9    people chose to go outside for their meal breaks, their own
10    expert says there are tens of thousands of instances where
11    people took 35-, 40-minute breaks.  You can go through
12    security -- which, by the way, takes no time, but let's say
13    it took the minute or two minutes or whatever, and still
14    takes 30 minutes outside the building.  So the question
15    becomes highly fact intensive.  Why?
16          And, by the way, of course, lots of people choose
17    not to go outside when it's raining, when it's hot, because
18    they like to eat in the -- in the break room, you know,
19    because they don't want to eat at all, they're going to
20    quietly read somewhere.
21          I mean, the body of case law rejecting the theory
22    that was just articulated at this podium single space could
23    fill 25 pages of cites.  That is clearly not -- never
24    answers the why question.
25          And the fact that someone has to go through
```

```
 1   security to go outside, even if it takes some time, doesn't
 2   change the fact that there are individualized issues as to
 3   why they -- if they didn't take the full 30 minutes.  By the
 4   way, in many of these instances, they very well may have
 5   taken the full 30 minutes outside.  We don't know.  There's
 6   no way to determine that.
 7            But the why question that underlines and animates
 8   the meal break body of case law and the -- and the legal --
 9   the legal requirements cannot be answered absent
10   individualized proof.
11            THE COURT:  Right.  Well, if I could, while I have
12   you --
13            MR. KEMPLE:  Of course.
14            THE COURT:  -- I want to shift to the motion for
15   summary judgment.  Okay.  I have some questions that I
16   have -- or is there another counsel --
17            MR. KEMPLE:  Mr. Gershman's going to handle that,
18   with the Court's permission.
19            THE COURT:  All right.  All right.
20            So, Mr. Gershman, you can justify your existence
21   this afternoon.  So come -- why don't you step to the
22   lectern, please.
23            We're talking about, you know, discouragement of
24   the meal break claim, and I guess the question I have, is it
25   your position that Walmart did not have a duty to ensure
```

```
 1   associates took breaks, only that they had an obligation to
 2   relieve its associates of all duty to permit an opportunity
 3   to take these uninterrupted breaks?
 4             MR. GERSHMAN:  Yes, Your Honor.  I believe what
 5   you have articulated is the standard from Brinker.
 6             THE COURT:  Right.  Okay.  So I guess -- hasn't --
 7   I guess my question is hasn't Walmart presented evidence
 8   from which a jury could conclude that Walmart's security
 9   check impedes or discourages an associate from taking,
10   quote/unquote, uninterrupted 30-minute break?  Because if I
11   understand correctly, as Mr. Kemble said, they can stay
12   inside the facility or they have to leave the premises, and
13   then they have to go through the security check, which I
14   guess the plaintiff could argue eats up some part of their
15   30-minute break.
16             I know Mr. Kemble touched upon it, but I just want
17   to, again, just dot my Is, cross my Ts.  I want to hear your
18   response as it relates to the summary judgment motion on
19   this point.
20             MR. GERSHMAN:  Thank you, Your Honor.  As it
21   relates to summary judgment, if the case is a certified
22   class case, then what they're going to have to do at the
23   trial is establish that everybody was discouraged for --
24   they want liability for everybody, every single class
25   member.  They can't do that.  That's our position.
```

         1          So what we've outlined in the motion -- and all

         2    the material facts for our motion are undisputed -- is that

         3    lots of people say, "I wasn't discouraged."  Some people

         4    say, "I don't want to go outside.  There's nowhere good to

         5    eat out nearby."  I mean, it's out in the middle of -- I

         6    don't want to offend anyone who lives in Chino.  "There's

         7    nothing nearby that's good to eat."

         8          People have testified to that.  People have said,

         9    "I just want to eat in the break room," or maybe the

        10    weather's bad or maybe that day they parked really far away;

        11    so it really wouldn't have been worthwhile to go outside and

        12    walk all the way to the car.  And that takes time --

        13    right? -- and they've got the time they have for their meal

        14    break.

        15          So if the case is going to remain -- if that -- if

        16    the case is going to remain certified, they can't just

        17    possibly prove their -- even a prima facie case of liability

        18    as to everybody.

        19          So, of course, as the moving party, being the

        20    defendant, we just have to knock out one leg, and that's the

        21    leg we're targeting.  They cannot do it.

        22          THE COURT:  Again, I will ask why we should

        23    interpret -- why this Court should interpret Brinker as

        24    prohibiting -- you know, there's different readings on

        25    Brinker.  Prohibiting the employers from preventing the

```
 1    employees from taking a meal break, but then you've got the
 2    California law that seems to suggest it's more of an
 3    affirmative duty to provide employees with meal break.
 4    What's your thought or response to that?
 5              MR. GERSHMAN:  No, I think Brinker settled it,
 6    that the duty is to provide, not to police and ensure it is
 7    done.  That's right out of Brinker.
 8              But I am glad I have the opportunity to address
 9    this question directly because at page 1,040 of the Brinker
10    case, it talks about what is discouragement, you know, in
11    the context of failure to provide?
12              And the examples it gives are, quote,
13    reprimanding, or, quote, ridiculing people.  In other words,
14    where an employee -- an employer has a formal policy saying,
15    "Oh, you can take your break" --
16              THE COURT:  "But if you do, you're going to be
17    considered a slacker," or, you know --
18              MR. GERSHMAN:  Yeah.
19              THE COURT:  You're not playing with the program,
20    so to speak.
21              MR. GERSHMAN:  Exactly.  Now, what do we know in
22    this case?  And it's, again, certified -- if it's a
23    certified class, they're going to have to show for everybody
24    that -- I don't know.  That they were reprimanded,
25    discouraged.  They don't even allege it for one person.
```

1    Their own named plaintiff, Miss Hamilton, went outside every

2    day and ate in her car.  She can't show individually that

3    she was discouraged.  So what do they do?

4            They've actually waffled back and forth on

5    subjective versus objective.  But at one point, they were

6    treated to "It's an objective question, Your Honor.  Your

7    Honor sitting here can just determine whether having a

8    security check is discouragement as a matter of law.

9            Now, they cite no case saying that as a matter of

10   law.  Well, what other circumstances, then, I guess, could

11   Your Honor determine as a matter of law are discouragement?

12           What if a -- what if an employee doesn't like to

13   walk downstairs to get to a break room and the ramp is

14   ten feet over there?  Is that discouragement as a matter of

15   law?  They can't just put to it Your Honor and say, as a

16   matter of law, it's discouragement.

17           And to that point, what they try to do is twist --

18   twist this so that it -- they can make it objective, and

19   they try to twist it into saying, "Well, they're subject to

20   control.  They're subject to employee control because, you

21   know, they can't steal."

22           But every employee who's on an employer's campus

23   is subject to rules.  You can't shout at your employees with

24   profanity.  You can't steal on the way out.  That's the one,

25   I guess, at issue here.  You can't speed in the parking lot.

```
 1    You can't hold political rallies during the break on the

 2    campus.

 3            You know, all these rules are for the benefit of

 4    an employer, I gather.  So what?  That doesn't mean you have

 5    to pay them for it.

 6            What would the logical extension of their theory

 7    be in a Walmart retail setting?  A customer comes in -- and

 8    they can't run down the aisles.  That's prohibited.  Do --

 9    are they employed because they're subject to rules that

10    the -- that the employer has put in place?

11            A customer walks into a Denny's and he's got no

12    shirt and no shoes on, he's refused service.  So then he

13    comes back the next day shirt and shoes on, he gets service.

14    Is he employed because he complied with an employer rule?

15    No, of course, not.

16            They have cited no case to prop up this theory,

17    let alone any method factually to prove it as to everybody.

18    Most interesting I thought -- it's all interesting.

19    Particularly interesting was their opposition separate

20    statement, and they offered one additional material fact

21    which cited to individualized declarations of certain people

22    who said, "Well, I was discouraged from leaving."  Okay.

23    How many people is that?  You got a few?  I got a few too.

24    And we submitted it on our motion papers, and it's

25    undisputed other people are not discouraged.
```

```
 1              So, like I said, they keep waffling back and

 2    forth.   The objective theory doesn't work.   The subjective

 3    theory definitely doesn't work on a class-wide basis.

 4              So, Your Honor, what they have insisted is that

 5    the question of whether an individual is dissuaded from

 6    taking a break by a security check presents a dispute of

 7    fact on which a trier of fact must weigh witness testimony

 8    to determine if the checkpoint constituted some kind of

 9    discouragement.

10              They've insisted that you have to ask each person,

11    and this is a disputed fact.   I -- when you evaluate it

12    individualized, yeah.   Yeah, you could put each person up

13    there, and they could be cross-examined, and the jury could

14    draw their own conclusion.

15              But that's not the case they have.   The case

16    they're bringing is a certified class.   How are they going

17    to do it for everybody that can't?   We've shown that it's

18    undisputed.

19              THE COURT:   All right.   Thank you, Counsel.

20              Let me hear from the plaintiff here.   I've got

21    some real heartburn about this because it's not like the

22    evidence is that you've a bunch of Walmart employees

23    standing in, like, a TSA line to get out for lunch every

24    day.   And you've got some employees walking in and out and

25    some not.   I mean, how are you going to establish this on a
```

```
 1   class-wide basis?

 2           MR. YOON:  So the question I have on that is to

 3   clarify.  Are we talking about the 30 minutes when somebody

 4   leaves, or are we talking about every person, their meal

 5   break is -- in our words, they're subject to a Walmart tax

 6   to take a --

 7           THE COURT:  Oh.

 8           MR. YOON:  -- meal break?

 9           THE COURT:  Okay.

10           MR. YOON:  So for the one where the one where the

11   employee clocks 30 minutes and has a period of time where

12   they are subject to security check, I think it's very simple

13   because we have evidence of 20,000 30-minute meals of

14   exactly 30 minutes in length.

15           And when we have the evidence for the security

16   check taking a little less than a minute, that's just to the

17   security check.  We're not talking about that line.

18           That line can be a lot longer.  I am sure at some

19   point today, if you're going to leave in the middle of the

20   shift, you're not going to have a line because you're the --

21   the one guy of hundreds that's just leaving at the end of

22   the day.  But the security check, if you're that one guy

23   leaving or one woman leaving, you have to go through

24   security check, and that takes time.  And I think --

25           THE COURT:  But it's interesting.  You say "that
```

1   takes time."  There's video evidence to suggest that it does

2   not, that you just walk out.

3            MR. YOON:  Well --

4            THE COURT:  Where's the time?

5            MR. YOON:  -- I disagree with that because I --

6   when I see the video evidence, that does take time.  It

7   takes time to take those -- it takes times to be subject to

8   the security check process.  There's a --

9            THE COURT:  And you believe you can establish that

10  on a class-wide basis when you've got other employees that

11  are saying, no, it didn't?

12           MR. YOON:  You know, certain witnesses might have

13  biases; and I think I'm entitled to attack those biases at

14  trial.  But the video's pretty objective.  And the video

15  shows time.  It takes time.  And maybe there's a guy, maybe.

16  I think I'm entitled to see that guy or woman and explain

17  why that's abnormal.

18           But we're going to present evidence that it takes

19  time, and it takes time, generally speaking, and that the

20  jury can determine, yes, it takes time.  And that time might

21  not be a tremendous amount of time, but on that 30-minute

22  meal break, now you have less than 30 minutes because part

23  of that time -- it was not an uninterrupted meal break.

24           You clock out.  Sometime after clocking out, you

25  went to that security check, which was -- which was --

```
 1   you're subjected to the control of the employer, and then
 2   you left and you came back and you had exactly 30 minutes on
 3   the clock.
 4            THE COURT:  Okay.
 5            MR. YOON:  I think for that particular instance,
 6   it's fairly straightforward.  The Defendant can argue about
 7   that, but it -- it takes -- well, all I can say is that in
 8   our belief, and I think in defendant's belief -- well, never
 9   mind.  I won't say that.
10            In our belief it takes time, and we don't believe
11   that's contested because necessarily the process takes time.
12   There's a -- there's -- there's -- and it's in the papers.
13   I'm not going to argue too much about that.  The facts are
14   the facts and it takes -- anyways, on the second issue,
15   whether it's a subjective/objective standard, some disputed
16   evidence, we're disputing their individualized evidence with
17   other individualized evidence; but in terms of our proof,
18   how we're going to prove the case, it's an objective
19   standard.
20            Any particular employee might not be dissuaded by
21   anything.  Some people are just hellbent on leaving, and
22   some people are hellbent on staying.  That's not the law.
23            The law says that the employer must provide -- and
24   I find it interesting that the defendants suggests that
25   leaving the facility is some kind of a privilege.  The
```

```
 1    defendant --
 2              THE COURT:  I don't think they said it's a
 3    privilege.  I mean, they just said you can go -- like the
 4    Clash -- you can stay or go.  I mean, it's up to you.
 5    You're probably all too young to even know what I'm
 6    referring to, but that's another story.
 7              MR. YOON:  Okay.  I missed it.  But I understand
 8    the point.
 9              THE COURT:  Called the Clash.  Should I stay or
10    should I go?
11              MR. YOON:  Oh, I remember that one.
12              THE COURT:  All right.
13              MR. YOON:  So what we're saying is that the
14    defendants' process, which is uniform for every employee, is
15    a discouragement in general sufficient that it obviates or
16    it conflicts with the requirements of California law.
17              And as I said to this Court at hearing for class
18    certification, the evidence of this, which we have presented
19    without live testimony or the actual video because it's hard
20    to do that in an actual filing through the PACER system.
21    But to the trier of fact, we'll see -- they'll see how long
22    this takes.  They'll determine was this process onerous
23    enough -- unpaid process, mind you -- this unpaid onerous
24    enough to mean that they did not -- Defendant did not meet
25    its obligation under California law for providing a off-duty
```

1   meal break.  It's really as clear and simple as that.  We

2   don't have to ask any particular person.  You couldn't ask a

3   particular person.  They can describe why they felt the way

4   they did.  And why they felt the way they did is evidence,

5   not conclusive evidence, but it's evidence.

6          But really the -- the standard is whether the

7   policy and practice of the company, which is uniform, is

8   sufficient to meet their obligations under California law.

9   That, I believe, is a -- a common issue.

10          In terms of a few points I'd like to make, in

11  Tyson -- and this is important.  In Tyson, the Supreme Court

12  describes something very similar to our case.  We have a

13  process -- something -- in Tyson, it was donning and doffing

14  chain mail because there are pictures --

15          MR. GERSHMAN:  Donning -- donning, d-o-n-n-i-n-g,

16  and doffing, d-o-f-f-i-n-g.  Taking on and -- putting on and

17  taking off clothing, uniform.

18          MR. YOON:  So in Tyson, the Supreme Court

19  addressed the facts of putting in -- on clothes and taking

20  off clothes and how much time that takes.  Some people put

21  their clothes on faster than other people.  Some people take

22  off their clothes off faster than other people.

23          THE COURT:  Right.  But let me just stop you.  I

24  mean, that strikes me as completely different.  I mean,

25  number one, I mean, are you suggesting that the Walmart

```
 1   employee's got to -- the time of putting on and off their

 2   blue vest?  Is that what you're talking about?  Because

 3   that --

 4           MR. YOON:  When I --

 5           THE COURT:  This is just walking in and out of a

 6   security checkpoint.  Now, I get it if you're saying -- I

 7   mean, if your point is that some days the line is long, some

 8   days they have to take off more phones or keys when they go

 9   through the security checkpoint.  I mean --

10           MR. YOON:  No.

11           THE COURT:  -- I'm not sure I'm following you.

12           MR. YOON:  What I'm saying is that the

13   defendant -- in terms of decertification, Walmart's

14   suggesting that every single person has a different time

15   that it takes; thus, it's individualized.

16           And my point is, every single person that works

17   for that Tyson plant has a different amount of time it takes

18   to put their clothes on and take them off.

19           THE COURT:  And your point is just that the fact

20   that it takes time, period, is enough to -- a commonality

21   for the class.

22           MR. YOON:  Not -- not completely.  What I'm saying

23   is that the trier of fact can look at the facts, look at the

24   putting on of clothes, look at -- or hear the testimony of

25   an expert in Tyson, watch the video in our case, and
```

1    determine is this process basically the same for everybody?

2          And if they do determine that it's the -- or if

3    we've sufficiently shown that it takes about the same time

4    or reasonably amount of same time and this -- it's the

5    defendant's job to prove that it's -- that kind of

6    assumption or a conclusion by a trier of fact is just wrong.

7    There's a specific language in Tyson that describes that

8    burden shift, but -- and we've cited the papers.

9          But what I'm saying is that the defendant

10   maintains video of a lot of the entire facility because it's

11   a security issue, and they gave us very limited amounts of

12   video.

13         The consistency here is there are specific areas

14   where the employees are funneled to go.  The have to go

15   there.

16         If the defendants say they don't, well, it was

17   their video.  They don't have that video because they chose

18   not to keep it.  They chose to destroy it.  How you

19   characterize it, I understand there's is different ways.

20   But whether -- whatever it -- however you characterize it,

21   the video's no longer there.

22         If the -- in Tyson -- the reason I'm saying this,

23   in Tyson it says -- or the Court says, if a defendant

24   doesn't have the evidence at the time, then the rest of it

25   follows, the cases.

```
 1              And that's how it's relevant in our case.  The
 2   defendant didn't record these times.  If the defendant
 3   doesn't record these times, they shouldn't be able to blame
 4   me for imperfect evidence.
 5              It's not perfect evidence.  Perfect evidence would
 6   have been if they kept a time clock outside the security
 7   check.  If we had perfect evidence, it would be a totally
 8   different case.
 9              THE COURT:  Okay.  All right.  I think I get your
10   point.  I don't have any more questions on the variety of
11   these motions other than, I guess -- well, less about the
12   motions, but I am curious.  From the plaintiffs'
13   perspective, what is it that you're -- that you want in this
14   case?
15              I mean, let's just be -- I'm just going to give
16   you my humble opinion, for what little it's worth.  You're
17   talking about employees that maybe at the most a minute, two
18   minutes, maybe five at most, added on -- assuming that every
19   day at lunchtime it's like a TSA line walking out of the
20   store.  So what is it exactly that you're asking for
21   ultimately?
22              MR. YOON:  Well --
23              THE COURT:  You want them to be compensated for
24   that minute?
25              MR. YOON:  Ultimately -- well, this is the way I
```

```
 1    look at it.  This is more a philosophical question, I think.
 2              THE COURT:  Okay.
 3              MR. YOON:  But if an employer has an opportunity
 4    to -- to control an employee and chooses not to pay, they
 5    really need to be held to that, that they need to pay.
 6              THE COURT:  Okay.  Okay.  Fine.  Let's assume I
 7    agree with you on that philosophical point.  What is it that
 8    you're asking for?  Are you asking for all members of the
 9    class to be compensated for that time period that it took to
10    exit the facility?
11              MR. YOON:  That is one of the elements of damages,
12    yes.
13              THE COURT:  Okay.  What else?
14              MR. YOON:  Associated with that are penalties
15    because California shares the public policy that time worked
16    needs to be paid.
17              THE COURT:  Okay.
18              MR. YOON:  And we haven't talked about it at all
19    today.  There's no motion to decertify the subclass on the
20    AWS.  But the AWS is the bigger claim.  We haven't talked
21    about it, but the defendant doesn't pay for hours 8:00 to
22    12:00 for that subclass.
23              THE COURT:  But that's not here.  That's not here.
24    Okay.
25              MR. YOON:  Well, there's a summary -- summary
```

```
 1   adjudication on that.
 2            THE COURT:  All right.
 3            MR. YOON:  We haven't -- it sounds like the
 4   Court's fine with understanding our position.
 5            THE COURT:  Yes.
 6            MR. YOON:  So that's -- well, it's the same
 7   people.  There's a duty to bring the claims you have for the
 8   people --
 9            THE COURT:  Okay.
10            MR. YOON:  -- you have.  So they are our class
11   members.  They -- we know that they're not being paid for
12   this time.  We know they're not being paid for the eight to
13   ten hours.  I believe civil procedure requires us to bring
14   this claim as well.
15            THE COURT:  Okay.  All right.  All right.  Well,
16   thank you, Counsel.
17            Mr. Kemble, is there anything else you wish to
18   raise before we wrap this up?  Because we've now been going
19   at it close to an hour.
20            MR. KEMPLE:  I will be very brief, Your Honor.
21            On the interim -- on the issue of meal
22   interruption, the point was, well, there's a dispute if it
23   takes any time, and, if so, if it takes -- how long it
24   takes.  And they said, "Well, I can explore bias and
25   cross-examine."  That's not a class action, point one.
```

1          Point two, even if they only took 30 minutes in

2     the time clock, that doesn't answer the question.  They

3     could have taken 30 minutes outside the security checkpoint

4     but chose not to.

5          And, by the way, I think it's 40,000 people did.

6     So that 30-minute mantra doesn't answer the question whether

7     or not they were able to take the full 30-minute break, if

8     they wanted to, the why question.

9          On the dissuasion point, Your Honor, two things.

10    They -- they are arguing from a class proposition that all

11    they have to do and you ought automatically certify a class

12    is that they can point to anything between the employee and

13    the desired exterior meal period.  A long elevator ride.  A

14    big campus.  You have to log off your computer before you

15    leave to -- for work.

16         That is a question of dissuasion that can be

17    certified for class treatment with no evidence.  Even they

18    don't buy that proposition because, when we moved for

19    summary judgment on the dissuasion point, their response

20    was, "No, there's a fact issue.  You've got to look at

21    whether or not each person is dissuaded.

22         And, by the way, the case law bears that out very,

23    very clearly.  So we don't think that can be possibly be

24    appropriately certified.

25         On the video issue, you heard him say, "Well, in

 1    terms of how long it takes to get through the -- through the

 2    security check, we can just look at video to answer that."

 3         Their own expert has stated -- I don't know if

 4    it's under oath, but he signed is name to it -- "I can't

 5    possibly even look at the video they've given me.  There

 6    aren't enough hours in the year."  It's absurd.

 7         So we believe the class, respectfully, should be

 8    decertified, Your Honor, because they simply haven't put

 9    forward the trial plan they've been required to do on

10    multiple times, multiple deadlines.  Even today, it's purely

11    aspirational.

12         Thank you, Your Honor.

13         THE COURT:  All right, Counsel.  Thank you both

14    for the argument.  You've given me a lot to think about

15    here.  I'm going to take the matter under submission.  It's

16    unlikely that I'm going to get an order out in -- in the

17    next few days, even with the long weekend.  So don't

18    anticipate an order coming out until at least the end of

19    next week, possibly the following week, if that.

20         All right.  Thank you all for coming and have a

21    good weekend.

22         MR. KEMPLE:  Thank you, Your Honor.

23         MR. YOON:  Thank you, Your Honor.

24         THE CLERK:  All rise.  This Court is in recess.

25         (Proceedings concluded at 1:04 P.M.)

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  January 30, 2019.




_/S/ CHIA MEI JUI_ _____

Chia Mei Jui, CSR No. 3287

MR. CARLSON: [1]
3/13
MR. CLEAVER: [1]
3/9
MR. GERSHMAN: [6]
39/3 39/19 41/4 41/17
41/20 49/14
MR. KEMPLE: [17]
3/18 12/16 12/18
12/23 17/20 18/3
23/12 23/15 23/19
32/12 35/12 36/1 36/3
38/12 38/16 54/19
56/21
MR. MANKIN: [1]
3/11
MR. YOON: [54]   3/6
6/9 6/12 6/15 7/22
9/16 10/13 10/16 11/1
11/13 11/15 11/21
11/24 19/1 19/4 21/9
21/24 22/6 23/4 23/9
25/6 26/21 28/20
29/19 29/24 30/17
30/25 31/19 45/1 45/7
47/4 48/6 48/10 48/12
49/17 50/3 50/9 50/11
50/21 52/21 52/24
53/2 53/10 53/13
53/17 53/24 54/2 54/5
54/9 56/22
MS. YASUDA: [1]   3/7
THE CLERK: [2]   3/3
56/23
THE COURT: [73]

0

0988 [1]   2/6

1

1,040 [1]   41/9
11:55 [2]   1/19 3/2
12:00 for [1]   53/22
14 [1]   35/23
1415 [1]   3/4
1444 [1]   2/15
15th [1]   15/14
17-1415 [1]   3/4
17-1415-AB [1]   1/9
17th [1]   13/12
18 [2]   1/18 3/1
1840 [1]   2/19
18TH [2]   2/9 13/23
1900 [1]   2/20
1:04 [1]   56/25

2

20 [1]   17/9
20,000 [1]   45/13
2018 [4]   12/24 12/25
13/1 13/6
2019 [3]   1/18 3/1
57/10
21 [5]   12/25 13/12
14/15 15/6 15/9
213-612-0988 [1]   2/6

21st [1]   32/20
2200 [1]   2/5
22nd [1]   13/6
24 [1]   13/1
24th [1]   12/24
25 [1]   37/23
26 [3]   5/9 14/17 15/25
27 [1]   13/11
28 [2]   37/2 57/4

3

30 [14]   30/23 32/8
36/25 37/14 38/3 38/5
45/3 45/11 45/14
46/22 47/2 55/1 55/3
57/10
30-minute [11]   30/13
31/3 31/4 31/6 31/8
39/10 39/15 45/13
46/21 55/6 55/7
310-388-7289 [1]   2/10
310-586-7776 [1]   2/21
3287 [2]   1/23 57/15
35 [1]   37/11
350 [2]   1/24 28/17
37 [5]   5/8 14/17 15/7
17/1 18/20

4

40,000 [1]   55/5
40-minute [1]   37/11
4311 [1]   1/24
4590 [1]   2/14

5

50 [2]   1/12 22/19
50/50 [1]   22/19
5670 [1]   2/9

7

7-3 [1]   32/23
70 [2]   13/7 22/1
7289 [1]   2/10
753 [1]   57/3
7776 [1]   2/21

8

8:00 to [1]   53/21
8th [2]   18/17 18/17

9

90012 [1]   1/24
90017 [1]   2/5
90036 [1]   2/10
90067 [1]   2/20
92501 [1]   2/14
951-320-1444 [1]   2/15

A

AB [1]   1/9
ability [3]   11/12 12/2
26/25
able [5]   14/19 17/14
34/6 52/3 55/7
abnormal [1]   46/17
absence [1]   37/5
absent [2]   14/21 38/9
absolute [1]   34/5
absolutely [1]   34/3

abstract [1]   34/10
absurd [1]   56/6
accompanied [1]   18/5
According [1]   36/9
accurate [1]   14/9
acknowledge [1]   21/8
act [2]   14/11 17/10
action [3]   28/3 35/11
35/15 35/22 54/25
activities [1]   24/21
activity [2]   34/13
34/17
actual [4]   33/13 36/21
48/19 48/20
added [1]   52/18
addition [1]   30/13
additional [6]   7/11
13/10 15/13 20/5
21/21 43/20
address [1]   41/8
addressed [1]   49/19
adjudication [2]   32/10
54/1
admissible [1]   15/5
admit [1]   18/22
admits [1]   16/22
admitted [1]   17/4
advance [1]   21/13
advanced [1]   21/18
affirmative [1]   41/3
after [10]   6/16 7/2
12/7 12/8 12/9 12/25
17/6 27/7 33/4 46/24
afternoon [8]   3/8 3/10
3/12 3/14 3/17 3/24
23/22 38/21
again [12]   11/9 15/12
17/7 24/4 24/23 24/23
24/25 26/19 35/3
39/17 40/22 41/22
ago [4]   4/14 18/5
18/19 19/22
agree [1]   53/7
agreed [5]   11/5 12/4
12/5 16/16 16/20
agreeing [1]   20/25
Aguilar [1]   4/11
ahead [3]   3/18 36/3
aisles [1]   43/8
allege [1]   41/25
allow [2]   12/5 17/11
allowed [3]   11/6 12/10
27/23
ALLSTATE [1]   2/14
alone [1]   43/17
along [1]   12/6
already [6]   10/8 10/10
15/23 17/23 27/8
28/10
always [1]   24/12
ALYSSA [1]   1/6
amount [8]   22/8 28/6
32/15 35/16 35/18
46/21 50/17 51/4
amounts [1]   51/11
ample [1]   14/3
analysis [3]   14/24
14/25 17/20

analyze [1]   21/2
analyzed [1]   21/2
ANDRÉ [1]   1/3
ANGELES [6]   1/20
1/24 2/5 2/10 2/20 3/1
angles [1]   9/2
animates [1]   38/7
anonymize [1]   27/1
another [5]   7/1 28/8
31/18 38/16 48/6
answer [3]   55/2 55/6
56/2
answered [2]   23/8
38/9
answers [1]   37/24
anticipate [1]   56/18
anyways [2]   20/2
47/14
apart [2]   33/23 34/13
APC [1]   2/3
appear [1]   6/1
appearances [2]   2/1
3/6
application [1]   14/6
appropriately [2]   24/7
55/24
approximately [1]
22/3
April [2]   13/23 26/20
area [3]   25/17 25/18
26/8
area and [1]   25/17
areas [1]   51/13
aren't [2]   26/6 56/6
argue [6]   24/7 28/6
30/10 39/14 47/6
47/13
argues [1]   5/12
arguing [3]   10/23 24/9
55/10
argument [5]   20/12
26/13 32/23 36/25
56/14
arguments [2]   10/22
13/25
around [1]   8/5
arrived [2]   24/11
32/17
articulated [3]   34/15
37/22 39/5
artificial [1]   34/10
as a [1]   35/24
asked [4]   18/15 21/22
32/13 33/1
asking [4]   20/5 52/20
53/8 53/8
aspirational [2]   33/9
56/11
asserts [1]   24/19
associate [2]   4/12
39/9
Associated [1]   53/14
associates [3]   1/11
39/1 39/2
assume [2]   20/11
53/6
assumed [2]   20/21
22/16

assuming [1]   52/18
assumption [4]   8/16
10/4 20/10 51/6
ate [1]   42/2
attack [1]   46/13
August [3]   4/20 13/11
13/12
August 17th [1]   13/12
August 27 [1]   13/11
Augustine [1]   4/13
authorized [2]   37/6
37/7
automatic [1]   18/21
automatically [1]
55/11
available [12]   8/7 8/15
11/1 11/12 11/20 11/20
16/2 16/3 16/5 17/16
17/19 22/4
average [3]   5/21 28/6
35/19
award [1]   35/21
away [1]   40/10
AWS [2]   53/20 53/20
axiomatic [1]   37/3

B

B-o-n-i-n [1]   5/7
back [23]   5/16 5/22
7/19 8/14 9/1 9/4 9/5
9/5 9/8 9/9 9/9 14/3
15/17 15/19 28/14
31/22 32/2 32/8 34/1
42/4 43/13 44/1 47/2
backing [1]   33/7
bad [1]   40/10
barred [1]   5/8
barring [1]   5/8
base [1]   14/18
based [3]   10/22 12/12
26/9
basically [6]   8/6 11/9
24/20 27/11 29/20
51/1
basis [10]   6/23 9/7
13/24 17/14 17/24
27/25 32/15 44/3 45/1
46/10
bear [1]   14/8
bears [1]   55/22
become [1]   6/5
becomes [3]   6/21
26/15 37/15
BEER [2]   2/18 3/21
before [14]   4/3 4/5
9/22 10/12 12/25 16/4
17/4 18/2 22/6 22/10
23/22 33/11 54/18
55/14
begin [1]   4/4
beginning [2]   19/9
28/9
behalf [6]   1/5 1/7 3/9
3/11 3/15 3/19
behind [2]   3/22 15/2
belief [2]   25/11 47/8
47/8 47/10
believe [14]   11/3

**B**

believe... **[13]** 19/11 26/13 27/21 28/12 28/17 29/5 35/20 39/4 46/9 47/10 49/9 54/13 56/7
believed **[1]** 20/14
benefit **[2]** 26/10 43/3
better **[2]** 22/19 25/18
between **[7]** 7/19 9/8 13/19 16/20 25/5 32/16 55/12
beyond **[1]** 24/20
bias **[1]** 54/24
biases **[2]** 46/13 46/13
big **[2]** 25/2 55/14
bigger **[1]** 53/20
BIROTTE **[1]** 1/3
black **[1]** 27/1
blame **[1]** 52/3
blew **[1]** 35/14
blue **[1]** 50/2
body **[2]** 37/21 38/8
Bonin **[13]** 5/19 11/3 11/14 11/15 11/16 11/16 11/18 11/22 11/23 11/24 12/9 25/22 26/10
Bonin's **[4]** 5/7 5/25 27/6 27/19
both **[4]** 4/7 11/20 14/15 56/13
BOULEVARD **[2]** 2/4 2/9
brains **[1]** 3/22
break **[27]** 23/25 30/9 32/2 33/25 36/24 37/3 37/5 37/6 37/18 38/8 38/24 39/10 39/15 40/9 40/14 41/1 41/3 41/15 42/13 43/1 44/6 45/5 45/8 46/22 46/23 49/1 55/7
breaks **[7]** 30/7 30/23 31/1 37/9 37/11 39/1 39/3
BRIAN **[2]** 1/13 3/13
Brian Mankin **[1]** 3/13
brief **[3]** 23/13 27/19 54/20
briefed **[1]** 18/1
briefing **[1]** 33/4
briefly **[2]** 19/4 36/24
bring **[2]** 54/7 54/13
bringing **[1]** 44/16
Brinker **[6]** 39/5 40/23 40/25 41/5 41/7 41/9
BRYAN **[2]** 2/19 3/22
Bryan Patton **[1]** 3/22
building **[3]** 33/17 33/19 37/14
bunch **[1]** 44/22
burden **[4]** 8/23 8/24 27/24 51/8
burdensome **[1]** 8/24
buy **[1]** 55/18

**C**

calculate **[2]** 5/18 5/21
calendar **[1]** 23/22
CALIFORNIA **[14]** 1/2 1/20 1/24 2/5 2/10 2/14 2/20 3/1 34/21 41/2 48/16 48/25 49/8 53/15
California Supreme **[1]** 34/21
Called **[1]** 48/9
Calling **[1]** 3/4
came **[6]** 13/15 13/23 17/5 18/15 32/25 47/2
camera **[5]** 7/3 7/7 7/12 7/14 9/2
cameras **[8]** 7/5 7/8 7/8 7/9 7/11 9/3 9/3 22/3
campus **[4]** 34/20 42/22 43/2 55/14
capital **[1]** 17/22
car **[2]** 40/12 42/2
care **[1]** 7/9
CARLSON **[2]** 2/13 3/15
cases **[1]** 51/25
cause **[1]** 17/22
CCRR **[1]** 1/23
CENTRAL **[2]** 1/2 20/19
Central District **[1]** 20/19
CENTURY **[1]** 2/19
certain **[4]** 9/2 9/3 43/21 46/12
certainly **[1]** 34/15
CERTIFICATE **[1]** 57/1
certification **[5]** 8/10 8/13 33/25 34/8 48/18
certified **[9]** 4/21 34/11 39/21 40/16 41/22 41/23 44/16 55/17 55/24
certify **[3]** 18/6 55/11 57/3
cetera **[3]** 33/22 35/2 35/2
chain **[1]** 49/14
chance **[2]** 10/8 22/19
change **[4]** 17/20 17/23 35/21 38/2
changed **[1]** 8/5
characterize **[2]** 51/19 51/20
check **[33]** 19/16 25/14 25/17 25/18 25/19 26/8 28/13 28/24 28/25 29/2 30/15 30/17 30/18 30/19 30/21 31/16 31/18 31/23 32/1 32/3 39/9 39/13 42/8 44/6 45/12 45/16 45/17 45/22 45/24 46/8 46/25 52/7 56/2

checkpoint **[9]** 23/25 24/9 24/12 36/6 36/8 44/8 50/6 50/9 55/3
CHELSEA **[2]** 1/5 3/4
CHIA **[1]** 1/23 57/14 57/15
Chino **[1]** 40/6
choose **[1]** 37/16
chooses **[1]** 53/4
chose **[4]** 37/9 51/17 51/18 55/4
chronology **[1]** 12/20
circuit **[3]** 17/1 20/18 35/6
circumstances **[1]** 42/10
cite **[1]** 42/9
cited **[3]** 43/16 43/21 51/8
cites **[2]** 19/22 37/23
civil **[1]** 3/4 54/13
claim **[7]** 19/16 36/24 38/24 53/20 54/14
claiming **[1]** 14/6
claims **[1]** 54/7
clarify **[1]** 45/3
Clash **[2]** 48/4 48/9
class **[33]** 18/6 21/13 21/16 23/23 27/20 28/3 28/4 29/2 29/4 31/1 32/15 33/25 34/7 34/8 34/11 35/22 35/24 39/22 39/24 41/23 44/3 44/16 45/1 46/10 48/17 50/21 53/9 54/10 54/25 55/10 55/11 55/17 56/7
class's **[1]** 21/18
class-wide **[4]** 32/15 44/3 45/1 46/10
clear **[4]** 15/7 17/1 34/22 49/1
clearly **[3]** 19/17 37/23 55/23
cleave **[1]** 34/25
CLEAVER **[3]** 2/8 2/8 3/11
Clemmons **[1]** 27/21
clerk **[1]** 4/6
clerks **[1]** 4/14
clock **[11]** 25/21 28/12 28/13 31/5 33/16 33/16 35/19 46/24 47/3 52/6 55/2
clocked **[3]** 24/11 32/16 33/15
clocking **[1]** 46/24
clocks **[4]** 26/8 28/9 33/16 45/11
close **[1]** 54/19
closed **[1]** 35/6
clothes **[6]** 49/19 49/20 49/21 49/22 50/18 50/24
clothing **[1]** 49/17
cmjui.csr **[1]** 1/25
Code **[1]** 57/4

comes **[4]** 14/5 15/10 43/7 43/13
coming **[2]** 56/18 56/20
common **[4]** 33/10 34/9 34/14 49/9
commonality **[1]** 50/20
company **[1]** 49/7
compel **[6]** 6/20 6/22 9/11 17/6 19/19
compensated **[2]** 52/23 53/9
complete **[1]** 5/13
completely **[4]** 14/21 15/6 49/24 50/22
complicated **[4]** 25/9 25/10 27/16 27/17
complicating **[1]** 25/10
complied **[1]** 43/14
comply **[7]** 5/9 14/1 14/4 14/13 15/24 16/8 17/3
computer **[1]** 55/14
concern **[1]** 11/11
concerns **[1]** 24/23
conclude **[1]** 39/8
concluded **[1]** 56/25
conclusion **[2]** 44/14 51/6
conclusive **[1]** 49/5
conduct **[1]** 5/20
confer **[1]** 20/19
Conference **[1]** 57/8
confers **[3]** 8/21 10/22 20/20
conflicts **[1]** 48/16
conformance **[1]** 57/7
considered **[1]** 41/17
consistency **[1]** 51/13
consistent **[3]** 12/22 27/22 29/23
constant **[1]** 9/6
constituted **[2]** 24/12 44/8
constitutes **[1]** 24/14
consuming **[1]** 29/11
contain **[1]** 5/13
contains **[1]** 6/3
contested **[1]** 47/11
context **[1]** 41/11
continued **[1]** 13/25
continuing **[1]** 6/23
control **[5]** 32/9 42/20 42/20 47/1 53/4
coordinating **[1]** 3/21
CORPORATION **[2]** 1/11 1/12
correctly **[5]** 5/5 18/16 24/16 30/11 39/11
costs **[2]** 21/13 21/18
counsel **[16]** 2/1 3/6 3/21 8/2 8/5 18/23 20/1 23/11 31/10 32/14 32/20 36/25 38/16 44/19 54/16 56/13

counsel's **[1]** 17/18
counted **[1]** 13/20
counter **[1]** 30/2
counter-designation **[1]** 30/2
counteract **[1]** 27/3
counteracting **[1]** 27/4
Couple **[1]** 4/3
course **[5]** 17/21 37/16 38/13 40/19 43/15
Court's **[5]** 6/1 21/1 32/22 38/18 54/4
cover **[1]** 36/4
coworkers **[2]** 26/14 26/15
create **[1]** 27/3
creating **[1]** 13/3
cross **[3]** 39/17 44/13 54/25
cross-examine **[1]** 54/25
cross-examined **[1]** 44/13
CSR **[2]** 1/23 57/15
curious **[2]** 7/17 52/12
customer **[2]** 43/7 43/11
CV **[1]** 1/9

**D**

d-o-f-f-i-n-g **[1]** 49/16
d-o-n-n-i-n-g **[1]** 49/15
daily **[1]** 9/7
damages **[4]** 5/18 25/2 35/21 53/11
data **[3]** 21/20 22/22 25/7
date **[8]** 10/19 12/25 16/9 16/9 18/9 23/2 26/20 57/10
dates **[8]** 10/18 11/3 11/3 11/4 11/4 16/3 16/4 21/2
day **[14]** 19/12 21/21 22/10 22/18 22/20 24/19 35/4 35/17 40/10 42/2 43/13 44/24 45/22 52/19
day's **[1]** 22/11
days **[23]** 10/2 10/6 10/7 10/7 10/9 10/9 10/12 10/23 12/24 13/7 13/7 17/4 21/21 22/1 22/13 22/14 22/15 22/17 22/25 31/8 50/7 50/8 56/17
de **[1]** 36/14
de minimis **[1]** 36/14
deadline **[6]** 13/11 13/25 14/2 16/8 17/17 32/21
deadlines **[4]** 17/21 18/16 32/23 56/10
December **[1]** 16/19
decertification **[8]** 4/24 18/12 18/13 19/1

## D

decertification... [4] 23/15 23/23 24/5 50/13
decertified [2] 35/24 56/8
decertify [3] 16/8 23/24 53/19
decided [1] 19/12
decision [1] 37/4
declarant [1] 4/10
declaration [4] 4/10 11/6 25/25 27/9
declarations [1] 43/21
deemed [2] 32/22 33/2
defendant [18] 12/1 13/9 19/9 19/21 20/11 27/11 27/22 30/1 40/20 47/6 48/1 48/24 50/13 51/9 51/23 52/2 52/2 53/21
defendant's [5] 12/7 19/7 27/24 47/8 51/5
defendants [9] 1/13 2/16 9/1 12/4 13/4 20/1 26/13 47/24 51/16
defendants' [2] 11/11 48/14
defense [4] 20/14 28/15 31/10 32/12
deficient [1] 18/22
define [1] 25/13
definitely [1] 44/3
delay [1] 9/19
demonstrate [4] 15/1 15/4 32/14 34/25
demonstrating [1] 36/13
Denny's [1] 43/11
denominator [1] 34/10
deny [3] 5/23 24/5 24/24
denying [1] 33/25
depend [1] 12/9
depending [1] 25/3
depose [6] 11/7 11/8 11/9 11/10 11/12 17/15
deposition [4] 11/1 11/20 16/2 16/4
describe [1] 49/3
describes [2] 49/12 51/7
designation [1] 30/2
desired [1] 55/13
destroy [2] 19/23 51/18
destroyed [2] 6/20 10/12
destroying [3] 8/3 20/1 35/6
detailed [2] 13/2 26/23
determine [18] 9/22 9/23 25/8 26/9 27/12
28/1 28/2 28/22 29/8 36/16 36/16 42/7 42/11 44/8 46/20 48/22 51/1 51/2
determined [1] 36/22
dictates [1] 9/20
different [11] 19/6 25/7 25/21 29/11 34/2 40/24 49/24 50/14 50/17 51/19 52/8
difficult [2] 23/6 26/2
directly [2] 28/11 41/9
disagree [1] 46/5
disclosed [1] 33/12
disclosure [2] 13/24 18/9
disclosures [1] 13/8
discouraged [6] 39/23 40/3 41/25 42/3 43/22 43/25
discouragement [8] 38/23 41/10 42/8 42/11 42/14 42/16 44/9 48/15
discourages [1] 39/9
discovery [10] 10/18 13/8 13/13 13/24 14/2 19/19 19/20 20/23 20/24 21/4
discuss [1] 4/20
discussion [2] 13/4 13/5
discussions [1] 9/11
dispositive [1] 12/2
dispute [6] 6/17 19/19 19/20 24/20 44/6 54/22
disputed [2] 44/11 47/15
disputing [1] 47/16
dissuaded [3] 44/5 47/20 55/21
dissuasion [3] 55/9 55/16 55/19
distance [8] 25/5 25/23 25/24 26/9 26/11 33/14 33/20 33/23
distances [3] 27/10 27/11 34/14
distill [1] 34/5
DISTRICT [4] 1/1 1/2 1/3 20/19
DIVISION [1] 1/2
doctors [1] 11/1
documents [2] 19/15 20/22
doffing [2] 49/13 49/16
donning [3] 49/13 49/15 49/15
door [1] 26/15
dot [1] 39/17
down [3] 34/5 35/12 43/8
downstairs [1] 42/13
dozen [1] 26/7
Dr [1] 11/22

Dr. [21] 5/6 5/7 5/19 5/25 5/25 6/2 11/4 11/15 11/16 11/16 11/18 11/23 11/24 12/9 21/8 25/22 26/10 27/6 27/19 28/10 29/13
Dr. Bonin [10] 5/19 11/15 11/16 11/16 11/18 11/23 11/24 12/9 25/22 26/10
Dr. Bonin's [4] 5/7 5/25 27/6 27/19
Dr. Kriegler [4] 5/25 11/4 21/8 29/13
Dr. Kriegler's [3] 5/6 6/2 28/10
draw [2] 9/25 44/14
DRIVE [1] 2/14
due [5] 10/13 13/15 13/18 17/5 32/19
during [2] 24/18 24/21 30/12 30/21 35/1 43/1 41/6 48/25 54/7
duty [9] 21/12 21/12 26/13 33/9 33/11 33/12 33/20 34/22 35/8 35/14 36/14 38/1 40/17 41/25 48/5 55/1 55/17 56/5 56/10 56/17

## E

e-mails [1] 7/18
each [8] 4/4 24/6 24/18 32/15 32/15 44/10 44/12 55/21
earlier [6] 7/20 20/14 21/12 21/22 29/3 32/24
early [1] 7/24
easier [2] 31/5 37/1
EAST [1] 2/19
easy [1] 28/25
eat [5] 37/18 37/19 40/5 40/7 40/9
eats [1] 39/14
eight [1] 54/12
either [1] 10/25
elements [1] 53/11
elevator [1] 55/13
eliminating [1] 34/8
employed [2] 43/9 43/14
employee [14] 30/20 31/15 31/21 35/15 35/18 41/14 42/12 42/20 42/22 45/11 47/20 48/14 53/4 55/12
employee's [1] 50/1
employees [11] 5/22 24/20 30/11 41/1 41/3 42/23 44/22 44/24 46/10 51/14 52/17
employees' [1] 27/1
employer [9] 32/9 34/20 41/14 43/4 47/21 47/23 53/3
employer's [1] 42/22
employers [1] 40/25
employment [2] 35/11

## 35/15

end [6] 19/12 20/8 22/20 25/15 45/21 56/18
enough [5] 12/8 48/23 48/24 50/20 56/6
ensure [2] 38/25 41/6
entered [1] 9/10
entire [1] 51/10
entirely [2] 33/9 37/5
entitled [3] 46/13 46/16 57/6
entrance [1] 31/18
establish [3] 39/23 44/25 46/9
estimate [1] 28/7
estimated [1] 27/14
estimations [3] 27/23 27/24 27/25
evaluate [1] 44/11
even [26] 9/7 10/19 15/3 15/16 15/19 16/21 17/4 26/16 27/16 33/9 33/11 33/12 33/20 34/22 35/8 35/14 36/14 38/1 40/17 41/25 48/5 55/1 55/17 56/5 56/10 56/17
events [1] 36/18
eventually [1] 15/11
everybody [9] 28/4 35/24 39/23 39/24 40/18 41/23 43/17 44/17 51/1
evidence [34] 7/25 13/4 19/14 19/22 19/23 20/2 27/3 28/13 28/17 28/21 28/22 29/7 29/9 35/6 39/7 44/22 45/13 45/15 46/1 46/6 46/18 47/16 47/16 47/17 48/18 49/4 49/5 49/5 51/24 52/4 52/5 52/5 52/7 55/17
ex [3] 13/24 14/6 14/10
ex parte [3] 13/24 14/6 14/10
exact [1] 10/17
exactly [7] 7/6 13/2 19/13 41/21 45/14 47/2 52/20
examine [1] 54/25
examined [1] 44/13
examples [1] 41/12
exclude [1] 26/12
excluded [3] 15/8 17/2 27/2
exclusion [1] 5/24
Exclusive [1] 7/14
excuse [1] 15/21
executing [1] 18/22
Exhibit 8 [1] 13/1
Exhibit 9 [1] 13/9
exhibits [1] 14/23
exist [9] 6/21 6/22

6/24 7/12 7/16 7/9 9/15 9/19 20/12 20/22
existed [8] 8/17 10/24 20/9
existence [2] 8/10 38/20
exists [2] 7/2 20/16
exit [3] 33/17 33/18 53/10
expect [4] 14/18 14/19 20/8 27/6
expected [2] 10/21 35/16
expects [1] 20/19
expensive [1] 22/17
expert [27] 5/7 5/14 6/4 9/18 13/11 14/2 14/7 14/8 15/14 15/19 16/3 16/4 16/11 16/21 17/17 18/22 21/16 22/8 25/23 25/25 32/19 33/7 33/21 36/6 37/10 50/25 50/25 56/3
experts [17] 5/15 11/12 13/21 14/1 16/2 16/3 17/2 17/8 17/13 17/15 18/9 18/11 21/2 25/4 25/5 32/18 33/2
explain [1] 46/16
explaining [1] 13/2
explore [1] 54/24
express [2] 5/15 20/15
expressly [1] 22/17
extension [2] 18/16 43/6
extent [4] 6/2 6/13 8/7 8/15
exterior [1] 55/13
extremely [1] 10/20

## F

faces [1] 27/2
facie [1] 40/17
facility [14] 5/20 7/5 8/20 25/21 26/5 30/12 30/22 30/24 31/2 31/20 39/12 47/25 51/10 53/10
fact [20] 25/8 27/13 28/1 28/22 29/8 32/4 32/25 34/9 37/15 37/25 38/2 43/20 44/7 44/7 44/11 48/21 50/19 50/23 51/6 55/20
factor [1] 28/8
factors [1] 25/10
facts [7] 12/22 14/23 40/2 47/13 47/14 49/19 50/23
factually [1] 43/17
fail [1] 15/24
failed [3] 14/11 15/6 17/2
failure [3] 5/9 5/11 41/11
fair [1] 30/4

**F**

**fairly [7]** 6/21 7/24 23/8 26/23 27/7 29/23 47/6
**faith [3]** 20/20 20/21 20/21
**far [8]** 7/7 7/15 16/22 21/3 21/4 21/5 36/6 40/10
**faster [2]** 49/21 49/22
**fault [1]** 20/13
**FCRR [1]** 1/23
**FEDERAL [1]** 1/23
**fee [1]** 21/18
**feeds [1]** 7/12
**feet [1]** 42/14
**felt [2]** 49/3 49/4
**FERNANDEZ [1]** 1/2
**few [11]** 7/11 27/15 27/15 29/2 29/20 29/21 29/21 43/23 43/23 49/10 56/17
**fighting [2]** 9/15 20/15
**figure [2]** 26/21 34/19
**filed [7]** 6/19 9/10 9/14 14/14 17/6 18/11 18/13
**files [1]** 15/15
**filing [5]** 6/17 6/18 16/8 20/13 48/20
**fill [1]** 37/23
**find [2]** 10/11 47/24
**fine [2]** 53/6 54/4
**firm [1]** 24/24
**first [11]** 1/24 4/13 6/17 13/13 15/11 18/6 19/18 21/22 25/20 29/1 33/13
**five [6]** 7/13 22/3 36/7 36/8 36/9 52/18
**floor [2]** 2/9 4/6
**focus [4]** 8/25 24/25 31/11 31/13
**focused [3]** 22/24 30/22 30/23
**focusing [1]** 31/4
**follow [3]** 17/1 32/22 33/6
**following [2]** 50/11 56/19
**follows [1]** 51/25
**footage [2]** 7/15 9/4
**foregoing [1]** 57/4
**Forgive [1]** 35/13
**form [2]** 8/18 8/18
**formal [2]** 20/7 41/14
**format [1]** 57/7
**forth [10]** 5/22 7/19 9/5 9/6 9/8 9/9 9/9 34/1 42/4 44/2
**forward [5]** 4/18 14/5 15/14 17/12 56/9
**found [1]** 15/23
**four [1]** 4/14
**frank [1]** 23/9
**free [1]** 16/6
**FRIDAY [2]** 1/18 3/1
**front [2]** 25/22 28/9

**G**

**gagillion [1]** 36/20
**gather [1]** 43/4
**gave [3]** 11/4 16/17 51/11
**general [1]** 48/15
**generally [3]** 19/25 20/6 46/19
**generated [1]** 27/7
**GERSHMAN [4]** 2/18 3/20 12/16 38/20
**Gershman's [1]** 38/17
**gets [2]** 29/5 43/13
**getting [2]** 7/2 7/10
**give [12]** 13/21 16/16 16/18 17/15 21/17 25/23 27/9 27/23 29/14 32/20 33/2 52/15
**given [8]** 11/3 14/9 21/3 31/7 31/7 33/22 56/5 56/14
**gives [1]** 41/12
**giving [1]** 19/10
**glad [1]** 41/8
**gmail.com [1]** 1/25
**goes [1]** 15/10
**gone [3]** 18/18 19/21 20/8
**good [18]** 3/8 3/10 3/12 3/14 3/17 3/19 3/24 3/25 8/4 17/22 20/20 20/20 20/21 22/19 29/5 40/4 40/7 56/21
**gotten [1]** 18/8
**grant [1]** 5/23
**GREENBERG [2]** 2/17 4/12
**grounds [1]** 24/3
**guess [15]** 4/20 5/10 9/18 10/21 23/2 25/3 30/7 31/9 38/24 39/6 39/7 39/14 42/10 42/25 52/11
**guidance [1]** 21/1
**guy [4]** 45/21 45/22 46/15 46/16

**H**

**half [1]** 25/19
**HAMILTON [3]** 1/5 3/5 42/1
**hand [2]** 5/12 24/15
**handle [1]** 38/17
**handled [1]** 20/20
**happen [4]** 18/10 18/11 18/12 26/20

**happened [4]** 15/9 18/8 18/14 18/19
**happy [1]** 21/14
**hard [2]** 9/1 48/19
**harmless [1]** 5/11
**having [4]** 15/22 42/7
**he's [11]** 16/13 17/19 17/19 21/16 21/17 21/17 22/12 22/12 36/7 43/11 43/12
**head [1]** 13/20
**hear [8]** 12/16 20/8 27/23 32/11 34/15 39/17 44/20 50/24
**heard [7]** 8/6 12/21 19/2 31/9 32/23 35/7 55/25
**hearing [3]** 12/1 12/13 48/17
**heartburn [1]** 44/21
**held [2]** 53/5 57/6
**hellbent [2]** 47/21 47/22
**hereby [1]** 57/3
**HERNANDEZ [1]** 1/6
**high [1]** 18/1
**highly [3]** 16/9 17/11 37/15
**hold [2]** 21/24 43/1
**HONORABLE [1]** 1/3
**hope [1]** 35/4
**hot [1]** 37/17
**hour [1]** 54/19
**hours [7]** 15/18 24/12 24/14 27/6 53/21 54/13 56/6
**however [1]** 51/20
**huh [1]** 29/24
**humble [1]** 52/16
**hundred [1]** 7/6
**hundreds [3]** 15/18 36/17 45/21

**I**

**I'd [1]** 49/10
**idea [1]** 8/4
**immediately [1]** 8/18
**impedes [1]** 39/9
**imperfect [1]** 52/4
**impermissible [1]** 14/16
**implied [1]** 20/15
**important [7]** 8/11 8/12 22/11 23/16 32/3 32/4 49/11
**importantly [1]** 14/25
**impossible [3]** 14/1 14/6 15/17
**impractical [1]** 14/3
**INC [2]** 1/10 1/11
**include [2]** 10/8 10/9
**includes [1]** 12/7
**INCLUSIVE [1]** 1/12
**incompetence [1]** 20/17
**incorrect [1]** 13/11
**indicates [1]** 4/11
**indication [1]** 7/24

**individual [3]** 35/10 35/14 44/5
**individualized [10]** 34/9 35/10 36/22 38/2 38/10 43/21 44/12 47/16 47/17 50/15
**individually [3]** 1/5 1/7 42/2
**informal [1]** 20/6
**informally [1]** 19/11
**information [1]** 17/10
**informed [1]** 24/7
**initial [1]** 5/13
**inkling [1]** 24/3
**inside [1]** 39/12
**insisted [2]** 44/4 44/10
**inspection [8]** 5/20 6/8 6/15 12/5 12/8 12/11 12/12 27/5
**instance [2]** 18/6 37/8 47/5
**instances [2]** 37/10 38/4
**intend [1]** 25/1
**intensive [2]** 34/9 37/15
**interesting [6]** 4/1 43/18 43/18 43/19 45/25 47/24
**interim [1]** 54/21
**interpret [2]** 40/23 40/23
**interruption [1]** 54/22
**interval [1]** 24/22
**intervention [1]** 7/22
**inviting [1]** 13/4
**issue [20]** 5/10 8/12 8/13 9/19 12/15 18/24 21/6 23/15 25/2 28/24 29/6 30/9 32/7 42/25 47/14 49/9 51/11 54/21 55/20 55/25
**issues [5]** 4/19 4/23 23/14 34/9 38/2
**it's the [1]** 51/2
**items [1]** 10/12
**itself [1]** 27/18

**J**

**JANUARY [8]** 1/18 3/1 12/24 13/1 18/17 18/17 19/22 57/10
**January 24 [1]** 13/1
**January 24th [1]** 12/24
**January 8th [2]** 18/17 18/17
**job [3]** 16/25 31/21 51/5
**joined [1]** 43/4
**Jose [1]** 4/11
**JR [1]** 1/3
**JUDGE [1]** 1/3
**judgment [9]** 4/25 5/1 5/2 30/8 32/10 38/15 39/18 39/21 55/19
**Judicial [1]** 57/8

**individual [3]** 35/10 35/14 44/5

**JUI [3]** 1/23 57/14 57/15
**June [1]** 13/10
**June 1 [1]** 13/10
**juror [2]** 27/16 29/1
**justification [2]** 5/11 15/21
**justify [1]** 38/20

**K**

**K-r-i-e-g-l-e-r [1]** 5/6
**K-r-i-e-j [1]** 5/6
**keep [2]** 44/1 51/18
**Kemble [3]** 39/11 39/16 54/17
**KEMPLE [4]** 2/17 3/12 12/17 12/18
**KENNETH [2]** 2/3 3/7
**Kenneth Yoon [1]** 3/7
**kept [1]** 52/6
**key [1]** 35/3
**keys [1]** 50/8
**kind [4]** 44/8 47/25 51/5
**knock [1]** 40/20
**known [4]** 33/14 33/18 33/22 34/17
**Krieger [5]** 5/18 5/25 11/4 21/8 29/13
**Kriegler's [3]** 5/6 6/2 28/10

**L**

**labeled [2]** 3/23 14/15 19/15 19/16
**labeling [2]** 19/13 19/14
**language [3]** 20/15 20/15 51/7
**large [2]** 6/19 22/16
**last [4]** 4/5 4/20 8/6 19/2
**late [2]** 10/18 10/20
**later [7]** 10/14 10/19 11/5 11/9 17/7 21/11 32/4
**latest [1]** 18/8
**LAUBY [1]** 2/12
**law [30]** 2/3 2/3 2/4 2/8 2/8 2/13 2/13 2/17 2/18 2/18 2/19 4/6 4/13 14/16 15/7 17/1 37/21 38/8 41/2 42/8 42/10 42/11 42/15 42/16 47/22 47/23 48/16 48/25 49/8 55/22
**lawyer [1]** 20/14
**lawyers [1]** 19/25
**lead [2]** 6/9 6/11
**leads [1]** 14/17
**learned [4]** 6/19 9/14 19/21 22/24
**least [4]** 5/3 5/25 17/18 56/18
**leave [10]** 30/12 30/22 30/24 31/2 31/20 32/5 32/7 39/12 45/19

**L**

leave... [1] 55/15
leaves [1] 45/4
leaving [7] 31/25
43/22 45/21 45/23
45/23 47/21 47/25
lectern [1] 38/22
left [1] 47/2
leg [2] 40/20 40/21
legal [3] 36/20 38/8
38/9
length [1] 45/14
less [15] 15/3 15/4
15/24 17/14 24/18
26/6 26/7 31/8 31/9
31/10 35/2 36/10
45/16 46/22 52/11
let [15] 4/1 6/6 10/25
12/14 12/15 21/7 22/9
24/25 30/1 30/6 32/11
36/1 43/17 44/20
49/23
letter [2] 13/2 19/22
liability [2] 39/24
40/17
like [14] 8/20 11/10
28/11 29/2 30/3 37/18
42/12 44/1 44/21
44/23 48/3 49/10
52/19 54/3
likely [1] 10/9
limited [4] 7/3 20/24
31/14 51/11
limiting [1] 11/11
line [12] 25/16 25/17
25/19 36/6 36/15
36/19 44/23 45/17
45/18 45/20 50/7
52/19
literally [3] 13/21
36/11 36/13
little [3] 21/22 45/16
52/16
live [1] 48/19
lives [1] 40/6
LLP [2] 2/12 2/17
locations [2] 25/21
27/17
locker [1] 34/18
log [1] 55/14
logical [1] 43/6
long [17] 10/1 18/5
18/19 25/23 26/5 26/9
26/10 26/19 27/20
35/2 36/18 48/21 50/7
54/23 55/13 56/1
56/17
longer [2] 45/18 51/21
look [11] 9/2 19/6
22/10 37/4 50/23
50/23 50/24 53/1
55/20 56/2 56/5
looked [4] 19/24 29/2
36/7 36/8
looking [4] 4/9 8/11
9/18 19/7
loop [1] 35/6
loops [1] 35/7

LOS [6] 1/20 1/24 2/5
2/10 2/20 3/1
lot [11] 4/19 7/5 7/18
8/14 8/15 12/6 25/7
42/25 45/18 51/10
56/14
lots [2] 37/16 40/3
low [1] 28/6
lunch [1] 44/23
lunchtime [1] 52/19

**M**

machines [1] 25/6
made [7] 10/25 11/19
13/17 13/25 33/24
34/21 36/25
mail [1] 49/14
mails [1] 7/18
maintained [1] 8/19
maintains [1] 51/10
make [9] 16/1 16/3
17/16 17/19 31/24
31/24 37/1 42/18
49/10
makes [3] 12/11 14/16
31/5
making [2] 26/13 32/3
manageability [2]
24/2 31/5
MANKIN [2] 2/13 3/13
manner [1] 24/21
mantra [1] 55/6
many [8] 7/6 10/2 10/9
13/19 22/15 26/6 38/4
43/23
March [1] 13/6
March 22nd [1] 13/6
MARK [2] 2/17 3/19
Mark Kemple [1] 3/19
MART [2] 1/10 1/11
mass [1] 26/4
material [3] 15/18
40/2 43/20
materials [2] 13/9
18/2
matter [9] 7/12 17/21
42/8 42/9 42/11 42/14
42/16 56/15 57/6
matters [2] 8/25 12/20
MATTHEW [2] 2/18
3/20
Matthew Gershman
[1] 3/20
May 16th we [1] 13/7
maybe [8] 20/14 35/4
40/9 40/10 46/15
46/15 52/17 52/18
meal [32] 23/25 30/7
30/9 30/12 30/13
30/23 31/1 31/3 31/4
31/6 31/6 31/8 36/24
37/2 37/3 37/5 37/6
37/6 37/7 37/9 38/8
38/24 40/13 41/1 41/3
45/4 45/8 46/22 46/23
49/1 54/21 55/13
meals [1] 45/13
mean [20] 9/6 15/7

18/18 21/7 30/16
32/19 33/6 37/21 40/5
43/4 44/25 48/3 48/4
48/24 49/24 49/24
49/25 50/7 50/9 52/1
means [1] 24/17
measure [3] 24/17
25/5 25/22
measured [1] 33/20
meet [6] 8/21 10/22
20/19 20/20 48/24
49/8
meet-and-confer [1]
20/19
meet-and-confers [3]
8/21 10/22 20/20
meeting [1] 4/12
MEI [3] 1/23 57/14
57/15
member [1] 39/25
members [5] 27/20
31/2 31/2 53/8 54/11
mention [1] 20/2
mentioned [1] 15/10
merely [1] 34/20
merits [2] 8/12 33/11
method [5] 33/10
33/13 34/14 34/24
43/17
methods [1] 36/23
Michael [2] 4/13 4/13
Michael Augustine [1]
4/13
middle [2] 40/5 45/19
might [11] 4/1 8/17
9/8 10/14 10/19 28/18
29/11 34/6 46/12
46/20 47/20
mind [3] 11/14 47/9
48/23
minimis [1] 36/14
minimum [1] 34/5
minute [17] 30/13
31/3 31/4 31/6 31/8
36/10 37/11 37/13
39/10 39/15 45/13
45/16 46/21 52/17
52/24 55/6 55/7
minutes [21] 27/15
27/15 29/20 29/21
29/22 32/8 32/8 37/1
37/2 37/13 37/14 38/3
38/5 45/3 45/11 45/14
46/22 47/2 52/18 55/1
55/3
Miss [1] 42/1
Miss Hamilton [1]
42/1
missed [1] 48/7
moment [3] 18/8
24/10 24/11
money [3] 21/16
21/18 22/22
month [4] 7/3 7/10
12/6 12/7
months [9] 7/1 7/1
7/13 10/8 10/10 13/20
22/3 22/18 29/2

months' [1] 10/1
moot [1] 6/21
more [13] 6/5 8/9 8/12
9/11 16/18 22/2 23/7
29/11 33/18 41/2 50/8
52/10 53/1
morning [7] 3/17 3/17
3/19 3/25 4/1 4/8
32/24
most [4] 7/9 43/18
52/17 52/18
motion [31] 4/23 4/24
4/24 5/1 5/2 5/4 6/16
9/14 13/1 13/16 15/10
16/8 16/17 17/16 18/6
18/12 18/13 18/25
18/25 19/18 20/14
20/23 24/5 28/18 30/8
38/14 39/18 40/1 40/2
43/24 53/19
motions [2] 52/11
52/12
move [2] 4/18 23/12
moved [1] 55/18
moving [3] 5/5 23/24
40/19
Mr. Gershman [2]
12/16 38/20
Mr. Gershman's [1]
38/17
Mr. Jose [1] 4/11
Mr. Kemble [3] 39/11
39/16 54/17
Mr. Patton [1] 4/4
Mr. Yoon [1] 6/8
Ms. Bonin [2] 11/3
11/14
MSJ [1] 16/9
Mt [1] 27/21
much [16] 8/16 11/10
15/3 15/4 15/17 15/24
17/13 24/18 27/18
29/14 29/18 29/19
31/5 35/2 47/13 49/20
multiple [4] 27/17
28/4 56/10 56/10
multitude [1] 33/15
must [3] 30/12 44/7
47/23

**N**

name [2] 4/12 56/4
named [1] 42/1
NAOMI [2] 2/18 3/21
Naomi Beer [1] 3/21
national [1] 3/21
nearby [2] 40/5 40/7
necessarily [1] 47/11
necessary [2] 5/17
5/21
need [5] 9/20 10/2
22/15 53/5 53/5
needed [3] 5/18 17/10
33/6
needs [4] 9/18 9/21
30/19 53/16
negotiated [2] 20/5
26/23

negotiating [1] 9/13
negotiations [1] 8/21
never [5] 4/15 11/14
20/9 37/23 47/8
new [1] 16/12
next [6] 15/9 18/24
25/17 43/13 56/17
56/19
Ninth [2] 17/1 20/18
Ninth Circuit [2] 17/1
20/18
noise [1] 31/9
nonindividualized [1]
24/17
note [4] 4/9 4/16
18/15 35/8
notes [1] 4/2
nothing [3] 13/22
15/24 40/7
noticed [1] 4/8
notify [1] 5/11
notion [2] 34/4 35/5
November [2] 15/14
16/12
November 15th [1]
15/14
November 15th
actually [1] 16/12
nowhere [1] 40/4
number [4] 4/19 4/23
22/14 23/14 28/2 28/3
49/25

**O**

oath [1] 56/4
objective [7] 42/5
42/6 42/18 44/2 46/14
47/15 47/18
obligation [2] 39/1
48/25
obligations [3] 14/14
17/3 49/8
observations [1] 4/3
obviates [1] 48/15
obvious [2] 4/4 26/1
obviously [1] 8/23
of the [1] 28/5
off [12] 35/17 35/19
35/19 48/22 49/17
49/20 49/22 49/22
50/1 50/8 50/18 55/14
off-duty [1] 48/25
off-the-clock [1]
35/19
off-the-time [1] 35/17
offend [1] 40/6
offensive [1] 20/16
offer [2] 16/13 17/8
offered [1] 43/20
OFFICES [1] 2/8
OFFICIAL [1] 1/23
oh [7] 9/18 11/23 14/1
16/5 41/15 45/7 48/11
Olympic [1] 34/6
on to [1] 23/12
once [1] 23/23
one [20] 2/4 4/4 4/4
4/13 5/12 33/18 40/20

## O

one... [13] 41/25 42/5 42/24 43/20 45/10 45/10 45/21 45/22 45/23 48/11 49/25 53/11 54/25
onerous [2] 48/22 48/23
ones [1] 7/11
only [5] 17/15 37/1 37/2 39/1 55/1
opinion [5] 6/1 14/18 25/23 27/6 52/16
opinions [9] 5/14 6/3 14/19 14/22 14/24 16/14 17/8 17/13 17/14
opportunity [4] 18/18 39/2 41/8 53/3
opposition [5] 18/13 30/10 35/9 35/23 43/19
order [6] 5/3 16/17 22/14 33/24 56/16 56/18
orders [1] 32/21
originally [2] 6/25 19/15
OTHERS [2] 1/6 1/7
otherwise [2] 22/24 34/11
ought [1] 55/11
out [33] 9/2 9/3 9/12 10/11 14/8 20/23 24/11 26/14 26/17 26/21 27/1 31/17 32/16 33/15 33/16 33/16 34/19 34/25 40/5 40/5 40/20 41/7 42/24 44/23 44/24 46/2 46/24 46/24 50/5 52/19 55/22 56/16 56/18
outfit [1] 3/23
outlined [1] 40/1
outside [11] 10/10 37/9 37/14 37/17 38/1 38/5 40/4 40/11 42/1 52/6 55/3
over [4] 5/3 7/6 35/7 42/14
overstated [1] 36/21
overtime [2] 23/25 24/9
own [5] 27/3 37/9 42/1 44/14 56/3

## P

PACER [1] 48/20
paces [1] 34/2
page [3] 35/23 41/9 57/7
page 1,040 [1] 41/9
page 14 [1] 35/23
pages [1] 37/23
paid [4] 21/17 53/16 54/11 54/12
papers [8] 4/10 4/16
10/20 19/5 21/5 43/24 47/12 51/8
PARK [1] 2/19
parked [1] 40/10
parking [1] 42/25
part [12] 5/23 5/24 6/19 12/6 12/10 12/12 19/18 20/17 23/18 29/4 39/14 46/22
part's [1] 29/15
parte [3] 13/24 14/6 14/10
partial [5] 4/25 5/1 5/2 21/3 21/3
participating [1] 30/14
particular [4] 47/5 47/20 49/2 49/3
Particularly [1] 43/19
parties [5] 4/17 7/19 16/21 20/5 24/6
partner [1] 3/20
parts [1] 27/12
party [1] 40/19
passed [3] 11/4 11/5 18/19
PATTON [3] 2/19 3/22 4/4
pay [4] 43/5 53/4 53/5 53/21
penalties [1] 53/14
penalty [2] 24/1 24/2
people [28] 23/7 33/14 34/2 34/17 36/7 36/8 36/9 36/16 37/9 37/11 37/16 40/3 40/3 40/8 40/8 41/13 43/21 43/23 43/25 47/21 47/22 49/20 49/21 49/21 49/22 54/7 54/8 55/5
percentage [2] 10/7 10/8
perfect [4] 28/15 52/5 52/5 52/7
perfectly [1] 34/22
perform [1] 24/20
period [14] 7/3 7/11 7/13 24/19 29/3 29/4 29/22 30/12 30/13 35/1 45/11 50/20 53/9 55/13
periods [1] 9/8
permissible [1] 33/8
permission [2] 5/19 38/18
permit [1] 39/2
permitted [3] 30/13 35/18 35/20
person [13] 24/18 30/23 32/15 36/19 41/25 44/10 44/12 45/4 49/2 49/3 50/14 50/16 55/21
personal [3] 24/21 26/12 26/15
perspective [2] 7/18 52/13
pertinent [1] 15/5
PETER [2] 2/13 3/15
Peter Carlson [1] 3/15
philosophical [2] 53/1 53/7
phones [1] 50/8
physically [1] 15/17
pick [5] 9/2 9/3 10/2 10/6 22/12
pictures [1] 49/14
place [3] 33/17 43/10
plain [2] 14/16 33/24
plaintiff [8] 3/7 3/13 13/13 35/11 35/15 39/14 42/1 44/20
plaintiffs [17] 1/8 2/2 2/7 2/11 3/9 3/11 3/15 5/16 6/6 13/20 13/23 14/3 16/23 24/8 24/16 24/25 35/8
plaintiffs' [4] 5/1 5/13 32/14 52/12
plan [5] 8/3 18/7 23/10 25/20 56/9
plant [1] 50/17
plate [1] 18/19
playing [1] 41/19
please [3] 3/6 32/12 38/22
plenty [1] 14/11
podium [1] 37/22
point [31] 6/21 9/18 11/11 17/25 19/3 19/21 20/23 22/2 22/16 23/16 33/10 34/1 34/2 35/3 36/23 39/19 42/5 42/17 45/19 48/8 50/7 50/16 50/19 52/10 53/7 54/22 54/25 55/1 55/9 55/12 55/19
Point two [1] 55/1
pointing [1] 35/3
points [5] 25/8 26/6 32/12 36/5 49/10
police [1] 41/6
policy [3] 41/14 49/7 53/15
political [1] 43/1
population [7] 9/21 9/23 9/25 10/3 22/15 22/17 22/20
position [7] 11/25 12/7 31/3 31/12 38/25 39/25 54/4
possession [2] 10/5 10/5
possible [5] 15/16 17/5 17/17 18/18 26/17
possibly [4] 40/17 55/23 56/5 56/19
practice [2] 15/2 49/7
precise [2] 27/21 35/16
predominance [1] 24/3
prejudicial [3] 16/10 17/11 28/18
preliminary [2] 14/15 14/17
premises [1] 39/12
present [2] 24/17 46/18
presented [2] 39/7 48/18
presents [1] 44/6
presumably [3] 27/2 28/18 30/2
pretty [3] 26/1 27/18 46/14
preventing [1] 40/25
prima [1] 40/17
prior [4] 16/2 17/17 32/21 33/24
privilege [2] 47/25 48/3
probably [2] 28/15 48/5
problem [3] 23/7 23/7 23/8
problematic [1] 6/5
problems [2] 20/7 28/16
procedure [1] 54/13
proceeding [2] 8/16 10/4
proceedings [3] 1/17 56/25 57/6
process [16] 10/18 26/3 26/22 26/24 26/24 27/5 27/8 29/10 30/5 46/8 47/11 48/14 48/22 48/23 49/13 51/1
produce [7] 8/22 9/4 12/3 12/5 13/12 20/24 20/25
produced [9] 5/17 13/6 13/7 13/9 13/10 15/16 16/15 21/20 22/1
producible [2] 8/17 8/18
production [3] 10/23 13/8 15/11
profanity [1] 42/24
program [1] 41/19
progressed [1] 8/8
prohibited [1] 43/8
prohibiting [2] 40/24 40/25
proof [5] 28/11 33/10 34/14 38/10 47/17
prop [1] 43/16
prop up [1] 43/16
proper [2] 17/16 18/7
property [1] 31/25
proposed [3] 11/12 14/2 34/25
proposition [2] 55/10 55/18
prove [7] 25/1 37/5 37/6 40/17 43/17 47/18 51/5
provide [6] 11/5 14/18 41/3 41/6 41/11 47/23
providing [1] 48/25
prudent [3] 21/15 32/22 33/2
prudently [1] 21/16
public [1] 53/15
purely [1] 56/10
purposes [2] 8/10 25/12
pursuant [3] 16/20 19/11 57/3
push [1] 8/14
pushed [1] 9/1
putting [4] 49/16 49/19 50/1 50/24

## Q

question [22] 6/13 11/17 11/21 11/23 30/16 31/8 31/9 31/10 37/14 37/24 38/7 38/24 39/7 41/9 42/6 44/5 45/2 53/1 55/2 55/6 55/8 55/16
questions [4] 4/19 12/15 38/15 52/10
quickly [2] 23/8 26/17
quietly [1] 37/20
quite [1] 10/1
quote [4] 35/10 39/10 41/12 41/13
quote/unquote [1] 39/10

## R

racer [1] 34/6
raining [1] 37/17
raise [1] 54/18
rallies [1] 43/1
ramp [1] 42/13
randomly [2] 22/13 22/14
rate [1] 24/1
rather [2] 19/14 35/17
read [2] 20/4 37/20
readings [1] 40/24
real [1] 44/21
realized [2] 9/17 13/17
really [13] 5/10 7/11 8/25 11/10 12/20 23/16 25/9 25/10 40/10 40/11 49/1 49/6 53/5
reason [7] 7/23 16/25 19/18 21/11 32/1 32/20 51/22
reasonable [3] 20/10 23/1 23/1
reasonably [1] 51/4
reasons [1] 36/22
rebut [1] 18/10
rebuttal [6] 6/4 16/2 16/4 17/17
received [1] 16/12
recess [1] 56/24
recite [1] 14/23
record [4] 20/3 27/22 52/2 53/3

**R**

**recorded [1]** 33/17
**records [2]** 36/25 37/2
**referring [1]** 48/6
**refused [4]** 16/1 16/3 17/16 43/12
**regarding [4]** 6/7 6/14 15/7 19/19
**regrettably [1]** 12/21
**regulations [1]** 57/8
**rejected [3]** 14/10 18/17 37/4
**rejecting [1]** 37/21
**related [1]** 30/10
**relates [3]** 5/3 39/18 39/21
**relevant [4]** 19/16 28/13 28/16 52/1
**relied [1]** 34/1
**relief [1]** 33/1
**relieve [1]** 39/2
**relieved [1]** 30/20
**remain [2]** 40/15 40/16
**remember [3]** 4/6 35/16 48/11
**reminded [1]** 32/23
**repeatedly [1]** 14/4
**reported [2]** 14/25 57/5
**REPORTER [1]** 1/23
**REPORTER'S [1]** 1/17
**reports [15]** 5/7 6/4 10/13 13/12 13/15 13/18 14/7 14/8 14/14 14/15 17/16 18/22 21/3 21/4 32/19
**representation [1]** 30/4
**representative [1]** 30/4
**represented [1]** 14/4
**reprimanded [1]** 41/24
**reprimanding [1]** 41/13
**request [4]** 13/8 13/8 13/13 13/17
**requested [2]** 13/13 19/8
**required [2]** 14/22 56/9
**requirements [3]** 16/7 38/9 48/16
**requires [1]** 54/13
**requiring [1]** 17/1
**resolution [1]** 16/18
**resolved [1]** 7/20
**resources [1]** 23/1
**respectfully [2]** 35/25 56/7
**response [5]** 6/4 32/17 39/18 41/4 55/19
**responsibility [1]** 21/13
**rest [3]** 23/21 33/25 51/24

**restroom [1]** 34/18
**results [1]** 15/4
**retail [1]** 43/7
**return [1]** 32/4
**review [9]** 15/18 16/21 21/9 22/18 22/19 22/22 23/3 23/6 26/25
**reviewed [4]** 16/14 21/5 21/10 21/11
**reviewing [1]** 22/25
**RFP [3]** 19/9 19/11 19/13
**ride [1]** 55/13
**ridiculing [1]** 41/13
**right [33]** 3/16 3/24 4/18 6/12 7/2 7/17 8/4 12/15 16/24 18/23 18/24 19/4 19/14 23/11 30/25 32/11 36/1 36/11 38/11 38/19 38/19 39/6 40/13 41/7 44/19 48/12 49/23 52/9 54/2 54/15 54/15 56/13 56/20
**rights [2]** 16/23 16/24
**rise [1]** 56/24
**RIVERSIDE [1]** 2/14
**rolling [2]** 6/23 15/14
**room [4]** 1/24 37/18 40/9 42/13
**roughly [1]** 7/3
**rule [10]** 5/8 5/9 14/17 14/17 15/7 15/25 17/1 18/20 25/3 43/14
**Rule 26 [3]** 5/9 14/17 15/25
**Rule 37 [4]** 5/8 14/17 15/7 17/1
**rules [5]** 17/23 34/23 42/23 43/3 43/9
**run [1]** 43/8
**running [1]** 9/12

**S**

**safe [1]** 25/24
**Sam [1]** 3/11
**Sam Cleaver [1]** 3/11
**same [4]** 51/1 51/3 51/4 54/6
**sample [7]** 9/22 9/23 9/25 10/6 22/11 22/20 22/23
**sampled [2]** 10/7 10/9
**sampler [3]** 9/21 9/22
**sampling [6]** 6/24 7/2 7/8 7/10 9/20 29/13
**SAMUEL [2]** 2/8 2/8
**sanctions [2]** 14/17 18/21
**sat [2]** 15/22 16/23
**save [1]** 8/2
**saving [1]** 7/25
**saying [17]** 14/10 17/18 17/19 19/10 24/15 25/4 29/17 41/14 42/9 42/19 46/11 48/13 50/6

50/12 50/22 51/9 51/22
**scale [1]** 26/4
**science [1]** 9/20
**scientifically [1]** 15/1
**scope [1]** 10/23
**screenshots [1]** 13/10
**searched [1]** 32/6
**second [7]** 6/18 19/20 24/13 25/19 28/24 36/2 47/14
**Section [1]** 57/3
**security [49]** 19/16 23/24 24/8 24/13 25/14 25/16 25/18 25/19 26/8 28/13 28/24 28/24 29/2 30/15 30/17 30/18 30/19 30/21 31/16 31/18 31/22 31/23 32/1 32/17 33/18 36/6 36/8 36/10 36/15 36/19 37/12 38/1 39/8 39/13 42/8 44/6 45/12 45/15 45/17 45/22 45/24 46/8 46/25 50/6 50/9 51/11 52/6 55/3 56/2
**see [12]** 8/8 8/9 8/20 12/14 26/4 27/11 28/18 28/25 46/6 46/16 48/21 48/21
**seek [1]** 7/21
**seeking [1]** 6/20
**seem [1]** 34/4
**seems [3]** 5/24 7/19 41/2
**seen [4]** 4/1 7/7 17/13 21/5
**select [1]** 22/14
**selected [1]** 22/13
**self [1]** 18/21
**self-executing [1]** 18/21
**sense [1]** 12/11
**sensible [1]** 22/22
**separate [1]** 43/19
**September [14]** 12/25 13/12 13/15 13/19 13/23 14/5 14/15 15/6 15/9 15/22 15/23 17/9 18/15 32/20
**September 18th [1]** 13/23
**September 18th comes [1]** 14/5
**September 20 [1]** 17/9
**September 20th and [1]** 18/15
**September 21 [5]** 12/25 13/12 14/15 15/6 15/9
**September 21st [1]** 32/20
**serious [1]** 9/11
**server [1]** 8/19
**service [2]** 43/12

43/13
**set [3]** 14/2 14/3 23/3
**setting [1]** 43/7
**settled [1]** 41/5
**shares [1]** 53/15
**shift [7]** 25/16 28/9 30/6 32/15 38/14 45/20 51/8
**shirt [2]** 43/12 43/13
**shoes [2]** 43/12 43/13
**short [1]** 37/6
**shout [1]** 42/23
**show [9]** 27/13 29/1 29/17 29/25 30/1 30/2 36/25 41/23 42/2
**showed [2]** 27/17 37/2
**showing [2]** 27/15 29/19
**shown [2]** 44/17 51/3
**shows [1]** 46/15
**sic [1]** 19/25
**side [2]** 20/7 20/21
**sides [1]** 4/8
**signed [1]** 56/4
**similar [1]** 49/12
**SIMILARLY [2]** 1/6 1/7
**simple [2]** 45/12 49/1
**simply [6]** 12/21 14/13 16/23 16/25 35/22 56/8
**since [4]** 12/6 16/15 17/10 36/7
**single [5]** 35/17 37/22 39/24 50/14 50/16
**site [6]** 5/20 6/7 6/15 12/5 12/10 12/12
**sitting [1]** 42/7
**SITUATED [1]** 1/6 1/7
**six [1]** 4/21
**slacker [1]** 41/17
**slightly [1]** 29/11
**Slow [1]** 35/12
**socialize [1]** 34/19
**somebody [1]** 45/3
**someday [1]** 34/16
**somehow [1]** 25/5
**someone [1]** 37/25
**something [11]** 6/22 8/20 20/6 20/12 20/16 21/17 21/19 34/15 35/4 49/12 49/13
**sometime [2]** 32/18 46/24
**somewhat [1]** 30/9
**somewhere [1]** 8/19 37/20
**soon [2]** 27/7 27/11
**sorry [15]** 3/25 3/25 4/25 5/6 12/5 12/18 20/18 21/21 21/25 21/25 21/25 25/18 26/18 28/12 29/21
**sort [5]** 4/3 4/3 6/3 26/4 33/5
**sorts [1]** 28/16
**sound [2]** 15/1 15/2
**sounds [1]** 54/3

**space [1]** 37/22
**speak [2]** 27/18 41/20
**speaking [3]** 19/25 20/6 46/19
**specific [4]** 19/13 24/19 51/7 51/13
**speed [2]** 25/24 42/25
**spend [4]** 21/15 21/17 21/18 22/22
**spent [6]** 24/10 24/13 24/18 30/14 30/17 36/15
**spoliation [1]** 29/5
**stacks [1]** 18/1
**standard [5]** 35/21 39/5 47/15 47/19 49/6
**standards [2]** 15/5 15/25
**standing [1]** 44/23
**start [3]** 5/4 6/6 9/18
**started [4]** 4/14 22/25
**state [3]** 3/6 14/22 15/4
**stated [2]** 17/9 56/3
**statement [5]** 5/14 16/5 16/11 24/1 43/20
**STATES [3]** 1/1 57/4 57/8
**stating [1]** 17/7
**statistical [2]** 14/25 33/7
**statistically [3]** 15/1 22/13 22/21
**statistician [1]** 22/12
**status [2]** 6/7 6/14
**stay [3]** 39/11 48/4 48/9
**staying [1]** 47/22
**steal [2]** 42/21 42/24
**stenographically [1]** 57/5
**step [2]** 18/18 38/21
**STEPHANIE [2]** 2/4 3/9
**Stephanie Yasuda [1]** 3/9
**stipulation [3]** 9/11 16/20 19/19
**stop [1]** 49/23
**storage [1]** 8/19
**store [1]** 52/20
**STORES [2]** 1/10 3/5
**story [1]** 48/6
**straightforward [1]** 47/6
**STREET [1]** 1/24
**strike [3]** 4/24 5/4 5/5
**strikes [1]** 49/24
**stronger [1]** 18/20
**strongest [3]** 31/11 31/11 31/13
**stuff [3]** 15/16 16/21 30/7
**subclass [9]** 23/25 23/25 24/1 24/1 24/2 24/6 31/2 53/19 53/22
**subclasses [2]** 4/21 24/9

**S**

subject [10]  31/22
32/9 34/22 42/19
42/20 42/23 43/9 45/5
45/12 46/7
subjected [1]  47/1
subjective [3]  42/5
44/2 47/15
subjective/objective
 [1]  47/15
submission [1]  56/15
submit [1]  19/12
submitted [2]  36/12
43/24
subsequent [1]  14/8
substantial [1]  5/10
suffer [1]  4/7
sufficient [2]  48/15
49/8
sufficiently [1]  51/3
suggest [3]  9/6 41/2
46/1
suggesting [2]  49/25
50/14
suggests [2]  20/17
47/24
SUITE [2]  2/5 2/20
summary [12]  4/25
5/1 5/2 30/8 32/10
32/10 38/15 39/18
39/21 53/25 53/25
55/19
supplement [2]  11/24
16/19
supplemental [3]  6/2
11/6 15/15
support [1]  14/23
supposed [1]  14/24
Supreme [3]  34/21
49/11 49/18
sure [5]  23/18 31/24
31/25 45/18 50/11
surrebuttable [1]  6/3
surveillance [4]  5/17
6/7 6/15 19/14
system [1]  48/20

**T**

table [1]  18/25
take [23]  6/8 6/10
15/18 16/6 25/21
26/19 26/24 27/6
27/12 29/18 30/13
31/4 38/3 39/3 41/15
45/6 46/6 46/7 49/21
50/8 50/18 55/7 56/15
taken [2]  38/5 55/3
takes [34]  8/22 20/24
23/6 25/23 26/5 26/9
26/11 27/20 37/12
37/14 38/1 40/12
45/24 46/1 46/7 46/7
46/15 46/18 46/19
46/20 47/7 47/10
47/11 47/14 48/22
49/20 50/15 50/17
50/20 51/3 54/23
54/23 54/24 56/1

taking [9]  12/7 27/5
39/9 41/1 44/6 45/16
49/16 49/17 49/19
23/22 26/14 30/7 30/8
33/13
talked [3]  4/15 53/18
53/20
talking [7]  26/15
38/23 45/3 45/4 45/17
50/2 52/17
talks [1]  41/10
targeting [1]  40/21
tax [1]  45/5
tells [2]  20/11 25/25
ten [5]  7/7 7/9 7/12
42/14 54/13
ten feet [1]  42/14
tens [1]  37/10
tentative [3]  5/23 24/4
24/24
tentatives [1]  5/3
term [1]  36/21
terms [9]  8/6 8/15
11/11 12/6 21/6 47/17
49/10 50/13 56/1
terribly [4]  20/16 23/6
25/9 26/2
test [1]  36/12
tested [1]  33/21
testified [3]  27/8
28/10 40/8
testify [5]  12/2 12/10
27/20 35/18 35/24
testimony [11]  5/8
5/25 27/19 29/9 29/14
33/7 35/10 35/20 44/7
48/19 50/24
thank [14]  12/19
18/23 23/11 23/20
26/23 32/13 39/20
44/19 54/16 56/12
56/13 56/20 56/22
56/23
the extent [1]  6/13
them [26]  5/3 8/1 8/3
11/5 11/6 11/7 11/8
11/9 11/10 11/19
11/20 13/20 13/22
14/9 16/6 16/15 16/16
16/17 17/16 17/19
21/11 29/19 37/1 43/5
50/18 52/23
theories [2]  24/10
33/21
theory [6]  33/25 37/21
43/6 43/16 44/2 44/3
there and [1]  29/21
there another [1]
38/16
there's [34]  7/5 7/14
8/24 12/8 12/14 15/17
16/25 22/19 25/7 28/5
28/16 31/3 32/2 34/2
34/24 34/24 37/3 38/5
40/4 40/6 40/24 46/1
46/8 46/15 47/12
47/12 47/12 51/7

51/19 53/19 53/25
54/7 54/22 55/20
There's a [2]  46/8
47/12
Therefore [1]  37/3
they withdrew [1]
13/16
thing [2]  9/7 14/20
things [1]  55/9
think [36]  3/16 4/11
6/5 7/10 8/23 11/17
18/20 19/15 20/10
20/18 21/15 22/10
22/25 23/3 25/2 26/1
29/25 30/3 30/11
30/22 31/25 32/3 35/3
41/5 45/12 45/24
46/13 46/16 47/5 47/8
48/2 52/9 53/1 55/5
55/23 56/14
though [4]  8/4 21/8
26/16 28/18
thought [2]  41/4 43/18
thoughts [1]  24/6
thousand [1]  35/7
thousands [2]  36/17
37/10
three [7]  7/1 10/1 10/8
10/10 13/6 21/21
22/18
thus [2]  30/21 50/15
till [1]  7/21
time-consuming [1]
29/11
timeline [1]  19/5
timelines [1]  16/7
Title [1]  57/4
to comply [1]  14/1
to take [1]  45/6
today [10]  4/23 12/7
12/8 12/9 18/14 21/1
33/9 45/19 53/19
56/10
today's [2]  12/1 12/12
told [2]  8/1 20/22
too [4]  16/22 43/23
47/13 48/5
took [11]  5/21 32/16
35/2 36/10 36/18
36/18 37/11 37/13
39/1 53/9 55/1
top [1]  35/19
totally [2]  15/24 52/7
touched [1]  39/16
tracking [1]  36/16
transcript [3]  1/17
57/5 57/7
TRAURIG [2]  2/17
4/12
travel [1]  33/14
traveling [1]  24/18
travels [1]  31/15
treated [1]  42/6
treatment [1]  55/17
tremendous [1]  46/21
trial [7]  16/9 18/7 23/2
26/19 39/23 46/14
56/9

trier [9]  25/8 27/13
28/1 28/22 29/8 44/7
48/21 50/23 51/6
true [3]  16/14 21/10
57/4
try [4]  5/2 25/18 42/17
42/19
trying [1]  31/16
Ts [1]  39/17
TSA [2]  44/23 52/19
twist [3]  42/17 42/18
42/19
two [14]  7/1 7/3 7/10
10/12 11/12 12/24
17/4 17/5 24/9 27/6
37/13 52/17 55/1 55/9
two-month [2]  7/3
7/10
Tyson [10]  27/21
49/11 49/11 49/13
49/18 50/17 50/25
51/7 51/22 51/23

**U**

Uh [1]  29/24
Uh-huh [1]  29/24
ultimately [2]  9/10
52/21 52/25
unable [1]  16/13
under [8]  5/8 10/4
14/16 15/5 48/25 49/8
56/4 56/15
underlines [1]  38/7
understand [10]  5/5
7/15 8/22 23/19 24/16
26/7 31/16 39/11 48/7
51/19
understanding [2]
22/2 54/4
undisputed [4]  29/16
40/2 43/25 44/18
unduly [2]  8/24 28/17
uniform [3]  48/14 49/7
49/17
unilaterally [1]  33/2
uninterrupted [3]  39/3
39/10 46/23
UNITED [3]  1/1 57/4
57/8
unknowable [1]  24/22
unknown [1]  24/21
unlikely [1]  56/16
unpaid [5]  29/15
35/11 35/15 48/23
48/23
unquote [1]  39/10
unreasonable [1]
27/25
until [4]  15/22 15/23
22/5 56/18
up [10]  14/19 18/18
22/20 33/5 33/7 39/14
43/16 44/12 48/4
54/18
update [1]  14/19
upon [10]  9/25 10/22
12/9 12/12 14/18 21/3
21/15 26/9 34/1 39/16

us [9]  9/2 13/14 13/18
17/15 19/10 29/14
33/22 51/1 54/13

**V**

variety [1]  52/10
various [1]  26/5
versus [2]  3/5 42/5
vest [1]  50/2
vetted [1]  33/22
video [80]
video's [3]  30/3 46/14
51/21
videos [5]  6/7 6/15
21/9 23/4 32/21
videotape [1]  26/3
view [1]  15/16
views [2]  7/4 7/7
violation [2]  31/6 37/3
voluminous [1]  16/22
voluntarily [2]  13/9
16/19

**W**

waffled [1]  42/4
waffling [1]  44/1
wage [1]  24/1
wages [2]  35/11 35/15
wait [2]  22/5 36/11
waited [3]  7/21 7/23
22/21
waiting [3]  5/19 9/24
24/2
WAL [2]  1/10 1/11
WAL-MART [2]  1/10
1/11
walk [11]  25/1 25/24
26/5 26/11 27/20
28/11 32/5 34/2 40/12
42/13 46/2
walked [1]  36/11
walking [17]  25/13
25/13 25/15 25/15
25/20 26/12 26/16
27/14 28/14 30/14
30/17 34/1 36/13
36/13 44/24 50/5
52/19
walks [1]  43/11
Walmart [23]  3/5 3/20
3/22 5/12 5/16 8/1
10/5 12/16 13/1 16/10
16/13 17/11 24/15
24/19 26/21 26/25
31/24 38/25 39/7 43/7
44/22 45/5 49/25
Walmart's [7]  4/25 5/5
6/4 18/25 23/24 39/8
50/13
wanted [14]  4/7 4/17
8/8 8/9 8/20 9/1 18/17
19/13 22/5 22/7 22/7
22/8 36/4 55/18
wants [3]  22/12 29/8
31/24
warranted [1]  6/1
watch [1]  50/25

**W**

weather's **[1]**  40/10
week **[2]**  56/19 56/19
weekend **[2]**  56/17
56/21
weekly **[1]**  9/7
weeks **[1]**  17/6
weigh **[1]**  44/7
went **[5]**  9/5 9/7 9/9
42/1 46/25
WEST **[1]**  1/24
WESTERN **[1]**  1/2
what -- I **[1]**  22/8
Where's **[1]**  46/4
wherever **[1]**  25/15
wholesale **[1]**  5/24
wholly **[1]**  17/2
why **[18]**  7/21 15/4
16/13 22/21 33/7
36/22 37/8 37/15
37/24 38/3 38/7 38/21
40/22 40/23 46/17
49/3 49/4 55/8
wide **[4]**  32/15 44/3
45/1 46/10
willing **[1]**  17/19
WILSHIRE **[2]**  2/4 2/9
wish **[1]**  54/17
withdraw **[1]**  20/22
withdrew **[6]**  6/18
13/16 13/17 15/12
17/7 19/20
without **[2]**  31/8 48/19
witness **[1]**  44/7
witnesses **[2]**  29/10
46/12
woman **[2]**  45/23
46/16
wondering **[1]**  7/21
word **[1]**  16/24
words **[2]**  41/13 45/5
work **[12]**  4/7 15/3
32/25 34/12 34/19
34/22 34/23 35/1 35/1
44/2 44/3 55/15
worked **[6]**  20/23
24/12 24/14 35/17
35/19 53/15
working **[1]**  30/21
works **[1]**  50/16
worse **[1]**  29/3
worth **[1]**  52/16
worthwhile **[1]**  40/11
wrap **[1]**  54/18
written **[1]**  36/9
wrong **[1]**  51/6
wrote **[1]**  13/1

**Y**

YASUDA **[2]**  2/4 3/9
year **[5]**  4/5 4/5 4/21
19/22 56/6
years **[1]**  4/14
YOON **[4]**  2/3 2/3 3/7
6/8
young **[1]**  48/5
Your Honor **[17]**  3/10
6/10 10/15 12/17

17/25 19/2 23/13
27/15 32/13 36/12
39/4 42/6 42/11 42/15
44/4 55/9 56/12

**Z**

zero **[2]**  36/14 36/14