1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   CHELSEA HAMILTON,              )
    INDIVIDUALLY AND ON BEHALF OF  )
6   ALL OTHERS SIMILARLY SITUATED, )
    AND ALYSSA HERNANDEZ,          )
7   INDIVIDUALLY AND ON BEHALF OF  )
    ALL OTHERS SIMILARLY SITUATED, )
8                                  )
                 PLAINTIFFS,       )
9                                  )
            vs.                    ) No. CV 17-1415-AB
10                                 )
    WAL-MART STORES, INC., A       )
11  CORPORATION, WAL-MART          )
    ASSOCIATES, INC., A            )
12  CORPORATION AND DOES 1 THROUGH )
    50, INCLUSIVE,                 )
13                                 )
                 DEFENDANTS.       )
14  _____)

15

16

17          REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                FRIDAY, MARCH 15, 2019

19                     9:18 A.M.

20              LOS ANGELES, CALIFORNIA

21

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
             FEDERAL OFFICIAL COURT REPORTER
24           350 WEST FIRST STREET, ROOM 4311
              LOS ANGELES, CALIFORNIA 90012
25                 cmjui.csr@gmail.com

```
1    APPEARANCES OF COUNSEL:

2    FOR THE PLAINTIFFS:

3            YOON LAW, APC
             BY:  KENNETH H. YOON, ATTORNEY AT LAW
4            AND  STEPHANIE E. YASUDA, ATTORNEY AT LAW
             AND  BRIAN G. LEE, ATTORNEY AT LAW
5            ONE WILSHIRE BOULEVARD
             SUITE 2200
6            LOS ANGELES, CALIFORNIA 90017
             213-612-0988
7
     FOR THE PLAINTIFFS:
8
             LAW OFFICES OF G. SAMUEL CLEAVER
9            BY:  G. SAMUEL CLEAVER, ATTORNEY AT LAW
             5670 WILSHIRE BOULEVARD
10           18TH FLOOR
             LOS ANGELES, CALIFORNIA 90036
11           310-388-7289

12   FOR THE DEFENDANTS:

13           GREENBERG TRAURIG, LLP
             BY:  MARK D. KEMPLE, ATTORNEY AT LAW
14           AND MATTHEW R. GERSHMAN, ATTORNEY AT LAW
             AND NAOMI BEER, ATTORNEY AT LAW
15           AND BRYAN W. PATTON, ATTORNEY AT LAW
             1840 CENTURY PARK EAST
16           SUITE 1900
             LOS ANGELES, CALIFORNIA 90067
17           310-586-7776

18
             Also present:  LEIGH ANNE YEARGAN, ATTORNEY AT LAW
19

20

21

22

23

24

25
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 15, 2019

 2                            9:18 A.M.

 3                              - - -

 4              THE CLERK:  Calling CV 17-1415-AB, Chelsea

 5  Hamilton versus Wal-Mart Stores, Inc., et al.

 6              Counsel, please step forward and state your

 7  appearances.

 8              MR. YOON:  Good morning, Your Honor.  Kenneth Yoon

 9  for plaintiff.

10              THE COURT:  Good morning.

11              MR. CLEAVER:  Good morning, Your Honor.

12  Sam Cleaver for plaintiffs.

13              THE COURT:  Good morning.

14              MS. YASUDA:  Good morning, Your Honor.

15  Stephanie Yasuda, also on behalf of plaintiffs.

16              THE COURT:  Good morning.

17              MR. LEE:  Good morning.  Brian Lee also on behalf

18  of plaintiff.

19              THE COURT:  Good morning.

20              MR. KEMPLE:  Good morning, Your Honor.  My name is

21  Mark Kemple.  I am here on behalf of defendant.  I am joined

22  by Matthew Gershman, my partner; Leigh Anne Yeargan from

23  Wal-Mart; Naomi Beer, my partner; and Bryan Patton.

24              THE COURT:  All right.  Good morning to you all.

25              I have got a number of things we need to discuss
```

```
 1    today.  I did issue a tentative with respect to the motions
 2    in limine.
 3            All right.  So it looks like we have a trial set
 4    for April the 2nd.  I'm assuming that that date is still
 5    good for counsel.  We're clear on that date so unless there
 6    is some strong reason not to, we'll proceed on the 2nd.
 7            Any issues with that, Counsel?
 8            MR. YOON:  No, Your Honor.  We have some
 9    scheduling witness issues but trial -- we're ready for
10    April 2nd.
11            THE COURT:  Great.
12            From the defense?
13            MR. KEMPLE:  No, Your Honor, though, there are
14    rather big issues as to what claims would be tried on
15    April --
16            THE COURT:  We're going to try to deal with those
17    today, although not particularly happy with what I have seen
18    thus far as it relates to the efforts to meet and confer.
19            There are a lot of issues here, and some of them I
20    am just not going to go over today just because I just think
21    there hasn't really been a meaningful effort to meet and
22    confer.
23            At least as I read the Local Rules, it says to
24    discuss preferably meeting in person.  This back-and-forth
25    tennis match of letters, answer my questions first, answer
```

```
 1    the -- the other side answers them, they're not good enough,
 2    that just doesn't seem meaningful to me.
 3         I think you have very voluminous disputed
 4    instructions some of which we certainly need to research,
 5    but you all need to meet and confer and get together again.
 6    I am going to order that you do so and look at these
 7    pretrial filings again and submit something to me by
 8    March 25th.
 9         I am just going to let you all know just the way I
10    deal with these issues is if you can't get them resolved,
11    we'll just do them every night at the end of trial, and
12    we'll stay here as late as it takes to get them done.  If
13    you want to spend your time in the evenings dealing with
14    this stuff as opposed to getting ready for the next morning,
15    so be it.  I'm here, and we'll do it.
16         As it relates to trial and the time limits you may
17    or may not have heard I issue time limits for each side.
18    Basically, when the parties are at the lectern, the clock is
19    ticking.  I have a chess clock here and vice versa.  So
20    whenever the party is up at the lectern the time is running
21    against their side.
22         I believe in the final pretrial conference order
23    the parties have indicated they need 15 days for trial.
24    That's not going to happen here.  Based on what I have
25    reviewed and the motions in limine, it seems like there is a
```

 1   lot of cumulative evidence that's going to be presented

 2   here.

 3           I am going to give each side 12 hours to present

 4   their evidence.  That includes direct and cross-examination.

 5   I think that's more than enough time to present your case.

 6           Each side will have 30 minutes for opening

 7   statements, and I will give you 45 minutes for closing

 8   arguments.  Because plaintiff has the burden of proof, they

 9   get an additional ten minutes for rebuttal.

10           All right.  Any issues, questions, concerns with

11   respect to the time limits from the plaintiff?

12           MR. YOON:  No.  I am sure you will get to anything

13   else.

14           THE COURT:  All right.

15           From the defense.

16           MR. KEMPLE:  No issues, Your Honor.

17           THE COURT:  All right.  So let's start talking

18   about some of these claims that are at issue here.  At least

19   how I understand it, I am going to lay this all out, and

20   then we can discuss and see where I may have missed

21   something.

22           The decertified claims I have as the nonpayment of

23   overtime wages for the walking after clocking out and before

24   security, interruption of meal breaks claims.  Those are the

25   decertified claims.

1            The remaining certified claims are the

2    discouragement of the meal breaks, the nonpayment of

3    overtime wages only for the alternative workweek schedule

4    claim.  We have the waiting time claim and the wage

5    statement claim.

6            And then we still have some individual claims as

7    it relates to Miss Hamilton and Miss Hernandez.  We have the

8    denial of the second meal period claim and then the rest

9    break claim, I guess, for the denial of the third break and

10   the denial of the minus ten minutes of rest.

11           So that's what I have remaining.  Does either side

12   have any points or disagreements with respect to that?

13           MR. YOON:  Your Honor, for plaintiff, on the

14   individual claims we have the decertified off -- I'm sorry,

15   the claim that the Court decertified with respect to

16   nonpayment of overtime for walking and security check still

17   remains as an individual claim because the plaintiffs

18   brought that claim on behalf of themselves and the class.

19   And by decertifying it, the individual claim remains though

20   the class claim is no longer at issue.

21           On top of that, we still have the PAGA issue which

22   I --

23           THE COURT:  I am going to deal with that next.

24           MR. YOON:  Our point is just that -- when the

25   Court decertified the walking and security check and

```
 1    technically the interruption of the exactly 30-minute meal
 2    break as well, to be technical, the individual claim
 3    remains.
 4             THE COURT:  So your position is that the
 5    individual claim remains as it relates to the nonpayment of
 6    overtime wages as it relates to Miss Hamilton.
 7             MR. YOON:  Miss Hernandez as well.
 8             THE COURT:  Okay.  And then what else?
 9             MR. YOON:  The security check itself.  I guess
10    that was -- the Court's characterized it as the walking from
11    the time clock to the security check area and the security
12    check process.
13             THE COURT:  All right.
14             Mr. Kemple, do you have any disagreement with
15    respect to that?
16             MR. KEMPLE:  I do, Your Honor.  Those claims were
17    not in --
18             THE COURT:  Hold up.  You need to speak at the
19    lectern because the court reporter is not getting it down.
20             MR. KEMPLE:  Thanks.  Forgive me.  Sorry.
21             I do, Your Honor.  So I think I heard three added
22    claims now:  A security checkpoint individual claim,
23    interruption of 30-minute meal break claim, nonpayment of
24    wages for walking time claim.
25             So those claims were not in the pretrial
```

```
 1   submissions, they were not jury instructions on those.  I
 2   think those are, basically, attempted to be added now two
 3   weeks before trial.  So we have that fundamental objection.
 4           I also just raise a concern here in that we
 5   bifurcated the class claims from the individual claims, and
 6   the Court's ordered that -- point of clarification.  Is the
 7   12 hours for the class presentation, or is that going to be
 8   divided amongst the first trial and then the second trial?
 9           THE COURT:  My intention was 12 --
10           MR. KEMPLE:  That's it.
11           THE COURT:  That's it.
12           MR. KEMPLE:  We'll have to figure out how much
13   will go into the second trial and how much will go into the
14   class trial?
15           THE COURT:  Correct.
16           MR. KEMPLE:  Got it.
17           THE COURT:  I tend to agree with Wal-Mart on this
18   point, and I was going to talk about this in a moment.  Let
19   me just go through my notes here.  I am sorry.  I just lost
20   a page.
21       (Brief pause in the proceedings.)
22           THE COURT:  Let me just go through what I have
23   gathered from, I guess, the latest filing by Mr. Yoon.  I
24   guess it was filed in the last couple of days specifically
25   as it relates to the PAGA theory and the claims.  Forgive
```

1    me.  My computer is acting up.

2            Let's talk about -- first I would characterize it

3    as the PAGA theories relating to the uncertified claim.

4            So Wal-Mart's complaining that plaintiff is now

5    seeking to proceed with those PAGA claims that I believe

6    they represented to the Court were not at issue.  And I

7    thought the Court had already found that those claims were

8    unmanageable.  So I tend to agree with the defense on this

9    one.

10           I thought specifically the plaintiff had said that

11   these unrelated claims were irrelevant, and I think we

12   were -- at least maybe two sides of the coin were left with

13   the impression that the plaintiffs were not going to pursue

14   those theories in this case.  And so my tentative is to deny

15   the plaintiffs' attempt to pursue any PAGA penalties for

16   uncertified underlying claims.

17           Do you wish to be heard, Mr. Yoon?

18           MR. YOON:  Yes, Your Honor.  May I use the

19   lectern?

20           THE COURT:  Yes.

21           MR. YOON:  So what the plaintiffs had agreed to

22   was with respect to those claims that were decertified which

23   was the individual claims, essentially, the second meal

24   break that they weren't waived, the rest break issue with

25   that ten minute -- net ten-minute issue.

 1            Those claims that were not certified at the time

 2    of the motions for summary adjudication, at that point, the

 3    security check claim was certified.  Plaintiffs didn't

 4    characterize the non -- irrelevance of the noncertified

 5    claims in that term.

 6            This Court did in its order in the -- I don't know

 7    if it's a footnote but the text at the bottom of the order.

 8    But what the plaintiffs characterize is the specific claims

 9    which also happen to be the claims at that point that were

10    not certified, the plaintiffs are not pursuing.

11            But for the claims that were certified, namely the

12    security check, which is the issue here, that claim

13    plaintiffs always contended was part of PAGA.

14            And the elements to -- the defendant has made a

15    judicial estoppel argument, and from our point of view the

16    judicial estoppel argument doesn't hold any water because

17    there are several elements of judicial estoppel which I like

18    to go through, which is that the same party is taking two

19    positions.

20            Our position has always been that we are going to

21    seek PAGA penalties for the discouraging of meals,

22    nonpayment of overtime for AWS, 203, 226, as well as at that

23    time the certified claim for the security check and the

24    walking to the security check.

25            The second position of -- the second element is

1    the position was -- well, there was no position taken, but

2    it had to be a quasi-judicial setting, successfully

3    asserting the first position, two positions are totally

4    inconsistent.  It's not inconsistent to have a PAGA case and

5    a class.  The first provision -- the last part is the first

6    position was not taken as a result of ignorance, fraud, or

7    mistake.

8          And this doesn't mean ignorance in the sense that

9    we are ignorant but sense that we didn't know.  And at the

10   time of that statement, we didn't know that the Court was

11   intending or would ultimately decide to grant the

12   decertification as to the security check.

13         At the point when we said those statements, we

14   thought that the security check was proceeding as a class

15   and that we would have PAGA on security check.

16         With respect to the manageability for PAGA, as we

17   understand, the main issue the Court has with manageability

18   for PAGA is that the calculation of the time is unmanageable

19   without the expert report of Dr. Kriegler.

20         Our position is that the issue is -- and I think

21   the defendants confuse this issue -- but the issue is

22   whether those actions are work.

23         If those actions, the walking and the security

24   check constitute work, then it has to take some time, and

25   PAGA isn't the measure of the actual harm, that PAGA is the

1    violation of the law with respect to nonpayment --

2             THE COURT:  How are you going to calculate the

3    damages for that time?

4             MR. YOON:  I have that actually here.  It's --

5    well, the damages for the time, we don't calculate the

6    damages of the time because the Court said we can't.  But we

7    can calculate the damage for the penalty at $16,412,650.

8             THE COURT:  How do you get that figure?

9             MR. YOON:  Dr. Kriegler has in the portions of his

10   report that the Court has allowed to go forward at --

11   Exhibit Supplemental Attachment 3 to the November 14th

12   report identifies the number of pay periods in the one-year

13   statute of limitations period, which is -- a one-year

14   statute of limitations applies to PAGA for penalties.

15            And that identifies the number of people and the

16   penalty for the wage statement subclass under PAGA.  And

17   that calculation can also be used to calculate this issue

18   for the penalty for a pay period within which time was not

19   paid, such as walking to the security check and the security

20   check.

21            The penalty under Dr. Kriegler's analysis was $50

22   for the first pay period, 100 for the second pay period.

23   Under 1197.1(a)(1) the penalty that we're seeking is $100

24   for first pay period, and under (a)(2) $250 for the second

25   pay period and subsequent pay periods.

```
 1              Dr. Kriegler's analysis of the 50 and 100 can be
 2    used to calculate the 100/250 penalty for this statute
 3    because the same pay periods, and the arguments that we're
 4    making is that the issue for manageability that the Court
 5    addressed and was concerned with was that how do you measure
 6    the amount of time?  And the thing about PAGA is that it's a
 7    penalty and it's to enforce the law which is the recording
 8    of time in the payment of minimum wage.
 9              When a defendant doesn't record the time but the
10    time is owed and the time is difficult to calculate, then,
11    in lieu of the actual harm, this Court has the power to
12    impose a penalty and 75 percent will go to the
13    State of California and 25 percent will go to the aggrieved
14    employees.  And the measurement of the harm is no longer in
15    issue.  All we need to prove is the actual harm itself.
16              THE COURT:  But how do you -- I am confused
17    because I don't know how you penalize them when you don't
18    know if it took time.  Or are you just saying, because there
19    is a penalty, that's it?
20              MR. YOON:  It doesn't -- we don't have to know the
21    amount of time.  We just need to know that it took some
22    time.  And I think whether it took some time or no time is
23    based upon the physicality of the claim.
24              THE COURT:  But I thought some workers said it
25    does take time, some workers said it doesn't take time.
```

```
 1              MR. YOON:  Those workers can say all sorts -- they
 2     can also say they were hired a certain date.  They weren't
 3     hired a certain date.  There is the legal issue of hiring,
 4     and there is the colloquial version of hiring.  It took no
 5     time, and it did take time.
 6              The question isn't whether it -- if a person is
 7     walking as fast as they can through the security checkpoint
 8     and they're walking as fast as they can on a field and it
 9     takes the same time to go the same distance in both
10     instances, which we disagree with, your Honor -- but I'm
11     just making this point for purposes of argument -- we
12     fundamentally disagree that security checkpoint for any
13     particular employee takes the exact same time as a person
14     walking outside.
15              But taking that as true, assuming arguendo,
16     that -- walking in the security checkpoint we contend is
17     subject to the control of the employer.
18              So even though the walking speed arguably is the
19     same speed, what they're doing while they're walking is work
20     because they're not doing it for their benefit.  They're
21     doing it for the employer's benefit.
22              On top of that, the defendant identifies when they
23     say that that on some instances it takes this equivalent to
24     same walking speed time.  Again, defendant's argument, not
25     ours.
```

1          But they don't say for every day in my shift when

2     I went through security check for an entire pay period of

3     two weeks, every single time I went through there they took

4     no time because it just takes one instance of the

5     security -- the metal detector beeping to cause you to have

6     to interrupt your stride.

7          It just takes one instance of bringing keys with

8     you or a cell phone with you to work, one day of that pay

9     period.  It just takes one instance of any -- bring your bag

10    of chips, bring your hat, wearing a belt, wearing shoes that

11    sets off the detector -- any one of those -- or jacket.  Any

12    one of those things will require an additional bit of work

13    so that these rare instances where persons might walk

14    through security check the same pace as they would, arguably

15    outside -- we just need to show -- well, the defendant can't

16    show that this happens so consistently.

17         What they are saying is on occasion -- and they

18    picked in their excerpts one employee, two employees walking

19    through on an empty time whereas the massive employees are

20    going through security check that takes time.

21         We can address that because two reasons.  First,

22    the time it takes to go from the -- walking from the time

23    clock to security checkpoint is -- we just say is time.  The

24    time that it takes to be in the security checkpoint is just

25    time.

 1          The only issue is defendant's claim that there is

 2   some instances, some random instances, where a person walks

 3   through without breaking stride.

 4          We have two points.  First, that's still time that

 5   needs to be paid because it's subject to the control of the

 6   employer; and, two, it doesn't occur every day in the pay

 7   period.  There is no evidence that it occurs every day in a

 8   pay period.

 9          Logically, the inference is it doesn't occur every

10   day in a pay period because it's a very rare instance in the

11   first place.

12          We have testimony from asset protection people who

13   can say that the number of people who go through security

14   checkpoint in this not breaking stride-type of speed is

15   extremely rare, extreme minority; and these are the people

16   that do the security check on a daily basis.  That's their

17   job.

18          THE COURT:  Let me hear from Wal-Mart on this.

19          Mr. Kemple.

20          MR. KEMPLE:  Thank you very much, Your Honor.

21          I have got a bit of ground to cover on that.  I

22   will be as quick as I can.

23          Initially, these new noncertified PAGA claims that

24   they're adding two weeks before are not in the pretrial

25   statements, they're not in the jury instructions, none of

1    the prior submissions.

2          When we moved for summary judgment on the PAGA

3    claims, we moved on the basis that they were not manageable,

4    and this is what they said to Your Honor in court.  This is

5    not some conversation on the street.  This is to the Court.

6          Defendants' remaining arguments, which is whether

7    these claims would be manager, are moot.  Defendants'

8    attempt -- and this is because they were arguing were only

9    pursuing the class claims.  So if they're certified for

10   class treatment, it's moot whether they're unmanageable

11   because they're manageable.

12         They go on to say defendants' attempt to strike

13   the alleged unmanageable PAGA theories relating to

14   uncertified claims is irrelevant.

15         THE COURT:  I know.

16         MR. KEMPLE:  You know.

17         The Court didn't reach that question on the PAGA

18   claims, but it did reach it in the context of the other

19   claims that remain, and the Court found plaintiffs have

20   failed to provide evidence to support extrapolation from

21   individual experiences to classwide proof that is not merely

22   speculative.  Because plaintiffs lack common evidence, the

23   Court has no confidence that the jury will be able to do

24   anything but speculate.

25         THE COURT:  Slow down, Counsel, just to make sure

1    it gets on the record.

2          MR. KEMPLE:  Because plaintiffs lack common

3    evidence, the Court has no confidence that the jury will be

4    able to do anything but speculate as to the time it takes to

5    walk to the security checkpoint, wait in line, and go

6    through the security check, making this case unmanageable.

7          So they avoided the motion.  The Court found it

8    was unmanageable in the context of the remaining claims, and

9    now, after the pretrial submissions, they seek to add in

10   these claims which, by the way, would need to be bifurcated

11   from the class claims where this is not admissible evidence.

12          Further, the damages on the PAGA claim -- so apart

13   from -- it wasn't at issue.  They are judicially estopped.

14   It is -- the Court has already found it to be unmanageable.

15          In addition, they have never disclosed the PAGA

16   damages.  I just heard for the first time, apparently, a new

17   expert opinion that Mr. Kriegler is going to get up and

18   testify to PAGA damages.  Not only have they never disclosed

19   it in any disclosure in this action ever, nor is it

20   mentioned in his expert report which counsel acknowledged

21   when he started pointing to opinions on 226 and such.

22          Moreover, calculation of PAGA damages is not as

23   simple as simply looking at all the pay periods.  You have

24   to know in which pay period a particular individual suffered

25   a harm and then calculate the damages for that.

```
1              First, you have to know all those -- no opinion on
2    that -- and this is a very important point I would like to
3    make, Your Honor.
4              The evidence is -- and as this Court has already
5    found, huge numbers of people went through security with
6    zero incursion of time.  Literally, the time they would have
7    spent walking that same distance anyway.  And in fact their
8    own expert said that in six out of eight shifts the average
9    wait time was 0.00 minutes.  That's what their excluded
10   expert had to say when he looked at the subject.
11             So the question will always be -- it devolves back
12   to the question of what's the experience of each class
13   member going through security, which this Court has quite
14   rightfully found, is completely unmanageable.  So for
15   multiple reasons, these new claims should be excluded.
16             THE COURT:  Look.  My ruling still stands.  You
17   are not going to be able to pursue these penalties for
18   uncertified underlying claims.
19             Now let's move on to the next theory relating to
20   the certified theories.  Wal-Mart points out that the
21   plaintiffs haven't produced any evidence quantifying the
22   PAGA exposure or liability.  Wal-Mart, basically, states
23   that the plaintiff would need to establish each violation,
24   have to identify the aggrieved employee to which it occurred
25   and place that violation within a particular time period --
```

1    or pay period, I should say, and add up all those pay

2    periods and total that sum, and none of that has happened

3    here.

4              Again, I am inclined to agree with Wal-Mart, and

5    my tentative is to find that the plaintiffs may not pursue

6    PAGA penalties as to any of those claims either.

7              Mr. Yoon, I will give you a chance to be heard.

8              MR. YOON:  I think on this point -- let me see if

9    I have this correct.  The Court's tentative on the issue of

10   PAGA is that, basically, PAGA cannot be pursued by

11   Miss Hernandez, then.

12             THE COURT:  Correct.

13             MR. YOON:  Okay.  Would this be on the merits or

14   procedural decision?

15             THE COURT:  I am not sure I understand your

16   question.

17             MR. YOON:  It doesn't -- it's -- is the Court

18   finding on a procedural basis or on the merits basis that

19   PAGA cannot proceed by Miss Hernandez?

20             THE COURT:  Well, I think both because you haven't

21   raised this up until now, and I am not sure how I am

22   supposed to make that decision based on -- I've not seen

23   anything as it relates to this.

24             At this point, this is just something that's

25   coming up for the first time, and we're not going to have

```
 1    this trial devolve into all these theories that I am hearing
 2    for the first time.  So I guess the short answer is as to
 3    both based on the lack of anything being presented to the
 4    Court on these issues.
 5              MR. YOON:  With respect to the certified claims,
 6    the 226, the 203, nonpayment overtime for AWS, discouraging
 7    meals, these theories have corresponding penalties in
 8    Dr. Kriegler's report.
 9              Dr. Kriegler's report can be used to identify and
10    calculate the PAGA penalty to the extent the trier of fact
11    finds in favor of plaintiffs at trial.
12              If the trier of fact finds against plaintiffs at
13    trial, then I think the Court can take that as part of the
14    PAGA decision.
15              If the trier of fact finds in favor of the
16    plaintiffs at trial, then the Court can find that helpful
17    for determining PAGA.
18              In particular, one of the theories is that every
19    single meal break is impeded or discouraged.  Another one is
20    that the specific paystubs with this overtime incentive
21    issue violate the law.
22              Another one is people who are terminated with a
23    wages owed are entitled to a 203 penalty.  There is a
24    corresponding PAGA penalty, and those penalties can be is
25    based upon the statutory penalties, and the pay periods are
```

1    already calculated as part of Dr. Kriegler's 226 analysis.

2         The defendants want the damages calculations to be

3    spelled out to a specific dollar sum.  In some instances,

4    they can be.  In other instances, we can use the statutory

5    penalty, which is less than the civil penalty and the Court

6    could award that amount.  That amount has been calculated.

7         So the damages are there.  It's a little early to

8    even address it as an issue because we don't have a decision

9    by the trier of fact for the class issues because the

10   Court -- one of the reasons I think the Court granted or

11   found moot the PAGA with respect to the certified claims is

12   because the certified claims in large part are going to

13   address the PAGA claims.

14        And we have a separate issue for calculating that

15   damage, but in large part it's in the interest -- there is a

16   catchall of the Court's ability and discretion to reduce the

17   civil penalty to a lesser amount.

18        We have evidence of the civil penalties available

19   in the record.  We can do those calculations for the Court

20   at that portion of trial.  All that needs to be known really

21   first is the violations from the trier of fact.  Then with

22   that we can present that or maybe the Court will find that

23   less persuasive and give a lesser amount.

24        The Court has the discretion at that point to

25   choose the PAGA penalty.  The Court can issue no PAGA

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  penalty, though we would find that unusual, but if there was

2  a finding in favor of the plaintiffs and the class at the

3  class trial, the Court could theoretically say, you know, I

4  don't think there is any PAGA penalty warranted here.

5  That's within the Court's discretion, but it's getting ahead

6  of ourselves to get to that point now.

7          THE COURT:  All right.  Let me hear from

8  Mr. Kemple.

9          MR. KEMPLE:  Thank you, Your Honor.

10          So we'll do this, quote, at trial.  This case was

11  filed, I believe, in 2015.  It might have been 2016.

12          This is literally the first time, two weeks before

13  trial, we have heard any of this.  There is no disclosure on

14  PAGA damages.  There is no expert that's ever been proffered

15  on PAGA damages.

16          I hear an argument to cobble together from other

17  expert opinions largely in part -- or in part excluded that

18  he'll somehow be able to come up with something concerning

19  PAGA as well that we've never seen.

20          I heard a $16.41 million figure today.  We have

21  never heard of this before.  None of this has been

22  disclosed.  Calculation of PAGA damages is a different

23  animal.  You have to peg it to the pay period at issue, the

24  person at issue.  This should all be excluded.  I don't know

25  how we could be charged with defending against this.

```
 1              THE COURT:  The ruling stands.  I just don't see
 2   it at this point.  So plaintiffs can't pursue the PAGA
 3   claims in this matter.
 4              The next area that was raised in the filing with
 5   respect to -- I guess Wal-Mart's argument that the meal --
 6   the objective meal dissuasion claim should be decertified.
 7              On this point, Wal-Mart is contending that the
 8   plaintiffs had previously represented that they were seeking
 9   a -- to certifying the objective theory of dissuasion that
10   could be put to a jury without the need for any
11   individualized testimony or evidence.
12              Wal-Mart says the plaintiffs did this to avoid the
13   varied experience of what it takes to go through the
14   security line.  Plaintiffs want to bring this evidence in,
15   it appears, through their certified objective meal break
16   dissuasion claim.
17              I tend to agree with the plaintiffs on this one.
18   I think it is relevant to help the jury understand the scope
19   of the persuasion.
20              The defense, through their cross-examination, will
21   be able to exploit any weaknesses in the witnesses'
22   testimony, but I am inclined to agree with the plaintiff on
23   this.
24              Mr. Kemple, do you wish to be heard?
25              MR. KEMPLE:  I do, Your Honor.  Thank you very
```

1    much.

2         So sort of flexing in response to the Court's

3    decision, plaintiffs have now moved a proof set over to this

4    dissuasion claim.  Before they were going to proceed by

5    expert testimony which was excluded.  So this is a new trial

6    plan that they are putting forward two weeks before -- and

7    that's an important point I will return to here that we need

8    to be able to address.

9         If they are now going to prove the size of the

10   mountain, the scope of dissuasion, with the same evidence

11   set that this Court just found was unmanageable, it remains

12   unmanageable, speculative -- and there was the other term

13   that the Court used.

14        What they're trying to do again is proceed on a

15   class trial by offering individual testimony that would all

16   have to be subject to cross-examination and mini trials.

17   There are legions of case law holding that that is the

18   antithesis of a class trial, but literally that is what

19   plaintiffs propose to do.

20        They will just use a handful of anecdotal

21   evidences to demonstrate the size of the mountain supposedly

22   that people have to climb, notwithstanding that so many

23   people simply go through with no time whatsoever.

24        THE COURT:  But shouldn't the plaintiff be able to

25   show or at least try to show through witnesses how the

```
 1   security process works?
 2              MR. KEMPLE:  Only if it's manageable under class
 3   criteria, which it is not as this Court has found.  This is
 4   a class action trial.  This is exactly the proof set the
 5   Court has found quite correctly.
 6              THE COURT:  But then -- I mean, so what would the
 7   trial look like?  Would there be no description of what the
 8   process is to go through security checkpoint?  The jury
 9   would need to know that, wouldn't they?
10              MR. KEMPLE:  That's the problem, and that's why we
11   respectfully believe this must be decertified.  This is
12   exactly -- the Court has already ruled on this.
13              This proof set is not subject to class proof,
14   common proof.  So, yeah, what they are trying to do is
15   something you can't do on a class action, which is just put
16   on a bunch of individual cherry-picked testimony, a bunch of
17   individual cherry-picked video that the Court has found that
18   you can't do.
19              It will just devolve to the classic mini trial,
20   and what's worse is, if you think about it -- so the expert
21   is not allowed to extrapolate from this stuff.  So now we
22   are just going to do something less, just put on a handful
23   of stuff and have the jury do this?  That's exactly what all
24   the case law holds cannot move forward in a classwide basis.
25              We very respectfully disagree with the notion of
```

 1    objective dissuasion.  The legislature, when they want to

 2    use objective standards, they know how to do it.  In fact,

 3    in the Labor Code there is the reasonable person standard in

 4    many sections.  This is not one of them.

 5            We respectfully disagree with it.  But if their

 6    proof on this is going to be the very individualized stuff

 7    that the Court has already found -- I mean, plaintiffs have

 8    failed to provide any evidence to support extrapolation from

 9    individual experiences to classwide proof that is not merely

10    speculative.

11            Because plaintiffs lack common evidence, the Court

12    has no confidence that the jury will be able to do anything

13    but speculate as to the time it takes to walk through the

14    security checkpoint.  That's exactly now what they are

15    trying to do, and that cannot stand.

16            So we would request that this be decertified.  Now

17    that they have shifted their trial plan to something new,

18    which brings me back to my original point, if we are going

19    to have a shift in trial plan, we need to have an

20    opportunity here to address that.

21            No expert -- in fact, plaintiffs admitted that in

22    order to have statistically significant testimony, by their

23    math you need 350 people to take the stand.  They're

24    proposing at most they have got 23 putative class -- this

25    needs to be rejected, Your Honor.  This is exactly what the

1   Court has already found is not amenable to class treatment.

2   They can't now import it into another cause of action two

3   weeks before trial.

4           THE COURT:  Mr. Yoon, let's hear from you.

5           MR. YOON:  In Tyson versus Bouaphakeo the Supreme

6   Court approved the trial where it was a donning and doffing

7   case, and in the dissent the dissent summarized the majority

8   point of view which said:

9                   (Reading:)  In the majority's view,

10                  Mt. Clemens established that, if the employer

11                  did not record the time the employees spent on

12                  compensable work, employees can use

13                  representative evidence --

14                  THE COURT:  Slow down.

15                  MR. YOON:  Sorry, when I read --

16                  (Reading:)  (1) if the employer did

17                  not record the time that employees spent on

18                  compensable work, employees can use

19                  representative evidence to establish the

20                  employer's liability; and (2) employees can

21                  use the experiences of a subset of employees

22                  to establish the experience of all of them if

23                  each employee worked in the same facility, did

24                  similar work, and was paid under the same

25                  policy.

 1          First, there was no measure of time for the

 2    security checks, which is the issue for whether they

 3    dissuade.  Actual word -- the Court's ruling will -- the

 4    actual terminology.  But -- so that part is agreed that that

 5    part is unpaid, and there is no record.

 6          Number 2, we can use the experience of a subset if

 7    they all work in the same facility, which they did, unless I

 8    am hearing some new facts.  They did similar work.  The

 9    security check is the same for everybody unless you are a

10    manager which is outside of our class.

11          So they all had to go through security check, and

12    they're all paid under the same policy, which is they

13    weren't paid.  So they're all not paid under the same

14    policy.

15          Under the defendants' -- it cannot stand argument,

16    there is no class action that could ever stand.  Defendants

17    say that with respect to this is the first time -- the Court

18    certified this issue at oral argument, after oral argument,

19    and the issue then was that we would use the same evidence

20    that showed the security check process to show that the

21    security check dissuades the class members from taking a

22    meal break or interferes with their rights to leave the

23    premises.

24          We still are going to use that same evidence, but

25    we'll have less of it because we don't -- we're not

```
 1    measuring the time.  We're just showing the process.  The
 2    defendants would prefer this trial to be just their
 3    witnesses.
 4            The defendants aren't excluding their managers
 5    from testifying about the security check.  What it will be
 6    will be a trial of defendants' witnesses testifying from
 7    Wal-Mart's point of view anecdotally and no evidence by
 8    plaintiffs.
 9            THE COURT:  All right.  Thank you, Mr. Yoon.
10            Like I said, I have heard the arguments on both
11    side.
12            Mr. Kemple, if you absolutely feel you need to say
13    something, go ahead.
14            MR. KEMPLE:  Tyson, there was an expert who
15    testified that's not the case here -- it's an FLSA case.
16    This Court has already distinguished Tyson.  We're not
17    saying you can never do a survey -- you understand.
18            THE COURT:  I understand.  But I do think on
19    balance the witnesses can describe generally what the
20    security process is.  But I'm not going to allow them to get
21    into the time issue.  So I am going to allow those witnesses
22    to testify.
23            Let's take a five-minute recess to give our
24    court reporter a break, and we'll come back and deal with
25    the rest of this.
```

```
 1              THE CLERK:  All rise.  This Court is in recess.

 2         (Recess taken 9:59 a.m. to 10:11 a.m.)

 3         (The Court heard an unrelated matter.)

 4              THE CLERK:  Recalling CV 17-1415-AB, Chelsea

 5    Hamilton versus Wal-Mart Stores, Inc., e al.

 6              THE COURT:  Everyone is back.

 7              So the next matter I wanted to discuss in that

 8    memo I guess the defendants' contention that the plaintiffs,

 9    Miss Hamilton and Miss Hernandez, are pursuing individual

10    claims that were not in the initial pretrial filings.

11              Again, I'm struggling only because it does appear

12    that that's the case.  It just seems like the cases are on

13    the shifting sands, and it doesn't -- it does seem that the

14    plaintiffs are pursuing claims that were not in the initial

15    pretrial filings.

16              So, Mr. Yoon, I guess I would like you to be heard

17    as it relates to that.  It seems like you are adding these

18    claims for off the clock work, unpaid overtime to the final

19    pretrial conference order after you had said that you were

20    not going to pursue these claims in meet and confer.  What

21    am I missing here?

22              MR. YOON:  I'm not familiar with that last point,

23    Your Honor.  Our position has been that the case is

24    certified and that we should proceed with the certified

25    case.
```

1    We filed the pretrial conference documents based

2    upon that.  Subsequent to filing the pretrial conference

3    documents, the Court issued the motion for summary -- issued

4    its rulings, and that changed the character of the case.

5    What the defendant is suggesting here is that a

6    class certification will serve to deny the plaintiffs their

7    substantive rights under these points that were originally

8    certified and now decertified because the plaintiffs wanted

9    to proceed with the security check for themselves and the

10   class -- they were appointed class representatives to

11   proceed for themselves and the class.  Their proof for

12   themselves would be proof for the class, and they would

13   receive a payment just like every other class member because

14   that's what they were, representatives as well as class

15   members.

16   Then by decertification they lose their right to

17   proceed, a nonsubstantive right, to proceed for the class.

18   But the defendant's now suggesting that that denial of a

19   nonsubstantive right, which is the right to proceed as a

20   class representative, is now a denial of their due process

21   right to a trial.  So now they have lost their right to a

22   trial for a claim they properly pled because they lost

23   certification and --

24   THE COURT:  I guess the question I will ask is did

25   you confirm -- or at least Wal-Mart is saying you confirmed

```
 1    during a meet and confer effort that you were not going to

 2    pursue these claims.  Is that incorrect?

 3              MR. YOON:  We were always -- we filed class

 4    certification motion to pursue these claims.

 5              THE COURT:  All right.  Let me hear from

 6    Mr. Kemple.

 7              MR. KEMPLE:  I believe it's undisputed,

 8    Your Honor, the pretrial conference does not contain these

 9    claims.  I would be surprised if I heard a dispute on that.

10              It was represented to us that, to the extent they

11    weren't certified, these claims were not going to be pursued

12    by the individuals.

13              I also note that, consistent with all of that,

14    again, we have never received any disclosure of any sort as

15    to what they are claiming on these -- what I thought had

16    been excluded, but we're now talking about -- what I think

17    will be excluded -- I hope will be excluded claims.  We

18    don't know what we're up against here.

19              THE COURT:  Part of it, I am just going to tell

20    you, Mr. Kemple.  I'm not sure you are assisting in this

21    matter by just insisting -- let me rephrase it.  I'm not

22    sure you are helping things by insisting that the only lines

23    of communication you are going to have with opposing counsel

24    is in writing.

25              MR. KEMPLE:  I have never insisted on that.
```

```
 1              THE COURT:  It sure seems like it based on the

 2    filings I have seen.  It's question, answer.  And look.  I

 3    get it.  It's frustrating because it does seem like the

 4    plaintiff is shifting.  But at some point you guys are going

 5    to have to sit in a room and try to hash some of this out.

 6              MR. KEMPLE:  Fair.  And, Your Honor, before we

 7    filed our pretrial conference reports, we spent hours and

 8    hours and hours going over all this stuff in person, on

 9    phone, and in written exchanges.  And at that time, the

10    representations, Your Honor, just inquired of were made to

11    us.

12              This re-inventing of new individual claims came

13    later when I -- in response to this Court's order, I wrote a

14    very detailed, very constructive proposal as to what I think

15    should be at issue in this case and where we are and can you

16    answer this and that and such.

17              My questions like, "Should we revisit disputed

18    facts" was met with literally, "No.  We proposed disputed

19    facts already."  We're not the ones not willing to talk.

20              And when these new claims were introduced, yes, I

21    did say, "Please confirm that you are not pursuing these."

22              And they said, "Oh, no, we are."

23              And I wrote back and said, "Well, it's not

24    disclosed" -- all the points I am making here.

25              So this notion that we have not been communicating
```

```
 1   is just not accurate.  But I think it's also we certainly
 2   communicated on the germane topics concerning these
 3   individual claims quite clearly, and we have a disagreement,
 4   but in the end, look.  The pretrial conference report that
 5   was filed with this court pursuant to deadlines after
 6   exhaustive meetings did not have this.  Their jury
 7   instructions do not have any of this in it.
 8             And now two weeks before trial -- and we never got
 9   disclosures on any of this stuff.  And now two weeks before
10   trial a rabbit is coming out of the hat.  It's just --
11   respectfully, I believe that's inappropriate and, therefore,
12   they should be excluded.
13             THE COURT:  Mr. Yoon, anything you want to say in
14   response?
15             MR. YOON:  In these individual claims, the
16   plaintiffs are going to say what happened to them.  It's
17   really not that difficult.  It's individual trial.  They're
18   often done at the Labor Commissioner's office in an hour.
19             THE COURT:  I don't think that's the point.  The
20   point is this is being sprung on -- for the first time, and
21   I think there is a problem with that.
22             MR. YOON:  Well, I just -- I disagree.  It's in
23   the pleading.  It's in the final pretrial conference order
24   as a class claim, but at the time it was a class claim.
25             We were seeking 1194 for the security check for
```

1    plaintiffs and the class, not just the class.  Because if we

2    sought it just for the class, we wouldn't have a class

3    action because we wouldn't have a representative plaintiff.

4    So we are seeking it for the plaintiffs and the class.  The

5    class is decertified, but the plaintiffs' claims now just

6    remain.

7            It's the same jury instruction.  It's just now

8    instead of the subclass it's their names.  We have tried to

9    work together on new documents, but we -- I have not been

10   able to get that.

11           With respect to the stipulations, we had a lot of

12   stipulations that I thought we agreed, and in the end the

13   defendants backed out on all of them.  So now we are trying

14   to get back on track on stipulations, but it's hard to do

15   that because the only documents to record stipulations of

16   fact is the joint final pretrial conference order.

17           But in any case, all we're saying is we've always

18   sought these claims for the plaintiffs as class

19   representatives.  And just because the class is now

20   decertified doesn't mean they have given up their individual

21   claim.  Their individual claim is part and parcel of the

22   class claim.

23           THE COURT:  Thank you, Mr. Yoon.  Respectfully, I

24   disagree.  I think at this stage I am going to prohibit

25   Miss Hamilton and Miss Hernandez from pursuing the claims

```
 1    for off-the-clock work and unpaid overtime in their

 2    individual capacities.

 3           Let's move on to the motions in limine.  Again,

 4    this is, in my opinion, a sign of the unproductive nature of

 5    the relationship.  We've have had a total of 12 motions in

 6    limine, many of which I think either could have been

 7    resolved during a meaningful meet and confer or just

 8    premature.  I have issued tentative rulings as it relates to

 9    the motions in limine.

10           Does either side wish to be heard as it relates to

11    the motions in limine?

12           Mr. Yoon?

13           MR. YOON:  My co-counsel, Mr. Sam Cleaver, will.

14           THE COURT:  Mr. Cleaver.  If you could just

15    identify which motion so I can direct -- focus my attention.

16    And if you could, why don't you step to the lectern just to

17    make sure you can be heard.  And feel free -- the lectern

18    should be able to go up and down if you need it.

19           MR. CLEAVER:  Okay.  Thank you, Your Honor.  Do

20    you want -- I'm not -- I have divided them up with Mr. Yoon.

21    Do you want me to go through them consecutively and do the

22    ones --

23           THE COURT:  Whatever ones you want to go through.

24    That's fine with me.  Just tell me which ones we're talking

25    about.
```

```
 1                MR. CLEAVER:  Number 1, Plaintiffs' Number 1,
 2    Plaintiffs' Number 2 --
 3                THE COURT:  Let's just go through
 4    Plaintiffs' Number 1.  One by one.
 5                MR. CLEAVER:  Your Honor, Plaintiffs' Number 1 --
 6    I would like to make two points.  One is that Your Honor
 7    noted in the tentative that we don't know exactly what the
 8    evidence is going to be at this point.
 9                However, we -- with regard to Miss Hamilton, we do
10    know because in -- at least in a class cert motion,
11    defendants present evidence that they said show that she was
12    terminated for gross misconduct.
13                And that evidence, which I don't see how they
14    can -- how they got to that -- how they made that
15    determination which -- strongly dispute that she was
16    terminated for gross misconduct since she had been on leave
17    for several months.
18                She had supposedly resigned a month before that
19    happened, and they had a note from June from her supervisor
20    that said she had been one of the top pickers.  That's all
21    in my declaration.
22                So we know what evidence they are going to present
23    with regard to Miss Hamilton.
24                THE COURT:  So the concern is they are going to
25    present evidence that Miss Hamilton was terminated for gross
```

```
 1    misconduct.
 2              MR. CLEAVER:  Right.  And in response, we'll have
 3    to go down the road of showing why she was --
 4              THE COURT:  Let me stop you real quick.
 5              Mr. Kemple, do you intend to introduce evidence
 6    that Miss Hamilton was terminated for gross misconduct?
 7              MR. KEMPLE:  Depending upon how the evidence comes
 8    in, quite possibly.  And the point is bias.  If you think
 9    about it, what plaintiffs are now trying to do is
10    extrapolate from a handful of people to 5,000 people.
11              THE COURT:  Hold on.  Let's just -- if you can
12    help me out.
13              MR. KEMPLE:  Sure.
14              THE COURT:  When you say depending on what comes
15    out at trial, what do you mean by that, and what is the
16    evidence that Miss Hamilton was terminated for gross
17    misconduct?  What does that entail?
18              MR. KEMPLE:  I don't have it at the tip of my
19    fingers exactly why.  The relevance here is she testified
20    that she felt that she had been treated unfairly by
21    Wal-Mart.  Obviously, and particularly a lead plaintiff,
22    when they want to get up and testify to things, we should
23    have the opportunity --
24              THE COURT:  I get that.  But I want to know is it
25    admissible evidence?  That's what I'm trying to understand.
```

```
 1   Are you just going to say, "Isn't it true, ma'am, you were
 2   terminated for gross misconduct?"  Is there some
 3   documentation to support that?  Was there some investigation
 4   underlying that to make that finding?  I am trying to
 5   understand what the evidence will be.
 6              MR. KEMPLE:  The evidence is her testimony.
 7              THE COURT:  Whose testimony?
 8              MR. KEMPLE:  Miss Hamilton's testimony.
 9              THE COURT:  Just asking her --
10              MR. KEMPLE:  Do you feel you were treated unfairly
11   by Wal-Mart in connection with your termination?  Her answer
12   is "yes."  That's the evidence of bias, Your Honor.
13              THE COURT:  So your response is to ask her, "Isn't
14   it true, ma'am, you were terminated for gross misconduct?"
15   Is that --
16              MR. KEMPLE:  No.  What we believe is relevant,
17   Your Honor, is her feeling that she was treated unfairly.
18   That's what's relevant is the bias that she harbors against
19   my client.
20              THE COURT:  Maybe we are talking past each other
21   because I am trying to understand.  I thought the plaintiff
22   said their concern is that there is going to be some area of
23   inquiry of Miss Hamilton as to the fact that she was
24   terminated for gross misconduct.  Are you going to ask
25   questions about that?
```

```
 1          MR. KEMPLE:  May I just make one sentence before I
 2   give you the direct answer because it's important.
 3          THE COURT:  Okay.
 4          MR. KEMPLE:  We didn't know what this motion in
 5   limine was about.
 6          THE COURT:  I get it.  You now answer my question.
 7          MR. KEMPLE:  I am trying, and I don't know is the
 8   answer to my question.
 9          THE COURT:  Do you have any evidence that
10   Miss Hamilton was terminated for gross misconduct?
11          MR. KEMPLE:  We do.
12          THE COURT:  Okay.  What is that evidence?  If you
13   don't know, just tell me.
14          MR. KEMPLE:  I don't know.  I would defer to my
15   co-counsel.
16          THE COURT:  Welcome to the party, Counsel.  Come
17   on in and let us know.
18          MR. KEMPLE:  If you know.
19          THE COURT:  If you know.  I am just trying to
20   understand.  I get the notion that this may be sprung on the
21   first time, but I want to understand what are we talking
22   about?  We are a few weeks before trial.  I think someone
23   should have some sense of what that answer is.
24          MR. GERSHMAN:  Thank you, Your Honor.  Matthew
25   Gershman for the defendants.
```

1          Standing here today what I do know is this was not

2    pulled out of whole cloth.  There is exit interview

3    documentation stating this as the basis.  Now, they contend

4    that it's wrong, but what else is new; right?

5          THE COURT:  Right.  But is there -- so there is

6    some documentation that says terminated for gross

7    misconduct, number one.  And, again, if you don't know

8    that's fine.  Was there some underlying investigation that

9    supported that finding?

10         MR. GERSHMAN:  The answer to your first question

11   is yes, there is a document.  It's called an exit interview

12   form, and that's what it states.

13         THE COURT:  Okay.

14         MR. GERSHMAN:  Your second question, I don't know

15   that answer standing here.

16         THE COURT:  All right.  So the motion is denied

17   without prejudice.  We'll deal with it when it comes to

18   trial, but I am going to let Wal-Mart know you need to have

19   your ducks in order as it relates to any evidence of gross

20   misconduct.

21         I am not just going to let you ask the question.

22   I am going to need to see some documentation to support that

23   before I am inclined to have any sort of testimony or

24   questioning about gross misconduct because of the

25   inflammatory nature of that.

```
 1              MR. KEMPLE:  Your Honor, just to set aside some

 2   concern, the point is not to get into whether she was

 3   correctly or incorrectly terminated.  The germane point, as

 4   we see it, is she feels she was and she holds a grudge

 5   against Wal-Mart.

 6              THE COURT:  But you can ask.

 7              Well, there is no dispute she was terminated, is

 8   there, Counsel?

 9              MR. CLEAVER:  Yes, there is, Your Honor.

10              THE COURT:  There is a dispute.

11              MR. CLEAVER:  There is.

12              THE COURT:  Tell me what that dispute is.

13              MR. CLEAVER:  I will go back to the podium.

14              THE COURT:  Please.

15              MR. CLEAVER:  First, to answer your question, the

16   dispute is that she resigned as part of her

17   Workers' Compensation settlement on June -- in early June

18   2017, before they terminated her for, quote, gross

19   misconduct.

20              THE COURT:  That's interesting.  Are you saying

21   you have documentation showing there was a resignation

22   before this finding?

23              MR. CLEAVER:  Yes, Your Honor.  It's attached to

24   my declaration as Exhibit C.

25              THE COURT:  Okay.  So you contest that she was
```

```
 1   terminated.

 2              MR. CLEAVER:  No, she wasn't terminated.

 3              THE COURT:  Right.  I'm saying you contest that

 4   she was terminated --

 5              MR. CLEAVER:  And we contest that she engaged in

 6   any kind of misconduct.  The entity that engaged in

 7   misconduct here is Wal-Mart.  They terminated her after she

 8   was disabled and after she filed a lawsuit.

 9              Also in response to Mr. Kemple's point that he

10   didn't know what this motion was about --

11              THE COURT:  I don't care about that.  We have got

12   a lot of other things we need to deal with.

13              All right.  So here I am just letting the parties

14   know.  From Wal-Mart's perspective, if there is a dispute as

15   to whether or not she was terminated versus she resigned or

16   parted ways pursuant to the settlement, I am going to need

17   to have documentation from both sides, actually, as it

18   relates to that; and we'll deal with it at trial.

19              Wal-Mart can inquire certainly as it relates to

20   any bias the witness may have because -- as it relates to

21   whether she was -- if she feels she was treated unfairly,

22   fine.  If that's all you want to go through, then all of

23   this is moot.

24              But if there is going to be testimony or inquiry

25   about termination versus not, I am going to need that
```

 1   documentation on the eve of trial, and we'll discuss it that

 2   first evening.

 3          Are we clear on that?

 4          MR. KEMPLE:  Thank you.

 5          MR. CLEAVER:  Yes, Your Honor.

 6          THE COURT:  Great.

 7          Next motion.

 8          MR. CLEAVER:  Motion Number 2, Your Honor, exclude

 9   convictions.  We're concerned that Wal-Mart -- again

10   Your Honor asked -- there is no evidence before us, but what

11   we're a little bit concerned about is Wal-Mart has already

12   shown that they're willing to take an expunged conviction

13   that has nothing to do with the case --

14          THE COURT:  Let me stop you there.

15          Mr. Kemple, do you intend to offer any evidence of

16   any convictions, whole or in part, as it relates to any of

17   plaintiffs' witnesses?

18          MR. KEMPLE:  The conviction that was just

19   referenced we expressly stated both before the motion and in

20   our opposition we are not seeking to introduce.

21          THE COURT:  Are there any other convictions?

22          MR. KEMPLE:  I don't know.  It depends on who they

23   call.  Have I done a full cross-examination analysis for

24   whoever they call?  I have not done that yet.

25          I may cross-examine if I find a felony conviction

```
 1   for wire fraud, yeah.  I don't know if it exists yet, to be
 2   honest with you.
 3          THE COURT:  Okay.  Trial is March the 2nd -- April
 4   the 2nd.
 5          MR. KEMPLE:  We have a lot going on, Your Honor.
 6   We're still trying to figure out what the claims are, and
 7   we've resolved that, and I thank you very much.
 8          THE COURT:  Okay.  So it sounds like, Mr. Cleaver,
 9   as it relates to the expunged conviction, that's not going
10   to be an issue.
11          If Wal-Mart intends to introduce evidence of
12   felony convictions on the day of trial, this Court needs to
13   know what convictions and what witnesses they intend to
14   introduce those convictions -- what witnesses and what
15   convictions they intend to introduce the convictions
16   relative to that witness.
17          Mr. Cleaver.
18          MR. CLEAVER:  Does that also apply to arrests and
19   the arrest records and such?
20          THE COURT:  I would certainly hope that Wal-Mart
21   is not going to try to introduce evidence of arrests.  But
22   we'll cross that bridge if and when we need to.  But I think
23   most lawyers of any sort of substance would know that an
24   arrest, unless it's an arrest for filing a false PAGA claim
25   at another big box store, is not going to come in.
```

```
 1              What's the next motion, Mr. Cleaver?

 2              MR. CLEAVER:  Your Honor, Motion in Limine

 3    Number 3, to exclude testimony that workers liked working

 4    the AWS.

 5              THE COURT:  Yes.

 6              MR. CLEAVER:  The concern is Wal-Mart is trying to

 7    create a waiver.  That's not allowed under the law.

 8    California Labor Code Section 1194(a) says that -- I can

 9    quote it to you directly.

10              THE COURT:  If you are going to quote, just read

11    slowly so we can get this all down.

12              MR. CLEAVER:  With regard -- it regards recovery

13    by an employee of unpaid minimum wage --

14              THE COURT:  You're starting off on a bad foot.

15    Slow down.

16              MR. CLEAVER:  California Labor Code Section 1194

17    concerning recovery by an employee of unpaid balance of

18    minimum wage or overtime compensation.  Section (a), says --

19                   (Reading:)  Notwithstanding any

20              agreement to work for a lesser wage, any

21              employee receiving less than legal minimum

22              wage for the legal overtime compensation is --

23              I am paraphrasing -- is entitled to recover in

24              a civil action the unpaid balance.

25              So doesn't matter if they have an agreement or
```

 1    not.  That's separate and apart from the AWS.

 2            What they are trying to say, is if somebody didn't

 3    vote in the AWS, if they were hired a year later or six

 4    months later and they didn't participate, as long as they

 5    liked working the AWS and they didn't have any problem with

 6    it, that's okay.

 7            But that's not what the law says.  The law says it

 8    doesn't matter if the employee agrees or not or is happy or

 9    not.  You still have to pay them the overtime compensation

10    they are due.

11            Understand that the Court is concerned that there

12    is this issue of did they vote to repeal the AWS?

13    Understand that, but they can ask that question without

14    eliciting testimony that the workers would have chosen to

15    work on the AWS no matter what or that they liked working on

16    the AWS.

17            THE COURT:  Help me understand a little clearer.

18    How would you envision that coming out?  Asking whether or

19    not they requested the vote or --

20            MR. CLEAVER:  I would see them asking questions

21    about did you like working four days a week?  Did you like

22    working three days a week?  Did you like working 11 hours in

23    one shift?  Was that better for you?  Which -- you know,

24    questions like that.

25            Did you mind not getting overtime as long as you

```
 1    were getting 40 hours, things like that.

 2              That sets up an exception that doesn't exist in

 3    the Labor Code, and the Labor Code specifically prohibits

 4    that, if an employee says it's okay, if the employee is not

 5    bothered by you breaking the law, then it's okay to break

 6    the law.  It's kind of like a no harm, no foul exception

 7    that they are trying to create.

 8              THE COURT:  But to the extent you have any

 9    concerns on this, don't the jury instructions resolve that?

10    The law is what the law is; right?

11              MR. CLEAVER:  Right.  But whether -- but they're

12    trying to elicit testimony that there is somehow this

13    implied agreement that, if an employee doesn't care -- if

14    the employee would have voted for the AWS any way, then it

15    doesn't matter whether the AWS was properly adopted or

16    properly implemented.  It just doesn't matter because the

17    employees wanted it anyway; right?

18              So you are not allowed to say it.  It's like

19    saying, "It doesn't matter I get paid minimum wage.  My

20    employees didn't care about that.  They were happy to work

21    for less than minimum wage."  The employee being happy

22    doesn't let you off the hook for following the law.

23              THE COURT:  Let me hear from Mr. Kemple on this,

24    or whomever from the defense side.

25              MR. KEMPLE:  Thank you, Your Honor.
```

```
 1              I can assure you, Your Honor, that we are not

 2   arguing, never would argue, never have argued that we are

 3   exempt from overtime laws because someone liked their work.

 4   That's never been suggested in any way, shape, or form.

 5              By the way, we offered a stipulation of fact that

 6   was rejected which was that no one ever requested a

 7   subsequent revote thereafter.

 8              And as the -- frankly, my point here is for all

 9   the reasons the Court stated in denying this motion in its

10   tentative ruling, that's exactly why it should be denied.

11              This is relevant particularly given the

12   stipulations the fact that plaintiff have refused to provide

13   us.  It's also relevant to the damage inquiry or the penalty

14   inquiry, all the points the Court made.  I think I can

15   submit on that.

16              THE COURT:  What's the next motion, Mr. Cleaver?

17              MR. CLEAVER:  That's all for me, Your Honor.

18              THE COURT:  Mr. Yoon, welcome back.

19              MR. YOON:  I am glad to be here.

20              Like to be heard on Number 5, which is the

21   spoliation.  I understand the Court's issue.  I understand

22   the Court's tentative.  What we would like to focus on is

23   there also a lesser included instruction that we sought,

24   which is that -- the lesser evidence instruction.

25              And the key thing here I think that is pretty -- I
```

1   think Wal-Mart highlights this issue which is this 30-day

2   rolling period that they maintain this video.

3        The date of -- and I think the -- this is the

4   important part we want to argue is that the date of that

5   letter which this Court is relying upon, those

6   January 24th -- exactly 30 days after Christmas -- and the

7   part of the video, the video cuts off on 11/7, November 7th,

8   just before the peak season.

9        The video that we have does not have the period of

10  time the employees -- everybody says is the peak.  This is a

11  fulfillment center.  They deliver products directly to

12  consumers.  The peak season for them is, everybody knows, is

13  Thanksgiving to Christmas.

14       So that letter comes in right after Christmas, and

15  the video was cut November 7th.  That was the end cut time,

16  end cut date.  So the period from November 7th to Christmas

17  should have been there, wasn't, they had it.  You would

18  think at least a lesser instruction should be allowed for

19  the jury to understand why it's not --

20       THE COURT:  The lesser instruction is what?  I

21  would just like to hear what that would look like.  I just

22  don't see this -- I will just say it -- conspiracy theory

23  to, sort of, destroy all this evidence.  It's hard for me to

24  get my head around this.

25       MR. YOON:  The lesser instruction is this.  It's

```
 1   fairly brief, CACI 203.
 2                  (Reading:)  You may consider the
 3             ability of each party to produce evidence.  If
 4             a party has provided weaker evidence when it
 5             could have provided stronger evidence, you may
 6             distrust the weaker evidence.
 7             And the weaker evidence is outside the peak, off
 8   peak; and the stronger evidence is peak.  That's really what
 9   it is.
10             And I think the timing of it is extremely
11   suspicious.  And in terms of spoliation, which is the --
12   which is a little bit different, the standard in
13   California -- I'm sorry, the standard in the Ninth Circuit
14   is not the standard in other circuits.
15             Here it's simply negligence.  I think I have to
16   emphasize that we're not trying to get into the --
17   obviously, we believe there is more, but the standard we
18   need to show is just negligence.
19             There is a lesser included -- I'm sorry.  There is
20   a lesser instruction -- sorry.  And I think at least that
21   one, it is sort of a jury instruction question, but on terms
22   of our ability to argue -- we want to argue to the jury, you
23   know, you are looking at off peak security checks.  You're
24   not looking at peak security checks in terms of the burden.
25             THE COURT:  All right.
```

1           Mr. Kemple, anything you wish to say in response?

2           MR. KEMPLE:  I will defer to Mr. Gershman.

3           THE COURT:  Mr. Gershman, go ahead.

4           MR. GERSHMAN:  Thank you, Your Honor, I will be

5     brief because I agree with everything in Your Honor's

6     tentative.  And what stands out to me about what you just

7     heard is none of that addresses the problems with their

8     motion that Your Honor has stated in the tentative.

9           So the procedural defects, no meet and confer.

10    Literally no evidence in support of their motion.  I have

11    never seen a broad sweeping sanctions motion or even a small

12    sweeping sanctions motion where there is not a single

13    declaration, exhibit, affidavit, no evidence whatsoever.

14          Substantively, it's all ad hominem.  They want to

15    put on to the jury a whole discovery dispute where they are

16    going to attack prior counsel, current counsel.  It's all

17    ad hominem, and this Court considered it actually in depth.

18    It's stated in the order regarding the experts and rejected

19    all these ad hominem attacks.  I don't have to quote them

20    back to Your Honor.

21          Regarding the so-called lesser evidence

22    instruction, the CACI 203 -- we explained this in our

23    opposition to the motion -- is based expressly -- this is

24    all in the annotations -- based expressly on California

25    Evidence Code statute which is not in the Federal Rules of

 1    Evidence.

 2              That instruction doesn't apply here, though we can

 3    take it up at the charge conference, but the point here is

 4    they can't just launch into airing what is a discovery

 5    dispute before the jury.

 6              THE COURT:  Okay.  Thank you, Counsel.

 7              For the plaintiffs' side, any other motions you

 8    wish to address?

 9              MR. YOON:  On Number 6's clarification -- I think

10    this is what the Court is saying -- but Mr. Alvarado could

11    explain his prior testimony -- the motion in limine was

12    about the 30(b)(6) testimony.  And Mr. Alvarado was a

13    30(b)(6) witness.

14              He made some statements, and it looks like from

15    the Court's tentative that he can explain those statements.

16    Our motion in limine is really focused on other people

17    explaining his statements that aren't the designated

18    30(b)(6) witness.

19              He can explain himself, but other people can't

20    explain for him what he meant because they aren't the

21    designated 30(b)(6) witness.

22              THE COURT:  Wal-Mart, I am going to ask you, do

23    you intend on having other witnesses explain what

24    Dr. Alvarado meant?

25              MR. KEMPLE:  We will not be asking other

1  witnesses -- you heard that testimony:  What did he mean?

2  We will have other witnesses testifying there were ten votes

3  and only ten votes, which is exactly what Mr. Alvarado

4  testified to in his deposition.  And in the vague question

5  that was posed to him clearly that's what he intended, but

6  he would be the one that could clarify his intent in the --

7          THE COURT:  He can testify.

8          MR. KEMPLE:  Of course, yeah.

9          THE COURT:  I don't see this as an issue.  Okay.

10          Anything else further, Mr. Yoon?

11          MR. YOON:  Another pretrial management, not on

12  motions in limine.

13          THE COURT:  From the defense side on the motions

14  in limine.

15          MR. KEMPLE:  Yes, thank you, Your Honor.  We won't

16  go through all of our motions in limine.  And we agree there

17  are some procedural things where we've reached agreement

18  that I think will be very helpful for the Court.  We'll get

19  to in a moment.

20          There were just two motions in limine I wanted to

21  touch on very briefly.  The first is our motion in limine,

22  the Daubert challenge to Mr. Kriegler.

23          THE COURT:  Number 1.

24          MR. KEMPLE:  Number 1.  The only point I want to

25  make, Your Honor, is this:  You cannot clothe someone in the

 1    robe of an expert if they are not providing scientific

 2    expert testimony.

 3            All that Mr. Kriegler is proposing to do is act as

 4    a calculator, that's it.  And we've cited a number of cases,

 5    I would focus on Advanced Drainage Systems in our motion.

 6                    (Reading:)  Excluding expert's "lost

 7            profits" opinions where the purported analysis

 8            was only "straightforward" math and "lacked

 9            analysis of the factors that could affect

10            sales," explaining expert testimony is not

11            necessary to --

12            THE COURT:  Slow down.

13            MR. KEMPLE:  (Reading:)

14                    Explaining, quote, "expert testimony

15            is not necessary to assist jurors with basic

16            arithmetic."

17            Waymo, another federal court decision we cited to

18    the Court.

19                    (Reading:)  Other than grade-school

20            arithmetic, however, the expert did not apply

21            any coherent principle, methodology --

22            THE COURT:  Counsel, if you order this transcript,

23    there are going to be a lot of unintelligibles.

24            MR. KEMPLE:  I am going for do better, starting

25    right now.  Quote.

```
 1                    (Reading:)  Other than grade-school

 2             arithmetic, however, the, bracket, [expert],

 3             close bracket, did not apply any coherent

 4             principle, methodology, theory, or technique,

 5             much less one possessing any discernible

 6             indicia of reliability.  Instead, he made the

 7             same arguments that lawyers can make based

 8             upon other evidence.

 9             Goes on to say just acting as basic arithmetic is

10   not the stuff of expert opinion.  Court can read it itself.

11             That's all that Mr. Kriegler is proposing to do.

12   And our concern is not that math is impermissible in a court

13   of law.  Math is important.  But he should not be clothed in

14   a robe of an expert.  That is not expert testimony, Your

15   Honor, and that's my basic objection there.

16             THE COURT:  What, if any, points does the

17   plaintiff wish to make in response?

18             Let me ask you, Mr. Yoon, is Dr. Kriegler

19   testifying just his own personal knowledge or --

20             MR. YOON:  He has no personal knowledge except

21   what he got through the documents we provided him.  He's not

22   testifying -- he's never been to the facility.

23             THE COURT:  Okay.

24             MR. YOON:  He did look at a lot of video, but

25   that's past.
```

```
 1            What this is, I heard basic arithmetic, grade
 2     school arithmetic.  The numbers Dr. Kriegler has compiled
 3     are from large data sets, and putting that together is
 4     complicated.  Dr. Newland didn't have any criticism of his
 5     methodology.  They needed a doctor to review that.  They
 6     didn't hire just any regular person.
 7            This isn't -- individual case where it could be
 8     very easy to calculate a person's two minutes a day -- while
 9     actually that case is no longer there, but the 50 percent
10     premium for 15, 100, or 200 shifts, 50 percent premium for
11     two hours a day, that can be calculated by a jury for
12     Miss Hamilton or Miss Hernandez, and we'll do that for
13     Miss Hamilton and Miss Hernandez.  But for the class of
14     5,000-some-odd people, it's a little bit harder to calculate
15     that 50 percent premium as it changes based upon their
16     individual rates of pay, things like that.
17            We heard earlier complaints about not identifying
18     the paystubs, the hours, and all those things.  So now that
19     we have identified those, we have a complaint that we should
20     have used a nonexpert to do that but -- that's the point.
21            THE COURT:  Mr. Kemple.
22            MR. KEMPLE:  Very briefly, Your Honor.
23            No refutation of what I just said, this is math.
24     We heard earlier you just take the number of pay periods and
25     the pay period, multiply by 50, you come up with an answer,
```

1     et cetera or 50 bucks or 100, whatever they're going to do.

2             This is important.  You are wearing a robe, Your

3     Honor.  That means something.  You understand my point.

4     We're robing him --

5             THE COURT:  Am I wearing a robe?  Is that what

6     this is?  I didn't know.  Thank you for letting me know.

7             MR. KEMPLE:  My point being we are dressing up

8     something for the jury in a way that conveys respect, and

9     this is truly not an expert.

10            If this was a FRE 1006 witness, you can bring in

11    lay witnesses to do that sort of analysis, but there you

12    have to be -- I mean, there are requirements for that that

13    have not been even suggested that the witness would have to

14    do to offer it.

15            So he may well qualify as a 1006 witness, but he

16    should not be deemed an expert in front of the jury to do

17    something that I can do with my calculator.  That is

18    prejudicial and inappropriate.

19            THE COURT:  I will consider it, but it just seems

20    to me, Mr. Kemple, then you will just use your exceptional

21    cross-examination skills and slice and dice and say, "You

22    are just a calculator."

23            MR. KEMPLE:  That's another point, Your Honor.  So

24    they are now using him in this way.  Another point that I

25    would hope the Court would consider in dressing him in the

```
 1    robe -- we haven't had a chance to examine him.  We haven't
 2    deposed him.  We have a major timing problem with our
 3    experts as you know.  We haven't had a chance to do a
 4    rebuttal witness on him.  All the more reason why he should
 5    not be dressed up as an expert.
 6            The timing of what they have done and how they
 7    have done it has really put us behind the 8 ball here.  We
 8    are not two weeks from trial.  We are not asking for a
 9    continuance, but we have not been able to depose him on any
10    of this stuff either.  So to in addition dress him as an
11    expert, I believe, would be highly prejudicial.
12            Thank you.
13            THE COURT:  Thank you.
14            MR. KEMPLE:  The other --
15            THE COURT:  Yes, the other motion.
16            MR. KEMPLE:  I am not going to go through all of
17    our motions in limine.
18            The other one I want to be heard on -- we really
19    believe this is important.  Well, there are two that I want
20    to be heard on.  They're similar points.  The first is
21    testimony --
22            THE COURT:  Which motion?
23            MR. KEMPLE:  Motion in Limine Number 5.  This
24    is -- look, we're not opposed to argument that, when someone
25    gets an offer letter, end quote, accepts it, they are hired.
```

```
 1   Lawyers can make legal conclusion arguments at the close of

 2   trial.

 3           The central issue, legal issue in one of their

 4   attacks on the AWS is that people who accept an offer of

 5   at-will employment, which is really important, at-will, are

 6   as of that moment employed and, therefore, should have

 7   gotten notice and an opportunity to vote.

 8           That is their argument, and it rests on a legal

 9   question of whether people were hired at that time.  Lay

10   witnesses cannot testify to legal conclusions.  And,

11   Your Honor --

12           THE COURT:  Can a lay witness testify that, "On

13   that date I thought I was an employee"?

14           MR. KEMPLE:  Sure.  That's different.  They can

15   testify to their subjective understanding.  But the law in

16   this regard, Your Honor, there is a recent decision, federal

17   district court judge, an offer contingent on a drug test,

18   which is undisputed what this was, is not employment as of

19   the date of the offer and acceptance.

20           That's Brum versus Market Source 2017

21   U.S. District Court 178, 734 Eastern District California,

22   October 27, 2017.

23           In addition, Your Honor, if that were the case,

24   employers would be subject to steep fines by the IRS

25   because, at the time of employment, you have to have
```

 1  received a completed I-9.  Our position, like every other

 2  employer, is the employment begins when you fill out the I-9

 3  on the first day of work.

 4           So if this is employment as of that time, this

 5  creates an enormous problem for employers globally -- or not

 6  globally, across the United States.  That's a federal law.

 7           In addition, requirements under California law,

 8  the wage theft notice, EDD disability insurance provisions

 9  brochure, the Workers' Compensation time of hire have to be

10  given at the time the employment relationship is formed.

11  Nobody sends this stuff or could with a mere offer of

12  employment that could then be accepted on the spot.

13           There are duty of loyalty problems.  Are people

14  now --

15           THE COURT:  Let me stop you.  Let me hear from

16  Mr. Yoon.

17           MR. KEMPLE:  Can I make two brief points?

18           THE COURT:  I will give everybody -- I just want

19  to make sure I understand what does the plaintiff intend

20  or -- do you intend to make any introduction of evidence or

21  argument with respect to the hire date and the significance

22  of that timing from when they are offered the position to

23  when they start work?

24           MR. KEMPLE:  I guess I'll yield.  I have a couple

25  more points as to why this cannot possibly be employment --

```
 1              THE COURT:  I will give you your time.  Trust me.
 2              MR. CLEAVER:  Your Honor, the first thing I would
 3    say is this issue was addressed in the Court's order on
 4    motion for summary judgment where the plaintiffs raised the
 5    same question on the other side and the Court denied our
 6    motion for summary judgment without ruling on whether it was
 7    employment or not.  So from that, it's a fact question for
 8    the jury.  If it's a fact question for the jury, it should
 9    all come in.
10              THE COURT:  But, all right.  I get it.  But nobody
11    wants to answer my questions directly today.
12              Can you help me with my question:  What is the
13    evidence you intend to introduce at trial?  Are you going to
14    argue -- I am making these dates up -- January 1
15    Miss Hernandez or Miss Hamilton got a call saying they got
16    an offer to work at Wal-Mart, from that day forward they
17    were employees, and they should have been given the right to
18    vote at that time?  Is that -- is the plaintiff going to
19    make an argument along that line?
20              MR. CLEAVER:  It's not as straightforward as that,
21    Your Honor.  The law is more supplemented than that.  A
22    person can be -- yes, we would like to make that argument,
23    but there's other arguments we can make along the same lines
24    where a person who was hired -- we'd say hired, given an
25    offer, engaged, given a start date, told they had to take a
```

1    drug test before they could start work -- that person for

2    the purposes of AWS was an employee or that person was an

3    employee.

4            THE COURT:  Your position is that, when someone is

5    given the offer on that date, January 1, and they have to

6    take a test on January 4, January 7th they have to fill out

7    paperwork but they don't start work until January 10th, your

8    view is that they are an employee from January 1?

9            MR. CLEAVER:  The reg on this issue, 8 CCR

10   11070.2(d) defines employee as --

11           THE COURT:  Say that regulation one more time,

12   please.

13           MR. CLEAVER:  8 CCR 11070.2(d) defines "employ" as

14   to engage, suffer, or permit to work.  So they were engaged

15   at the point that they accepted the offer to work there.

16           THE COURT:  Okay.  Let's just play this out

17   because I may have a problem, then.  The law clerk that I

18   gave an offer to two years ago to come work here, they're my

19   employees now?

20           MR. CLEAVER:  No, Your Honor.  We are saying for

21   the purposes of the AWS -- let me give you one more example.

22   The definition of "hire" -- "hire" means to engage the

23   personal services of.

24           So even the word that they're using, they say you

25   can't use this word.  But the definition of the word is to

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    engage.
2            So -- and then he -- Mr. Kemple mentioned the
3    Workers' Compensation code -- I mean the Labor Code --
4    Workers' Compensation -- Workers' Compensation allows an
5    employer or voluntary organization to designate people who
6    are volunteers as employees for the purposes of
7    Workers' Compensation coverage.
8            Same thing here.  If -- you can say that they're
9    employed or you could also make the argument that they
10   should have been participants in the AWS because they were
11   members of the work unit at that time.
12           THE COURT:  But if you take that argument to its
13   extension, would that mean, then, that, when someone is
14   given an offer at Wal-Mart -- again, I just use January 1 --
15   and they slip and fall while they're at home, are they
16   somehow covered under insurance of Wal-Mart even though they
17   don't start until January the 10th?
18           MR. CLEAVER:  I don't know.  I think, Your Honor,
19   it would depend on the circumstances and what was said
20   and -- which is why we need to let the jury decide this
21   question.
22           THE COURT:  Mr. Yoon, go ahead.
23           MR. YOON:  That will be a totally different
24   standard.  The AWS has its own standard to -- specific to
25   one wage order.  And I think we're getting a little bit far
```

```
 1    afield because the question is this:  If I go to work and
 2    get hired, and they say, "Congratulations.  You're hired."
 3    Shake my hand, which hasn't happened to me before, but I
 4    have said it -- I heard it said.  I have seen it on TV.  I
 5    can't say that at trial?  I can't say -- they're precluded
 6    from using the word, "I'm hired today"?
 7              THE COURT:  No.  But I think the concern is not
 8    that.  It's just what you are going to try to argue from
 9    that, that somehow on that date, "Congratulations, I'm
10    hired," means that I am an employee of Wal-Mart from that
11    handshake.
12              MR. YOON:  For purposes of vote, we are saying
13    that the moment you have satisfied the conditions, you get
14    to vote.  Now, if you have a -- you fail a drug test -- they
15    might have failed a drug test, but the drug test is in 24
16    hours.
17              THE COURT:  Twenty-four hours of the handshake?
18              MR. YOON:  Yeah.  Exactly.  This particular
19    workplace, they give you have a job, they say, "Here is your
20    job.  Do you want it?"
21              "And how much time do I have to consider," I ask.
22              They said, "You accept it or deny it at that
23    moment.  If you walk out without saying yes, you don't have
24    a job.  If you walk out and say yes, then you have to pass a
25    drug test and a background check."
```

```
 1              THE COURT:  Within 24 hours?

 2              MR. YOON:  If you don't submit your urine sample

 3    within 24 hours, then you don't have a job.

 4              THE COURT:  Your view is they are considered an

 5    employee from that point even though they may not start for

 6    another month?

 7              MR. YOON:  We -- our point is that the employer

 8    now has engaged this person to work, and they know who they

 9    are, and they -- they're setting the start date.

10              And if the person -- if they know who they are and

11    they know what they are going to do and they're going to be

12    in the work unit, they should give them a vote.

13              And if they set everybody up to start working the

14    day after the vote, that looks very suspicious.

15              THE COURT:  How is that not a legal argument?  You

16    are going to ask the jury to decide this?

17              MR. YOON:  We are going to ask the witness to

18    explain the process, and the word "hire" might come in, and

19    the jury --

20              THE COURT:  That it was their subjective belief

21    that they were hired?

22              MR. YOON:  They could say, like -- I say, "What

23    happened?"

24              "They hired me."

25              "What words did they use?"  All on cross-exam.
```

```
 1    "Did they use the word hire?  Did they use the word -- did

 2    they retain you" subject to some long legalese statement,

 3    and the witness can explain what he means -- or what she

 4    means, and the jury can say, "Okay, does that count as

 5    engaged to work?"

 6            I don't know.  We filed the motion for summary

 7    judgment on it, and we don't know.  This is an issue for the

 8    jury.

 9            THE COURT:  Thank you, Mr. Cleaver [sic].

10            Let me hear from Mr. Kemple.  If that's what

11    happened, if the employee says, "'You are hired,' that's

12    what I was told," I'm not sure I see what the issue is with

13    that.

14            MR. KEMPLE:  This is a pure legal question that

15    needs to be decided by the Court.  Your law clerks are not

16    in a conflict of interest when they've accepted a position

17    to start with my firm two years from now.  They are not

18    employed by us at this time.

19            This is a unilateral contract.  At-will employment

20    is a, quote -- I can quote the case law -- is a unilateral

21    contract that begins upon performance of the job.  It is not

22    a contract that's accepted upon offer and acceptance.

23            And moreover, an employee's subjective

24    understanding of whether they're hired or not does not

25    influence whether or not they need to be included in an AWS
```

```
 1    vote.  It's a legal question that needs to be decided, and I
 2    would propose, Your Honor, that we brief this on March 25th
 3    along with the other submissions for the Court to consider.
 4           I think the Court will conclude, as is axiomatic,
 5    that this does not create an employment relationship, merely
 6    offer and acceptance of at-will employment when they haven't
 7    actually begun, let alone had filled out a I-9 form as
 8    required by the federal government.
 9           This is a legal question.  It's an important
10    question.  The jury should not be -- if this gets to the
11    jury, then we have to introduce I-9 law, CCRs, all kinds of
12    stuff and have the jury make a legal conclusion about
13    whether or not they're employed under the circumstance?
14           We respectfully believe this is for the judge, and
15    we would suggest that we brief this on March 25th.
16           THE COURT:  Do you object to testimony -- again, I
17    don't know what's going to come out at trial, but that --
18    Miss Hamilton says, "I interviewed, and they said,
19    'congratulations.  You're hired,'" do you object to that?
20           MR. KEMPLE:  I do, and here is why, here's why.
21    Because then the jury is going to think they are supposed to
22    be resolving exactly what plaintiffs want them to do,
23    resolving whether or not they were hired as of the date of
24    offer and acceptance.
25           The only relevance of that testimony is for them
```

1    to have the jury determine a question that is purely a

2    question of law.  I mean, the jury needs to be instructed,

3    frankly, that hiring begins upon the performance of an

4    at-will contract.  Otherwise, this would be a major problem.

5              THE COURT:  All right.

6              MR. KEMPLE:  Again, I suggest we brief it, Your

7    Honor.

8              MR. YOON:  Along that line, one of the elements

9    for every one of our claims is the employer/employee

10   relationship.  Under that argument, which isn't disputed but

11   if it were disputed, I wouldn't be able to say, "Who is your

12   employer?"

13             THE COURT:  Okay.  I am going to ask that you

14   brief this issue.  I tend to agree -- I will have you both

15   brief this issue by March 25th.

16             MR. KEMPLE:  The last one I want to touch on very

17   briefly is the notion as to who implemented the AWS.

18             THE COURT:  Which motion in limine?

19             MR. KEMPLE:  I'm sorry, this is Number 4.

20             THE COURT:  Number 4?

21             MR. KEMPLE:  Yes.  So plaintiffs' opposition is it

22   takes two to tango.  That's their entire opposition or

23   motion, which is exactly our point.

24             We didn't implement the AWS.  The employees didn't

25   implement the AWS.  It is a process that requires a vote and

```
 1   acceptance.  And so referring to the notion that we
 2   implemented, we unilaterally implemented an AWS, is
 3   improper.  It's not what happens.
 4          Their opposition, if you read it, it's all about
 5   it takes two to tango.  That is exactly our point.  And it
 6   is, therefore, misleading and prejudicial for them to argue
 7   to the jury and introduce evidence that we, quote,
 8   implemented the AWS.  It is a bilateral process that
 9   requires notice and a vote.
10          THE COURT:  Mr. Yoon or Mr. Cleaver.
11          MR. CLEAVER:  Your Honor, could you clarify
12   what -- what would you like us to brief on the 25th, the
13   issue of the word "hire"?
14          THE COURT:  Yeah.  That's the issue, yes.  They
15   take -- and specifically whether or not this is a question
16   that should be decided by the jury or one for the Court,
17   whether it's a legal question.
18          MR. CLEAVER:  Thank you, Your Honor.
19          Regarding Number 5 --
20          THE COURT:  Number 4.
21          MR. CLEAVER:  I think it's Number 4 -- that was
22   Number 4.  I think we are arguing Number 5.
23          THE COURT:  I'm sorry.  You --
24          MR. CLEAVER:  I'm wrong.  I'm sorry.  It's
25   Number 4.
```

```
 1              Implement, as we said in our opposition, implement

 2    means to put a plan into operation.  We have to put a plan

 3    or system into operation.  That's what it means.  Wal-Mart

 4    implemented the AWS.

 5              They -- there was a election procedure, people

 6    voted.  There was a dispute over whether they properly

 7    conducted that, but there is no dispute that Wal-Mart, the

 8    company, implemented -- put the AWS into effect on

 9    February 6th.

10              We don't see the prejudice to the defendant in

11    saying that and -- which is the actual definition of the

12    word.

13              THE COURT:  Okay.  Thank you, Counsel.

14              Let's see what else is there.

15              MR. KEMPLE:  The parties have agreed, Your Honor,

16    to submit the 226 of -- one of the claims in this case is

17    whether or not a subsequent true-up in a 226 requires

18    restating of all the prior -- the parties have agreed we

19    would like to submit that claim to the Court which is a

20    legal claim for -- to brief that to the Court rather than

21    burden -- there is really not much to try here.

22              We can stipulate that the pay statement said this,

23    that, and the other thing.  So I think we are in agreement.

24    I think we just need some guidance from the Court as to when

25    you would like to -- if you're amenable, when the Court
```

```
 1    would like to see that briefing.

 2              THE COURT:  I want to, emphasis on the word "I

 3    want to," make this as smooth a process as possible.  It's

 4    been a challenge.  But can you do that by on or before the

 5    25th, or do you need more time?

 6              MR. KEMPLE:  We can do it, Your Honor.

 7              THE COURT:  All right.  So, then, let's do it by

 8    the 25th.  Okay.

 9              What else?

10              MR. KEMPLE:  The rest I think that we can address,

11    at least what we had, we can address in our filings on the

12    25th.

13              THE COURT:  Okay.  Mr. Yoon.

14              MR. YOON:  There is -- one of the hurdles we have

15    for jury instructions is the burden of proof on the AWS.

16    And it's not clear to us -- we think it's clear, but it's

17    not clear to the defendants.  So we don't have an agreement

18    as to who has the burden on the AWS.

19              We understand the Court's language in the orders

20    earlier with respect to the exemption language, but our

21    point of view -- and we have cases if the Court would like

22    to hear it.

23              THE COURT:  Not now.  If this is an issue you guys

24    can't work out, submit briefing on it on the 25th, and I

25    will make a decision come day of trial.
```

```
 1          MR. YOON:  Thank you.

 2          Another question, which is just housekeeping, is

 3   how many hours can we expect each day?

 4          THE COURT:  On April 2nd, the week we're starting,

 5   April the 2nd.  Let me look at the calendar here.  I don't

 6   think I have any major conflicts that week.

 7      (Brief pause in the proceedings.)

 8          THE COURT:  The only possible conflict is that

 9   there may be -- I have a meeting on April 4th between -- I

10   think it's about 11:30 till about 2:00 o'clock.  So we may

11   take a longer lunch on the 4th, but you can expect to be

12   here -- we'll start at 9:00 and go till 5:00 or so every

13   day.  On average, particularly with this case given the

14   back-and-forth amongst the parties, we average anywhere from

15   between 5 1/2 to 6 hours per day, giving the jurors breaks

16   and things of that nature.

17          So we'll go Tuesday, Wednesday, Thursday.  I have

18   my normal calendar on Friday.  So we won't have trial on

19   Friday.  If it goes into the following week, we'll start on

20   Monday the 8th and continue until the jury gets the

21   verdict -- until the jury gets the case I should say.

22          MR. YOON:  One reason I raise this is because the

23   Court suggested -- raising one of the issues in the first

24   evening with respect to the plaintiffs, and I was

25   anticipating putting on my first witness that first day.
```

```
 1            THE COURT:  What's the issue?
 2            MR. YOON:  I think it was about the past criminal
 3   history, I think.  I don't remember exactly, but there was
 4   an issue the Court was deferring to -- I have to check -- on
 5   the first evening, that I guess the first day at
 6   5:00 o'clock, and I was wondering if the Court thinks we're
 7   not going to be putting on the first witness that first
 8   day --
 9            THE COURT:  No, I anticipate the jury will be in
10   the box, we will have selected a jury by noon.
11            MR. YOON:  That was my assumption as well.  So I
12   just wanted to -- okay.  That's fine.
13            THE COURT:  I'm not sure I understand what your --
14            MR. YOON:  I was just concerned that, if
15   Miss Hernandez -- or I think it was Miss -- I forget which
16   witness, but if one of our plaintiffs has an issue before
17   they take the stand and we were going to address that that
18   evening, I was concerning because I thought that --
19            THE COURT:  What issue do you anticipate as it
20   relates to Miss Hernandez or Miss Hamilton?  Is it prior
21   criminal history?
22            MR. YOON:  I think it was prior criminal history
23   or one of those -- the --
24            THE COURT:  I will ask the defense again.  Do you
25   have any information as it relates to prior criminal history
```

```
 1    of Miss Hernandez or Miss Hamilton?
 2              MR. KEMPLE:  I don't, but if we do, we will
 3    front-load it.  They will know well in advance of April 2nd,
 4    Your Honor.
 5              THE COURT:  If there is an issue with respect to
 6    criminal history as it relates to Miss Hernandez or
 7    Miss Hamilton, please let the Court know by March 25th so I
 8    know what you intend -- to the extent you intend to
 9    introduce any evidence about that, I want to know what it is
10    by March the 25th.
11              MR. KEMPLE:  Understood.
12              THE COURT:  Just so the parties know, voir dire,
13    you have submitted voir dire questions.  I do the voir dire
14    in these cases.  What I will do is we'll voir dire the
15    group, I'll bring you to the sidebar, see if there are any
16    questions that you wish me to follow up on with respect to
17    any of the jurors, decide yea or nay, and we'll go back and
18    do that.
19              Once that is done, I bring you back to sidebar, we
20    discuss challenges for cause first, depending on the number
21    of challenges for cause, we may go into peremptories.
22              So, for example, I fill up the box with -- I think
23    we do 16.  Let me just double-check.  We do 16.  Depending
24    on the number of challenges for cause, if there are still
25    enough, even if you were to use all your peremptories, we
```

```
 1    just go right through the line, and the jurors will be the
 2    first eight after you have done challenges for cause and
 3    peremptories.
 4          You can make your challenges for cause or
 5    peremptories from the entire panel, but you have to just
 6    mentally know which will be your first eight because, after
 7    all the peremptories are done, I will pick the first eight
 8    jurors.
 9          Does that make sense?  Does either side have any
10    questions about that process?
11          Mr. Yoon?
12          MR. YOON:  This seems familiar.  Is this also
13    identified in one of the Court's standing orders?
14          THE COURT:  That's a good question, and I don't
15    know.  But I don't know, honestly.  But I am trying to
16    explain it to you.
17          MR. YOON:  I understand.
18          THE COURT:  Mr. Kemple.
19          MR. KEMPLE:  The first eight, the jurors will be
20    assigned numbers.  So it will be the first eight is the
21    lowest eight numbers?
22          THE COURT:  The jurors will not be assigned
23    numbers, but we will pick the first eight.
24          MR. KEMPLE:  When you say "the first eight," in
25    order of seating?
```

```
 1            THE COURT:  Right.  So, for example, the top deck.
 2   Let's look at the jury box for a moment.  Let's say after
 3   you have done your peremptories and you have kicked off
 4   Number 2, Number 4, and Number 10 and we've done all the
 5   peremptories.  The jurors will be the first eight.
 6            MR. KEMPLE:  If I -- simple question is, just
 7   rather than ask it at trial.  Number 1 is the back row, and
 8   then we go up to Number 6 over there, and then 12 through
 9   whatever?
10            THE COURT:  Yes.  1 through 8 is the top row
11   starting at the top shelf closest to me.
12            MR. KEMPLE:  Got it.
13            THE COURT:  All right.  Okay.  Jury instructions,
14   again, I am going to ask that you meet and confer in person
15   to try to resolve these issues as best you can.  Whatever
16   you can't, let me know.  I will ask you to file an Amended
17   Disputed Instructions by March 25th.
18            And I don't think I have anything else we need to
19   discuss other than I would hope that come the trial we will
20   be able to just, for lack of a better term, press play and
21   move forward.
22            Mr. Yoon.
23            MR. YOON:  One issue is -- that I forgot to
24   raise -- I'm sorry.  Is that the class definition currently
25   starts July 31st, but Dr. Kriegler's calculation starts with
```

```
 1   July 13th, and it's in the papers.

 2            I don't think it's a terribly large issue, but

 3   having -- the Court truncated the class period to a period

 4   that's a bit difficult --

 5            THE COURT:  Is this date disputed at all from the

 6   defense?  Or do you want to talk about it amongst yourselves

 7   before you decide if it is an issue?

 8            MR. KEMPLE:  We will happily take the shorter

 9   class period, of course.

10            MR. YOON:  This is longer class period by about

11   two weeks.

12            THE COURT:  Say the dates again, please.

13            MR. YOON:  The Court's truncated the class period

14   in the last decertification motion to the 31st of July.

15   Earlier it stretched further past.  But the date we have for

16   the first clock-in is July 13th.

17            MR. KEMPLE:  Right.  So it's a shorter period.

18            MR. YOON:  July 13th goes back further than

19   July 31st.

20            THE COURT:  Right.  But I said July 31st, and you

21   are asking whether or not you can add an additional two

22   weeks.

23            MR. YOON:  Well, yeah, go back further back -- the

24   original class period was --

25            THE COURT:  You are asking to amend the class
```

```
 1   definition.

 2              MR. YOON:  To July the 13th.

 3              THE COURT:  You need to talk about that.

 4              MR. KEMPLE:  We'll do that on March 25th.

 5              THE COURT:  Anything further, Mr. Yoon?

 6              MR. YOON:  No, Your Honor.

 7              THE COURT:  Mr. Kemple?

 8              MR. KEMPLE:  Thanks for your patience, Your Honor.

 9              THE COURT:  All right.  You can ask around.

10   Generally speaking, I like to think I am fairly easygoing,

11   but my patience wears thin when we are in trial because we

12   have got eight folks here that don't need to be here.  Many

13   instances they don't want to be here, and I'm not trying to

14   waste their time.

15              So you have got some time here between now and

16   then.  I recognize both parties need to have vigorous

17   advocates on their behalf, but you need to meet and confer

18   and try to whittle down these issues.  Otherwise, it's just

19   going to be a long trial.  We'll be here late at night.

20              Just FYI, there is no AC after 5:00 o'clock.  It

21   is what it is.  I'm fine.  I'm used to it, but I'm just

22   letting everyone know, if we need to be here 8:00, 9:00

23   o'clock -- and you can ask other lawyers that have been in

24   this scenario where they can't seem to get along, we'll do

25   it.  It is my experience lawyers tend to be more agreeable
```

```
 1   as the temperature increases.  That's unfortunate, but
 2   that's the reality if we need to deal with it.
 3          So I will see you all on April the 2nd.  Please
 4   leave the tentatives behind and have a good weekend
 5   everyone.
 6          MR. KEMPLE:  Your Honor will be issuing orders on
 7   the --
 8          THE COURT:  On the motions in limine, yes, that
 9   will probably go out on Monday for sure.
10          MR. KEMPLE:  On the PAGA and all that stuff?
11          THE COURT:  Yes.
12          MR. KEMPLE:  Thank you, Your Honor.
13       (Proceedings concluded at 11:21 a.m.)
14                        --oOo--
15
16
17
18
19
20
21
22
23
24
25
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                        CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date:  March 25, 2019.

11

12

13

14              ___/S/ CHIA MEI JUI_____

15              Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

MR. CLEAVER: [32]
3/10 38/18 38/25 39/4
40/1 44/8 44/10 44/12
44/14 44/22 45/1 45/4
46/4 46/7 47/17 48/1
48/5 48/11 48/15
49/19 50/10 51/16
64/1 64/19 65/8 65/12
65/19 66/17 72/10
72/17 72/20 72/23
MR. GERSHMAN: [4]
42/23 43/9 43/13 54/3
MR. KEMPLE: [76]
3/19 4/12 6/15 8/15
8/19 9/9 9/11 9/15
17/19 18/15 19/1 24/8
25/24 27/1 27/9 31/13
34/6 34/24 35/5 40/6
40/12 40/17 41/5 41/7
41/9 41/15 41/25 42/3
42/6 42/10 42/13
42/17 43/25 46/3
46/17 46/21 47/4
50/24 54/1 55/24 56/7
56/14 56/23 57/12
57/23 59/21 60/6
60/22 61/13 61/15
61/22 62/13 63/16
63/23 69/13 70/19
71/5 71/15 71/18
71/20 73/14 74/5 74/9
77/1 77/10 78/18
78/23 79/5 79/11 80/7
80/16 81/3 81/7 82/5
82/9 82/11
MR. LEE: [1] 3/16
MR. YOON: [54] 3/7
4/7 6/11 7/12 7/23 8/6
8/8 10/17 10/20 13/3
13/8 14/19 14/25 21/7
21/12 21/16 22/24 29/4
29/14 32/21 34/2
36/14 36/21 38/12
51/18 52/24 55/8
56/10 58/19 58/23
66/22 67/11 67/17
68/1 68/6 68/16 68/21
71/7 74/13 74/25
75/21 76/1 76/10
76/13 76/21 78/11
78/16 79/22 80/9
80/12 80/17 80/22
81/1 81/5
MS. YASUDA: [1]
3/13
THE CLERK: [3] 3/3
31/25 32/3
THE COURT: [165]

$

$100 [1] 13/23
$16,412,650 [1] 13/7
$16.41 [1] 24/20
$16.41 million [1]
24/20
$250 [1] 13/24
$50 [1] 13/21

'

'congratulations [1]
70/19
'You [1] 69/11

-

--oOo-- [1] 82/14

0

0.00 [1] 20/9
0988 [1] 2/6

1

10 [1] 79/4
100 [4] 13/22 14/1
59/10 60/1
100/250 [1] 14/2
1006 [2] 60/10 60/15
10:11 [1] 32/2
10th [2] 65/7 66/17
11 [1] 49/22
11/7 [1] 52/7
11070.2 [2] 65/10
65/13
1194 [3] 36/25 48/8
48/16
1197.1 [1] 13/23
11:21 [1] 82/13
11:30 [1] 75/10
12 [5] 6/3 9/7 9/9 38/5
79/8
13th [3] 80/1 80/16
81/2
14th [1] 13/11
15 [4] 1/18 3/1 5/23
59/10
16 [2] 77/23 77/23
17-1415-AB [3] 1/9
3/4 32/4
178 [1] 62/21
1840 [1] 2/15
18TH [1] 2/10
1900 [1] 2/16

2

200 [1] 59/10
2015 [1] 24/11
2016 [1] 24/11
2017 [3] 44/18 62/20
62/22
2019 [3] 1/18 3/1
83/10
203 [5] 11/22 22/6
22/23 53/1 54/22
213-612-0988 [1] 2/6
2200 [1] 2/5
226 [6] 11/22 19/21
22/6 23/1 73/16 73/17
23 [1] 28/24
24 [3] 67/15 68/1 68/3
24th [1] 52/6
25 [1] 83/10
25 percent [1] 14/13
250 [1] 14/2
25th [12] 5/8 70/2
70/15 71/15 72/12
74/5 74/8 74/12 74/24
77/10 79/17 81/4

28 [1] 83/4
2:00 o'clock [1] 75/10
2nd [9] 4/4 4/6 4/10
47/3 47/4 75/4 75/5
77/3 82/3

3

30 [6] 6/6 52/6 55/12
55/13 55/18 55/21
30-day [1] 52/1
30-minute [2] 8/1 8/23
310-388-7289 [1] 2/11
310-586-7776 [1] 2/17
31st [3] 79/25 80/19
80/20
31st of [1] 80/14
3287 [2] 1/23 83/15
350 [2] 1/24 28/23

4

40 [1] 50/1
4311 [1] 1/24
45 [1] 6/7
4th [1] 75/11

5

5 1/2 [1] 75/15
5,000 [1] 40/10
5,000-some-odd [1]
59/14
50 [4] 1/12 14/1 59/25
60/1
50 percent [3] 59/9
59/10 59/15
5670 [1] 2/9
5:00 o'clock [2] 76/6
81/20
5:00 or [1] 75/12

6

6's [1] 55/9
6th [1] 73/9

7

7289 [1] 2/11
734 [1] 62/21
75 percent [1] 14/12
753 [1] 83/3
7776 [1] 2/17
7th [3] 52/7 52/15
65/6

8

8 ball [1] 61/7
8:00 [1] 81/22
8th [1] 75/20

9

90012 [1] 1/24
90017 [1] 2/6
90036 [1] 2/10
90067 [1] 2/16
9:00 [1] 81/22
9:00 and [1] 75/12
9:18 [2] 1/19 3/2
9:59 [1] 32/2

A

AB [3] 1/9 3/4 32/4

ability [3] 23/16 53/3
able [13] 18/23 19/4
20/17 24/18 25/21
26/8 26/24 28/12
37/10 38/18 61/9
71/11 79/20
absolutely [1] 31/12
AC [1] 81/20
accept [2] 62/4 67/22
acceptance [5] 62/19
69/22 70/6 70/24 72/5
accepted [4] 63/12
65/15 69/16 69/22
accepts [1] 61/25
accurate [1] 36/1
acknowledged [1]
19/20
across [1] 63/6
act [1] 57/3
acting [2] 10/1 58/9
action [7] 19/19 27/4
27/15 29/2 30/16 37/3
48/24
actions [2] 12/22
12/23
actual [6] 12/25 14/11
14/15 30/3 30/4 73/11
ad [3] 54/14 54/17
54/19
ad hominem [3] 54/14
54/17 54/19
add [3] 19/9 21/1
80/21
added [2] 8/21 9/2
adding [2] 17/24
32/17
addition [4] 19/15
61/10 62/23 63/7
additional [6] 6/9
16/12 80/21
address [9] 16/21
23/8 23/13 26/8 28/20
55/8 74/10 74/11
76/17
addressed [2] 14/5
64/3
addresses [1] 54/7
adjudication [1] 11/2
admissible [2] 19/11
40/25
admitted [1] 28/21
adopted [1] 50/15
advance [1] 77/3
Advanced [1] 57/5
advocates [1] 81/17
affect [1] 57/9
affidavit [1] 54/13
afield [1] 67/1
after [14] 6/23 19/9
30/18 32/19 36/5 45/7
45/8 52/6 52/14 68/18
78/2 78/6 79/2 81/20
again [16] 5/5 5/7
15/24 21/4 26/14
32/11 34/14 38/3 43/7
46/9 66/14 70/10 71/6
76/24 79/14 80/12

against [6] 5/21 22/12
24/25 34/18 41/18
44/5
aggrieved [2] 14/13
20/24
ago [1] 65/18
agree [8] 9/17 10/8
21/4 25/17 25/22 54/5
56/16 71/14
agreeable [1] 81/25
agreed [5] 10/21 30/4
37/12 73/15 73/18
agreement [6] 48/20
48/25 50/13 56/17
73/23 74/17
agrees [1] 49/8
ahead [4] 24/5 31/13
54/3 66/22
airing [1] 55/4
al [2] 3/5 32/5
alleged [1] 18/13
allow [2] 31/20 31/21
allowed [5] 13/10
27/21 48/7 50/18
52/18
allows [1] 66/4
alone [1] 70/7
along [5] 64/19 64/23
70/3 71/8 81/24
already [10] 10/7
19/14 20/4 23/1 27/12
28/7 29/1 31/16 35/19
46/11
alternative [1] 7/3
although [1] 4/17
Alvarado [4] 55/10
55/12 55/24 56/3
always [5] 11/13
11/20 20/11 34/3
37/17
ALYSSA [1] 1/6
amenable [2] 29/1
73/25
amend [1] 80/25
Amended [1] 79/16
amongst [3] 9/8 75/14
80/6
amount [6] 14/6 14/21
23/6 23/6 23/17 23/23
analysis [3] 13/21
14/1 23/1 46/23 57/7
57/9 60/11
ANDRÉ [1] 1/3
anecdotal [1] 26/20
anecdotally [1] 31/7
ANGELES [6] 1/20
1/24 2/6 2/10 2/16 3/1
animal [1] 24/23
ANNE [2] 2/18 3/22
annotations [1] 54/24
another [10] 22/19
22/22 29/2 47/25
56/11 57/17 60/23
60/24 68/6 75/2
answer [15] 4/25 4/25
22/3 35/2 35/16 41/11
42/2 42/6 42/8 42/23
43/10 43/15 44/15

## A

answer... [2] 59/25 64/11
answers [1] 5/1
anticipate [2] 76/9 76/19
anticipating [1] 75/25
antithesis [1] 26/18
anyway [2] 20/7 50/17
apart [2] 19/12 49/1
APC [1] 2/3
apparently [1] 19/16
appear [1] 32/11
appearances [2] 2/1 3/7
appears [1] 25/15
applies [1] 13/14
apply [4] 47/18 55/2 57/20 58/3
appointed [1] 33/10
approved [1] 29/6
April [9] 4/4 4/10 4/15 47/3 75/4 75/5 75/9 77/3 82/3
April 2nd [2] 4/10 75/4
April 4th between [1] 75/9
area [3] 8/11 25/4 41/22
aren't [3] 31/4 55/17 55/20
arguably [2] 15/18 16/14
argue [7] 51/2 52/4 53/22 53/22 64/14 67/8 72/6
argued [1] 51/2
arguendo [1] 15/15
arguing [3] 18/8 51/2 72/22
argument [18] 11/15 11/16 15/11 15/24 24/16 25/5 30/15 30/18 30/18 61/24 62/8 63/21 64/19 64/22 66/9 66/12 68/15 71/10
arguments [7] 6/8 14/3 18/6 31/10 58/7 62/1 64/23
arithmetic [6] 57/16 57/20 58/2 58/9 59/1 59/2
around [2] 52/24 81/9
arrest [3] 47/19 47/24 47/24
arrests [2] 47/18 47/21
aside [1] 44/1
asked [1] 46/10
asking [7] 41/9 49/18 49/20 55/25 61/8 80/21 80/25
asserting [1] 12/3
asset [1] 17/12
assigned [2] 78/20 78/22

assist [1] 57/15
assisting [1] 34/20
ASSOCIATES [1] 1/11
assuming [2] 4/4 15/15
assumption [1] 76/11
assure [1] 51/1
at-will [5] 62/5 62/5 69/19 70/6 71/4
attached [1] 44/23
Attachment [1] 13/11
attack [1] 54/16
attacks [2] 54/19 62/4
attempt [3] 10/15 18/8 18/12
attempted [1] 9/2
attention [1] 38/15
available [2] 23/18
average [3] 20/8 75/13 75/14
avoid [1] 25/12
avoided [1] 19/7
award [1] 23/6
AWS [26] 11/22 22/6 48/4 49/1 49/3 49/5 49/12 49/15 49/16 50/14 50/15 62/4 65/2 65/21 66/10 66/24 69/25 71/17 71/24 71/25 72/2 72/8 73/4 73/8 74/15 74/18
axiomatic [1] 70/4

## B

back [17] 4/24 20/11 28/18 31/24 32/6 35/23 37/14 44/13 51/18 54/20 75/14 77/17 77/19 79/7 80/18 80/23 80/23
back-and-forth [2] 4/24 75/14
backed [1] 37/13
background [1] 67/25
bad [1] 48/14
bag [1] 16/9
balance [3] 31/19 48/17 48/24
ball [1] 61/7
based [11] 5/24 14/23 21/22 22/3 22/25 33/1 35/1 54/23 54/24 58/7 59/15
basic [4] 57/15 58/9 58/15 59/1
basically [4] 5/18 9/2 20/22 21/10
basis [6] 17/16 18/3 21/18 21/18 27/24 43/3
beeping [1] 16/5
BEER [2] 2/14 3/23
before [26] 6/23 9/3 17/24 24/12 24/21 26/4 26/6 29/3 35/6 36/8 36/9 39/18 42/1 42/22 43/23 44/18 44/22 46/10 46/19

52/8 55/5 65/1 67/3 74/4 76/16 80/7
begins [3] 63/2 69/21 71/3
begun [1] 70/7
behalf [7] 1/5 1/7 3/15 3/17 3/21 7/18 81/17
behind [1] 61/7 82/4
belief [1] 68/20
believe [11] 5/22 10/5 24/11 27/11 34/7 36/11 41/16 53/17 61/11 61/19 70/14
belt [1] 16/10
benefit [2] 15/20 15/21
best [1] 79/15
better [3] 49/23 57/24 79/20
between [3] 75/9 75/15 81/15
bias [4] 40/8 41/12 41/18 45/20
bifurcated [2] 9/5 19/10
big [2] 4/14 47/25
bilateral [1] 72/8
BIROTTE [1] 1/3
bit [7] 16/12 17/21 46/11 53/12 59/14 66/25 80/4
both [8] 15/9 21/20 22/3 31/10 45/17 46/19 71/14 81/16
bothered [1] 50/5
bottom [1] 11/7
Bouaphakeo [1] 29/5
BOULEVARD [2] 2/5 2/9
box [4] 47/25 76/10 77/22 79/2
bracket [2] 58/2 58/3
break [11] 7/9 7/9 8/2 8/23 10/24 10/24 22/19 25/15 30/22 31/24 50/5
breaking [3] 17/3 17/14 50/5
breaks [3] 6/24 7/2 75/15
BRIAN [2] 2/4 3/17
bridge [1] 47/22
brief [12] 9/21 53/1 54/5 63/17 70/2 70/15 71/6 71/14 71/15 72/12 73/20 75/7
briefing [2] 74/1 74/24
briefly [3] 56/21 59/22 71/17
bring [6] 16/9 16/10 25/14 60/10 77/15 77/19
bringing [1] 16/7
brings [1] 28/18
broad [1] 54/11
brochure [1] 63/9
brought [1] 7/18
Brum [1] 62/20

BRYAN [2] 2/15 3/23
bucks [1] 60/1
bunch [2] 27/16 27/16
burden [5] 6/8 53/24 73/21 74/15 74/18

## C

CACI [2] 53/1 54/22
calculate [10] 13/2 12/5 13/7 13/17 14/2 14/10 19/25 22/10 59/8 59/14
calculated [3] 23/1 23/6 59/11
calculating [1] 23/14
calculation [5] 12/18 13/17 19/22 24/22 79/25
calculations [2] 23/2 23/19
calculator [3] 57/4 60/17 60/22
calendar [2] 75/5 75/18
CALIFORNIA [14] 1/2 1/20 1/24 2/6 2/10 2/16 3/1 14/13 48/8 48/16 53/13 54/24 62/21 63/7
call [3] 46/23 46/24 64/15
called [2] 43/11 54/21
Calling [1] 3/4
came [1] 35/12
capacities [1] 38/2
care [3] 45/11 50/13 50/20
cases [4] 32/12 57/4 74/21 77/14
catchall [1] 23/16
cause [7] 16/5 29/2 77/20 77/21 77/24 78/2 78/4
CCR [2] 65/9 65/13
CCRR [1] 1/23
CCRs [1] 70/11
cell [1] 16/8
center [1] 52/11
central [1] 1/2 62/3
CENTURY [1] 2/15
cert [1] 39/10
certain [2] 15/2 15/3
certainly [4] 5/4 36/1 45/19 47/20
CERTIFICATE [1] 83/1
certification [3] 33/6 33/23 34/4
certified [17] 7/1 11/1 11/3 11/10 11/11 11/23 18/9 20/20 22/5 23/11 23/12 25/15 30/18 32/24 32/24 33/8 34/11
certify [1] 83/3
certifying [1] 25/9
cetera [1] 60/1
challenge [2] 56/22

74/4
challenges [5] 77/20 77/21 77/24 78/2 78/4
chance [3] 21/7 61/1 61/3
changed [1] 33/4
changes [1] 59/15
character [1] 33/4
characterize [3] 10/2 11/4 11/8
characterized [1] 8/10
charge [1] 55/3
charged [1] 24/25
check [30] 7/16 7/25 8/9 8/11 8/12 11/3 11/12 11/23 11/24 12/12 12/14 12/15 12/24 13/19 13/20 16/2 16/14 16/20 17/16 19/6 30/9 30/11 30/20 30/21 31/5 33/9 36/25 67/25 76/4 77/23
checkpoint [10] 8/22 15/7 15/12 15/16 16/23 16/24 17/14 19/5 27/8 28/14
checks [3] 30/2 53/23 53/24
CHELSEA [3] 1/5 3/4 32/4
cherry [2] 27/16 27/17
cherry-picked [2] 27/16 27/17
chess [1] 5/19
CHIA [3] 1/23 83/14 83/15
chips [1] 16/10
choose [1] 23/25
chosen [1] 49/14
Christmas [4] 52/6 52/13 52/14 52/16
Circuit [1] 53/13
circuits [1] 53/14
circumstance [1] 70/13
circumstances [1] 66/19
cited [2] 57/4 57/17
civil [4] 23/5 23/17 23/18 48/24
claim [34] 7/4 7/4 7/5 7/8 7/9 7/15 7/17 7/18 7/19 7/20 8/2 8/5 8/22 8/23 8/24 10/3 11/3 11/12 11/23 14/23 17/1 19/12 25/6 25/16 26/4 33/22 36/24 36/24 37/21 37/21 37/24 73/19 73/20
claiming [1] 34/15
claims [62] 4/14 6/18 6/22 6/24 6/25 7/1 7/6 7/14 8/16 8/22 8/25 9/5 9/5 9/25 10/5 10/7 10/11 10/16 10/22 10/23 11/1 11/5 11/8

**C**

**claims... [39]** 11/9
11/11 17/23 18/3 18/7
18/9 18/14 18/18
18/19 19/8 19/10
19/11 20/15 20/18
21/6 22/5 23/11 23/12
23/13 25/3 32/10
32/14 32/18 32/20
34/2 34/4 34/9 34/11
34/17 35/12 35/20
36/3 36/15 37/5 37/18
37/25 47/6 71/9 73/16
**clarification [2]** 9/6
55/9
**clarify [2]** 56/6 72/11
**class [55]** 7/18 7/20
9/5 9/7 9/14 12/5
12/14 18/9 18/10
19/11 20/12 23/9 24/2
24/3 26/15 26/18 27/2
27/4 27/13 27/15
28/24 29/1 30/10
30/16 30/21 33/6
33/10 33/10 33/11
33/12 33/13 33/14
36/24 36/24 37/1 37/1
37/2 37/2 37/4 37/5
37/18 37/19 37/22
39/10 59/13 79/24
80/3 80/9 80/10 80/13
80/24 80/25
**classic [1]** 27/19
**classwide [3]** 18/21
27/24 28/9
**clear [5]** 4/5 46/3
74/16 74/16 74/17
**clearer [1]** 49/17
**clearly [2]** 36/3 56/5
**CLEAVER [11]** 2/8 2/9
3/12 38/13 38/14 47/8
47/17 48/1 51/16 69/9
72/10
**Clemens [1]** 29/10
**clerk [1]** 65/17
**clerks [1]** 69/15
**client [1]** 41/19
**climb [1]** 26/22
**clock [7]** 5/18 5/19
8/11 16/23 32/18 38/1
80/16
**clock-in [1]** 80/16
**clocking [1]** 6/23
**close [2]** 58/3 62/1
**closest [1]** 79/11
**closing [1]** 4/7
**cloth [1]** 43/2
**clothe [1]** 56/25
**clothed [1]** 58/13
**cmjui.csr [1]** 1/25
**co [2]** 38/13 42/15
**co-counsel [2]** 38/13
42/15
**cobble [1]** 24/16
**code [9]** 28/3 48/8
48/16 50/3 50/3 54/25
56/3 66/3 83/4

**coherent [2]** 57/21
58/3
**coin [1]** 10/12
**colloquial [1]** 15/4
**comes [4]** 40/7 40/14
43/17 52/14
**coming [3]** 21/25
36/10 49/18
**Commissioner's [1]**
36/18
**common [4]** 18/22
19/2 27/14 28/11
**communicated [1]**
36/2
**communicating [1]**
35/25
**communication [1]**
34/23
**company [1]** 73/8
**compensable [2]**
29/12 29/18
**compensation [9]**
44/17 48/18 48/22
49/9 63/9 66/3 66/4
66/4 66/7
**compiled [1]** 59/2
**complaining [1]** 10/4
**complaint [1]** 59/19
**complaints [1]** 59/17
**completed [1]** 63/1
**completely [1]** 20/14
**complicated [1]** 59/4
**computer [1]** 10/1
**concern [7]** 9/4 39/24
41/22 44/2 48/6 58/12
67/7
**concerned [5]** 14/5
46/9 46/11 49/11
76/14
**concerning [4]** 24/18
36/2 48/17 76/18
**concerns [2]** 6/10
50/9
**conclude [1]** 70/4
**concluded [1]** 82/13
**conclusion [2]** 62/1
70/12
**conclusions [1]** 62/10
**conditions [1]** 67/13
**conducted [1]** 73/7
**confer [9]** 4/18 4/22
5/5 32/20 34/1 38/7
54/9 79/14 81/17
**conference [11]** 5/22
32/19 33/1 33/2 34/8
35/7 36/4 36/23 37/16
55/3 83/8
**confidence [3]** 18/23
19/3 28/12
**confirm [2]** 33/25
35/21
**confirmed [1]** 33/25
**conflict [2]** 69/16 75/8
**conflicts [1]** 75/6
**conformance [1]** 83/7
**confuse [1]** 12/21
**confused [1]** 14/16
**Congratulations [2]**

67/2 67/9
**connection [1]** 41/11
**consecutively [1]**
38/21
**consider [5]** 53/2
60/19 60/25 67/21
70/3
**considered [2]** 54/17
68/4
**consistent [1]** 34/13
**consistently [1]** 16/16
**conspiracy [1]** 52/22
**constitute [1]** 12/24
**constructive [1]** 35/14
**consumers [1]** 52/12
**contain [1]** 34/8
**contend [2]** 15/16
43/3
**contended [1]** 11/13
**contending [1]** 25/7
**contention [1]** 32/8
**contest [3]** 44/25 45/3
45/5
**context [2]** 18/18 19/8
**contingent [1]** 62/17
**continuance [1]** 61/9
**continue [1]** 75/20
**contract [4]** 69/19
69/21 69/22 71/4
**control [2]** 15/17 17/5
**conversation [1]** 18/5
**conveys [1]** 60/8
**conviction [2]** 46/12
46/18 46/25 47/9
**convictions [8]** 46/9
46/16 46/21 47/12
47/13 47/14 47/15
47/15
**CORPORATION [2]**
1/11 1/12
**correctly [2]** 27/5 44/3
**corresponding [1]**
22/7 22/24
**counsel [16]** 2/1 3/6
4/5 4/7 18/25 19/20
34/23 38/13 42/15
42/16 44/8 54/16
54/16 55/6 57/22
73/13
**count [1]** 69/4
**couple [2]** 9/24 63/24
**course [2]** 56/8 80/9
**court reporter [1]**
31/24
**Court's [15]** 8/10 9/6
21/9 23/16 24/5 26/2
30/3 35/13 51/21
51/22 55/15 64/3
74/19 78/13 80/13
**cover [1]** 17/21
**coverage [1]** 66/7
**covered [1]** 66/10
**create [3]** 48/7 50/7
70/5
**creates [1]** 63/5
**criminal [5]** 76/2
76/21 76/22 76/25
77/6

**criteria [1]** 27/3
**criticism [1]** 59/4
**cross [8]** 6/4 25/20
26/16 46/23 46/25
47/22 60/21 68/25
**cross-exam [1]** 68/25
**cross-examination [5]**
6/4 25/20 26/16 46/23
60/21
**cross-examine [1]**
46/25
**CSR [2]** 1/23 83/15
**cumulative [1]** 6/1
**current [1]** 54/16
**currently [1]** 79/24
**cut [3]** 52/15 52/15
52/16
**cuts [1]** 52/7
**CV [3]** 1/9 3/4 32/4

**D**

**daily [1]** 17/16
**damage [3]** 13/7
23/15 51/13
**damages [13]** 13/3
13/5 13/6 19/12 19/16
19/18 19/22 19/25
23/2 23/7 24/14 24/15
24/22
**data [1]** 59/3
**date [18]** 4/4 4/5 15/2
15/3 52/3 52/4 52/16
62/13 62/19 63/21
64/25 65/5 67/9 68/9
70/23 80/5 80/15
83/10
**dates [2]** 64/14 80/12
**Daubert [1]** 56/22
**day [19]** 16/1 16/8
17/6 17/7 17/10 47/12
52/1 59/8 59/11 63/3
64/16 68/14 74/25
75/3 75/13 75/15
75/25 76/5 76/8
**days [5]** 5/23 9/24
49/21 49/22 52/6
**deadlines [1]** 36/5
**deal [8]** 4/16 5/10 7/23
31/24 43/17 45/12
45/18 82/2
**dealing [1]** 5/13
**decertification [3]**
12/12 33/16 80/14
**decertified [12]** 6/22
6/25 7/14 7/15 7/25
10/22 25/6 27/11
28/16 33/8 37/5 37/20
**decertifying [1]** 7/19
**decide [5]** 12/11
66/20 68/16 77/17
80/7
**decided [3]** 69/15
70/1 72/16
**decision [8]** 21/14
21/22 22/14 23/8 26/3
57/17 62/16 74/25
**deck [1]** 79/1
**declaration [3]** 39/21

44/24 54/13
**deemed [1]** 60/16
**defects [1]** 54/9
**defendant [7]** 3/21
11/14 14/9 15/22
16/15 33/5 73/10
**defendant's [3]** 15/24
17/1 33/18
**defendants [11]** 1/13
2/12 12/21 23/2 31/16
31/2 31/4 37/13 39/11
42/25 74/17
**defendants' [6]** 18/6
18/7 18/12 30/15 31/6
32/8
**defending [1]** 24/25
**defense [8]** 4/12 6/15
10/8 25/20 50/24
56/13 76/24 80/6
**defer [2]** 42/14 54/2
**deferring [1]** 76/4
**defines [2]** 65/10
65/13
**definition [5]** 65/22
65/25 73/11 79/24
81/1
**deliver [1]** 52/11
**demonstrate [1]**
26/21
**denial [5]** 7/8 7/9 7/10
33/18 33/20
**denied [3]** 43/16
51/10 64/5
**deny [3]** 10/14 33/6
67/22
**denying [1]** 51/9
**depend [1]** 66/19
**depending [4]** 40/7
40/14 77/20 77/23
**depends [1]** 46/22
**depose [1]** 61/9
**deposed [1]** 61/2
**deposition [1]** 56/4
**depth [1]** 54/17
**describe [1]** 31/19
**description [1]** 27/7
**designate [1]** 66/5
**designated [2]** 55/17
55/21
**destroy [1]** 52/23
**detailed [1]** 35/14
**detector [2]** 16/5
16/11
**determination [1]**
39/15
**determine [1]** 71/1
**determining [1]** 22/17
**devolve [2]** 22/1 27/19
**devolves [1]** 20/11
**dice [1]** 60/21
**different [4]** 24/22
53/12 62/14 66/23
**difficult [3]** 14/10
36/17 80/4
**dire [4]** 77/12 77/13
77/13 77/14
**direct [3]** 6/4 38/15
42/2

**D**

directly [3] 48/9 52/11 64/11
disability [1] 63/8
disabled [1] 45/8
disagree [6] 15/10 15/12 27/25 28/5 36/22 37/24
disagreement [2] 8/14 36/3
disagreements [1] 7/12
discernible [1] 58/5
disclosed [4] 19/15 19/18 24/22 35/24
disclosure [2] 19/19 24/13 34/14
disclosures [1] 36/9
discouraged [1] 22/19
discouragement [1] 7/2
discouraging [2] 11/21 22/6
discovery [2] 54/15 55/4
discretion [3] 23/16 23/24 24/5
discuss [7] 3/25 4/24 6/20 32/7 46/1 77/20 79/19
dispute [11] 34/9 39/15 44/7 44/10 44/12 44/16 45/14 54/15 55/5 73/6 73/7
disputed [7] 5/3 35/17 35/18 71/10 71/11 79/17 80/5
dissent [2] 29/7 29/7
dissuade [1] 30/3
dissuades [1] 30/21
dissuasion [6] 25/6 25/9 25/16 26/4 26/10 28/1
distance [2] 15/9 20/7
distinguished [1] 31/16
district [6] 1/1 1/2 1/3 62/17 62/21 62/21
distrust [1] 53/6
divided [2] 9/8 38/20
DIVISION [1] 1/2
doctor [1] 59/5
document [1] 43/11
documentation [7] 41/3 43/3 43/6 43/22 44/21 45/17 46/1
documents [5] 33/1 33/3 37/9 37/15 58/21
doffing [1] 29/6
dollar [1] 23/3
donning [1] 29/6
double [1] 77/23
double-check [1] 77/23
down [9] 8/19 18/25 29/14 38/18 40/3 48/11 48/15 57/12 81/18

Dr. [12] 12/19 13/9 13/21 14/1 22/8 22/9 23/1 55/24 58/18 59/2 59/4 79/25
Dr. Alvarado [1] 55/24
Dr. Kriegler [4] 12/19 13/9 58/18 59/2
Dr. Kriegler's [6] 13/21 14/1 22/8 22/9 23/1 79/25
Dr. Newland [1] 59/4
Drainage [1] 57/5
dress [1] 61/10
dressed [1] 61/5
dressing [2] 60/7 60/25
drug [6] 62/17 65/1 67/14 67/15 67/15 67/25
ducks [1] 43/19
due [2] 33/20 49/10
during [2] 34/1 38/7
duty [1] 63/13

**E**

each [9] 5/17 6/3 6/6 20/12 20/23 29/23 41/20 53/3 75/3
earlier [4] 59/17 59/24 74/20 80/15
early [2] 23/7 44/17
EAST [1] 2/15
Eastern [1] 62/21
easy [1] 59/8
easygoing [1] 81/10
EDD [1] 63/8
effect [1] 73/8
effort [2] 4/21 34/1
efforts [1] 4/18
eight [11] 20/8 78/2 78/6 78/7 78/19 78/20 78/21 78/23 78/24 79/5 81/12
either [8] 7/11 21/6 38/6 38/10 61/10 78/9
election [1] 73/5
element [1] 11/25
elements [3] 11/14 11/17 71/8
elicit [1] 50/12
eliciting [1] 49/14
emphasis [1] 74/2
emphasize [1] 53/16
employ [1] 65/13
employed [4] 62/6 66/9 69/18 70/13
employee [22] 15/13 16/18 20/24 29/23 48/13 48/17 48/21 49/8 50/4 50/4 50/13 50/14 50/21 62/13 65/2 65/3 65/8 65/10 67/10 68/5 69/11 71/9
employee's [1] 69/23
employees [16] 14/14 16/18 16/19 29/11 29/12 29/17 29/18 29/20 29/21 50/17

50/20 52/10 64/17 65/19 66/6 71/24
employer [9] 15/17 17/6 29/10 29/16 63/2 66/5 68/7 71/9 71/12
employer's [2] 15/21 29/20
employer/employee [1] 71/9
employers [2] 62/24 63/5
employment [12] 62/5 62/18 62/25 63/2 63/4 63/10 63/12 63/25 64/7 69/19 70/5 70/6
empty [1] 16/19
end [6] 5/11 36/4 37/12 52/15 52/16 61/25
enforce [1] 14/7
engage [3] 65/14 65/22 66/1
engaged [6] 45/5 45/6 64/25 65/14 68/8 69/5
enormous [1] 63/5
enough [3] 5/1 6/5 77/25
entail [1] 40/17
entire [3] 16/2 71/22 78/5
entitled [3] 22/23 48/23 83/6
entity [1] 45/6
envision [1] 49/18
equivalent [1] 15/23
essentially [1] 10/23
establish [3] 20/23 29/19 29/22
established [1] 29/10
estopped [1] 19/13
estoppel [3] 11/15 11/16 11/17
eve [1] 46/1
even [8] 15/18 23/8 54/11 60/13 65/24 66/16 68/5 77/25
evening [4] 46/2 75/24 76/5 76/18
evenings [1] 5/13
everybody [5] 30/9 52/10 52/12 63/18 68/13
everybody -- I [1] 63/18
evidence [57] 6/1 6/14 17/7 18/20 18/22 19/3 19/11 20/4 20/21 23/18 25/11 25/14 26/10 28/8 28/11 29/13 29/19 30/19 30/24 31/7 39/8 39/11 39/13 39/22 39/25 40/5 40/7 40/16 40/25 41/5 41/6 41/12 42/9 42/12 43/19 46/10 46/15 47/11 47/21 51/24 52/23 53/3 53/4 53/5 53/6 53/7 53/8

54/10 54/13 54/21 54/25 55/1 58/8 63/20 64/13 72/7 77/9
Evidence Code [1] 54/25
evidences [1] 26/21
exact [1] 15/13
exactly [16] 8/1 27/4 27/12 27/23 28/14 28/25 39/7 40/19 51/10 52/6 56/3 67/18 70/22 71/23 72/5 76/3
exam [1] 68/25
examination [5] 6/4 25/20 26/16 46/23 60/21
examine [2] 46/25 61/1
example [3] 65/21 77/22 79/1
except [1] 58/20
exception [2] 50/2 50/6
exceptional [1] 60/20
excerpts [1] 16/18
exchanges [1] 35/9
exclude [2] 46/8 48/3
excluded [9] 20/9 20/15 24/17 24/24 26/5 34/16 34/17 34/17 36/12
excluding [2] 31/4 57/6
exempt [1] 51/3
exemption [1] 74/20
exhaustive [1] 36/6
exist [1] 50/2
exists [1] 47/1
exit [2] 43/2 43/11
expect [2] 75/3 75/11
experience [5] 20/12 25/13 29/22 30/6 81/25
experiences [3] 18/21 28/9 29/21
expert [24] 12/19 19/17 19/20 20/8 20/10 24/14 24/17 26/5 27/20 28/21 31/14 57/1 57/2 57/10 57/14 57/20 58/2 58/10 58/14 58/14 60/9 60/16 61/5 61/11
expert's [1] 57/6
experts [2] 54/18 61/3
explain [8] 55/11 55/15 55/19 55/20 55/23 68/18 69/3 78/16
explained [1] 54/22
explaining [3] 55/17 57/10 57/14
exploit [1] 25/21
exposure [1] 20/22
expressly [3] 46/19 54/23 54/24
expunged [2] 46/12 47/9

extension [1] 66/13
extent [4] 22/10 34/10 50/8 77/8
extrapolate [2] 27/21 40/10
extrapolation [2] 18/20 28/8
extreme [1] 17/15
extremely [2] 17/15 53/10

**F**

facility [3] 29/23 30/7 58/22
fact [14] 20/7 22/10 22/12 22/15 23/9 23/21 28/22 28/21 37/16 41/23 51/5 51/12 64/7 64/8
factors [1] 57/9
facts [3] 30/8 35/18 35/19
fail [1] 67/14
failed [3] 18/20 28/8 67/15
Fair [1] 35/6
fairly [2] 53/1 81/10
fall [1] 66/15
false [1] 47/24
familiar [3] 32/22 78/12
far [2] 4/18 66/25
fast [2] 15/7 15/8
favor [3] 22/11 22/15 24/2
FCRR [1] 1/23
February [1] 73/9
February 6th [1] 73/9
federal [6] 1/23 54/25 57/17 62/16 63/6 70/8
feel [3] 31/12 38/17 41/10
feeling [1] 41/17
feels [2] 44/4 45/21
felony [2] 46/25 47/12
felt [1] 40/20
few [1] 42/22
field [1] 15/8
figure [4] 9/12 13/8 24/20 47/6
filed [8] 9/24 24/11 33/1 34/3 35/7 36/5 45/8 69/6
filing [2] 9/23 25/4 33/2 47/24
filings [5] 5/7 32/10 32/15 35/2 74/11
fill [3] 63/2 65/6 77/22
filled [1] 77/7
final [4] 5/22 32/18 36/23 37/16
find [1] 21/5 22/16 23/22 24/1 46/25
finding [5] 21/18 24/2 41/4 43/9 44/22
finds [3] 22/11 22/12 22/15
fine [5] 38/24 43/8

**F**

fine... [3] 45/22 76/12
81/21
fines [1] 62/24
fingers [1] 40/19
firm [1] 69/17
first [46] 1/24 4/25 9/8
10/2 12/3 12/3 12/5 12/5
13/22 13/24 16/21
17/4 17/11 19/16 20/1
21/25 22/2 23/21
24/12 30/1 30/17
36/20 42/21 43/10
44/15 46/2 56/21
61/20 63/3 64/2 75/23
75/25 75/25 76/5 76/5
76/7 76/7 77/20 78/2
78/6 78/7 78/19 78/20
78/23 78/24 79/5
80/16
five [1] 31/23
five-minute [1] 31/23
flexing [1] 26/2
FLOOR [1] 2/10
FLSA [1] 31/15
focus [3] 38/15 51/22
57/5
focused [1] 55/16
folks [1] 81/12
follow [1] 77/16
following [2] 50/22
75/19
foot [1] 48/14
footnote [1] 11/7
foregoing [1] 83/4
forget [1] 76/15
Forgive [2] 8/20 9/25
forgot [1] 79/23
form [3] 43/12 51/4
70/7
format [1] 83/7
formed [1] 63/10
forth [2] 4/24 75/14
forward [6] 3/6 13/10
26/6 27/24 64/16
79/21
foul [1] 50/6
found [3] 10/7 18/19
19/7 19/14 20/5 20/14
23/11 26/11 27/3 27/5
27/17 28/7 29/1
four [2] 49/21 67/17
frankly [2] 51/8 71/3
fraud [2] 12/6 47/1
FRE [1] 60/10
FRE 1006 [1] 60/10
free [1] 38/17
FRIDAY [4] 1/18 3/1
75/18 75/19
front [2] 60/16 77/3
front-load [1] 77/3
frustrating [1] 35/3
fulfillment [1] 52/11
full [1] 46/23
fundamental [1] 9/3
fundamentally [1]
15/12
further [6] 19/12

56/10 80/15 80/18
80/23 81/5
FYI [1] 81/20

**G**

gathered [1] 9/23
gave [1] 65/18
generally [2] 31/19
81/10
germane [2] 36/2 44/3
GERSHMAN [5] 2/14
3/22 42/25 54/2 54/3
gets [5] 19/1 61/25
70/10 75/20 75/21
getting [6] 5/14 8/19
24/5 49/25 50/1 66/25
give [11] 6/3 6/7 21/7
23/23 31/23 42/2
63/18 64/1 65/21
67/19 68/12
given [9] 37/20 51/11
63/10 64/17 64/24
64/25 65/5 66/14
75/13
giving [1] 75/15
glad [1] 51/19
globally [2] 63/5 63/6
gmail.com [1] 1/25
goes [3] 58/9 75/19
80/18
good [14] 3/8 3/10
3/11 3/13 3/14 3/16
3/17 3/19 3/20 3/24
4/5 5/1 78/14 82/4
gotten [1] 62/7
government [1] 70/8
grade [3] 57/19 58/1
59/1
grade-school [2]
57/19 58/1
grant [1] 12/11
granted [1] 23/10
Great [2] 4/11 46/6
GREENBERG [1] 2/13
gross [13] 39/12
39/16 39/25 40/6
40/16 41/2 41/14
41/24 42/10 43/6
43/19 43/24 44/18
ground [1] 17/21
group [1] 77/15
grudge [1] 44/4
guess [11] 7/9 8/9
9/23 9/24 22/2 25/5
32/8 32/16 33/24
63/24 76/5
guidance [1] 73/24
guys [2] 35/4 74/23

**H**

HAMILTON [21] 1/5
3/5 7/7 8/6 32/5 32/9
37/25 39/9 39/23
39/25 40/6 40/16
41/23 42/10 59/12
59/13 64/15 76/20
76/20 77/1 77/7
Hamilton's [1] 41/8

hand [1] 67/3
handful [3] 26/20
27/22 40/10
handshake [2] 67/11
67/17
happen [2] 5/24 11/9
happened [6] 21/2
36/16 39/19 67/3
68/23 69/1
happens [2] 16/16
72/3
happily [1] 80/8
happy [4] 4/17 49/8
50/20 50/21
harbors [1] 41/18
hard [2] 37/14 52/23
harder [1] 59/14
harm [6] 12/25 14/11
14/14 14/15 19/25
50/6
hash [1] 35/5
hat [2] 16/10 36/10
having [2] 55/23 80/3
he'll [1] 24/18
he's [2] 58/21 58/22
head [1] 52/24
hear [10] 17/18 24/7
24/16 29/4 34/5 50/23
52/21 63/15 69/10
74/22
heard [24] 5/17 8/21
10/17 19/16 21/7
24/13 24/20 24/21
25/24 31/10 32/3
32/16 34/9 38/10
38/17 51/20 54/7 56/1
59/1 59/17 59/24
61/18 61/20 67/4
hearing [2] 21/2 30/8
held [1] 83/6
help [4] 25/18 40/12
49/17 64/12
helpful [2] 22/16
56/18
helping [1] 34/22
here's [1] 70/20
hereby [1] 83/3
HERNANDEZ [14] 1/6
7/7 8/7 21/11 21/19
32/9 37/25 59/12
59/13 64/15 76/15
76/20 77/1 77/6
highlights [1] 52/1
highly [1] 61/11
himself [1] 55/19
hire [8] 59/6 63/9
63/21 65/22 65/22
68/18 69/1 72/13
hired [15] 15/2 15/3
49/3 61/25 62/9 64/24
64/24 67/2 67/2 67/6
67/10 68/21 68/24
69/24 70/23
hired,' [2] 69/11 70/19
hiring [3] 15/3 15/4
71/3
history [5] 76/3 76/21
76/22 76/25 77/6

hold [3] 8/18 11/16
40/11
holding [1] 26/17
holds [2] 27/24 44/4
home [1] 66/15
hominem [3] 54/14
54/17 54/19
honest [1] 47/2
honestly [1] 78/15
Honor's [1] 54/5
HONORABLE [1] 1/3
hook [1] 50/22
hope [4] 34/17 47/20
60/25 79/19
hour [1] 36/18
hours [15] 6/3 9/7
35/7 35/8 35/8 49/22
50/1 59/11 59/18
67/16 67/17 68/1 68/3
75/3 75/15
housekeeping [1]
75/2
however [3] 39/9
57/20 58/2
huge [1] 20/5
hurdles [1] 74/14

**I**

I-9 [4] 63/1 63/2 70/7
70/11
identified [2] 59/19
78/13
identifies [3] 13/12
13/15 15/22
identify [3] 20/24 22/9
38/15
identifying [1] 59/17
ignorance [2] 12/6
12/8
ignorant [1] 12/9
impeded [1] 22/19
impermissible [1]
58/12
implement [4] 71/24
71/25 73/1 73/1
implemented [7]
56/16 71/17 72/2 72/2
72/8 73/4 73/8
implied [1] 50/13
import [1] 29/2
important [9] 20/2
26/7 42/2 52/4 58/13
60/2 61/19 62/5 70/9
impose [1] 14/12
impression [1] 10/13
improper [1] 72/3
in 2015 [1] 24/11
inappropriate [2]
36/11 60/18
INC [4] 1/10 1/11 3/5
32/5
incentive [1] 22/20
inclined [3] 21/4
25/22 43/23
included [3] 51/23
53/19 69/25
includes [1] 6/4
INCLUSIVE [1] 1/12

inconsistent [2] 12/4
12/4
incorrect [1] 34/2
incorrectly [1] 44/3
increases [1] 82/1
incursion [1] 20/6
indicated [1] 5/23
indicia [1] 58/6
individual [25] 7/6
7/14 7/17 7/19 8/2 8/5
8/22 9/5 10/23 18/21
19/24 26/15 27/16
27/17 28/9 32/9 35/12
36/3 36/15 36/17
37/20 37/21 38/2 59/7
59/16
individualized [2]
25/11 28/6
INDIVIDUALLY [2] 1/5
1/7
individuals [1] 34/12
inference [1] 17/9
inflammatory [1]
43/25
influence [1] 69/25
information [1] 76/25
initial [2] 32/10 32/14
Initially [1] 17/23
inquire [1] 45/19
inquired [1] 35/10
inquiry [4] 41/23
45/24 51/13 51/14
insisted [1] 34/25
insisting [2] 34/21
34/22
instance [1] 16/4 16/7
16/9 17/10
instances [8] 15/10
15/23 16/13 17/2 17/2
23/3 23/4 81/13
instead [1] 37/8 58/6
instructed [1] 71/2
instruction [10] 37/7
51/23 51/24 52/18
52/20 52/25 53/20
53/21 54/22 55/2
instructions [8] 5/4
9/1 17/25 36/7 50/9
74/15 79/13 79/17
insurance [2] 63/8
66/16
intend [10] 40/5 46/15
47/13 47/15 55/23
63/19 63/20 64/13
77/8 77/8
intended [1] 56/5
intending [1] 12/11
intends [1] 47/11
intent [1] 56/6
intention [1] 9/9
interest [2] 23/15
69/16
interesting [1] 44/20
interferes [1] 30/22
interrupt [1] 16/6
interruption [3] 6/24
8/1 8/23
interview [2] 43/2

**I**

interview... [1] 43/11
interviewed [1] 70/18
introduce [10] 40/5
46/20 47/11 47/14
47/15 47/21 64/13
70/11 72/7 77/9
introduced [1] 35/20
introduction [1] 63/20
inventing [1] 35/12
investigation [2] 41/3
43/8
irrelevance [1] 11/4
irrelevant [2] 10/11
18/14
IRS [1] 62/24
issue [55] 4/1 5/17
6/18 7/20 7/21 10/6
10/24 10/25 11/12
12/17 12/20 12/21
12/21 13/17 14/4
14/15 15/3 17/1 19/13
21/9 22/21 23/8 23/14
23/25 24/23 24/24
30/2 30/18 30/19
31/21 35/15 47/10
49/12 51/21 52/1 56/9
62/3 62/3 64/3 65/9
69/7 69/12 71/14
71/15 72/13 72/14
74/23 76/1 76/4 76/16
76/19 77/5 79/23 80/2
80/7
issued [3] 33/3 33/3
38/8
issues [12] 4/7 4/9
4/14 4/19 5/10 6/10
6/16 22/4 23/9 75/23
79/15 81/18
issuing [1] 82/6
itself [3] 8/9 14/15
58/10

**J**

jacket [1] 16/11
January [9] 52/6
64/14 65/5 65/6 65/6
65/7 65/8 66/14 66/17
65/5 65/8 66/14
January 1 [4] 64/14
65/5 65/8 66/14
January 24th [1] 52/6
January 4 [1] 65/6
January 7th [1] 65/6
job [6] 17/17 67/19
67/20 67/24 68/3
69/21
joined [1] 3/21
joint [1] 37/16
JR [1] 1/3
judge [3] 1/3 62/17
70/14
judgment [4] 18/2
64/4 64/6 69/7
judicial [5] 11/15
11/16 11/17 12/2 83/8
judicially [1] 19/13
JUI [3] 1/23 83/14
83/15

**July**

July [8] 79/25 80/1
80/14 80/16 80/18
80/19 80/20 81/2
July 13th [1] 80/16
July 13th goes [1]
80/18
July 31st [3] 79/25
80/19 80/20
June [3] 39/19 44/17
44/17
jurors [8] 57/15 75/15
77/17 78/1 78/8 78/19
78/22 79/5

**K**

KEMPLE [19] 2/13
3/21 8/14 17/19 24/8
25/24 31/12 34/6
34/20 40/5 46/15
50/23 54/1 59/21
60/20 66/2 69/10
78/18 81/7
Kemple's [1] 45/9
KENNETH [2] 2/3 3/8
key [1] 51/25
kicked [1] 70/8
kind [2] 45/6 50/6
kinds [1] 70/11
knowledge [2] 58/19
58/20
known [1] 23/20
knows [1] 52/12
Kriegler [8] 12/19
13/9 19/17 56/22 57/3
58/11 58/18 59/2
Kriegler's [6] 13/21
14/1 22/8 22/9 23/1
79/25

**L**

Labor [7] 28/3 36/18
48/8 48/16 50/3 50/3
66/3
Labor Code [5] 28/3
48/8 50/3 50/3 66/3
lack [5] 18/22 19/2
22/3 28/11 79/20
lacked [1] 57/8
language [2] 74/19
74/20
large [4] 23/12 23/15
59/3 80/2
largely [1] 24/17
last [5] 9/24 12/5
32/22 71/16 80/14
late [2] 5/12 81/19
later [3] 35/13 49/3
49/4
latest [1] 9/23
launch [1] 55/4
law [34] 2/3 2/3 2/4
2/4 2/8 2/9 2/13 2/14
2/14 2/15 2/18 13/1
14/7 22/21 26/17
27/24 48/7 49/7 49/7
50/5 50/6 50/10 50/10
50/22 58/13 62/15

**liber**

63/6 63/7 64/21 65/17
69/15 69/20 70/11
71/2
laws [1] 51/3
lawsuit [1] 45/8
lawyers [5] 47/23 58/7
62/1 81/23 81/25
lay [4] 6/19 60/11 62/9
62/12
lead [1] 40/21
least [9] 4/23 6/18
10/12 26/25 33/25
39/10 52/18 53/20
74/11
leave [3] 30/22 39/16
82/4
lectern [5] 5/18 5/20
10/19 38/16 38/17
lecturn [1] 8/19
LEE [2] 2/4 3/17
left [1] 10/12
legal [14] 15/3 48/21
48/22 62/1 62/3 62/8
62/10 68/15 69/14
70/1 70/9 70/12 72/17
73/20
legalese [1] 69/2
legions [1] 26/17
legislature [1] 28/1
LEIGH [2] 2/18 3/22
less [7] 23/5 23/23
27/22 30/25 48/21
50/21 58/5
lesser [11] 23/17
23/23 48/20 51/23
51/24 52/18 52/20
52/25 53/19 53/20
54/21
let [26] 5/9 9/18 9/22
17/18 21/8 24/7 34/5
34/21 40/4 42/17
43/18 43/21 46/14
50/22 50/23 58/18
63/15 63/15 65/21
66/20 69/10 70/7 75/5
77/7 77/23 79/16
letter [1] 52/5 52/14
61/25
letters [1] 4/25
letting [3] 45/13 60/6
81/22
liability [2] 20/22
29/20
lieu [1] 14/11
like [37] 4/3 5/25
11/17 20/2 27/7 31/10
32/12 32/16 32/17
33/13 35/1 35/3 35/17
39/6 47/8 49/21 49/21
49/22 49/24 50/1 50/6
50/18 51/20 51/22
52/21 52/21 55/14
59/16 63/1 64/22
68/22 72/12 73/19
73/25 74/1 74/21
81/10
liked [4] 48/3 49/5
49/15 51/3

**limine**

limine [19] 4/2 5/25
38/3 38/6 38/9 38/11
42/5 48/2 55/11 55/16
56/12 56/14 56/16
56/20 56/21 61/17
61/23 71/18 82/8
limitations [2] 13/13
13/14
limits [3] 5/16 5/17
6/11
line [5] 19/5 25/14
64/19 71/8 78/1
lines [2] 34/22 64/23
literally [5] 20/6 24/12
26/18 35/18 54/10
little [6] 23/7 46/11
49/17 53/12 59/14
66/25
LLP [1] 2/13
load [1] 77/3
Local [1] 4/23
Local Rules [1] 4/23
Logically [1] 17/9
long [4] 49/4 49/25
69/2 81/19
longer [5] 7/20 14/14
59/9 75/11 80/10
look [10] 5/6 20/16
27/7 35/2 36/4 52/21
58/24 61/24 75/5 79/2
looked [1] 20/10
looking [3] 19/23
53/23 53/24
looks [4] 4/3 55/14
68/14
LOS [6] 1/20 1/24 2/6
2/10 2/16 3/1
lose [1] 33/16
lost [4] 9/19 33/21
33/22 57/6
lot [7] 4/19 6/1 37/11
45/12 47/5 57/23
58/24
lowest [1] 78/21
loyalty [1] 63/13
lunch [1] 75/11

**M**

ma'am [2] 41/1 41/14
made [6] 11/14 35/10
39/14 51/14 55/14
58/6
main [1] 12/17
maintain [1] 52/2
major [3] 61/2 71/4
75/6
majority [1] 29/7
majority's [1] 29/9
make [23] 18/25 20/3
21/22 38/17 39/6 41/4
42/1 56/25 58/7 58/17
62/1 63/17 63/19
63/20 64/19 64/22
64/23 66/9 70/12 74/3
74/25 78/4 78/9
making [5] 14/4 15/11
19/6 35/24 64/14
manageability [3]

**manageable**

12/16 12/17 14/4
manageable [3] 18/3
18/11 27/2
management [1]
56/11
manager [2] 18/7
30/10
managers [1] 31/4
many [5] 26/22 28/4
38/6 75/3 81/12
MARCH [12] 1/18 3/1
5/8 47/3 70/2 70/15
71/15 77/7 77/10
79/17 81/4 83/10
March 25th [6] 5/8
70/2 70/15 71/15
79/17 81/4
March 25th so [1]
77/7
MARK [2] 2/13 3/21
Market [1] 62/20
MART [32] 1/10 1/11
3/5 3/23 9/17 17/18
20/20 20/22 21/4 25/7
25/12 32/5 33/25
40/21 41/11 43/18
44/5 45/7 45/19 46/9
46/11 47/11 47/20
48/6 52/1 55/22 64/16
66/14 66/16 67/10
73/3 73/7
Mart's [4] 10/4 25/5
31/7 45/14
massive [1] 16/19
match [1] 4/25
math [5] 28/23 57/8
58/12 58/13 59/23
matter [11] 25/3 32/3
32/7 34/21 48/25 49/8
49/15 50/15 50/16
50/19 83/6
MATTHEW [3] 2/14
3/22 42/24
maybe [3] 10/12
23/22 41/20
meal [11] 6/24 7/2 7/8
8/1 8/23 10/23 22/19
25/5 25/6 25/15 30/22
meals [2] 11/21 22/7
mean [10] 12/8 27/6
28/7 37/20 40/15 56/1
60/12 66/3 66/13 71/2
meaningful [4] 4/21
5/2 38/7
means [7] 60/3 65/22
67/10 69/3 69/4 73/2
73/3
meant [2] 55/20 55/24
measure [3] 12/25
14/5 30/1
measurement [1]
14/14
measuring [1] 31/1
meet [9] 4/18 4/21 5/5
32/20 34/1 38/7 54/9
79/14 81/17
meeting [2] 4/24 75/9
meetings [1] 36/6

**M**

**MEI [3]** 1/23 83/14 83/15
**member [2]** 20/13 33/13
**members [3]** 30/21 33/15 66/11
**memo [1]** 32/8
**mentally [1]** 78/6
**mentioned [2]** 19/20 66/2
**mere [1]** 63/11
**merely [2]** 18/21 28/9 70/5
**merits [2]** 21/13 21/18
**met [1]** 35/18
**metal [1]** 16/5
**methodology [3]** 57/21 58/4 59/5
**might [4]** 16/13 24/11 67/15 68/18
**million [1]** 24/20
**mind [1]** 49/25
**mini [2]** 26/16 27/19
**minimum [6]** 14/8 48/13 48/18 48/21 50/19 50/21
**minority [1]** 17/15
**minus [1]** 7/10
**minute [5]** 8/1 8/23 10/25 10/25 31/23
**minutes [6]** 6/6 6/7 6/9 7/10 20/9 59/8
**misconduct [15]** 39/12 39/16 40/1 40/6 40/17 41/2 41/14 41/24 42/10 43/7 43/20 43/24 44/19 45/6 45/7
**misleading [1]** 72/6
**Miss [33]** 7/7 7/7 8/6 8/7 21/11 21/19 32/9 32/9 37/25 37/25 39/9 39/23 39/25 40/6 40/16 41/8 41/23 42/10 59/12 59/12 59/13 59/13 64/15 64/15 70/18 76/15 76/15 76/20 76/20 77/1 77/1 77/6 77/7
**Miss Hamilton [18]** 7/7 8/6 32/9 37/25 39/9 39/23 39/25 40/6 40/16 41/23 42/10 59/12 59/13 64/15 70/18 76/20 77/1 77/7
**Miss Hamilton's [1]** 41/8
**Miss Hernandez [13]** 7/7 8/7 21/11 21/19 32/9 37/25 59/12 59/13 64/15 76/15 76/20 77/1 77/6
**missed [1]** 6/20
**missing [1]** 32/21
**mistake [1]** 12/7
**moment [6]** 9/18 59/19 62/6 67/13

67/23 79/2
**Monday [2]** 75/20 82/9
**month [2]** 39/18 68/6
**months [2]** 39/17 49/4
**moot [4]** 18/7 18/10 23/11 45/23
**more [9]** 6/5 53/17 61/4 63/25 64/21 65/11 65/21 74/5 81/25
**moreover [2]** 19/22 69/23
**morning [11]** 3/8 3/10 3/11 3/13 3/14 3/16 3/17 3/19 3/20 3/24 5/14
**most [2]** 28/24 47/23
**motion [33]** 19/7 33/3 34/4 38/15 39/10 42/4 43/16 45/10 46/7 46/8 46/19 48/1 48/2 51/9 51/16 54/8 54/10 54/11 54/12 54/23 55/11 55/16 56/21 57/5 61/15 61/22 61/23 64/4 64/6 69/6 71/18 71/23 80/14
**Motion Number 2 [1]** 46/8
**motions [14]** 4/1 5/25 11/2 38/3 38/5 38/9 38/11 55/7 56/12 56/13 56/16 56/20 61/17 82/8
**mountain [2]** 26/10 26/21
**move [4]** 20/19 27/24 38/3 79/21
**moved [3]** 18/2 18/3 26/3
**Mr. Alvarado [3]** 55/10 55/12 56/3
**Mr. Cleaver [5]** 38/14 47/8 51/16 69/9 72/10
**Mr. Gershman [2]** 54/2 54/3
**Mr. Kemple [17]** 8/14 17/19 24/8 25/24 31/12 34/6 34/20 40/5 46/15 50/23 54/1 59/21 60/20 66/2 69/10 78/18 81/7
**Mr. Kemple's [1]** 45/9
**Mr. Kriegler [4]** 19/17 56/22 57/3 58/11
**Mr. Sam [1]** 38/13
**Mr. Yoon [18]** 9/23 10/17 21/7 29/4 31/9 32/16 36/13 37/23 38/12 38/20 51/18 56/10 58/18 63/6 66/22 72/10 74/13 81/25
**Mt [1]** 29/10
**much [8]** 9/12 9/13 17/20 26/1 47/7 58/5 67/21 73/21

**multiple [1]** 20/15
**multiply [1]** 59/25
**must [1]** 27/11

**N**

**name [1]** 3/20
**namely [1]** 11/11
**names [1]** 37/8
**NAOMI [2]** 2/14 3/23
**nature [3]** 38/4 43/25 75/16
**nay [1]** 77/17
**necessary [2]** 57/11 57/15
**need [35]** 3/25 5/4 5/5 5/23 8/18 14/15 14/21 16/15 19/10 20/23 25/10 26/7 27/9 28/19 28/23 31/12 38/18 43/18 43/22 45/12 45/16 45/25 47/22 53/18 66/20 69/25 73/24 74/5 79/18 81/3 81/12 81/16 81/17 81/22 82/2
**needed [1]** 59/5
**needs [7]** 17/5 23/20 28/25 47/12 69/15 70/1 71/2
**negligence [2]** 53/15 53/18
**net [1]** 10/25
**never [13]** 19/15 19/18 24/19 24/21 31/17 34/14 34/25 36/8 51/2 51/2 51/4 54/11 58/22
**new [10]** 17/23 19/16 20/15 26/5 28/17 30/8 35/12 35/20 37/9 43/4
**Newland [1]** 59/4
**next [8]** 5/14 7/23 20/19 25/4 32/7 46/7 48/1 51/16
**night [2]** 5/11 81/19
**Ninth [1]** 53/13
**Ninth Circuit [1]** 53/13
**nobody [2]** 63/11 64/10
**non [1]** 11/4
**noncertified [2]** 11/4 17/23
**none [4]** 17/25 21/2 24/21 54/7
**nonexpert [1]** 59/20
**nonpayment [6]** 6/22 7/2 7/16 8/5 8/23 11/22 13/1 21/2
**nonsubstantive [2]** 33/17 33/19
**noon [1]** 76/10
**normal [1]** 75/18
**note [2]** 34/13 39/19
**noted [1]** 39/7
**notes [1]** 9/19
**nothing [1]** 46/13
**notice [3]** 62/7 63/8

72/9
**notion [5]** 27/25 35/25 42/20 71/17 72/1
**notwithstanding [2]** 26/22 48/19
**November [4]** 13/11 52/7 52/15 52/16
**November 14th [1]** 13/11
**November 7th [2]** 52/7 52/15
**November 7th to [1]** 52/16
**number [35]** 3/25 13/12 13/15 17/13 30/6 39/1 39/1 39/2 39/4 39/5 43/7 46/8 48/3 51/20 55/9 56/23 56/24 57/4 59/24 61/23 71/19 71/20 72/19 72/20 72/21 72/22 72/22 72/25 77/20 77/24 79/4 79/4 79/4 79/7 79/8
**Number 1 [4]** 39/1 56/23 56/24 79/7
**Number 10 [1]** 79/4
**Number 2 [1]** 30/6
**Number 3 [1]** 48/3
**Number 4 [6]** 71/20 72/20 72/21 72/22 72/25 79/4
**Number 5 [4]** 51/20 61/23 72/19 72/22
**Number 6 [1]** 79/8
**Number 6's [1]** 55/9
**number one [1]** 43/7
**numbers [5]** 20/5 59/2 78/20 78/21 78/23

**O**

**o'clock [4]** 75/10 76/6 81/20 81/23
**object [2]** 70/16 70/19
**objection [2]** 9/3 58/15
**objective [5]** 25/6 25/9 25/15 28/1 28/2
**obviously [2]** 40/21 53/17
**occasion [1]** 16/17
**occur [2]** 17/6 17/9
**occurred [1]** 20/24
**occurs [1]** 17/7
**October [1]** 62/22
**October 27, 2017 [1]** 62/22
**odd [1]** 59/14
**off [10]** 7/14 16/11 32/18 38/1 48/14 50/22 52/7 53/7 53/23 79/3
**off-the-clock [1]** 38/1
**offer [16]** 46/15 60/14 61/25 62/4 62/17 62/19 63/11 64/16 64/25 65/5 65/15 65/18 66/14 69/22

70/6 70/24
**offered [2]** 51/5 63/22
**offering [1]** 26/15
**office [1]** 36/18
**OFFICES [1]** 1/23
**OFFICIAL [1]** 1/23
**often [1]** 36/18
**Oh [1]** 35/22
**Once [1]** 77/19
**one [45]** 2/5 10/9 13/12 13/13 16/4 16/7 16/8 16/9 16/11 16/12 16/18 22/18 22/19 22/22 23/10 25/17 28/4 39/4 39/4 39/6 39/20 42/1 43/7 49/23 51/6 53/21 56/6 58/5 61/18 62/3 65/11 65/21 66/25 71/8 71/9 71/16 72/16 73/16 74/14 75/22 75/23 76/16 76/23 78/13 79/23
**one-year [2]** 13/12 13/13
**ones [4]** 35/19 38/22 38/23 38/24
**only [13]** 7/3 17/1 18/8 19/18 27/2 32/11 34/22 37/15 56/3 56/24 57/8 70/25 75/8
**oOo [1]** 82/14
**opening [1]** 6/6
**operation [2]** 73/2 73/3
**opinion [4]** 19/17 20/1 38/4 58/10
**opinions [3]** 19/21 24/17 57/17
**opportunity [3]** 28/20 40/23 62/7
**opposed [2]** 5/14 61/24
**opposing [1]** 34/23
**opposition [6]** 46/20 54/23 71/21 71/22 72/4 73/1
**oral [2]** 30/18 30/18
**order [15]** 5/6 5/22 11/6 11/7 28/22 32/19 35/13 36/23 37/16 43/19 54/18 57/22 64/3 66/25 78/25
**ordered [1]** 9/6
**orders [3]** 74/19 78/13 82/6
**organization [1]** 66/5
**original [2]** 28/18 80/24
**originally [1]** 33/7
**OTHERS [2]** 1/6 1/7
**Otherwise [2]** 71/4 81/18
**ours [1]** 15/25
**ourselves [1]** 24/6
**out [24]** 6/19 6/23 9/12 20/18 20/20 23/3 35/5 36/10 37/13

**O**

**out... [15]** 40/12 40/15 43/2 47/6 49/18 54/6 63/2 65/6 65/16 67/23 67/24 70/7 70/17 74/24 82/9
**outside [4]** 15/14 16/15 30/10 53/7
**over [5]** 4/20 26/3 35/8 73/6 79/8
**overtime [14]** 6/23 7/3 7/16 8/6 11/22 22/6 22/20 32/18 38/1 48/18 48/22 49/9 49/25 51/3
**owed [2]** 14/10 22/23
**own [3]** 20/8 58/19 66/24

**P**

**pace [1]** 16/14
**PAGA [45]** 7/21 9/25 10/3 10/5 10/15 11/13 11/21 12/4 12/15 12/16 12/18 12/25 12/25 13/14 13/16 14/6 17/23 18/2 18/13 18/17 19/12 19/15 19/18 19/22 20/22 21/6 21/10 21/10 21/19 22/10 22/14 22/17 22/24 23/11 23/13 23/25 23/25 24/4 24/14 24/15 24/19 24/22 25/2 47/24 82/10
**page [2]** 9/20 83/7
**paid [7]** 13/19 17/5 29/24 30/12 30/13 30/13 50/19
**panel [1]** 78/5
**papers [1]** 80/1
**paperwork [1]** 65/7
**paraphrasing [1]** 48/23
**parcel [1]** 37/21
**PARK [1]** 2/15
**part [16]** 11/13 12/5 22/13 23/1 23/12 23/15 24/17 24/17 30/4 30/5 34/19 37/21 44/16 46/16 52/4 52/7
**parted [1]** 45/16
**participants [1]** 66/10
**participate [1]** 49/4
**particular [5]** 15/13 19/24 20/25 22/18 67/18
**particularly [4]** 4/17 40/21 51/11 75/13
**parties [8]** 5/18 5/23 45/13 73/15 73/18 75/14 77/12 81/16
**partner [2]** 3/22 3/23
**party [5]** 5/20 11/18 42/16 53/3 53/4
**pass [1]** 67/24
**past [4]** 41/20 58/25

76/2 80/15
**patience [2]** 81/8 81/11
**PATTON [2]** 2/15 3/23
**pause [2]** 9/21 75/7
**pay [24]** 13/12 13/18 13/22 13/22 13/24 13/25 13/25 14/3 16/2 16/8 17/6 17/8 17/10 19/23 19/24 21/1 21/1 22/25 24/23 49/9 59/16 59/24 59/25 73/22
**payment [2]** 14/8 33/13
**paystubs [1]** 22/20 59/18
**peak [8]** 52/8 52/10 52/12 53/7 53/8 53/8 53/23 53/24
**peg [1]** 24/23
**penalize [1]** 14/17
**penalties [9]** 10/15 11/21 13/14 20/17 21/6 22/7 22/24 22/25 23/18
**penalty [19]** 13/7 13/16 13/18 13/21 13/23 14/2 14/7 14/12 14/19 22/10 22/23 22/24 23/5 23/5 23/17 23/25 24/1 24/4 51/13
**people [19]** 13/15 17/12 17/13 17/15 20/5 22/22 26/22 26/23 28/23 40/10 40/10 55/16 55/19 59/14 62/4 62/9 63/13 66/5 73/5
**per [1]** 75/15
**percent [5]** 14/12 14/13 59/9 59/10 59/15
**peremptories [7]** 77/21 77/25 78/3 78/5 78/7 79/3 79/5
**performance [2]** 69/21 71/3
**period [27]** 7/8 13/13 13/18 13/22 13/22 13/24 13/25 16/2 16/9 17/7 17/8 17/10 19/24 20/25 21/1 24/23 52/2 52/9 52/16 59/25 80/3 80/3 80/9 80/10 80/13 80/17 80/24
**periods [7]** 13/12 13/25 14/3 19/23 21/2 22/25 59/24
**permit [1]** 65/14
**person [15]** 4/24 15/6 15/13 17/2 24/24 28/3 35/8 59/6 64/22 64/24 65/1 65/2 68/8 68/10 79/14
**person's [1]** 59/8
**personal [3]** 58/19 58/20 65/23

**persons [1]** 16/13
**perspective [1]** 45/14
**persuasion [1]** 25/19
**persuasive [1]** 23/23
**phone [2]** 16/8 35/9
**physicality [1]** 14/23
**pick [2]** 78/7 78/23
**picked [3]** 16/18 27/16 27/17
**pickers [1]** 39/20
**place [2]** 17/11 20/25
**plaintiff [18]** 3/9 3/18 6/8 6/11 7/13 10/4 10/10 20/23 25/22 26/24 35/4 37/3 40/21 41/21 51/12 58/17 63/19 64/18
**plaintiffs [45]** 1/8 2/2 2/7 3/12 3/15 7/17 10/13 10/21 11/3 11/8 11/10 11/13 18/19 18/22 19/2 20/21 21/5 22/11 22/12 22/16 24/2 25/2 25/8 25/12 25/14 25/17 26/3 26/19 28/7 28/11 28/21 31/8 32/8 32/14 33/6 33/8 36/16 37/1 37/4 37/18 40/9 64/4 70/22 75/24 76/16
**plaintiffs' [9]** 10/15 37/5 39/1 39/2 39/4 39/5 46/17 55/7 71/21
**Plaintiffs' Number 1 [3]** 39/1 39/4 39/5
**Plaintiffs' Number 2 [1]** 39/2
**plan [5]** 26/6 28/17 28/19 73/2 73/2
**play [2]** 65/16 79/20
**pleading [1]** 36/23
**please [7]** 3/6 35/21 44/14 65/12 77/7 80/12 82/3
**pled [1]** 33/22
**podium [1]** 44/13
**point [42]** 7/24 9/6 9/18 11/2 11/9 11/15 12/13 15/11 20/2 21/8 21/24 23/24 24/6 25/2 25/7 26/7 28/18 29/8 31/7 32/22 35/4 36/19 36/20 39/8 40/8 44/2 44/3 45/9 51/8 55/3 56/24 59/20 60/3 60/7 60/23 60/24 65/15 68/5 68/7 71/23 72/5 74/21
**pointing [1]** 19/21
**points [11]** 7/12 17/4 20/20 33/7 35/24 39/6 51/14 58/16 61/20 63/17 63/25
**policy [3]** 29/25 30/12 30/14
**portion [1]** 23/20
**portions [1]** 13/9
**posed [1]** 56/5

**position [13]** 8/4 11/20 11/25 12/1 12/1 12/3 12/6 12/20 32/23 63/1 63/22 65/4 69/16
**positions [2]** 11/19 12/3
**possessing [1]** 58/5
**possible [2]** 74/3 75/8
**possibly [2]** 40/8 63/25
**power [1]** 14/11
**precluded [1]** 67/5
**prefer [1]** 31/2
**preferably [1]** 4/24
**prejudice [2]** 43/17 73/10
**prejudicial [3]** 60/18 61/11 72/6
**premature [1]** 38/8
**premises [1]** 30/23
**premium [3]** 59/10 59/10 59/15
**present [7]** 2/18 6/3 6/5 23/22 39/11 39/22 39/25
**presentation [1]** 9/7
**presented [2]** 6/1 22/3
**press [1]** 79/20
**pretrial [16]** 5/7 5/22 8/25 17/24 19/9 32/10 32/15 32/19 33/1 33/2 34/8 35/7 36/4 36/23 37/16 56/11
**pretty [1]** 51/25
**pretty -- I [1]** 51/25
**previously [1]** 25/8
**principle [2]** 57/21 58/4
**prior [7]** 18/1 54/16 55/11 73/18 76/20 76/22 76/25
**probably [1]** 82/9
**problem [7]** 27/10 36/21 49/5 61/2 63/5 65/17 71/4
**problems [2]** 54/7 63/13
**procedural [4]** 21/14 21/18 54/9 56/17
**procedure [1]** 73/5
**proceed [11]** 4/6 10/5 21/19 26/4 26/14 32/24 33/9 33/11 33/17 33/17 33/19
**proceeding [1]** 12/14
**proceedings [5]** 1/17 9/21 75/7 82/13 83/6
**process [12]** 8/12 27/1 27/8 30/20 31/1 31/20 33/20 68/18 71/25 72/8 74/3 78/10
**produce [1]** 53/3
**produced [1]** 20/21
**products [1]** 52/11
**proffered [1]** 24/14
**profits [1]** 57/7
**prohibit [1]** 37/24
**prohibits [1]** 50/3

**proof [12]** 6/8 18/21 26/3 27/4 27/13 27/13 27/14 28/6 28/9 33/11 33/12 74/15
**properly [4]** 33/22 50/15 50/16 73/6
**proposal [1]** 35/14
**propose [2]** 26/19 70/2
**proposed [1]** 35/18
**proposing [3]** 28/24 57/3 58/11
**protection [1]** 17/12
**prove [2]** 14/15 26/9
**provide [3]** 18/20 28/8 51/12
**provided [3]** 53/4 53/5 58/21
**providing [1]** 57/1
**provision [1]** 12/5
**provisions [1]** 63/8
**pulled [1]** 43/2
**pure [1]** 69/14
**purely [1]** 71/1
**purported [1]** 57/7
**purposes [5]** 15/11 65/2 65/21 66/6 67/12
**pursuant [2]** 36/5 45/16 83/3
**pursue [8]** 10/13 10/15 20/17 21/5 25/2 32/20 34/2 34/4
**pursued [2]** 21/10 34/11
**pursuing [6]** 11/10 18/9 32/9 32/14 35/21 37/25
**putative [1]** 28/24
**putting [4]** 26/6 59/3 75/25 76/7

**Q**

**qualify [1]** 60/15
**quantifying [1]** 20/21
**quasi [1]** 12/2
**quasi-judicial [1]** 12/2
**question [34]** 15/6 18/17 20/11 20/12 21/16 33/24 35/2 42/6 42/8 43/10 43/14 43/21 44/15 49/13 53/21 56/4 62/9 64/5 64/7 64/8 64/12 66/21 67/1 69/14 70/1 70/9 70/10 71/1 71/2 72/15 72/17 75/2 78/14 79/6
**questioning [1]** 43/24
**questions [10]** 4/25 6/10 35/17 41/25 49/20 49/24 64/11 77/13 77/16 78/10
**quick [2]** 17/22 40/4
**quite [4]** 20/13 27/5 36/3 40/8
**quote [11]** 24/10 44/18 48/9 48/10 54/19 57/14 57/25 61/25 69/20 69/20

**Q**

quote... [1] 72/7

**R**

rabbit [1] 36/10
raise [3] 9/4 75/22 79/24
raised [3] 21/21 25/4 64/4
raising [1] 75/23
random [1] 17/2
rare [3] 16/13 17/10 17/15
rates [1] 59/16
rather [3] 4/14 73/20 79/7
re [1] 35/12
re-inventing [1] 35/12
reach [2] 18/17 18/18
reached [1] 56/17
read [5] 4/23 29/15 48/10 58/10 72/4
Reading [8] 29/9 29/16 48/19 53/2 57/6 57/13 57/19 58/1
ready [2] 4/9 5/14
real [1] 40/4
reality [1] 82/2
really [9] 4/21 23/20 36/17 53/8 55/16 61/7 61/18 62/5 73/21
reason [3] 4/6 61/4 75/22
reasonable [1] 28/3
reasons [4] 16/21 20/15 23/10 51/9
rebuttal [2] 6/9 61/4
Recalling [1] 32/4
receive [1] 33/13
received [2] 34/14 63/1
receiving [1] 48/21
recent [1] 62/16
recess [3] 31/23 32/1 32/2
recognize [1] 81/16
record [7] 14/9 19/1 23/19 29/11 29/17 30/5 37/15
recording [1] 14/7
records [1] 47/19
recover [1] 48/23
recovery [2] 48/12 48/17
reduce [1] 23/16
referenced [1] 46/19
referring [1] 72/1
refused [1] 51/12
refutation [1] 59/23
reg [1] 65/9
regard [4] 39/9 39/23 48/12 62/16
regarding [3] 54/18 54/21 72/19
regards [1] 48/12
regular [1] 59/6
regulation [1] 65/11
regulations [1] 83/8

rejected [3] 28/25 51/6 54/18
relates [19] 4/18 5/16 7/7 8/5 8/6 9/25 21/23 32/17 38/8 38/10 43/19 45/18 45/19 45/20 46/16 47/9 76/20 76/25 77/6
relating [3] 10/3 18/13 20/19
relationship [4] 38/5 63/10 70/5 71/10
relative [1] 47/16
relevance [2] 40/19 70/25
relevant [5] 25/18 41/16 41/18 51/11 51/13
reliability [1] 58/6
relying [1] 52/5
remain [2] 18/19 37/6
remaining [4] 7/1 7/11 18/6 19/8
remains [5] 7/17 7/19 8/3 8/5 26/11
remember [1] 76/3
repeal [1] 49/12
rephrase [1] 34/21
reported [1] 83/5
reporter [1] 1/23 8/19 31/24
REPORTER'S [1] 1/17
reports [1] 35/7
representations [1] 35/10
representative [4] 29/13 29/19 33/20 37/3
representatives [3] 33/10 33/14 37/19
represented [3] 10/6 25/8 34/10
request [1] 28/16
requested [2] 49/19 51/6
require [1] 16/12
required [1] 70/8
requirements [2] 60/12 63/7
requires [3] 71/25 72/9 73/17
research [1] 5/4
resignation [1] 44/21
resigned [3] 39/18 44/16 45/15
resolve [2] 50/9 79/15
resolved [3] 5/10 38/7 47/7
resolving [2] 70/22 70/23
respect [19] 4/1 6/11 7/12 7/15 8/15 10/22 12/16 13/1 22/5 23/11 25/5 30/17 37/11 60/8 63/21 74/20 75/24 77/5 77/16
respectfully [6] 27/11 27/25 28/5 36/11

37/23 70/14
response [8] 26/2 35/13 36/14 40/2 41/13 45/9 54/1 58/17
rest [5] 7/8 7/10 10/24 31/25 74/10
restating [1] 73/18
rests [1] 62/8
result [1] 12/6
retain [1] 69/2
return [1] 26/7
review [1] 59/5
reviewed [1] 5/25
revisit [1] 35/17
revote [1] 51/7
right [37] 3/24 4/3 6/10 6/14 6/17 8/13 24/7 31/9 33/16 33/17 33/19 33/19 33/21 33/21 34/5 40/2 43/4 43/5 43/16 45/3 45/13 50/10 50/11 50/17 52/14 53/25 57/25 64/10 64/17 71/5 74/7 78/1 79/1 79/13 80/17 80/20 81/9
rightfully [1] 70/14
rights [2] 30/22 33/7
rise [1] 32/1
road [1] 40/3
robe [5] 57/1 58/14 60/2 60/5 61/1
robing [1] 60/4
rolling [1] 52/2
room [2] 1/24 35/5
row [2] 79/7 79/10
ruled [1] 27/12
Rules [2] 4/23 54/25
ruling [5] 20/16 25/1 30/3 51/10 64/6
rulings [2] 33/4 38/8
running [1] 5/20

**S**

sales [1] 57/10
Sam [2] 3/12 38/13
Sam Cleaver [1] 3/12
same [2] 11/18 14/3 15/9 15/9 15/13 15/19 15/24 16/14 20/7 26/10 29/23 29/24 30/7 30/9 30/12 30/13 30/19 30/24 37/7 58/7 64/5 64/23 66/8
sample [1] 68/2
SAMUEL [2] 2/8 2/9
sanctions [2] 54/11 54/12
sands [1] 32/13
satisfied [1] 67/13
saying [14] 14/18 16/17 31/17 33/25 37/17 44/20 45/3 53/19 60/15 64/15 65/20 67/12 67/23 73/11
scenario [1] 81/24
schedule [1] 7/3

scheduling [1] 4/9
school [3] 57/19 58/1 59/2
scientific [1] 57/1
scope [2] 25/18 26/10
season [2] 52/8 52/12
seating [1] 78/25
second [7] 7/8 9/8 9/13 10/23 11/25 11/25 13/22 13/24 43/14
Section [4] 48/8 48/16 48/18 83/3
Section 1194 [2] 48/8 48/16
sections [1] 28/4
security [47] 6/24 7/16 7/25 8/9 8/11 8/11 8/22 11/3 11/12 11/23 11/24 12/12 12/14 12/15 12/23 13/19 13/19 15/7 15/12 15/16 16/2 16/5 16/14 16/20 16/23 16/24 17/13 17/16 19/5 19/6 20/5 20/13 25/14 27/1 27/8 28/14 30/2 30/9 30/11 30/20 30/21 31/5 31/20 33/9 36/25 53/23 53/24
see [15] 6/20 21/8 25/1 39/13 43/22 44/4 49/20 52/22 56/9 69/12 73/10 73/14 74/1 77/15 82/3
seek [2] 11/21 19/9
seeking [6] 10/5 13/23 25/8 36/25 37/4 46/20
seem [4] 5/2 32/13 35/3 81/24
seems [6] 5/25 32/12 32/17 35/1 60/19 78/12
seen [6] 4/17 21/22 24/19 35/2 54/11 67/4
selected [1] 76/10
sends [1] 63/11
sense [4] 12/8 12/9 42/23 78/9
sentence [1] 42/1
separate [2] 23/14 49/1
serve [1] 33/6
services [1] 65/23
set [7] 4/3 26/3 26/11 27/4 27/13 44/1 68/13
sets [3] 16/11 50/2 59/3
setting [2] 12/2 68/9
settlement [2] 44/17 45/16
several [2] 11/17 39/17
Shake [1] 67/3
shape [1] 51/4
shelf [1] 79/11
shift [3] 16/1 28/19

49/23
shifted [1] 28/17
shifting [2] 32/13 35/4
shifts [2] 20/8 59/10
shoes [1] 16/10
short [1] 22/2
shorter [2] 80/8 80/17
show [7] 16/15 16/16 26/25 26/25 30/20 39/11 53/18
showed [1] 30/20
showing [1] 31/1 40/3 44/21
shown [1] 46/12
sic [1] 69/9
side [13] 5/1 5/17 5/21 6/3 6/6 7/11 31/11 38/10 50/24 55/7 56/13 64/5 78/9
sidebar [2] 77/15 77/19
sides [2] 10/12 45/17
sign [1] 38/4
significance [1] 63/21
significant [1] 28/22
similar [3] 29/24 30/8 61/20
SIMILARLY [2] 1/6 1/7
simple [2] 19/23 79/6
simply [3] 19/23 26/23 53/15
since [1] 39/16
single [3] 16/3 22/19 52/12
sit [1] 35/5
SITUATED [2] 1/6 1/7
six [2] 20/8 49/3
size [2] 26/9 26/21
skills [1] 60/21
slice [1] 60/21
slip [1] 66/15
Slow [4] 18/25 29/14 48/15 57/12
slowly [1] 48/11
small [1] 54/11
smooth [1] 74/3
so-called [1] 54/21
somebody [1] 49/2
somehow [4] 24/18 50/12 66/16 67/9
someone [6] 42/22 51/3 56/25 61/24 65/4 66/13
something [11] 5/7 6/21 21/24 24/18 27/15 27/22 28/17 31/13 60/3 60/8 60/17
sorry [11] 7/14 8/20 9/19 29/15 53/13 53/19 53/20 71/19 72/23 72/24 79/24
sort [7] 26/2 34/14 43/23 47/23 52/23 53/21 60/11
sorts [1] 15/1
sought [3] 37/2 37/18 51/23
sounds [1] 47/8

**S**

**Source [1]** 62/20
**speak [1]** 8/18
**speaking [1]** 81/10
**specific [4]** 11/8
22/20 23/3 66/24
**specifically [4]** 9/24
10/10 50/3 72/15
**speculate [3]** 18/24
19/4 28/13
**speculative [3]** 18/22
26/12 28/10
**speed [3]** 15/18 15/19
15/24 17/14
**spelled [1]** 23/3
**spend [1]** 5/13
**spent [4]** 20/7 29/11
29/17 35/7
**spoliation [2]** 51/21
53/11
**spot [1]** 63/12
**sprung [2]** 36/20
42/20
**stage [1]** 37/24
**stand [5]** 28/15 28/23
30/15 30/16 76/17
**standard [7]** 28/3
53/12 53/13 53/14
53/17 66/24 66/24
**standards [1]** 28/2
**standing [3]** 43/1
43/15 78/13
**stands [3]** 20/16 25/1
54/6
**start [12]** 6/17 63/23
64/25 65/1 65/7 66/17
68/5 68/9 68/13 69/17
75/12 75/19
**started [1]** 19/21
**starting [4]** 48/14
57/24 75/4 79/11
**starts [2]** 79/25 79/25
**state [2]** 3/6 14/13
**State of California [1]**
14/13
**stated [4]** 46/19 51/9
54/8 54/18
**statement [5]** 7/5
12/10 13/16 69/2
73/22
**statements [6]** 6/7
12/13 17/25 55/14
55/15 55/17
**states [6]** 1/1 20/22
43/12 63/6 83/4 83/8
**stating [1]** 43/3
**statistically [1]** 28/22
**statute [4]** 13/13
13/14 14/2 54/25
**statutory [2]** 22/25
23/4
**stay [1]** 5/12
**steep [1]** 62/24
**stenographically [1]**
83/5
**step [2]** 3/6 38/16
**STEPHANIE [2]** 2/4
3/15

**Stephanie Yasuda [1]**
3/15
**stipulate [1]** 73/22
**stipulation [1]** 51/5
**stipulations [5]** 37/11
37/12 37/14 37/15
51/12
**stop [3]** 40/4 46/14
63/15
**store [1]** 47/25
**STORES [3]** 1/10 3/5
32/5
**straightforward [2]**
57/8 64/20
**street [2]** 1/24 18/5
**stretched [1]** 80/15
**stride [3]** 16/6 17/3
17/14
**stride-type [1]** 17/14
**strike [1]** 18/12
**strong [1]** 4/6
**stronger [2]** 53/5 53/8
**strongly [1]** 39/15
**struggling [1]** 32/11
**stuff [11]** 5/14 27/21
27/23 28/6 35/8 36/9
58/10 61/10 63/11
70/12 82/10
**subclass [2]** 13/16
37/8
**subject [7]** 15/17 17/5
20/10 26/16 27/13
62/24 69/2
**subjective [2]** 62/15
68/20 69/23
**submissions [4]** 9/1
18/1 19/9 70/3
**submit [6]** 5/7 51/15
68/2 73/16 73/19
74/24
**submitted [1]** 77/13
**subsequent [4]** 13/25
33/2 51/7 73/17
**subset [2]** 29/21 30/6
**substance [1]** 47/23
**substantive [1]** 33/7
**Substantively [1]**
54/14
**successfully [1]** 12/2
**such [4]** 13/19 19/21
35/16 47/19
**suffer [1]** 65/14
**suffered [1]** 19/24
**suggest [2]** 70/15
71/6
**suggested [3]** 51/4
60/13 75/23
**suggesting [2]** 33/5
33/18
**SUITE [2]** 2/5 2/16
**sum [2]** 21/2 23/3
**summarized [1]** 29/7
**summary [6]** 11/2
18/2 33/3 64/4 64/6
69/6
**supervisor [1]** 39/19
**Supplemental [1]**
13/11

**supplemented [1]**
64/21
**support [5]** 18/20 28/8
41/3 43/22 54/10
**supported [1]** 43/9
**supposed [2]** 21/22
70/21
**supposedly [2]** 26/21
39/18
**Supreme [1]** 29/5
**sure [14]** 6/12 18/25
21/15 21/21 34/20
34/22 35/1 38/17
40/13 62/14 63/19
69/12 76/13 82/9
**surprised [1]** 34/9
**survey [1]** 31/17
**suspicious [2]** 53/11
68/14
**sweeping [2]** 54/11
54/12
**system [1]** 73/3
**Systems [1]** 57/5

**T**

**take [17]** 12/24 14/25
14/25 15/5 22/13
28/23 31/23 46/12
55/3 59/24 64/25 65/6
66/12 72/15 75/11
76/17 80/8
**taken [3]** 12/1 12/6
32/2
**takes [15]** 5/12 15/9
15/13 15/23 16/4 16/7
16/9 16/20 16/22
16/24 19/4 25/13
28/13 71/22 72/5
**taking [3]** 11/18 15/15
30/21
**talk [5]** 9/18 10/2
35/19 80/6 81/3
**talking [5]** 6/17 34/16
38/24 41/20 42/21
**tango [1]** 71/22 72/5
**technical [1]** 8/2
**technically [1]** 8/1
**technique [1]** 58/4
**temperature [1]** 82/1
**ten [6]** 6/9 7/10 10/25
10/25 56/2 56/3
**ten-minute [1]** 10/25
**tend [5]** 9/17 10/8
25/17 71/14 81/25
**tennis [1]** 4/25
**tentative [1]** 4/1
10/14 21/5 21/9 38/8
39/7 51/10 51/22 54/6
54/8 55/15
**tentatives [1]** 82/4
**term [3]** 11/5 26/12
79/20
**terminated [19]** 22/22
39/12 39/16 39/25
40/6 40/16 41/2 41/14
41/24 42/10 43/6 44/3
44/7 44/18 45/1 45/2
45/4 45/7 45/15

**termination [2]** 41/11
45/25
**terminology [1]** 30/4
**terms [3]** 53/11 53/21
53/24
**terribly [1]** 80/2
**test [7]** 62/17 65/1
65/6 67/14 67/15
67/15 67/25
**testified [3]** 31/15
40/19 56/4
**testify [7]** 19/18 31/22
40/22 56/7 62/10
62/12 62/15
**testifying [5]** 31/5
31/6 56/2 58/19 58/22
**testimony [25]** 17/12
25/11 25/22 26/5
26/15 27/16 28/22
41/6 41/7 41/8 43/23
45/24 48/3 49/14
50/12 55/11 55/12
56/1 57/2 57/10 57/14
58/14 61/21 70/16
70/25
**text [1]** 11/7
**thank [21]** 17/20 24/9
25/25 31/9 37/23
38/19 42/24 46/4 47/7
50/25 54/4 55/6 56/15
60/6 61/12 61/13 69/9
72/18 73/13 75/1
82/12
**Thanks [2]** 8/20 81/8
**Thanksgiving [1]**
52/13
**theft [1]** 63/8
**them [21]** 4/19 5/1
5/10 5/11 5/12 14/17
28/4 29/22 31/20
36/16 37/13 38/20
38/21 49/9 49/20
52/12 54/19 68/12
70/22 70/25 72/6
**themselves [4]** 7/18
33/9 33/11 33/12
**theoretically [1]** 24/3
**theories [7]** 10/3
10/14 18/13 20/20
22/1 22/7 22/18
**theory [5]** 9/25 20/19
25/9 52/22 58/4
**there's [1]** 64/23
**thereafter [1]** 51/7
**therefore [3]** 36/11
62/6 72/6
**thin [1]** 81/11
**thing [5]** 14/6 51/25
64/2 66/8 73/23
**things [10]** 3/25 16/12
34/22 40/22 45/12
50/1 56/17 59/16
59/18 75/16
**think [57]** 4/20 5/3 6/5
8/21 9/2 10/11 12/20
14/22 21/8 21/20
22/13 23/10 24/4
25/18 27/20 31/18

**34/16 35/14 36/1
36/19 36/21 37/24
38/6 40/8 42/22 47/22
51/14 51/25 52/1 52/3
52/18 53/10 53/15
53/20 55/9 56/18
66/18 66/25 67/7 70/4
70/21 72/21 72/22
73/23 73/24 74/10
74/16 75/6 75/10 76/2
76/3 76/15 76/22
77/22 79/18 80/2
81/10
**thinks [1]** 76/6
**third [1]** 7/9
**though [7]** 4/13 7/19
15/18 24/1 55/2 66/16
68/5
**thought [9]** 10/7 10/10
12/14 14/24 34/15
37/12 41/21 62/13
76/18
**three [2]** 8/21 49/22
**Thursday [1]** 75/17
**thus [1]** 4/18
**ticking [1]** 5/19
**till [2]** 75/10 75/12
**timing [4]** 53/10 61/2
61/6 63/22
**tip [1]** 40/18
**Title [1]** 83/4
**today [7]** 4/1 4/17
4/20 24/20 43/1 64/11
67/6
**together [4]** 5/5 24/16
37/9 59/3
**told [2]** 64/25 69/12
**took [5]** 14/18 14/21
14/22 15/4 16/3
**top [6]** 7/21 15/22
39/20 79/1 79/10
79/11
**topics [1]** 36/2
**total [2]** 21/2 38/15
**totally [2]** 12/3 66/23
**touch [2]** 56/21 71/16
**track [1]** 37/14
**transcript [1]** 1/17
57/22 83/5 83/7
**TRAURIG [1]** 2/13
**treated [4]** 40/20
41/10 41/17 45/21
**treatment [2]** 18/10
29/1
**trial [53]** 4/3 4/9 5/11
5/16 5/23 9/3 9/8 9/8
9/13 9/14 22/1 22/11
22/13 22/16 23/20
24/3 24/10 24/13 26/5
26/15 26/18 27/4 27/7
27/19 28/17 28/19
29/3 29/6 31/2 31/6
33/21 33/22 36/8
36/10 36/17 40/15
42/22 43/18 45/18
46/1 47/3 47/12 61/8
62/2 64/13 67/5 70/17
74/25 75/18 79/7

**T**

trial... [3]  79/19 81/11
81/19
trials [1]  26/16
tried [2]  4/14 37/8
trier [5]  22/10 22/12
22/15 23/9 23/21
true [5]  15/15 41/1
41/14 73/17 83/4
true-up [1]  73/17
truly [1]  60/9
truncated [2]  80/3
80/13
Trust [1]  64/1
try [8]  4/16 26/25 35/5
47/21 67/8 73/21
79/15 81/18
trying [18]  26/14
27/14 28/15 37/13
40/9 40/25 41/4 41/21
42/7 42/19 47/6 48/6
49/2 50/7 50/12 53/16
78/15 81/13
Tuesday [1]  75/17
TV [1]  67/4
Twenty [1]  67/17
Twenty-four [1]  67/17
two [28]  9/2 10/12
11/18 12/3 16/3 16/18
16/21 17/4 17/6 17/24
24/12 26/6 29/2 36/8
36/9 39/6 56/20 59/8
59/11 61/8 61/19
63/17 65/18 69/17
71/22 72/5 80/11
80/21
type [1]  17/14
Tyson [3]  29/5 31/14
31/16

**U**

U.S. [1]  62/21
U.S. District Court [1]
62/21
ultimately [1]  12/11
uncertified [4]  10/3
10/16 18/14 20/18
under [15]  13/16
13/21 13/23 13/24
27/2 29/24 30/12
30/13 30/15 33/7 48/7
63/7 66/16 70/13
71/10
underlying [4]  10/16
20/18 41/4 43/8
understand [22]  6/19
12/17 21/15 25/18
31/17 31/18 40/25
41/5 41/21 42/20
42/21 49/11 49/13
49/17 51/21 51/21
52/19 60/3 63/19
74/19 76/13 78/17
understanding [2]
62/15 69/24
Understood [1]  77/11
undisputed [2]  34/7
62/18

**V**

vague [1]  56/4
varied [1]  25/13
verdict [1]  75/21
versa [1]  5/19
version [1]  15/4
versus [3]  3/5 29/5
32/5 45/15 45/25
62/20
vice [1]  5/19
vice versa [1]  5/19
video [7]  27/17 52/2
52/7 52/7 52/9 52/15

unfairly [4]  40/20
41/10 41/17 45/21
unfortunate [1]  82/1
unilateral [2]  69/19
69/20
unilaterally [1]  72/2
unintelligibles [1]
57/23
unit [2]  66/11 68/12
UNITED [4]  1/1 63/6
83/4 83/8
unless [4]  4/5 30/7
30/9 47/24
unmanageable [10]
10/8 12/18 18/10
18/13 19/6 19/8 19/14
20/14 26/11 26/12
unpaid [6]  30/5 32/18
38/1 48/13 48/17
48/24
unproductive [1]  38/4
unrelated [2]  10/11
32/3
until [5]  21/21 65/7
66/17 75/20 75/21
unusual [1]  24/1
up [24]  5/20 8/18 10/1
19/17 21/1 21/21
21/25 24/18 34/18
37/20 38/18 38/20
40/22 50/2 55/3 59/25
60/7 61/5 64/14 68/13
73/17 77/16 77/22
79/8
upon [10]  14/23 22/25
33/2 40/7 52/5 58/8
59/15 69/21 69/22
71/3
urine [1]  68/2
us [9]  34/10 35/11
42/17 46/10 51/13
61/7 69/18 72/12
74/16
use [17]  10/18 23/4
26/20 28/2 29/12
29/18 29/21 30/6
30/19 30/24 60/20
65/25 66/14 68/25
69/1 69/1 77/25
used [6]  13/17 14/2
22/9 26/13 59/20
81/21
using [3]  60/24 65/24
67/6

**V**

vague [1]  56/4
varied [1]  25/13
verdict [1]  75/21
versa [1]  5/19
version [1]  15/4
versus [3]  3/5 29/5
32/5 45/15 45/25
62/20
vice [1]  5/19
vice versa [1]  5/19
video [7]  27/17 52/2
52/7 52/7 52/9 52/15

58/24
view [7]  11/15 29/8
29/9 31/7 65/8 68/4
74/21
vigorous [1]  81/16
violate [1]  22/21
violation [3]  13/1
20/23 20/25
violations [1]  23/21
voir [4]  77/12 77/13
77/13 77/14
voir dire [3]  77/12
77/13 77/14
voluminous [1]  5/3
voluntary [1]  66/5
volunteers [1]  66/6
vote [12]  49/3 49/12
49/19 62/7 64/18
67/12 67/14 68/12
68/14 70/1 71/25 72/9
voted [2]  50/14 73/6
votes [2]  56/2 56/3

**W**

wage [11]  7/4 13/16
14/8 48/13 48/18
48/20 48/22 50/19
50/21 63/8 66/25
wages [5]  6/23 7/3 8/6
8/24 22/23
wait [2]  19/5 20/9
waiting [1]  7/4
waived [1]  10/4
waiver [1]  48/7
WAL [36]  1/10 1/11
3/5 3/23 9/17 10/4
17/18 20/20 20/22
21/4 25/5 25/7 25/12
31/7 32/5 33/25 40/21
41/11 43/18 44/5 45/7
45/14 45/19 46/9
46/11 47/11 47/20
48/6 52/1 55/22 64/16
66/14 66/16 67/10
73/3 73/7
WAL-MART [32]  1/10
1/11 3/5 3/23 9/17
17/18 20/20 20/22
21/4 25/5 25/7 25/12
33/25 40/21 41/11
43/18 44/5 45/7 45/19
46/9 46/11 47/11
47/20 48/6 52/1 55/22
64/16 66/14 66/16
67/10 73/3 73/7
Wal-Mart's [4]  10/4
25/5 31/7 45/14
walk [5]  16/13 19/5
28/13 67/23 67/24
walking [18]  6/23 7/16
7/25 8/10 8/24 11/24
12/23 13/19 15/7 15/8
15/14 15/16 15/18
15/19 15/24 16/18
16/22 20/7
walks [1]  17/2
wanted [5]  32/7 33/8
50/17 56/20 76/12

wants [1]  64/11
warranted [1]  24/4
waste [1]  81/14
water [1]  11/16
Waymo [2]  57/17
weaker [3]  53/4 53/6
53/7
weaknesses [1]  25/21
wearing [4]  16/10
16/10 60/2 60/5
wears [1]  81/11
Wednesday [1]  75/17
week [5]  49/21 49/22
75/4 75/6 75/19
weekend [1]  82/4
weeks [12]  9/3 16/3
17/24 24/12 26/6 29/3
36/8 36/9 42/22 61/8
80/11 80/22
welcome [2]  42/16
51/18
went [3]  16/2 16/3
20/5
WEST [1]  1/24
WESTERN [1]  1/2
whittle [1]  81/18
whole [3]  43/2 46/16
54/15
whomever [1]  60/4
why [11]  27/10 38/16
40/3 40/19 51/10
52/19 61/4 63/25
66/20 70/20 70/20
willing [2]  35/19 46/12
WILSHIRE [2]  2/5 2/9
wire [1]  47/1
wish [7]  10/17 25/24
38/10 54/1 55/8 58/17
77/16
without [7]  12/19 17/3
25/10 43/17 49/13
64/6 67/23
witness [16]  4/9 45/20
47/16 55/13 55/18
55/21 60/10 60/13
60/15 61/4 62/12
68/17 69/3 75/25 76/7
76/16
witnesses [13]  26/25
31/3 31/6 31/19 31/21
46/17 47/13 47/14
55/23 56/1 56/2 60/11
62/10
witnesses' [1]  25/21
wondering [1]  76/6
word [11]  30/3 65/24
65/25 65/25 67/6
68/18 69/1 69/1 72/13
73/12 74/2
words [1]  68/25
work [31]  12/22 12/24
15/19 16/8 16/12
29/12 29/18 29/24
30/7 30/8 32/18 37/9
38/1 48/20 49/15
50/20 51/3 63/3 63/23
64/16 65/1 65/7 65/14
65/15 65/18 66/11

67/1 68/8 68/12 69/5
74/24
worked [1]  29/23
workers [5]  14/24
14/25 15/1 48/3 49/14
Workers' [6]  44/17
63/9 66/3 66/4 66/4
66/7
Workers'
Compensation [6]
44/17 63/9 66/3 66/4
66/4 66/7
working [7]  48/3 49/5
49/15 49/21 49/22
49/22 68/13
workplace [1]  67/19
works [1]  27/1
workweek [1]  7/3
worse [1]  27/20
writing [1]  34/24
written [1]  35/9
wrong [2]  43/4 72/24
wrote [2]  35/13 35/23

**Y**

YASUDA [2]  2/4 3/15
yea [1]  77/17
year [3]  13/12 13/13
49/3
YEARGAN [2]  2/18
3/22
years [2]  65/18 69/17
yield [1]  63/24
YOON [23]  2/3 2/3 3/8
9/23 10/17 21/7 29/4
31/9 32/16 36/13
37/23 38/12 38/20
51/18 56/10 58/18
63/16 66/22 72/10
74/13 78/11 79/22
81/5
Your Honor [41]  3/8
3/11 4/8 4/13 6/16
7/13 8/16 10/18 17/20
18/4 20/3 25/25 28/25
32/23 34/8 38/19 39/5
39/6 41/12 41/17 44/1
44/9 44/23 46/5 46/10
51/1 51/17 54/4 54/8
56/15 62/11 62/16
62/23 64/2 65/20 70/2
72/11 74/6 81/6 81/8
82/6
Your Honor's [1]  54/5
yourselves [1]  80/6

**Z**

zero [1]  20/6