Mark D. Kemple (SBN 145219)
kemplem@gtlaw.com
Robert J. Herrington (SBN 234417)
herringtonr@gtlaw.com
Matthew R. Gershman (SBN 253031)
gershmanm@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendants WAL-MART STORES, INC.
and WAL-MART ASSOCIATES, INC.,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA HAMILTON, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a corporation, WAL-MART ASSOCIATES, INC., a corporation and DOES 1 through 50, inclusive,<br><br>     Defendants. | CASE NO. 5:17-cv-01415 AB (KKx)<br><br>**WALMART'S BENCH BRIEF REGARDING THE LEGAL QUESTION OF WHETHER 33 INDIVIDUALS WHO HAD NOT YET BEGUN WORKING FOR WALMART DURING AWS ELECTIONS WERE "EMPLOYED"** |

I.    **WHETHER THE 33 PERSONS WHO RECEIVED AN OFFER OF AT-WILL EMPLOYMENT BUT HAD NOT STARTED WORK ARE "AFFECTED EMPLOYEES" IS A QUESTION OF LAW FOR THE COURT, AND THE ANSWER TO THE QUESTION IS "NO."**

The AWS voting procedures set forth in Labor Code section 511 involve "affected employees."  As part of Plaintiffs' challenge to the AWS election in this case, Plaintiffs moved for partial summary judgment arguing that the AWS was deficient because 33 *prospective* at-will employees – individuals who had offers but who had not yet begun working for Walmart at the time of the AWS vote were "affected employees" who should have received notice and an opportunity to vote in the AWS elections.  [Dkt. No. 168 at 12-14.]  The Court denied Plaintiffs' motion.  [Dkt. No 236 at 25.]  Defendants filed a motion in limine to preclude testimony from the 33 people who did not participate in the vote.  [Dkt. No. 199.]  The Court deferred ruling on Defendants' motion in limine pending further briefing on the question.  [Dkt. 245, at 7-8.]

As set forth below, Plaintiffs' theory presents a (1) a question of law for the Court to resolve, and (2) the law plainly shows that such persons were not "employees" at the time of the vote.

Plaintiffs' argument turns on the legal effect of a prospective at-will employee's consent to be employed in the context of Labor Code 511, which is an issue of statutory interpretation for the Court – not the jury.  See *Martinez v. Combs,* 49 Cal. 4th 35, 51 (2010), as modified (June 9, 2010) (stating that in determining when an individual is "employed" under the Labor Code and Wage Orders, "[t]he question is ultimately one of legislative intent, as '[o]ur fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'") (quoting *Day v. City of Fontana*, 25 Cal.4th 268, 272 (2001)).   Further, questions of "contract formation" and "employment" are for courts, not juries, to decide.  *See*, *e.g., Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006) (finding district court properly "declined to instruct the jury as to formation and construction of a contract" because under California law "contract formation and interpretation are questions of law for the court to

determine") (citing *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002)); *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004) ("The question of whether Air France should be considered a joint employer is a legal question . . . ."); *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) ("Whether an entity is a "joint employer" under the FLSA and AWPA is a question of law."); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1157 (C.D. Cal. 2003) (same).

Here, not only is this a question of the formation of an "employment contract," it is also a question of whether this is "employment" in the context of interpreting Section 511. Both questions are for the Court to decide, not the jury.

For example, settled law provides that at-will employment is a "unilateral contract"—i.e., an agreement to pay in exchange for performance. 1 Witkin, Summary 11th Contracts § 210 (2018) ("A promise to pay given in return for the performance of work or services constitutes an enforceable unilateral contract."); *Kavanagh v. City of Phx.*, 87 F. Supp. 2d 958, 966 (D. Ariz. 2000) ("At-will employment contracts are unilateral and typically start with an employer's offer of a wage in exchange for work performed; subsequent performance by the employee provides consideration to create the contract"); *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10, n.4 (2000) ("An employment contract in which the employer promises to pay an employee a wage in return for the employee's work is typically described as a unilateral contract."). Thus, Walmart's "Candidate Offer Form" was, at most, an invitation to enter into a unilateral contract where the employee will work and the employer will pay the employee (and perhaps offer additional benefits) for that work. Put another way, the "offer" for at-will employment could not be "accepted" without performing the work. Though the individual *may* have indicated an intent to enter into the relationship—by colloquially "accepting" the "offer"—no consideration exists to support the agreement until the employee commences work. For example, absent work by Hamilton, she could not demand payment (consideration) from Walmart. Likewise, if Hamilton did not show up on her first day or work, Walmart would have no remedy.

Consistent with this, and because the formation of a unilateral contract depends on

performance, a would-be employee's subjective impression of when he or she was "hired" is not relevant or admissible at trial.  *See* 1 Witkin Sum. Cal. Law Contracts § 116 (in contract formation "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding"; judged by an "'objective rather than the subjective test.'" (quoting *Zurich General Acc. & Liab. Assur. Co., Ltd. v. Industrial Acc. Com.*, 132 Cal. App. 101, 104 (1933))); *Donovan v. Rrl Corp.*, 26 Cal. 4th 261, 271 (2001) (contract formation turns on "objective manifestation[s]" of parties; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("California recognizes the objective theory of contracts").[1]

Further, because Walmart had the right to terminate the offer even after acceptance, its "offers" were not actually offers at all, but rather invitations for the other party to make an offer.  *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 791 (9th Cir. 2012) ("'A purported offer that reserves the power to withdraw at will even after an acceptance should not be described as an offer at all, but as an invitation to submit an offer.'"") (quoting Corbin on Contracts § 2.19 (rev. ed. 1993)).  Stated another way, acceptance of the "offer" would, at most, result in an illusory contract, because either party could walk away from the relationship without consequence at any time before the prospective employee began work.  *Harris v. TAP Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016) ("A contract is unenforceable as illusory when one of the parties has the unfettered or

---

[1] Walmart's subjective impression is not relevant either, but to illustrate how out-of-step Plaintiffs' theory is with reality, Walmart—no doubt like most employers—understood these prospective at-will employees were candidates and not employees until they began their first day of work and completed I-9 paperwork.  [*See* Dkt. No. 172-3 at ECF 95, Deposition of Jennifer Holden at 131:8-132:11 ("Q. So if you're waiting sixty days for this background check, when does the employee start? A. But they're not my employee at the time . . . They're still the candidate. Q. . . . When does this prospective employee start? Because they've already accepted, right? A. Right. Q. So they're a prospective employee? A. Right. Q. Are they still a candidate even if they accepted? A. Yes, they still a candidate. . . . Q. Okay. So they're still a candidate until they complete the I-9? A. Correct.").]

WALMART'S BENCH BRIEF REGARDING WHETHER 33 INDIVIDUALS WERE EMPLOYED AT AWS VOTE

1    arbitrary right to modify or terminate the agreement or assumes no obligations

2    thereunder."); *Mattei v. Hopper*, 51 Cal.2d 119, 122 (1958) ("Without mutuality of

3    obligation, any promise made under the contract is deemed illusory in nature and is

4    unenforceable.").

5         For these reasons, the California Supreme Court has held time and again that,

6    (1) though individuals often use the colloquial terms of "offer" and "acceptance,"

7    employment only begins when the work is performed, and, therefore, (2) there are no

8    employee rights or benefits for prospective employees, but rather such rights or benefits

9    only attach once the employee actually starts work. *See*, *e.g.*, *White v. Davis*, 30 Cal. 4th

10   528, 566 (2003) ("once a public employee has accepted employment <u>and performed work</u>

11   for a public employer, the employee obtains certain rights") (emphasis added); *In re*

12   *Marriage of Brown*, 15 Cal. 3d 838, 845 (1976) ("an employee acquires a property right to

13   pension benefits when he enters upon the <u>performance</u> of his employment contract")

14   (emphasis added); *Kern v. City of Long Beach*, 29 Cal. 2d 848, 852 (1947) (though court

15   had "stated in two recent decisions" that pension "vests upon acceptance of employment"

16   court characterizes rule as vesting when employee "has <u>performed substantial services</u> for

17   his employer") (emphasis added).

18        Plaintiffs' theory is also contrary to the intent of the California Legislature in

19   adopting the Labor Code – another question for the Court, not the jury. *See Martinez ,*

20   *supra,* 49 Cal. 4th at 51 (the question of whether an individual is "employed" under the

21   Labor Code and Wage Orders "is ultimately one of legislative intent, as '[o]ur fundamental

22   task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the

23   purpose of the statute'"); *Day v. City of Fontana*, 25 Cal. 4th 268, 272, 19 P.3d 1196

24   (2001) (confronting "issue . . . of statutory construction" and finding "[o]ur fundamental

25   task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the

26   purpose of the statute."); *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 813 (9th

27   Cir. 2002) ("The district court's interpretation of a statute is a question of law that we

28   review de novo.").  If Plaintiffs' theory were adopted, it would restrict an employee's

freedom to change jobs in California, by immediately placing any employee that has accepted an offer from another employer but not yet resigned from their existing position in breach of their duty of loyalty to their existing employer.  Employees often seek out a new job while still working in their current job, and do not want to resign from their existing employment unless and until they have first secured new employment.  But, if Plaintiffs' theory ever were adopted, employees could no longer do that because doing so would put them in breach of their duty of loyalty to their existing employer.  As numerous California appellate courts explain, "an employer has the right to expect the undivided loyalty of its employees," and California courts have found that duty breached by mere involvement with another company, much less employment with it.  *Stokes*, 41 Cal. App. 4th at 295 (preparation to compete a breach of duty of loyalty); *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 37-38 (1987) (being "involved" and providing "ideas" and "suggestions" on "business in general" to a competitor a breach of the duty of loyalty); *Puritas Laundry Co. v. Green*, 15 Cal. App. 654, 660 (1911) (having an "interest against his duty" is a breach of the duty of loyalty "no matter how much or how little time he devotes to it").  The Court noted the absurdity of Plaintiffs' theory at the Final Pretrial Conference when the Court inquired of Plaintiffs whether extending offers for law clerk positions to begin at future dates meant the clerks were employees prior to the start of the clerkship.  Under Plaintiffs' theory, the clerkship candidate could not accept the Court's offer  of a future clerkship unless and until that candidate first resigns their existing "employment."  That is not the law.

Plaintiffs' theory makes no sense given the intent of California law is decidedly *not* to restrict employee mobility.  Rather, California's "'settled legislative policy' … favors 'open competition and employee mobility.'"  *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1026 (N.D. Cal. 2016) (quoting *Edwards*, 44 Cal. 4th at 945 (discussing Business and Professions Code § 16600, which renders void any contract "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."); *Silguero v. Creteguard, Inc.*, 187 Cal. App. 4th 60, 68 (2010) (holding Cal. Bus. & Prof. Code

Section 16600 "protects the important legal right of persons to engage in businesses and occupations of their choosing") (internal quotation and citation omitted).

Further still, Plaintiffs' theory, if adopted, would require all California employers to fully on-board employees—and provide all employee benefits and rights—at the moment of acceptance, which is plainly not the intent of numerous statutes.  Walmart, like nearly all employers in California, extends conditional offers with the understanding that the prospective employee will come in on his or her first day of work to verify authorization to work in the United States and receive various disclosures mandated by federal and California law.  But if Plaintiffs' theory were adopted, every employer in California that does this would immediately be in violation of federal and state law concerning on-boarding of new hires.

For example, federal law provides "<u>it is unlawful</u> for a person or other entity . . . to hire for employment in the United States an individual" without securing documentary proof that the individual is authorized to work in the United States (an I-9 form), 8 U.S.C.A. § 1324a(a)(1)(B)(i) (emphasis added), *and* having that proof available for inspection "beginning <u>on the date of the hiring</u>" *id.*, § 1324a(b)(3) (emphasis added). Failure to do so could result in civil penalties of "not less than $224 and not more than $2,236 for each individual with respect to whom such violation occurred…."  8 C.F.R. § 274a.10(b)(2).  Similarly, the California Labor Code requires that employers provide a Wage Theft Notice "[a]t the time of hiring."  Cal. Labor Code § 2810.5(a)(1).  Thus, if Plaintiffs' theory were adopted, and employment begins the moment a prospective at-will employee states he or she intends to accept employment, then countless employers are (and have been) violating the law.  Additionally, if Plaintiffs' interpretation were correct, then all California employers now suddenly face potential exposure for not providing all employee benefits from the moment of acceptance, such as health insurance, retirement plan participation, and accrued vacation.  California employers would be liable for the actions of all those who accept employment but have yet to perform a minute's work, and would have to immediately convey policies regarding off-the-clock work, incurring

WALMART'S BENCH BRIEF REGARDING WHETHER 33 INDIVIDUALS WERE EMPLOYED AT AWS VOTE

business expenses, and the like, or face liability based on the acts of these supposed (but not onboarded) "employees."  Plaintiffs' proffered conclusion is not the law, and would by contrary to multiple other statutes, holding, and policies of the state of California.

## II.     CONCLUSION

Whether the 33 prospective at-will employees are "affected employees" within the meaning of Section 511 who should have received notice and an opportunity to vote in the AWS elections, is a question for the Court, not the jury, to decide.  As set forth above, Walmart respectfully submits that the law and the intent of the law demonstrates that the answer to this question is plainly: "No."

Respectfully submitted,

DATED: March 25, 2019                    GREENBERG TRAURIG LLP

By   /s/ Mark D. Kemple
Attorneys for Defendants