1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA HAMILTON, individually and on behalf of all others similarly situated, and ALYSSA HERNANDEZ, individually and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a corporation, WAL-MART ASSOCIATES, INC., a corporation and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.: 5:17-cv-01415 AB (KKx)<br><br>~~PROPOSED~~ **FINAL PRE-TRIAL CONFERENCE ORDER**<br><br>Trial Date: 4/2/19<br><br>Final Pre-Trial Conference: 3/15/19<br><br>Judge: Hon. André Birotte Jr. |

1

# TABLE OF CONTENTS

1.      THE PARTIES AND PLEADINGS ........................................................ 3

2.      JURISDICTION ................................................................................... 4

3.      TRIAL DURATION.............................................................................. 4

4.      JURY TRIAL........................................................................................ 5

5.      ADMITTED FACTS…………………………………………………5

6.      STIPULATED FACTS ......................................................................... 6

7.      PARTIES' CLAIMS AND DEFENSES ............................................... 7

8.      REMAINING TRIABLE ISSUES ......................................................22

9.      DISCOVERY......................................................................................32

10.     DISCLOSURES AND EXHIBIT LIST ...............................................32

11.     WITNESS LISTS ...............................................................................32

12.     MOTIONS IN LIMINE ......................................................................33

13.     BIFURCATION..................................................................................33

14.     ADMISSIONS ....................................................................................34

Following pre-trial proceedings, including the Final Pre-Trial Conference held on March 15, 2019 (during which the Court instructed the parties to submit a revised pre-trial statement by March 25, 2019), and following the parties' additional meet-and-confer efforts (including a 6-hour, in person meeting held on March 19, 2019), and pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

## 1.    <u>THE PARTIES AND PLEADINGS</u>

The parties are:  Plaintiff Chelsea Hamilton, Plaintiff Alyssa Hernandez, Defendant Wal-Mart Stores, Inc., and Defendant Wal-Mart Associates, Inc.  Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are: the First Amended Consolidated Complaint (DE 69); and Defendants' Answer to Plaintiffs' First Amended Complaint (Dkt. 73).  The scope of the parties' claims and defenses are also potentially impacted by other orders of the Court, including:  the Order Granting In Part And Denying In Part Plaintiffs' Motion For Class Certification (DE 121), the Order Denying Defendants' Motion for Partial Summary Judgment and Denying Plaintiffs' Motion for Partial Summary Judgment (DE 236), the Order Granting in Part and Denying in Part Defendants' Motion to Strike and Granting in Part and Denying in Part Defendants' Motion to Decertify the Class (DE 237), and the Order re: Motions in Limine and Other Pretrial Disputes (DE 245).

Per Plaintiffs' memorandum of contentions of fact and law, Plaintiffs will not pursue their claim for failure to pay overtime wages to the extent it was premised upon the theory that Defendants failed to compensate named Plaintiffs on an individual basis for a short-shift premium for those days that Plaintiffs were on an AWS schedule and were sent home early.  (Dkt. 193.)  Additionally, Plaintiffs will

not pursue a derivative class claim for waiting time penalties (Labor Code § 203) to the extent derivative of any claim other than the class claim for overtime premised on allegations of an invalid Alternative Workweek Schedule.  Plaintiffs also will not pursue a derivative class claim for wage statement penalties (Labor Code § 226), but rather their wage statement claim is limited to the class-wide OVERTIME/INCT theory.

Per Defendants' memorandum of contentions of fact and law, Defendants will not pursue affirmative defenses other than statute of limitations and unclean hands. It is further Defendants' position that the Court's summary judgment order agreed with Walmart that AWS is not an affirmative defense.  (DE 236 at 19).  Plaintiffs disagree with this interpretation of the Court's summary judgment order.  Per the Court's instructions at the March 19, 2015 pre-trial conference, the Parties have submitted further briefing on this issue.  Walmart reserves the right to pursue AWS as an affirmative defense in the event that the Court later determines that AWS must be asserted as an affirmative defense.  Defendant further reserves the right to assert a *de minimis* defense as further explained in Section 7 below.

## 2.  **JURISDICTION**

It is stipulated that Federal jurisdiction and venue are invoked upon grounds set forth in the Notice of Removal (Dkt. 1), pursuant to 28 U.S.C. § 1332(d), 1441, 1446, and 1453.  *See also* Dkt. 45 (Order denying motion to remand).

## 3.  **TRIAL DURATION**

Each side shall be given 12 hours to present evidence at trial.  Each side will have up to 30 minutes to present opening statements and up to 45 minutes for closing arguments.  Plaintiffs also shall be given 10 minutes for rebuttal in closing argument.

**4.    JURY TRIAL**

Pursuant to a stipulated Order (Dkt. 213), as modified by the Parties agreement at the March 15, 2019 pre-trial conference regarding Plaintiffs' wage statement claim, Plaintiffs claims that remain certified for class treatment other than the wage statement claim shall be tried in Phase 1 to a jury, and each plaintiff's remaining individual claims shall be tried in a subsequent phase to the jury. Bifurcation is addressed in more detail below, in section 13.

Throughout, certain issues are legal issues reserved for the Court.  In addition, the parties have agreed to submit Plaintiffs' wage statement claim (which is limited to the class-wide OVERTIME/INCT theory) to the Court for resolution through briefs filed on March 25, 2019.

Plaintiffs and Defendants served and filed an "Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re Disputed Instructions, Verdicts, etc." on March 1, 2019.  The parties then continued to meet and confer, revise, and serve their proposed instructions in response to various rulings from the Court.  The revised sets of disputed and agreed jury instructions were filed on March 25, 2019.

**5.    ADMITTED FACTS**

The following facts are admitted and require no proof:

1.    All Class Members are or were employees of Defendants.

2.    A four day per week 10 hour per day "weekday" alternative workweek schedule (the 4/10 AWS") was enacted at the Chino, CA facility.

3.    A three day per week 11.25 hour per day "weekend" alternative workweek schedule (the 3/11.25 AWS") was enacted at the Chino, CA facility.

4.    On February 6, 2016, the AWS workers began working the 4/10 AWS and 3/11.25 AWS.

5.     Defendants require all Class Members to pass through a theft prevention point before exiting the Fulfillment Center.

6.     Plaintiff Hamilton took some meal breaks outside the Chino Fulfillment Center during the class period.

**6.   STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

**7.   PARTIES' CLAIMS AND DEFENSES**

(a)     Plaintiffs plan to pursue the following claims against Defendants:

**Claim 1 (classwide):** Failure to Pay all Overtime Wages. [Cal. Labor Code § 1194]. This claim is based on the theory that AWS associates are owed overtime for working more than 8 and less than 10 hours in a shift.

**Claim 2 (classwide):** Failure to Provide Meal Periods. [Cal. Labor Code § 512(a); IWC Wage Order 7-2001]. This claim is based on the theory that Walmart's security process is an impediment or discouragement to taking a meal break outside the fulfillment center or an incentive to forgo the taking of meal breaks outside the fulfillment center.

**Claim 3 (classwide):** Failure to Timely Pay Final Wages. [Cal. Labor Code § 203]. This claim is for waiting time penalties and is limited to the overtime wages that Plaintiffs contend were due (pursuant to Claim 1 above) to those employees whose employment ended during the relevant class period.

**Claim 4 (classwide):** Failure to Provide Accurate Itemized Wage Statements. [Cal. Labor Code § 226]. This claim is for inaccurate wage statement penalties and is limited to the class-wide OVERTIME/INCT theory. It is being submitted to the Court (not jury) for resolution.

**Claim 5 (classwide):** Unfair and Unlawful Competition. [Cal. Bus. & Prof. Code §§ 17200, *et seq.*].  This is a derivative claim in equity for the Court (not jury) to decide.

**Claim 6 (individual):** Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to Provide 2nd Meal Periods. [Cal. Labor Code § 512(a); IWC Wage Order 7-2001]

**Claim 7 (individual):** Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to provide Rest Breaks. [IWC Wage Order 7-2001].

(b)     The elements required to establish Plaintiff's claims are:

**Claim 1:** Classwide: Failure to Pay all Overtime Wages. [Cal. Labor Code § 1194].

**[Plaintiffs' position:]**  To prevail on this claim, Plaintiffs must prove the following: (1) Class Members performed work for Walmart; (2) Class Members worked overtime hours; (3) Walmart knew or should have known that Class Members had worked overtime hours; (4) Class Members were not paid/paid less than the overtime rate for some or all of the overtime hours worked; and (5) the amount of overtime pay owed.

**[Defendants' position:]** To establish this claim, Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove all of the following:  1. That every member of the Alternative Workweek Subclass worked daily hours adding up to more than 8 but less than 10; 2. That Walmart knew or should have known that every member of the Alternative Workweek Subclass worked daily hours adding up to more than 8 but less than 10; 3.  That every member of the Alternative Workweek Subclass was not subject to an alternative workweek schedule; and 4.  If all of the foregoing is proven, then the amount of overtime pay owed to every member of the Alternative Workweek Subclass.

1

2      **Claim 2:** Classwide: Failure to Provide Meal Periods. [Cal. Labor Code §

3   512(a); IWC Wage Order 7-2001]

4      **[Plaintiffs' position:]**  To prevail on this claim, Plaintiffs must prove one of

5   the following: (1) Walmart did not provide class members a reasonable opportunity

6   to take 30-minute, uninterrupted meal periods; (2) Walmart did not relieve class

7   members of all duty or employer control for the entire 30 minutes for each meal

8   period; (3) Class members were not free to leave Walmart's premises for meal

9   periods; (4) Walmart impeded or discouraged class members from taking meal

10  periods outside the fulfillment center; or  (5) Walmart coerced class members against

11  taking the meal period outside the fulfillment center, created incentives to forgo the

12  meal period outside the fulfillment center, or otherwise encouraged class members to

13  skip meal periods.

14      **[Defendants' position:]**  To prevail on their claim regarding meal breaks,

15  Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove that Walmart did not

16  make a meal break available to every member of the Meal Break Subclass.  The

17  requirement that an employer "provide" a meal break, means that the employer must

18  make a meal break available, but does not require the employer to ensure the meal

19  break is taken.  In other words, to prevail on a missed meal break claim, Plaintiffs

20  Chelsea Hamilton and Alyssa Hernandez must show that every member of the

21  Security Checkpoint Subclass was forced to forego or shorten their meal breaks, as

22  opposed to merely showing that they did not take them or took a shorter break for

23  some other reason.  If the employee is not given the opportunity to take a 30-minute,

24  uninterrupted break, then a meal break has not been provided.  Members of the Meal

25  Break Subclass are entitled to one hour of pay for each work day that (1) the option

26  to take a meal break was not provided, or (2) employees were actually prevented

27  from taking a meal break.

28

**Claim 3:** Classwide: Failure to Timely Pay Final Wages. [Cal. Labor Code § 203].

**[Plaintiffs' position:]** To prevail on this claim, Plaintiffs must prove the following:  (1) those Waiting Time Penalty Subclass members' whose employment with Walmart ended on or before August 21, 2018; (2) that Walmart failed to pay all wages due by the end of those Subclass members' employment; (3) those Subclass members' daily wage rate at the time their employment with Walmart ended; and (4) that Walmart willfully failed to pay these wages.

**[Defendants' position:]**  To establish the right to recover civil penalties, Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove all of the following:

1. The date on which employment ended for every member of the Waiting Time Penalty Subclass;

2. That Walmart failed to pay all wages due to every member of the Waiting Time Penalty Subclass by the following dates:

    (a)  if Walmart discharged a class member's employment, then the date of that discharge; or

    (b)  if the class member terminated his or her own employment, then within 72 hours of Walmart receiving notice of the class member's intent to quit;

3. Every Subclass member's daily wage rate at the time his or her employment with Walmart ended; and

4. That Walmart willfully failed to pay these wages due at the end of employment for every member of the Subclass.  The term "willfully" means that the employer knowingly and intentionally failed or refused to pay the wages, and that it lacked a good-faith belief that such wages were not due.  Mere recklessness does not qualify as willful conduct.

**Claim 4:** Classwide: Failure to Provide Accurate Itemized Wage Statements. [Cal. Labor Code § 226].

**[Plaintiffs' position:]**  To prevail on this claim, Plaintiffs must prove the following: (1) Walmart did not furnish the Wage Statement Penalty Subclass an accurate itemized statement in writing including all required hours worked and all required hourly rates corresponding to the "OVERTIME/INCT" that is listed on wage statements; and (2) Wage Statement Penalty Subclass members suffered injury as a result of a knowing and intentional failure by Walmart to furnish the accurate itemized statements.

**[Defendants' position:]**  To prevail on this claim, Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove that Walmart (1) acted "willfully" (2) in failing to provide wage statements that, at the time given, accurately reflected the hours and rates used by the employer to calculate the amounts shown in the corresponding paycheck.  "Willfulness" is defined as a knowing and intentional failure by the employer to comply with the requirements listed above, and recklessness is not sufficient.  In addition, willfulness is not established where the employer's failure to comply with these requirements was due to uncertainty in the law.

**Claim 5:** Classwide: Unfair and Unlawful Competition. [Cal. Bus. & Prof. Code §§ 17200, *et seq*.].

**[Plaintiffs' position:]**  To prevail on this claim, Plaintiffs must prove violation of Claims 1-2 or unfair business practices based upon same.

**[Defendants' position:]**  This is a derivative claim for restitution predicated on Plaintiffs' claims of underlying Labor Code violations asserted in other claims. Thus, to prevail on this claim, Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove that Walmart owes restitution to Classmembers based on alleged underlying violations of the Labor Code asserted in the claims above.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Claim 6:** Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to Provide 2nd Meal Periods. [Cal. Labor Code § 512(a); IWC Wage Order 7-2001]

**[Plaintiffs' position:]**   To prevail Plaintiffs must prove one of the following: (1) Walmart did not provide Plaintiffs a reasonable opportunity to take their second 30-minute, uninterrupted meal period; (2) Walmart did not relieve Plaintiffs of all duty or employer control for the entire 30 minutes for each 2nd meal period; (3) Plaintiffs were not free to leave Walmart's premises for their 2nd meal periods; (4) Walmart impeded or discouraged Plaintiffs from taking 2nd meal periods; or (5) Walmart coerced Plaintiffs against taking the 2nd meal period, created incentives to forgo the 2nd meal period, or otherwise encouraged Plaintiffs to skip 2nd meal periods.

**[Defendants' position:]**   To prevail on their individual claims regarding second meal breaks, Plaintiffs Chelsea Hamilton and Alyssa Hernandez must prove the following for each day on which they base their individual claims: (1) That she did not waive Walmart's obligation to provide the option to take that second meal break; and (2) If she did not waive it, that Walmart did not provide her with the option to take a second meal break.  Defendants further assert that Plaintiffs have not properly disclosed damages for this individual claim as required by Rule 26, and for this additional reason, this individual claim must be dismissed.

**Claim 7:** Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to provide Rest Breaks. [IWC Wage Order 7-2001].

**[Plaintiffs' position:]**   To prevail Plaintiffs must prove the following: (1) Each plaintiff worked sufficient hours in a shift to be entitled to a rest break; and (2) Walmart did not authorize and permit all the required 10 minute rest breaks. The

11

authorized rest break time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

- Less than 3 1/2 hours worked in a shift:  0 rest breaks;
- 3 1/2 hours or more but less than or equal to 6 hours worked in a shift: 1 rest break;
- More than 6 hours worked in a shift but less than or equal to 10 hours worked in a shift:  2 rest breaks;
- More than 10 hours worked in a shift but less than or equal to 14 hours worked in a shift: 3 rest breaks.

**[Defendants' position:]**  To prevail on their individual claims regarding rest breaks, each Plaintiff must prove that Walmart did not make 10-minute rest breaks available to her.  Employees are entitled to the option to take a 10-minute rest break for each 4 hours worked (or major fraction thereof), not including time spent on meal or rest breaks.  This means that:  (a) If an employee works more than 3½, but less than 6 hours in a day, then he or she is entitled to the option to take 1 rest break; (b) If an employee works more than 6, but less than 10 hours in a day, then he or she is entitled to the option to take a second rest break; and (c) If an employee works more than 10, but less than 14 hours in a day, then he or she is entitled to the option to take a third rest break.  Defendants further assert that Plaintiffs have not properly disclosed damages for these individual claims as required by Rule 26, and for this additional reason, these individual claims must be dismissed.

(c)The Key Evidence Plaintiffs Rely on for Each Claim:

**Claims 1-6:**  Testimony of Walmart's designated (30)(b)(6) witnesses, Walmart managerial/HR employees, testimony of Class Members (including Plaintiffs), testimony by retained experts (including reports), surveillance video and site inspection video, shift pattern data, time and payroll data, candidate offer forms,

time and payroll for Plaintiffs, written policies, facility maps, interrogatories, and agreed facts.

**Claim 6-7:**  Testimony of Walmart's designated (30)(b)(6) witnesses, Walmart managerial/HR employees, testimony of Plaintiffs, written policies, time and payroll data for Plaintiffs, facility maps and agreed facts.

**Defendants' Affirmative Defenses:**

(a)  Defendants plan to pursue the following affirmative defenses:

**Defense 1:**  Unclean Hands

**Defense 2:**  Statute of Limitations

**Defense 3:**  Alternative Workweek Schedule

In accordance with the Court's instructions at the March 15, 2019 pre-trial conference, the Parties have submitted separate briefing to the Court on this issue.

**[Plaintiffs' position:]**

Classwide: Alternative Workweek Exemption. As Plaintiff has previously asserted, this is an affirmative defense. *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1327 (2018) ("Thus, Epsilon had the burden to establish the 10/2 AWS was properly adopted. Specifically, as to the first period, Epsilon had the burden to establish that Apple had properly adopted its AWS."); *Morelli v. Corizon Health, Inc.*, 2019 U.S. Dist. LEXIS 29717, at *22 (E.D. Cal. Feb. 2, 2019) ("Further, the alternative workweek election is an affirmative defense.").

[**Defendants' position:**  AWS should not be listed here.  By listing AWS as an affirmative defense, Plaintiffs are improperly seeking reconsideration of the Court's ruling that already correctly rejected Plaintiffs' argument that AWS is an affirmative defense.  *See* Dkt. 236, Court's MSJ Order at 19:11-14 ("Plaintiffs argue Walmart waived the AWS argument by not asserting it as an affirmative exemption defense in its answer.  (*See* Pl.'s MSJ at 1.)  Walmart argues 'AWS is not an

exemption defense because it is not an exemption.' Which are set forth in Wage Orders. (Dkt. No. 172 at 16.)  The Court agrees.").]

**Defense 4:**  *De Minimis*

**[Plaintiffs' position:]**

*De minimis* is not an affirmative defense to state law wage claims. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018). As described by Walmart, this is an attack on Plaintiffs' prima facie case, not an affirmative defense, couched in the terminology of a historical defense that is no longer allowed.

Further, the defense cannot apply in this context, as it would require Walmart to take the position that the meal period premium that Plaintiffs seek for failure to provide meal periods – *i.e.*, an hour of pay every day – is *de minimis*.

**[Defendants' position:]**  Because Plaintiffs' security-check-related claims were decertified, there should not be any claims implicating *de minimis* anymore. However, to the extent that Plaintiffs seek to and are permitted to introduce evidence relating to the security check in connection with Claim 2, Walmart lists *de minimis* as a defense.

(b)    The elements required to establish Defendants' affirmative defenses are:

**Defense 1:**   Unclean Hands

**[Plaintiffs' position:]**

Individual: To prevail on this defense, Defendants must prove that: (1) Chelsea Hamilton and Alyssa Hernandez acted unconscionably, illegally, or in bad faith in connection with the subject matter of this lawsuit; and (2) it would be unfair to grant either of them the full extent of relief that they seek.

Classwide: To prevail on this defense, Defendants must prove that: (1) Class Members acted unconscionably, illegally, or in bad faith in connection with the subject matter of this lawsuit; and (2) it would be unfair to grant the Class the full extent of relief that they seek.

1

2      **[Defendants' position:]**  Either Chelsea Hamilton and Alyssa Hernandez

3  acted unconscionably, illegally, or in bad faith in connection with the subject matter

4  of this lawsuit, and that it would be unfair to grant either of them the full extent of

5  relief that they seek.

6      **Defense 2:**   Statute of Limitations

7      **[Plaintiffs' position:]**  Because of the timeline in this case, there is no relevant

8  statute of limitations. In response to Defendants' statement below, it is well-settled

9  that the statute of limitations for Labor Code section 203 is three years. *Pineda v.*

10 *Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

11     **[Defendants' position:]**

12      The statutes of limitations for Claims 1, 2, 6 and 7 are each three years.

13 While the statute of limitations for Claim 5 (the UCL claim) is four years, because

14 the facility opened less than two years before the Complaint was filed, the four year

15 limitations period is not implicated.  It is further Defendants' position that the statute

16 of limitations for Claim 3 (Section 203) and Claim 4 (Section 226(a)(9)) are each

17 one year.

18     **Defense 3:**  AWS

19     **[Plaintiffs' position:]**

20      To prevail on this defense, Defendants must prove each of the following

21 elements:

22      (1)     Walmart proposed its alternative workweek schedule in the form of a

23 written agreement. The proposed agreement designated a regularly scheduled

24 alternative workweek in which the specified number of work days and work hours

25 were regularly recurring.

26      (2)     The proposed alternative workweek schedule was adopted in a secret

27 ballot election, before the performance of work, by at least a two-thirds (2/3) vote of

28

the affected employees in the work unit. The secret ballot election must have been held during regular working hours at Walmart's work site. Affected employees in the work unit may include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit. A work unit may consist of an individual employee as long as the criteria for an identifiable work unit are met.

(3)     Prior to the secret ballot vote, Walmart made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits. The required disclosure included meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule. Walmart mailed the written disclosure to all employees who did not attend the meeting.

(4)     The election to establish an alternative workweek schedule was held at the work site of the affected employees and Walmart bore the costs of conducting any secret ballot election.

(5)     Only secret ballots were cast by affected employees in the work unit at any election. Walmart reported the results of any secret ballot election to the Office of Policy, Research and Legislation within 30 days after the results were final. The report must have included the final tally of the vote, the size of the unit, and the nature of the business of the employer.

(6)     Employees affected by a change in the work hours resulting from the adoption of an alternative workweek schedule must not have been required to work those new work hours for at least 30 days after the announcement of the final results of the secret ballot election.

(7)     Walmart did not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek.

(8)    Walmart did not discharge any employees or discriminate against any employees for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption

**[Defendants' position:]**

AWS should not be listed here.  By listing AWS as an affirmative defense, Plaintiffs are improperly seeking reconsideration of the Court's ruling that already correctly rejected Plaintiffs' argument that AWS is an affirmative defense.  *See* Dkt. 236, Court's MSJ Order at 19:11-14 ("Plaintiffs argue Walmart waived the AWS argument by not asserting it as an affirmative exemption defense in its answer.  (*See* Pl.'s MSJ at 1.)  Walmart argues 'AWS is not an exemption defense because it is not an exemption.' Which are set forth in Wage Orders. (Dkt. No. 172 at 16.)  The Court agrees.").

In accordance with the Court's instructions at the March 15, 2019 pre-trial conference, the Parties have submitted separate briefing to the Court on this issue.

**Defense 4:**  *De Minimis*

**[Plaintiffs' position:]** As discussed above, Plaintiffs do not believe this is an affirmative defense recognized by California law.

**[Defendants' position:]**  Because Plaintiffs' security-check-related claims were decertified, there should not be any claims implicating *de minimis* anymore. However, to the extent that Plaintiffs seek to and are permitted to introduce evidence relating to the security check in connection with Claim 2, Walmart lists *de minimis* as a defense.

(c)    In brief, the key evidence Defendants rely on for each affirmative defense is:

**Defense 1:**  Unclean Hands

By way of example, company policy precluded Plaintiffs or others from working off the clock, and, to the extent that was done, it would have been a policy violation.

**Defense 2:**   Statute of Limitations

Plaintiff Alyssa Hamilton filed her Complaint in the Superior Court for the County of San Bernardino on June 7, 2017.  Plaintiff Chelsea Hamilton filed her Complaint in the Superior Court for the County of San Bernardino on June 13, 2017.

**Defense 3:** AWS

It is Defendants' position that AWS should not be listed here.  By listing AWS as an affirmative defense, Plaintiffs are improperly seeking reconsideration of the Court's ruling that already correctly rejected Plaintiffs' argument that AWS is an affirmative defense.  *See* Dkt. 236, Court's MSJ Order at 19:11-14 ("Plaintiffs argue Walmart waived the AWS argument by not asserting it as an affirmative exemption defense in its answer.  (*See* Pl.'s MSJ at 1.)  Walmart argues 'AWS is not an exemption defense because it is not an exemption.' Which are set forth in Wage Orders. (Dkt. No. 172 at 16.)  The Court agrees.").

In accordance with the Court's instructions at the March 15, 2019 pre-trial conference, the Parties have submitted separate briefing to the Court on this issue.

Nonetheless, on the AWS issue, for which Plaintiffs bear the burden of proof, Walmart identifies the following summary of testimony and documentary evidence:

- The Chino Fulfillment Center ("Chino FC") used both AWS and non-AWS during the class period.

- The AWS shifts were:  (i) 4-day weeks, Tuesday through Friday, for 10 hour days; and (ii) 3-day weekends, Saturday through Monday, for 11.25 hour days.  The non-AWS shifts included night shifts.

- The AWS shifts were welcomed by hourly associates, who overwhelmingly approved them in a December 7, 2015 election.

- Walmart timely reported the election results to the California Department of Industrial Relations.

- Prior to the election, on November 20, 2015, meetings were held with associates to discuss the two then-proposed AWS shifts.

- Prior to the vote, associates who would ultimately vote on AWS were working 5 days a week for 8 hours a day.  Those associates fell within identifiable subdivisions—including the two work units that would vote in the weekend and weekday AWS election—because the associates in those work units already were identified and recognized as such when hired.

- Walmart complied with the timing requirement to hold pre-vote disclosure meetings "at least 14 days prior to voting."

- Associates were not only told of and invited to the November 20, 2015 pre-vote AWS meetings, but attendance also was required, and the disclosure forms would be mailed to any associate that could not attend.

- The content of the meetings was set forth in the written disclosure memos.

- Specifically, separate disclosure memos were prepared and provided at the meetings for both the weekend AWS vote and the weekday AWS vote, and both memos also were given to every nonexempt associate in the Chino FC.

- Associates were told of and invited to these disclosure meetings, for which attendance was required, although disclosure forms—which were discussed at the meetings and provided to all the associates—would be mailed to any associate that should have attended but could not.

- Over the years, more associates were hired.  Plaintiffs were two such associates hired onto AWS shifts.  Specifically, Hamilton applied for her job knowing the schedule would be daytime Saturday through Monday for 11.25 hours a day.  She understood that she would not earn overtime for the 9th and

10th hours in a day, but would earn overtime for over 10 hours in a day. This was the shift she wanted. Prior to leaving, Hernandez worked the other AWS shift (Tues.-Fri., daytime, 10 hrs./day).

• Although the law allowed those on AWS shifts to petition for a new vote to repeal the AWS if they ever desired to do so, no such repeal was ever sought, and Plaintiffs make no such contention.

• Plaintiffs contend Walmart failed to disclose to the 3-day weekend/11.25-hour AWS voters that they supposedly would get less sick leave, because, as Plaintiffs allege, the cap on sick leave would change from 3 days to 30 hours. The Court already has rejected this argument as legally unsupported. (Dkt. 236 at 20.) Regardless, the cap did not change from 3 days to 30 hours, and weekend AWS associates did not lose sick leave by switching schedules, as Plaintiffs falsely claim. Rather, prior to the vote, when California's new sick-leave law became effective (*see* Labor Code §§ 245-249), class members could accrue a maximum of 24 hours—measured in hours, not days—of protected sick leave per year. That was all California law required. *See* Cal. Labor Code § 246(b)(3), (d). Then, sometime in the one-year period July 2015 to July 2016 (the vote was in Dec. 2015), Walmart increased the cap to 30 hours a year—exceeding California's requirement—which increase applied to both AWS and non-AWS associates alike. In sum, there was no change as a result of the switch to AWS, and there certainly was no decrease in sick leave. To the contrary, all associates working AWS or non-AWS shifts received a 25% increase in the maximum sick leave they could accrue.

• Plaintiffs claim "[t]he evidence strongly suggests that the effect of voting against the AWS would have been that putative class members would receive California overtime for the same schedules." That is wrong.

Management had not discussed what it would do for staffing if the AWS vote did not pass, but all indications were that associates would have worked 8-hour days, and not 10- or 11.25-hour days.

• Plaintiffs contend Walmart supposedly failed to allow hired associates to vote in the December 7, 2015 election. Plaintiffs are wrong. The lead time for a prospective associate after he or she accepts a conditional offer but before he or she is hired is 14 to 60 days, because the candidate must clear a background check and (for certain positions during certain periods of time) pass a drug test before he or she is given a start/hire date. To that end, until a prospective associate actually starts work on the first day and completes the I-9 form, he or she is not yet hired and is not yet an employee; instead, he or she is only a prospective employee/candidate. Thus, the associates that did not start work until December 8, 2015 were not hired employees until December 8.

• Plaintiffs claim the vote tally for the weekend-shift AWS vote was out of 17 eligible voters instead of 10. Plaintiffs are incorrect. There were 10 eligible weekend AWS voters (and thus 10 actual votes) in the weekend AWS election. In fact, (i) the AWS voter roll showed only 10 people in that work unit, (ii) pre-populated ballot count forms showed only 10 voters for the weekend AWS election, (iii) election results reported to the State as fully accurate indicated there were 10 eligible voters, and (iv) Walmart's 30(b)(6) witness testified that there were, in fact, 10 weekend associates.

• Expert rebuttal testimony regarding alleged damages, as well as anything else necessary for rebuttal.

• Plaintiffs have not disclosed their trial plan to pursue their claim on behalf of the Alterative Workweek Subclass. Accordingly, Walmart expressly reserves the right to present testimony, documentary, and/or other evidence

21

(including the right to augment and amend the witness and/or exhibit lists) in opposition to Plaintiffs' evidence presented at trial concerning this claim on which Plaintiffs bear the burden.

**Defense 4:**  *de minimis* time

Because Plaintiffs' security-check-related claims were decertified, there should not be any claims implicating *de minimis* anymore.  However, to the extent that Plaintiffs seek to and are permitted to introduce evidence relating to the security check in connection with Claim 2, Walmart lists *de minimis* as a defense.  In the event that Plaintiffs are permitted to introduce such evidence, Walmart's evidence in support of its *de minimis* defense includes percipient and expert testimony, as well as video footage, showing that the amount of time to get through security on a given day was *de minimis*.

**8.      REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

Claim 1: Classwide: Failure to Pay all Overtime Wages. [Cal. Labor Code § 1194].

**[Plaintiffs' Position:]**

- Whether Plaintiffs and the Overtime Subclass and Alternative Workweek Subclass performed work for Walmart while on-the-clock between eight and 10 hours in a day.
- Whether Walmart knew or should have known that Plaintiffs and Overtime Subclass Members and Alternative Workweek Subclass Members had worked overtime hours.
- On days during which Plaintiffs and the Overtime Sublcass and Alternative Workweek Subclass performed overtime work for Walmart, whether Walmart compensated  Plaintiffs and the Overtime Sublcass

and Alternative Workweek Subclass at the applicable overtime rates of pay for all overtime hours worked.

- Whether Walmart demonstrates, by a preponderance of the evidence, that they properly enacted a 4/10 and/or 3/11.25 alternative workweek schedule, including by completing the following prerequisites:
  - o Proposing the alternative workweek schedule in the form of a written agreement that designated a regularly scheduled alternative workweek in which the specified number of work days and work hours were regularly recurring.
  - o Adopting the alternative workweek schedule in a secret ballot election, before the performance of work, by at least a two-thirds (2/3) vote of the affected employees in the work unit. The secret ballot election must have been held during regular working hours at Walmart's work site and Walmart must have borne the costs of conducting any secret ballot election.
  - o Making a written disclosure to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits.
  - o Holding meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule.
  - o Mailing the written disclosure to all employees who did not attend the meeting.
  - o Reporting the results of any secret ballot election to the Office of Policy, Research and Legislation within 30 days after the results were final. The report must have included the final tally of the

23

vote, the size of the unit, and the nature of the business of the employer.

o Implementing the alternative workweek schedule at least 30 days after the announcement of the final results of the secret ballot election.

o Walmart did not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek.

o Walmart did not dischargt any employees or discriminate against any employees for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption

• Whether employees who have accepted an offer of employment but have not yet started their first day of paid work constitute employees with the "work unit" such that they should have been permitted to vote in the alternative workweek election.

• The amount of overtime wages owed.

**[Defendants' position:]**

• Whether Plaintiffs prove by a preponderance of the evidence that every member of the applicable Subclass worked daily hours adding up to more than 8 but less than 10

• Whether Plaintiffs prove by a preponderance of the evidence that Walmart knew or should have known that every Subclass member worked daily hours adding up to more than 8 but less than 10

• Whether Plaintiffs prove by a preponderance of the evidence that the affected individuals employed at the time of the AWS votes did not receive a written disclosure explaining the effects of the proposal on the employees' wages, hours, and benefits

- Whether Plaintiffs prove by a preponderance of the evidence that the affected individuals employed at the time of the AWS votes did not receive notice of the meeting to be held at least 14 days prior to voting

- Whether Plaintiffs prove by a preponderance of the evidence that employees who did not attend the meeting were not mailed the disclosure

- Whether, with respect to the time spent working more than 8 hours but less than 10 hours in a workday, Plaintiffs prove by a preponderance of the evidence the number of such hours that Subclass members worked

- With respect to the time spent working more than 8 hours but less than 10 hours in a workday, the total number of hours Plaintiffs prove by a preponderance of the evidence was worked by the Subclass

- Whether, with respect to the time spent working more than 8 hours but less than 10 hours in a workday, Plaintiffs prove by a preponderance of the evidence the amount of overtime wages every Subclass member is owed

- With respect to the time spent working more than 8 hours but less than 10 hours in a workday, total amount of overtime wages, if any, did Plaintiffs prove by a preponderance of the evidence the Subclass is owed

- Whether AWS is an affirmative defense or Plaintiffs' burden

- Whether an employer proposing an AWS has to disclose in the pre-vote disclosures any information that does not affect the voters in the affected work unit

- Whether a prospective employee is an actual employee—entitled to all employee benefits—before he or she starts work

- Whether employees hired after an AWS vote takes place and before the AWS shifts begin are not "affected employees" entitled to participate in the pre-vote process and election

25

- Whether an AWS vote is invalid just because an employee may not attend the pre-vote disclosure meeting

<u>Claim 2</u>: Classwide: Failure to Provide Meal Periods. [Cal. Labor Code § 512(a); IWC Wage Order 7-2001]

**[Plaintiffs' Position:]**

- Whether Meal Break Subclass Members were not free to leave Walmart's premises for meal periods.
- Whether Walmart impeded or discouraged Meal Break Subclass Members from taking meal periods outside the fulfillment center.
- Whether Walmart coerced Meal Break Subclass Members against taking the meal period outside the fulfillment center, created incentives to forgo the meal period outside the fulfillment center, or otherwise encouraged Meal Break Subclass Members to skip meal periods outside the fulfillment center.
- The amount of meal period premiums owed.

**[Defendants' position:]**

- Whether Plaintiffs prove by a preponderance of the evidence that Walmart did not provide every member of the applicable Subclass with the option to take an unpaid meal break of up to 30 minutes in each workday
- Whether Plaintiffs prove by a preponderance of the evidence the number of workdays on which Subclass members were not provided with the option to take an unpaid meal break of up to 30 minutes in each workday
- The total number of workdays, if any, Plaintiffs prove by a preponderance of the evidence Subclass members are owed meal break premiums
- Whether Plaintiffs prove by a preponderance of the evidence the amount of meal break premiums due to Subclass members

• The total amount of meal break premiums, if any, Plaintiffs prove by a preponderance is owed to the Subclass

• Whether employers have a duty regarding the provision of breaks beyond what the California Supreme Court holds in *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040 (2012)

• Whether a security check at an exit is "discouragement" of a meal break

<u>Claim 3:</u> Classwide: Failure to Timely Pay Final Wages. [Cal. Labor Code § 203].

**[Plaintiffs' Position:]**

• Whether Walmart failed to pay all wages due by the end of employment for Waiting Time Penalty Subclass Members.

• Whether Walmart willfully failed to pay these wages to Waiting Time Penalty Subclass Members.

• The amount of waiting time penalties owed.

**[Defendants' position:]**

• Whether Plaintiffs prove by a preponderance of the evidence that every member of the applicable Subclass performed work for Walmart

• Whether Plaintiffs prove by a preponderance of the evidence that every Subclass member separated from his or her employment with Walmart between the start of the applicable limitations period and  August 21, 2018

• Whether Plaintiffs prove by a preponderance of the evidence that Walmart willfully failed to pay wages due at the end of employment for every Subclass member

• Whether Plaintiffs prove by a preponderance of the evidence the total number of calendar days following every Subclass member's last day of employment for which Walmart willfully failed to pay wages that were due

27

- The total amount of calendar days, if any, Plaintiffs prove by a preponderance passed during which Walmart willfully failed to pay wages that were due to Subclass members
- Whether Plaintiffs prove by a preponderance of the evidence the daily wage rate for the Subclass members at the time his or her employment ended
- Whether penalties under the Labor Code or other scheme are awardable, and, if so, the amount and whether they are Constitutional and comport with due process

Claim 4: Classwide: Failure to Provide Accurate Itemized Wage Statements. [Cal. Labor Code § 226].

**[Plaintiffs' Position:]**

- Whether Walmart failed to furnish the Wage Statement Penalty Subclass an accurate itemized statement in writing which included all required hours worked and all required hourly rates corresponding to the "OVERTIME/INCT" that is listed on wage statements.
- Whether employees suffered injury as a result of that failure.
- Whether that failure was knowing and intentional.
- The amount of wage statement penalties owed.

**[Defendants' position:]**

- Whether Plaintiffs prove by a preponderance of the evidence that every member of the applicable Subclass received a paystub that, at the time it was given, did not accurately reflect the hours and rates used by Walmart to calculate the amounts shown in the corresponding paycheck
- The total number of paystubs, if any, Plaintiffs prove by a preponderance of the evidence did not, at the time they were given, accurately reflect the hours and rates used by Walmart to calculate the amounts shown in the corresponding paycheck

28

- Whether Plaintiffs prove by a preponderance of the evidence that Walmart acted willfully in providing paystubs that did not, at the time they were given, accurately reflect the hours and rates used to calculate the amounts shown in the corresponding paycheck
- Whether Labor Code § 226(a)(9) requires what Plaintiffs claim
- Whether penalties under the Labor Code or other scheme are awardable, and, if so, the amount of such penalties, the time period for which such penalties are awardable and whether they are Constitutional and comport with due process

Claim 5: Classwide: Unfair and Unlawful Competition. [Cal. Bus. & Prof. Code §§ 17200, *et seq*.].

**[Plaintiffs' Position:]**

- Whether Walmart engaged in conduct that was either unfair, unlawful, or fraudulent.
- The amount of disgorgement owed.

**[Defendants' position:]**  This is a derivative claim, for which all the issues for the underlying claims are at issue here, plus the amount of disgorgement, if any.

Claim 6: Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to Provide 2nd Meal Periods. [Cal. Labor Code § 512(a); IWC Wage Order 7-2001]

**[Plaintiffs' Position:]**

- Whether Defendants failed to provide each plaintiff a reasonable opportunity to take a 30-minute, duty free second meal period for shifts over 10 hours in a workday.
- The amount of meal premiums owed.

**[Defendants' position:]**

- Whether Plaintiffs Alyssa Hernandez and Chelsea Hamilton prove by a preponderance of the evidence that Walmart did not provide them with the option to take a second meal break on any workday during which they worked more than 10 hours
- Whether Plaintiff Alyssa Hernandez and Chelsea Hamilton prove by a preponderance of the evidence that they did not waive Walmart's obligation to provide the option to take that second meal break
- The total number of workdays, if any, Plaintiff Alyssa Hernandez and Chelsea Hamilton prove by a preponderance of the evidence both of the following things did occur: (a) they were not provided with the option to take a second meal break, and (b) they did not waive that second meal break
- The number of workdays Plaintiff Alyssa Hernandez and Chelsea Hamilton prove by a preponderance of the evidence are workdays for which they are not entitled to a first meal break premium in connection with the Meal Break Subclass claim for first meal breaks
- The total amount of second meal break premiums, if any, Plaintiff Alyssa Hernandez and Chelsea Hamilton prove by a preponderance of the evidence they are owed
- Whether employers have a duty regarding the provision of breaks beyond what the California Supreme Court holds in *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040 (2012)
- Whether a security check at an exist is "discouragement" of a meal break as a matter of law
- Defendants further assert that Plaintiffs have not properly disclosed damages for this individual claim as required by Rule 26, and for this additional reason, this individual claim must be dismissed.

Claim 7: Plaintiffs Chelsea Hamilton and Hernandez, each individually, pursue the following claim: Failure to provide Rest Breaks. [IWC Wage Order 7-2001].

**[Plaintiffs' Position:]**

- Whether Plaintiffs each worked sufficient hours in a shift to be entitled to a rest break.
- Whether Walmart failed to authorize and permit all the required 10-minute, duty free rest breaks for Plaintiffs.
- The amount or rest break premiums owed.

**[Defendants' position:]**

- Whether Plaintiff Chelsea Hamilton and Plaintiff Alyssa Hernandez prove by a preponderance of the evidence that Walmart did not provide them with the option to take a 10-minute rest break for each 4 hours (or major fraction thereof) that they worked, not including time spent on meal or rest breaks
- the total number of workdays, if any, for which Plaintiff Chelsea Hamilton and Plaintiff Alyssa Hernandez each has proven by a preponderance of the evidence she was not provided with the option to take one or more compliant rest breaks
- whether Plaintiff Chelsea Hamilton and Plaintiff Alyssa Hernandez prove by a preponderance of the evidence the amount of rest break premiums due to each of them
- The total amount of rest break premiums, if any, Plaintiff Chelsea Hamilton and Plaintiff Alyssa Hernandez prove by a preponderance is owed to each of them
- Whether employers have a duty regarding the provision of breaks beyond what the California Supreme Court holds in *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040 (2012)

- Defendants further assert that Plaintiffs have not properly disclosed damages for this individual claim as required by Rule 26, and for this additional reason, this individual claim must be dismissed.

Other issues:

**[Defendants' position:]**

- Unclean hands:  Whether Plaintiffs Chelsea Hamilton and Alyssa Hernandez acted unconscionably, unfairly, illegally, or in bad faith, and whether that conduct directly related to the subject-matter of the class claims or their individual claims; and whether, as a result of that conduct, would it be unfair to grant relief for the class claims or to Plaintiffs on their individual claims

- *De minimis*:  Whether *de minimis* is a defense and applies here; and whether *de minimis* is an issue for the Court, and not a jury, as an equitable defense

- Whether penalties under the Labor Code or other scheme are awardable, and, if so, how much and whether they are Constitutional and comport with due process

**9.   DISCOVERY**

All discovery is complete

**10.   DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties was previously filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").  A revised joint exhibit list of the parties will be filed under separate cover.

In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

**11.   WITNESS LISTS**

32

The original witness lists of the parties were filed with the Court on February 22, 2019.  (Dkt. 190, 194.)  In response to various orders, rulings, and meet-and-confer agreements, Plaintiffs and Walmart each filed a revised witness list on March 25, 2019.

Walmart objects to certain of the witnesses identified on Plaintiffs' revised witness list on the grounds that they were not properly disclosed prior to the close of discovery.  Such objections may be made at any time and need not be made by way of a motion in limine.

Plaintiffs assert that the motion in limine deadline has long passed. Plaintiffs have relied on the course of pretrial litigation, including all applicable deadlines and numerous pre-trial filings, and have subpoenaed witnesses, met with witnesses, prepared question outlines, and otherwise been preparing for trial.

[Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).]

## 12.   **MOTIONS IN LIMINE**

On March 19, 2019, the Court issued an order ruling on Plaintiffs' motions *in limine* Nos. 1 through 7, and Defendants' motions *in limine* Nos. 1-4.  The Court deferred ruling on Defendants' motions *in limine* No. 5.  On March 25, 2019, the parties submitted briefing as ordered by the Court.

## 13.   **BIFURCATION**

Pursuant to a stipulated Order (Dkt. 213), the claims that are certified for class treatment shall be tried in Phase 1, and each plaintiff's remaining individual claims shall be tried in a subsequent phase.  Throughout, certain issues are legal issues that remain reserved for the Court.

In addition, the parties have agreed to submit Plaintiffs' wage statement claim (which is limited to the class-wide OVERTIME/INCT theory) to the Court for resolution through briefs filed on March 25, 2019.

33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**14.**   **ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED:      April 05, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE