KENNETH H. YOON (State Bar No. 198443)
kyoon@yoonlaw.com
STEPHANIE E. YASUDA (State Bar No. 265480)
syasuda@yoonlaw.com
BRIAN G. LEE (State Bar No. 300990)
blee@yoonlaw.com
**YOON LAW, APC**
One Wilshire Boulevard, Suite 2200
Los Angeles, California 90017
Telephone: (213) 612-0988
Facsimile: (213) 947-1211

Attorneys for Plaintiffs
Chelsea Hamilton and Alyssa Hernandez

[Additional counsel listed on the following page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA HAMILTON, individually and on behalf of all others similarly situated, and ALYSSA HERNANDEZ, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a corporation, WAL-MART ASSOCIATES, INC., a corporation and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:17-cv-01415 AB (KKx)<br><br>[Hon. André Birotte Jr. Courtroom 7B]<br><br>**PLAINTIFFS CHELSEA HAMILTON AND ALYSSA HERNANDEZ'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL**<br><br>Date:  December 13, 2019<br>Time:  10:00 a.m.<br>Place:  Courtroom 7B |

G. SAMUEL CLEAVER [CSB No. 245717]
sam@gscleaverlaw.com
**LAW OFFICES OF G. SAMUEL CLEAVER**
5670 Wilshire Boulevard, 18th Floor
Los Angeles, CA 90036
Telephone: (323) 648-6676

BRIAN J. MANKIN       [CSB No. 216228]
bjm@fernandezlauby.com
PETER J. CARLSON       [CSB No. 295611]
pjc@fernandezlauby.com
**FERNANDEZ & LAUBY LLP**
4590 Allstate Drive
Riverside, CA  92501
Tel: (951) 320-1444
Fax: (951) 320-1445
bjm@fernandezlauby.com
pjc@fernandezlauby.com

Attorneys for Plaintiffs
Chelsea Hamilton and Alyssa Hernandez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 13, 2019, at 10:00 a.m. in Courtroom 7B of the above-entitled Court, located at 350 West First Street, Los Angeles, CA 90012, Plaintiffs Chelsea Hamilton and Alyssa Hernandez will, and hereby do, move for a new trial under Federal Rule of Civil Procedure 59 on Plaintiffs' claim unpaid overtime wages.

The grounds for this motion are that the jury's verdict finding that Defendants had met their burden of demonstrating that they complied with the alternative workweek schedule requirements is unsupported by substantial evidence, and evidentiary errors were prejudicial and prevented Plaintiffs from receiving a fair trial.

Plaintiffs' motion is supported by the attached memorandum of points and authorities, the record of trial testimony, the records and files in the matter, and such other evidence and argument as may be admitted at the time of the hearing of the motion. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 19, 2019.

Dated: October 2, 2019          **YOON LAW, APC**


By: _____*/s/ Stephanie E. Yasuda*_____
                  Stephanie E. Yasuda
        Attorneys for Plaintiffs
        Chelsea Hamilton and Alyssa Hernandez

# **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD ...........................................................................2

III.   RELEVANT UNDISPUTED FACTS AND PROCEDURAL HISTORY ...........2

IV.   PLAINTIFFS ARE ENTITLED TO A NEW TRIAL ON THE CLASS-WIDE
UNPAID OVERTIME CLAIMS ................................................................4

    A.   Defendants Had the Burden of Establishing They Conducted a Proper
AWS Election...........................................................................................4

    B.   The Evidence at Trial Demonstrated that Defendants Never Disclosed
What Employee Schedules Would Be If the Employees Did Not Approve
the Alternative Work Schedules .................................................................5

    C.   The Evidence at Trial Indicated That Defendants Failed to Hold a Vote for
All Affected Employees in the Work Unit ..................................................8

    D.   The Jury Should Have Been Able to Hear Testimony and See Evidence
Concerning the 33 Affected Employees Who Started Work the Day After
the AWS Elections ..................................................................... 10

        1.   The Employees Who Started Work After December 7, 2015 Were
Affected Employees Who Should Have Received the Required
Disclosures and Should Have Voted in the AWS Elections ........... 12

        2.   Plaintiffs Should Have Been Allowed to Present Evidence of the
Start Dates of the Affected Employees Who Began Work After
December 7, 2015 ......................................................................... 16

V.   A NEW TRIAL AS TO WAITING TIME PENALTIES IS WARRANTED..... 17

VI.   CONCLUSION ................................................................................. 18

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page**

3

<u>**Federal Cases**</u>

4

5

*Frlekin v. Apple, Inc.*,
870 F.3d 867(9th Cir. 2017) .......................................................................... 11

6

7

*Jones v. AB Acquisition, LLC*,
703 Fed. Appx. 563 (9th Cir. 2017) ............................................................... 12

8

9

*Landes Constr. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987) ..................................................................... 2, 8

10

11

*Lotspeich v. Chance Vought Aircraft*
369 S.W. 2d 705 (Tex.Civ.App. 1963) .......................................................... 14

12

13

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 9th Cir. 2007) ............................................................................2

14

15

*Murphy v. City of Long Beach*,
914 F. 2d 183 (9th Cir. 1990) ..................................................................... 2, 8

16

*Ruvalcaba v. City of Los Angeles*,
64 F.3d 1323 (9th Cir. 1995) ......................................................................... 12

17

18

<u>**State Cases**</u>

19

20

*Armenta v. Osmose*,
135 Cal. App. 4th 314 (2005) ........................................................................ 18

21

22

*Augustus v. ABM Security Services, Inc.*,
2 Cal. 5th 257 (2016) ..................................................................................... 11

23

24

*Barnhill v. Robert Saunders & Co.*,
125 Cal. App. 3d 1 (1981) ............................................................................. 18

25

*Laeng v. Workmen's Comp. Appeals Bd.*,
6 Cal. 3d 771 (1972) ..................................................................................13-14

26

27

*Loder v. City of Glendale*,
14 Cal. 4th 846, 852-53 (1997) ..................................................................... 14

28

## **TABLE OF AUTHORITIES (cont'd)**

*Meyer v. Atchison, T. & S.F. Ry.*,
6 Cal. Comp. Cases 308 (1941) ....................................................... 14

*Seymore v. Metson Marine, Inc.*,
194 Cal. App. 4th 361, 370 (2011) ................................... 15, 17, 18

*Wise v. Pacific Electric Ry Co.*,
8 Cal. Comp. Cases 17 (1942) ....................................................... 14

**Statutes and Rules**

Cal. Code Regs. tit. 8 § 11070(3)(C)(3) ................................................ *passim*

Cal. Lab. Code § 510 ............................................................... 1, 3, 4

Cal. Lab. Code § 1194 ............................................................. 1, 3, 4

Cal. Lab. Code § 203 ........................................................... 1, 17, 18

Cal. Lab. Code § 511 ............................................................ 4, 8, 12

Cal. Lab. Code § 2750 ................................................................. 13

Cal. Gov't Code § 12940(e)(3) ...................................................... 14

Federal Rule of Civil Procedure 59(a) .............................................. 2

**Other Authority**

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 48-49 (1973) ....2

PLAINTIFFS' MOTION FOR A NEW TRIAL

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

On April 3, 2019, Plaintiffs Chelsea Hamilton and Alyssa Hernandez ("Plaintiffs"), on behalf of themselves and the classes certified by this Court on August 21, 2018, proceeded with a jury trial against Defendants Wal-Mart Stores, Inc., and Wal-Mart Associates, Inc. ("Defendants").

Plaintiffs hereby move for a new trial with respect to their claim for failure to pay overtime wages pursuant to California Labor Code sections 510 and 1194, and their derivative claim for failure to pay waiting time penalties pursuant to California Labor Code section 203.

The undisputed facts confirm that (a) Plaintiffs and the Alternative Workweek Subclass worked shifts in excess of 8 hours per day for Defendants, (b) Defendants did not pay overtime to Plaintiffs and the Alternative Workweek Subclass for hours worked between 8 and 10 hours per shift. Further, Plaintiffs introduced evidence at trial that Defendants were required to, but did not, disclose the effect of the alternative workweek schedule ("AWS") election on the benefits for individuals working the AWS – directly contrary to the AWS requirements. *See* IWC Wage Order 7-2001(3)(C)(3) (codified at Cal. Code Regs. tit. 8 § 11070) ("Prior to the secret ballot vote, any employer who proposed to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits"). Plaintiffs also introduced evidence at trial that Defendants failed to make the necessary AWS disclosures to all affected employees in the AWS work unit, and failed to allow all affected employees to participate in the requisite secret ballot election. Cal. Code Regs. tit. 8 § 11070 (3)(C)(2), (3).

For the foregoing reasons and as discussed in further detail below, Plaintiffs respectfully request the Court order a new trial with respect to their claims for unpaid overtime wages and derivative waiting time penalties.

1

## II.     LEGAL STANDARD

A party may move for a new trial under Federal Rule of Civil Procedure 59(a) where the jury's verdict is against the clear weight of the evidence. In considering a motion for new trial, "the district court has 'the *duty* . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Molski v. M.J. Cable, Inc.*, 481 F. 3d 724, 729 (9th Cir. 2007) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)) (emphasis added). The standard for granting a motion for new trial thus differs from the one that applies to a motion for judgment as a matter of law under Rule 50(b). If substantial evidence supports the verdict, judgment as a matter of law is inappropriate. "The existence of substantial evidence does not, however, prevent the court from granting a motion for a new trial pursuant to Fed. R. Civ. P. 59 if the verdict is against the clear weight of evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

Whether a new trial on these grounds is appropriate is not subject to an easy formula, and "[n]ecessarily all such formulations are couched in broad and general terms that furnish no unerring litmus for a particular case." *Id.* Accordingly, "determining 'the clear weight of the evidence' is a fact-specific endeavor . . . ." *Molski*, 481 F. 3d at 729. The court should bear in mind both the duty to prevent miscarriages of justice and a respect for the jury's verdict. "If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." *Landes Constr.*, 833 F.2d. at 1371-72 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 48-49 (1973)).

## III.     RELEVANT UNDISPUTED FACTS AND PROCEDURAL HISTORY

On August 21, 2018, this Court certified the Alternative Workweek Subclass, defined as "all current and former non-exempt employees employed by Defendants in

the State of California and who worked in a Walmart Fulfillment center and pursuant to an alternative workweek schedule and were not paid daily overtime for work in excess of eight (8) but less than ten (10) hours." (DE 121).

The class action trial in this matter commenced on April 3, 2019. In a ruling that day granting Defendants' Motion in Limine No. 5, the Court barred Plaintiffs from introducing evidence that 33 persons were scheduled to start work for Defendants the day after the December 7, 2015 AWS elections.  (Trial Transcript ("Trial Tr.") Apr. 3, 2019, 14:1-15:25.)  Many of the 33 were originally scheduled to start work the day of the AWS election and had their start date pushed back so that they would start the day after AWS election.  (SUF (DE 149-2) ¶ 30)(Trial Tr. Apr. 3, 2019, 14:1-15:25.)

On behalf of the Alternative Workweek Subclass, Plaintiffs tried a claim to the jury for failure to pay overtime in violation of California Labor Code sections 510 and 1194. Plaintiffs' claim was premised upon several theories, but relevant to this motion is Plaintiffs' assertion that Defendants had failed to demonstrate the existence of a properly-enacted AWS both for their 4 day a week 10 hour a day schedule, (the "4/10 AWS"), and their 3 day a week 11.25 hour a day schedule (the "3/11.25 AWS"). Plaintiffs premised their claim, *inter alia*, upon the allegation that Defendants did not provide requisite notice to employees of the effect of the anticipated AWS on wages, hours, and benefits, and that Defendants did not meet the requirements for a proper AWS election.

The evidence at trial conclusively demonstrated that Defendants did not pay overtime to Plaintiffs and the Alternative Workweek Subclass for hours worked between 8 and 10 hours per shift. (Trial Tr. April 8, 2019, 578:22-579:1) (Defendants' corporate representative and H.R. Manager, Jennifer Holden, testified that associates working an AWS schedule only get time and a half for overtime pay if they exceed ten hours in a day); (Trial Tr. , April 8, 2019, 580:8-11) (Ms. Holden confirmed that associates working an 11.25 hour shift only receive overtime for 1.25 hours); (Trial Ex.

38) (confirming that weekend shift associates working a 3/11.25 schedule will not receive overtime between 8 and 10 hours per day).

The evidence at trial also demonstrated that Defendants failed to establish that they properly enacted any AWS that relieved Defendants of their burden to pay overtime when their employees worked over 8 hours in a day. Defendants' evidence in support of a properly enacted AWS failed because (1) Defendants provided employees only two choices at the time of the AWS vote: either a weekend or weekday AWS (Trial Tr. Apr. 10, 2019, 1165:4-19), and (2) at least one person who started working the AWS with everyone else was excluded from the vote (Trial Tr. Apr. 8, 2019, 619:17-620:21; 636:3-20; Apr. 9, 2019, 774:3-778:4; Trial Ex. 39; 570).

On April 12, 2019, the jury returned a verdict in favor of Plaintiffs on Plaintiffs' meal period claim, but against Plaintiffs and in favor of Defendants with respect to Plaintiffs' claim for unpaid overtime. The jury found against the weight of the evidence that Defendants had met the requirements for an Alternative Workweek Schedule election.

## IV.   PLAINTIFFS ARE ENTITLED TO A NEW TRIAL ON THE CLASS-WIDE UNPAID OVERTIME CLAIMS

### A.   <u>Defendants Had the Burden of Establishing They Conducted a Proper AWS Election</u>

The default under California law is that non-exempt employees must be compensated at one and one-half times their regular rate of pay for hours worked in excess of 8 hours per day and 40 hours per week. Cal. Code. Civ. Proc. §§ 510, 1194. However, under Labor Code § 511, a "regularly scheduled alternative workweek" schedule is allowed when adopted by vote of the employees. Cal. Lab. Code § 511. "No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40-hour workweek without the payment of an overtime rate of compensation." Cal. Code Regs., tit. 8, § 11070(3)(B)(1).

This Court previously ruled that "it is [Defendants'] burden to prove whether [Defendants] complied with the alternative work schedule requirements." (Trial Tr., 10:8-10, April 3, 2019). Thus, Defendants were required to demonstrate that they complied with stringent notice and election procedures. Prior to the secret ballot vote for an AWS, the employer must give notice to its employees of the effects of the proposed AWS on the employees' wages, hours, and benefits, in a meeting held with the affected employees a minimum of 14 days prior to the election. Cal. Code Regs. tit. 8 § 11070(3)(C)(3). If these provisions are not satisfied, the election will be "null and void." Cal Code. Regs. tit. 8 § 11070(3)(C)(1). Thereafter, the employer must hold an election where the AWS must be voted in – before the performance of work – by 2/3 of all affected employees in the work unit. Cal. Code Regs. tit. 8 § 11070(3)(C)(2).

As discussed in further detail below, the evidence at trial revealed that Defendants did not provide the requisite notice and did not hold a proper election prior to the implementation of the AWS. Under the clear weight of the evidence, the AWS was improper and a new trial is warranted.

**B.**    **The Evidence at Trial Demonstrated that Defendants Never Disclosed What Employee Schedules Would Be If the Employees Did Not Approve the Alternative Work Schedules**

Defendants' witness, operations manager, Eva Bright, testified at trial that Defendants provided their employees with only one choice during the AWS election: the choice between the 3/11.25 AWS or the 4/10 AWS:

Q.    And at that time before the vote, the choice the employees had, you said the -- do you remember a question they had? They had a question of if it was three or four days a week they could chose [sic] or was it assigned to them? Do you remember they had that question?

A.    I remember an associate asked that question.

Q.    And you don't remember the answer?

A.    The only thing I recall was that it was a choice for the associate, that no choices were being made for them.

Q.    And the choice was between -- they could choose between the three-day-a-week schedule or the four-day-a-week schedule? Is that the choice presented to them?

A.    Yes.

Q.    There was no other choice from your memory? Your best memory, that was the choice?

A.    Yes. From my best memory, those were the choices.

(Trial Tr. Apr. 10, 2019, 1165:4-19.)

Ms. Bright's testimony is confirmed by the AWS disclosures that Defendants gave to their employees. The written disclosures are silent as to the schedule(s) the employees would work if they failed to approve the AWS schedules, and Ms. Bright did not know. (Trial Tr. Apr. 10, 2019, 1162:23-1163:8; Trial Ex. 34, 38.) Her testimony demonstrates that Defendants failed to meet the requirements of an AWS election in two ways. First, Defendants failed to disclose the "effects of the proposed arrangement on the employees' wages, hours, and benefits." Cal. Code Regs. tit. 8 § 11070(3)(C)(3). Prior to the AWS votes, all the voting employees worked a traditional 5 day a week, 8 hour a day schedule. (Trial Tr. Apr. 8, 2019, 648:16-649:1.) When Defendants held the AWS pre-election meeting, they disclosed to their employees only that employees had the choice of voting for one AWS (4 days per week, 10 hours per day ("4/10")) or the other (3 days per week, 11.25 hours per day ("3/11.25")). That limited information did not provide employees with a complete picture of the effect of the proposed arrangement on their wages, hours, and benefits; Defendants failed to disclose to voting employees what the schedule would be if voting employees rejected the AWS. (Trial Tr. Apr. 8, 2019, 633:1-4.) However, disclosure of the effects of the proposed arrangement necessarily includes the effects of a "yes" *and* a "no" vote. Without that necessary information, employees cannot know the effects of the AWS because they do not know what the default non-AWS wages, hours, and benefits will be. For example, voting employees did not know if Defendants would have implemented the proposed AWS schedules despite a "no" vote and paid employees for all overtime hours worked, or if the employees would continue to work the same 5 day a week, 8 hour a day

PLAINTIFFS' MOTION FOR A NEW TRIAL

schedule of if there would be some other schedule implemented. This is not only insufficient to satisfy the AWS requirements, but is also coercive because it creates the impression that employees are required to select one of two schedules without any opportunity to reject them. Cal. Code Regs. tit. 8 § 11070(3)(C)(8). It is further coercive because it very clearly leaves open the possibility that Defendants will punish employees if they fail to approve the AWS by assigning them to inconvenient schedules or reducing their hours and thus their pay. Indeed, facility general manager, Michael Patten, testified that he told the employees that he could not continue to "guarantee" them 40 hours of work each week unless they voted for the AWS. (Trial Tr. Apr. 10, 2019, 993:7-10; 994:5-12; 996:12-24.) The jury's finding that Defendants met the requirements of an AWS election (DE 286, pp. 1, 5) – namely, that Defendants provided the requisite written notice of the effects of the AWS and held a meeting to explain the disclosure – is thus against the clear weight of the evidence.

Second, Ms. Bright's testimony confirms that employees self-selected into a "work unit." This is a defect that renders the election inadequate. An AWS must be voted in – before the performance of work – by 2/3 of all affected employees in the work unit. Cal. Code Regs. tit. 8 § 11070(3)(C)(2). "Work unit" is defined as "a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit." Cal. Code Regs. tit. 8 § 11070(3)(C)(2). Here, however, all voting employees worked a 5 day-per-week, 8 hour-per-day schedule. (Trial Tr. Apr. 8, 2019, 575:6-10.) In other words, they were all in the same "work unit." The criteria Defendants used to identify the "work units," *i.e.*, 4/10 and 3/11.25 schedules, did not yet exist. If permitted, Defendants' capricious method of creating work units would allow employers to pre-screen and divide employees based upon the employees' intended AWS "yes" or "no" votes, thereby (1) undermining the nature of a *secret* ballot, and (2) ensuring that the AWS passes for at least those employees who indicate they intend to vote in favor of it. The Wage Order, however, expressly requires a work unit defined by some

---

7

characteristic that is readily identifiable. In other words, the Wage Order presumes that the division, department, or shift will be one that actually exists at the time of the vote.

Third, Ms. Bright's testimony makes clear that the only choice Defendants offered their employees was between working 4 days a week and giving up their overtime and working 3 days a week and giving up 6 hours of overtime Defendants presented no evidence, which was their burden, of any other possible outcome. Thus, the only choice the employees had was "how" to give up their overtime, not "if" they wanted to give up overtime.  This false choice violates both Labor Code § 511 and Cal. Code Regs. tit. 8 § 11070(3).

A court tasked with deciding a motion for a new trial is obligated to weigh the evidence and assess for itself the credibility of the witnesses. *Murphy*, 914 F. 2d at 187. The court need not presume that the verdict is correct or weigh the evidence in the light most favorable to any party. *Landes Constr.*, 833 F.2d at 1371. Here, the evidence at trial established that the only "choice" Defendants presented to their employees at the time of the AWS election was between two different AWS schedules, both of which caused employees to lose overtime. Under the clear weight of the evidence, Defendants not only precluded voting employees from receiving complete notice of the effect of the proposed AWS on their wages, hours, and benefits, but also foreclosed any opportunity for 2/3 of a "readily identifiable work unit" to cast their AWS votes.

Based on the foregoing, Plaintiffs respectfully submit that a new trial on their overtime claim is proper and warranted.

**C.** **The Evidence at Trial Indicated That Defendants Failed to Hold a Vote for All Affected Employees in the Work Unit**

The uncontroverted evidence at trial confirmed that at least one of Defendants' employees, Erin Schwartz, did not attend the AWS pre-election meeting, did not vote in the AWS election, but started working the AWS schedule along with everyone else when it was implemented on February 6, 2016. (Trial Tr. Apr. 8, 2019, 619:17-620:21;

636:3-20; Apr. 9, 2019, 776:5-780:15; Trial Ex. 570, line 202, column J.) These facts are not in dispute.

Defendants' exclusion of Ms. Schwartz from the AWS pre-election meeting and vote is significant because Defendants were required to demonstrate, by a preponderance of the evidence, that they (1) made the necessary AWS disclosures to all "affected employees," and (2) held a secret ballot election for the affected employees in the work unit. Cal. Code Regs. tit. 8 § 11070 (3)(C)(2), (3). These requirements are expressly strict; if the employer fails to make the necessary pre-election disclosures, the entire election is null and void. Cal. Code Regs. tit. 8 § 11070 (3)(C)(3). If the employer fails to hold the secret ballot election for employees in the work unit, the election is invalid. Cal. Code Regs. tit. 8 § 11070 (3)(C)(2).

The clear weight of the evidence indicates Defendants failed on both counts: Ms. Holden testified that Ms. Schwartz was specifically excluded from the AWS pre-election meeting as well as the AWS vote because she was in the non-AWS position of systems operator. However, the evidence indicates that Ms. Schwartz was in the affected "work unit" because she started working the AWS schedule when it was implemented. Moreover, interrogatory responses verified by Defendants' Senior Director of Human Resources – ecommerce, Mr. David Alvarado, and provided with the assistance of multiple sources state that systems operators were subject to the AWS. (Trial Tr. Apr. 9, 2019, 848:18-850:6; Trial Ex. 560-4, lines 2-13.) Ms. Holden later testified that if Mr. Alvarado had stated that systems operators worked the AWS, she "can't dispute what he said." (Trial Tr. Apr. 9, 2019, 780: 10-15).

Plaintiffs ask the Court to weigh the following evidence introduced at trial:

- Ms. Schwartz did not receive the AWS pre-election disclosures or attend the pre-election meeting;

- Ms. Schwartz did not vote in the AWS election;

- Ms. Schwartz started working the AWS along with everyone else;

PLAINTIFFS' MOTION FOR A NEW TRIAL

- Defendants' verified discovery responses state that systems operators were subject to the AWS.

Defendants introduced no evidence whatsoever that Ms. Schwartz was not part of the affected "work unit" at the time of the pre-election meeting or AWS vote other than Ms. Holden's speculation that "she could have signed up to work the weekend shift" after the vote. (Trial Tr. Apr. 9, 2019. 777:25-778:9.) However, "could have" is not evidence, nor is it sufficient to refute the above supported facts. Defendants had the burden to demonstrate by a preponderance of the evidence that they had complied with the requirements for the AWS election, and the jury's verdict that Defendants met this burden was against the clear weight of the evidence.

**D.   The Jury Should Have Been Able to Hear Testimony and See Evidence Concerning the 33 Affected Employees Who Started Work the Day After the AWS Elections**

Throughout the litigation, the parties have heavily disputed the status of Defendants' employees who had their first day of work after the December 7, 2015 AWS elections and before Defendants implemented the 4/10 and 3/11.25 AWS schedules on February 6, 2016. There are 117 persons who belong to that group of employees. Of those 117 employees, 33 of them accepted job offers well before the December 7 AWS elections. A number of those 33 employees had their start dates *changed* from December 7 to December 8. (SUF (DE 149-2) ¶ 30.) The day after the AWS election, all 33 employees had their first day of work at Defendants' Fulfillment Center in Chino, CA.  (SUF (DE 149-2) ¶ 27).  Defendants do not dispute that these 33 persons did not receive the AWS disclosures, attend the required meetings, or participate in the AWS elections. (DF (DE 172-1) ¶ 31.) These admissions confirmed that Defendants failed to follow the rules for conducting an AWS election.  These facts were key evidence in support of Plaintiffs' unpaid overtime claims.

This was not a situation where a group of employees on a fully staffed shift were voting to change their schedules. What Defendants did was have an initial skeleton crew of employees, less than 5% of the fully staffed shift, (SUF (DE 149-2) ¶ 35), vote

on the AWS and used that vote of less than 60 people to deny overtime premiums to thousands of future employees who had no say in whether they wanted to give up their overtime premiums or not. Defendants were perfectly aware that only a small percentage of the fully staffed shift were voting. Defendants began staffing up the facility immediately after the AWS elections. (SUF (DE 149-2) ¶ 37.) There is no way that Defendants' behavior squares with the repeated directive of the California Supreme Court that "[t]ime and again, we have characterized that the purpose [of the Labor Code and Wage Orders] as the protection of employees …." *Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257, 262 (2016), *Frlekin v. Apple, Inc.*, 870 F.3d 867, 871 (9th Cir. 2017) ("[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.") (internal quotes and citation omitted).

Prior to trial, Defendants filed their Motion in Limine ("MIL") No. 5, (DE 199), which sought to bar Plaintiffs from claiming that any of Defendants' employees were hired prior to their first day worked. The parties argued the motion at the Final Pre-Trial Conference on March 15, 2019 at which time the Court requested additional briefing. (Tr. March 15, 2019, 71:13-15, DE 245 pp. 7-8.) On March 25, the parties filed their Joint Brief Re: Meaning of Court's Prior Orders, (DE 249), addressing the Court's ruling on the parties' cross-motions for summary adjudication, including whether Plaintiffs were precluded from presenting their theory that the 117 employees hired after the AWS elections and before the AWS implementation should have participated in the AWS elections. The same day, the parties filed separate briefs on the employment status of the 33 employees who began work on December 8, 2015. (DE 256, 259.)

Defendants' MIL No. 5 stated that "To be sure, Walmart does not object to accurately stating the evidence to the jury. Were a party to do that here, the employment records would reflect actual "hire" dates . . .." (DE 199 pp. 3:28-4:5.) Thus, Defendants motion did not seek to exclude Plaintiffs from presenting evidence that 33 employees

started work on December 8 or that 117 employees began work between December 8 and February 6, 2016. On April 3, 2019, the Court ruled that Plaintiffs could not present evidence of their theory that the 117 employees who started work between December 8 and February 6 should have participated in the AWS elections. (Trial Tr. 5:16-6:13.) The Court also ruled that Plaintiffs could not present evidence of the start dates of the 33 employees who began work on December 8 even though the Court's decision went beyond what Defendant's had requested. The Court reasoned that because the employees were not employed as the Court defined it on the date of the AWS elections their start dates were irrelevant, and Plaintiffs could not introduce evidence of the start dates at trial. (Trial Tr. April 3, 2019, 14:1-15:25.) The Court's ruling knocked out a pillar of Plaintiffs' case and severely prejudiced them at trial.

A new trial is warranted when a court makes erroneous evidentiary rulings that substantially prejudice a party. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Plaintiffs contend the Court's ruling was erroneous for two reasons. First, the ruling erroneously concluded that the 117 employees, including the subset of employees who started work on December 8, were not "employees" for the purposes of the AWS election requirements. Second, the Court erred when it barred Plaintiffs from presenting evidence of the start dates of any of the 33 employees who began work on December 8.

### 1.    The Employees Who Started Work After December 7, 2015 Were Affected Employees Who Should Have Received the Required Disclosures and Should Have Voted in the AWS Elections

The Ninth Circuit has explained that Labor Code § 511 and the regulations on AWS elections "should be liberally construed to promote the California Labor Code's purpose: protecting employees." *Jones v. AB Acquisition, LLC*, 703 Fed. Appx. 563, 563 (9th Cir. 2017). Under the AWS regulations, to "[e]mploy' means to *engage*, suffer, or permit to work." Cal. Code Regs. tit. 8 § 11070(2)(D)) (emphasis added). "Engage" is commonly defined as "to offer (something, such as one's life or word) as a

backing to a cause or aim." Merriam-Webster, https://www.merriam-webster.com/dictionary/engage. The word is synonymous with a pledge and this is why it is used to describe for example, the promise to marry as opposed to the act of getting married. *Id.* (identifying a secondary definition fo the word as, "to pledge oneself: PROMISE"). Here the 33 workers who started work on December 8, received and accepted job offers passed a drug screening and background check and had been scheduled to begin work the day after the AWS elections. (DF (172-1 ¶¶ 27, 29.) Thus, they had promised to work for Defendants who had promised to employ them. Both sides had taken steps to fulfill their promises through the background check, drug test, and first day of work. Accordingly, the 33 employees were engaged to work as the Wage Order and the Code of Regulations define it and should have participated in the AWS elections.

In California, an employment relationship is formed when "the employer, engages another, who is called the employee, to do something for the benefit of the employer or a third person." Cal. Lab. Code § 2750. There is no requirement that the employee actually perform work in order to be classified as an employee.

Moreover, the definition of "employee" and what legal rights and obligations attach to employee status vary according to statute, common law, and the purposes a particular law is trying to accomplish. In *Laeng v. Workmen's Comp. Appeals Bd.*, 6 Cal. 3d 771, 774 (1972), the California Supreme Court found that the plaintiff who was injured during the course of a physical evaluation for a refuse worker job should have received the benefits of the Workman's Compensation Act ("WCA") even though he had not yet received an offer of employment. The court explained that "an 'employment' relationship sufficient to bring the WCA into play cannot be determined simply from technical contractual or common law conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the Workmen's Compensation Act." *Id.* at 777. The WCA "statutes are to be construed liberally in favor of awarding compensation." *Id.* at 778. Consequently, the court

found that WCA applied the employee even though he had not even received a job offer.

In reaching its decision, the *Laeng* court referenced several decisions in California and other states, which concluded that employees harmed during pre-employment medical exams may receive workers' compensation. *Id.* at 779-80.[1] Defendants here required their employees to take drug tests before they could start work. Thus, under *Laeng*, this constituted an employment relationship with Defendants sufficient to bring the 33 employees under the protection of the WCA during those tests. The Labor Code is subject to the same liberal interpretation as the WCA. Accordingly, the 33 persons that Defendants *knew* would be subject to the AWS at the time of the AWS elections were subject to the Labor Code and Code of Regulations' protections. Just as they were "employees" for the limited purposes of protecting them under the WCA during their pre-employment drug tests before their first day of work, they were also "employees" or "affected employees" for the Labor Code and Code of Regulations purpose of protecting their right to overtime pay.

California law also recognizes that there is a different relationship between an applicant and the employer once the employer has made a job offer. For instance, Government Code § 12940(e)(1) forbids an employer from requiring an applicant to undergo a medical examination. But Government Code § 12940(e)(3) provides that an employer can require an applicant to take a medical exam after the employer has made a job offer. The law provides the employer a degree of post job offer control that did not exist prior to the job offer. The employer can exercise that control and require the medical examination even prior to the applicant's first day of work. *See Loder v. City of Glendale*, 14 Cal. 4th 846, 852-53 (1997) (approving post-employment offer drug tests). Thus, if the law can provide an employer additional rights and a degree of control

---

[1]     *See e.g. Lotspeich v. Chance Vought Aircraft*, 369 S.W. 2d 705, 709 (Tex. Civ. App. 1963), *Wise v. Pacific Electric Ry Co.*, 8 Cal. Comp. Cases 17 (1942), *Meyer v. Atchison, T. & S.F. Ry.*, 6 Cal. Comp. Cases 308 (1941).

over a worker after the job offer and before the first day of work, the law can surely provide additional obligations for the employer as well, including ensuring that persons that the employer knows will be affected by the AWS participate in the AWS election process.  This is especially true given the purpose of the Labor Code and AWS election procedures to protect employee rights and safeguard their wages.

The 33 employees were part of a larger group of 117 employees who Defendants hired between December 8 and February 2016 when Defendants implemented the AWS schedules.  These employees were all part of the "work unit" as defined in Cal. Code Regs. tit. 8 § 11070(3)(C)(2) on the date the AWS schedules were implemented.  Accordingly, they were all "affected employees" as defined by § 11070(3)(C)(2) and thus should have participated in the AWS elections as required by § 11070(3)(C)(3).  Plaintiffs should have been able to present evidence that all the 117 workers were employees who should have participated in the AWS elections.

The Court's ruling that the 33 employees who began work on December 8 had no legal protection from Defendants' wage theft until the day they began work creates a large loophole in California's overtime law.  An employer may not "engage in a subterfuge or artifice designed to evade the overtime laws" or scheduling practices "designed primarily to evade overtime compensation." *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 370 (2011).  In ruling on the parties' cross motions for summary adjudication, the Court recognized that "Plaintiffs' evidence arguably suggests Walmart engaged in foul play," (DE 236, 22:3-16), when the company scheduled 33 employees to start the day after the AWS election.  Defendants clearly manipulated the start dates of those workers to prevent them voting.

Other employers can now follow Defendants' example.  An employer who is opening a new business can interview and offer employment to 30 people.  During the interviews, the employer can find one person who wants to give up their overtime to work an AWS and set that person's start date 15 days before the other 29 employees.  The employer can give that one employee the required disclosures on their first day of

PLAINTIFFS' MOTION FOR A NEW TRIAL

employment and hold the AWS election with that one person 14 days later. The employer can start the remaining 29 employees the very next day and deny them overtime even though not a single one of them had any say in whether they wanted to work an AWS.

For these reasons, the Court should grant Plaintiffs a new trial on their unpaid overtime claim to allow them to present evidence that 33 employees who began work on December 8 and 117 employees who started work between December 8, 2015 and February 6, 2016 were all employees who should have participated in the AWS elections.

## 2. Plaintiffs Should Have Been Allowed to Present Evidence of the Start Dates of the Affected Employees Who Began Work After December 7, 2015

On April 3, 2019, the Court ruled that because the 33 employees who began work on December 8 were not employed as the Court defined it on the date of the AWS elections their start dates were not relevant and Plaintiffs could not present evidence of their start dates at trial. (Trial Tr. April 3, 2019, 15:10-17.)

Even assuming that the 33 employees who began work on December 8 were not employees for the purposes of the AWS elections, their start date was relevant information that was highly probative of Plaintiffs' theories that did proceed to trial. Plaintiffs provided evidence that Defendants violated the regulations governing AWS elections and gamed the AWS rules to steal employee overtime wages. As discussed above, Erin Schwartz had started work before December 7 and was assigned to an AWS shift on February 6, but did not vote in the AWS election. (Trial Tr. Apr. 8, 2019, 619:17-620:21; 636:3-20; Apr. 9, 2019, 776:5-780:15; Trial Ex. 570, line 202, column J.) Defendants sworn interrogatory responses showed that there was at least one affected employee, Leah Perez, who voted in the AWS elections but for whom there is no record that she ever received the AWS written disclosures (Trial Tr. Apr. 9, 2019, 853:2-855:4, Ex. 560 pp. 4-5.) Defendants admitted under oath in their interrogatories that 9 people who voted in the AWS elections did not get the required AWS

disclosures. (Trial Tr. 853:2-855:19, Ex. 560 pp. 4-5.) Plaintiffs also presented evidence that 7 affected employees who signed the roster for the 3/11.25 AWS failed to vote in that election thus causing Defendants to receive less than two-thirds approval for the 11.25 AWS and invalidating the overtime exemption.  (Ex. 27-25 to 27-30, 40, 45-1.) Plaintiffs' excluded evidence that 33 employees started work one day after the AWS elections would have been highly probative that Defendants were acting in bad faith and seeking to game the elections.  Such evidence could have easily led to the jury finding for Plaintiffs on their unpaid overtime claim.  An employer may not "engage in a subterfuge or artifice designed to evade the overtime laws" or scheduling practices "designed primarily to evade overtime compensation." *Seymore*, 194 Cal. App. 4th at 370.

As further discussed above, Plaintiffs claimed Defendants' failed to offer their employees any choice other than to lose overtime pay by voting for a 4/10 AWS schedule or to lose overtime pay by voting for a 3/11.25 AWS schedule. The jury, despite the clear weight of the evidence, determined that Defendants made proper disclosures and held proper elections. Again, Plaintiffs maintain that the jury would have found in their favor if Plaintiffs had had the chance to present evidence that Defendants delayed the start dates of employees that Defendants knew would be affected by the AWS until the day after the AWS elections.  Plaintiffs suffered severe prejudice from not having been able to present this evidence.  Plaintiffs should have the opportunity to present this evidence to the jury at a new trial.

## V.    A NEW TRIAL AS TO WAITING TIME PENALTIES IS WARRANTED

Plaintiffs also tried to the jury a claim pursuant to California Labor Code section 203, premised upon Defendants' failure to pay all overtime wages to members of the Alternative Workweek Subclass.

If an employer willfully fails to pay wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty for up to 30 days. Plaintiffs assert this claim on behalf of all terminated employees. In this context, willful

17

means that an employer intentionally failed or refused to perform an act which was required to be done. *Armenta v. Osmose,* 135 Cal. App. 4th 314, 325 (2005); *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). Further, under both California and federal law, an employer may not "engage in a subterfuge or artifice designed to evade the overtime laws" or scheduling practices "designed primarily to evade overtime compensation." *Seymore*, 194 Cal. App. 4th at 370.

To recover the penalty, Plaintiffs were required to prove the following: (1) The class members whose employment with Defendants ended on or before August 21, 2018; (2) that Defendants failed to pay all wages due by the end of class members' employment; (3) class members' daily wage rate at the time their employment with Defendants ended; and (4) Defendants willfully failed to pay these wages. Cal. Lab. Code § 203.

Plaintiffs sought this penalty as a derivative claim on the grounds that because Defendants failed to pay all overtime wages, those wages remained unpaid at termination, and thus all employees who were terminated as of August 21, 2018 were entitled to this penalty. Because the jury found Defendants had not violated the law with respect to overtime wages, it did not reach Plaintiffs' derivative claim and did not address the issue of whether or not Defendants' conduct was willful.

Again, the evidence at trial demonstrated that Defendants did not compensate Plaintiffs or Alternative Workweek Subclass members for hours worked between 8 and 10 hours per shift, and Defendants did not meet the requirements of the AWS election. A new trial is appropriate because the verdict – that Defendants met their burden of demonstrating they met the requirements for an AWS – is against the clear weight of the evidence.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court for an order ordering a new trial with respect to Plaintiffs' claim for overtime wages and for derivative waiting time penalties.

PLAINTIFFS' MOTION FOR A NEW TRIAL

1    Dated: October 2, 2019          **YOON LAW, APC**

2

3                             By:      */s/ Stephanie E. Yasuda*

4                                      Stephanie E. Yasuda
                           Attorneys for Plaintiffs

5                            Chelsea Hamilton and Alyssa Hernandez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR A NEW TRIAL