THEANE D. EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
bhamburger@gibsondunn.com
ELIZABETH A. DOOLEY, SBN 292358
edooley@gibsondunn.com
WILLIAM F. COLE, SBN 308624
bcole@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MARK D. KEMPLE, SBN 145219
kemplem@gtlaw.com
ROBERT J. HERRINGTON, SBN 234417
herringtonr@gtlaw.com
MATTHEW R. GERSHMAN, SBN 253031
gershmanm@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendants WAL-MART
STORES, INC. and WAL-MART
ASSOCIATES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA HAMILTON, individually and on behalf of all others similarly situated, and ALYSSA HERNANDEZ, individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> WAL-MART STORES, INC., a corporation, WAL-MART ASSOCIATES, INC., a corporation and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO. 5:17-cv-01415-AB <br><br> **WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL** <br><br> **Hearing:** <br> Date: December 13, 2019 <br> Time: 10:00 a.m. <br> Place: Courtroom 7B <br> 350 West 1st Street <br> Los Angeles, CA 90012 <br><br> Judge: Hon. Andre Birotte Jr. |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 6

II.     BACKGROUND ................................................................................. 8

    A.    Statutory Background ............................................................... 8

    B.    Factual and Procedural Background ......................................... 9

III.    LEGAL STANDARD ....................................................................... 11

IV.     ARGUMENT ..................................................................................... 12

    A.    Plaintiffs' Rule 50(b) Motion Is Procedurally Improper. ...... 12

    B.    The Evidence at Trial Amply Supports the Jury's Finding that
        Walmart's Alternative Workweek Schedule Election Complied
        with California Law. ................................................................ 14

        1.    Walmart Fully Disclosed the Effects of the AWS Election. ......... 15

        2.    All Affected Employees Were Afforded the Chance to Vote
            in the AWS Election. ................................................... 18

        3.    Walmart's "Work Units" Were Properly Defined. ........................ 22

    C.    Plaintiffs Are Not Entitled to a New Trial on their Derivative Claim
        for Waiting Time Penalties. .................................................... 23

V.      CONCLUSION ................................................................................. 24

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL

# TABLE OF AUTHORITIES

**Cases**

*Asmus v. Pac. Bell*,
   23 Cal. 4th 1 (2010) ................................................................... 20

*Cash v. Winn*,
   205 Cal. App. 4th 1285 (2012) .................................................. 17

*EEOC v. Go Daddy Software, Inc.*,
   581 F.3d 951 (9th Cir. 2009) ..................................................... 11

*Escriba v. Foster Poultry Farms, Inc.*,
   743 F.3d 1236 (9th Cir. 2014) ............................................. 12, 16

*Experience Hendrix LLC v. Hendrixlicensing.com, Ltd.*,
   762 F.3d 829 (9th Cir. 2014) ..................................................... 12

*Freund v. Nycomed Amersham*,
   347 F.3d 752 (9th Cir. 2003) ..................................................... 12

*Henderson v. Equilon Enters., LLC*,
   2019 WL 4942458 (Cal. Ct. App. Oct. 8, 2019) ....................... 20

*Hoechst Celanese Corp. v. Franchise Tax Bd.*,
   25 Cal. 4th 508 (2001) .............................................................. 17

*Hogue v. Ford*,
   44 Cal. 2d 706 (1955) ............................................................... 17

*Hunter v. Sparling*,
   87 Cal. App. 2d 711 (1948) ...................................................... 20

*Krechman v. Cnty. of Riverside*,
   723 F.3d 1104 (9th Cir. 2013) .................................................. 12

*Laeng v. Workmen's Comp. Appeals Bd.*,
   6 Cal. 3d 771 (1972) ................................................................. 21

*Lehman Bros. Bank, FSB v. Cal. Title Co.*,
   2011 WL 13214021 (C.D. Cal. Mar. 3, 2011) .......................... 20

*Ling v. P.F. Chang's China Bistro, Inc.*,
   245 Cal. App. 4th 1242 (2016) .................................................. 23

Gibson, Dunn &
Crutcher LLP

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ..................................................................................... 20

*Reed v. Lieurance*,
  863 F.3d 1196 (9th Cir. 2017) ..................................................................... 13

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
  251 F.3d 814 (9th Cir. 2001) ....................................................................... 12

*Summers v. Delta Air Lines, Inc.*,
  508 F.3d 923 (9th Cir. 2007) ....................................................................... 13

*Tortu v. Las Vegas Met. Police Dept.*,
  556 F.3d 1075 (9th Cir. 2009) ............................................................... 13, 14

*Troester v. Starbucks Corp.*,
  387 F. Supp. 3d 1019 (C.D. Cal. 2019) ....................................................... 23

*United States v. 4.0 Acres of Land*,
  175 F.3d 1133 (9th Cir. 1999) ..................................................................... 12

*Wallace v. City of San Diego*,
  479 F.3d 616 (9th Cir. 2007) ....................................................................... 12

*Waters v. Young*,
  100 F.3d 1437 (9th Cir. 1996) ............................................................... 13, 14

*Weaving v. City of Hillsboro*,
  763 F.3d 1106 (9th Cir. 2014) ..................................................................... 12

**Statutes**

Cal. Lab. Code § 203 ................................................................................... 8, 23

Cal. Lab. Code § 246 ................................................................................. 16, 17

Cal. Lab. Code § 510(a) ............................................................................... 8, 23

Cal. Lab. Code § 511(a) .................................................................................... 8

**Regulations**

8 Cal. Code Regs. § 11070 ................................................................................. 9

8 Cal. Code Regs. § 11090(1) ............................................................................ 9

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL

8 Cal. Code Regs. § 11090(2).................................................................................9

8 Cal. Code Regs. § 11090(3)(C)(2)..................................................................9, 22

8 Cal. Code Regs. § 11090(3)(C)(3)...............................................9, 15, 17, 18, 22

8 Cal. Code Regs. § 13520(a)...............................................................................23

**Rules**

Fed. R. Civ. P. 50(a) ..........................................................6, 11, 12, 13, 14

Fed. R. Civ. P. 50(b) ...............................................6, 11, 12, 13, 14, 15, 18, 24

Fed. R. Civ. P. 59(a) .............................................................6, 12, 14, 15, 18, 19

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL

## I.   INTRODUCTION

As a general matter, California law requires employers to pay overtime to employees who work over 8 hours per day or more than 40 hours per week.  But employees who elect to adopt an Alternative Workweek Schedule ("AWS")—a work schedule that involves longer days but shorter weeks when compared to a traditional 8-hours-per-day, 5-days-per-week schedule—are not entitled to overtime pay until after the tenth hour of work.  At trial, the evidence demonstrated that associates at Walmart's eCommerce Fulfillment Center in Chino adopted two such schedules—a "weekday" schedule of 4 days per week, 10 hours per day ("4/10 AWS") and a "weekend" schedule of 3 days per week, 11.25 hours per day ("3/11.25 AWS").  The evidence at trial further proved that Walmart followed all applicable legal procedures in facilitating this AWS election, and, as a result, the jury correctly found that the two schedules were validly enacted and that Plaintiffs were not entitled to overtime pay for days that they worked between eight and ten hours.

Despite this evidence, Plaintiffs have filed two post-trial motions that ask this Court to throw out the jury's verdict on their unpaid overtime claim and either enter judgment as a matter of law or order a new trial on that claim.[1]  Plaintiffs, however, fail to identify any basis for disturbing the jury's verdict.  Plaintiffs' renewed motion for judgment as a matter of law fails at the threshold because none of the arguments in that Rule 50(b) motion were included in Plaintiffs' pre-verdict Rule 50(a) motion, which means they are waived and cannot be "renewed" now at this late date.  But even if these arguments had been raised before, nothing in Plaintiffs' Rule 50(b) motion, or their virtually identically worded Rule 59(a) motion for a new trial, provides a reason to

---

[1] Because Plaintiffs' renewed motion for judgment as a matter of law and motion for a new trial contain almost all of the same arguments and are in large part identically worded, for the convenience of the Court, Walmart is filing a single combined opposition to Plaintiffs' Rule 50(b) and Rule 59(a) motions.

Gibson, Dunn & Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

second-guess the jury's well-supported conclusion that each AWS was properly enacted under California law.

Plaintiffs' motions contend that the AWS election was defective because Walmart supposedly failed to disclose the impact of the 3/11.25 AWS on associates' sick-leave benefits and failed to disclose what schedules associates would work if the schedules were rejected; that all "affected employees" were not able to vote in the election because an associate named Erin Schwartz and 33 unnamed associates who did not start work until *after* the election did not vote in the election; and that Walmart failed to properly define the "work units" that were voting in the election.  None of these objections have merit.

At trial, the evidence showed that associates received the same amount of sick leave both before and after the election and that Walmart therefore had no obligation to disclose anything about the "effect" the 3/11.25 AWS would have on sick-leave benefits, as there was no effect at all.  Plaintiffs' argument to the contrary rests on an unpleaded and unproven theory that Walmart has violated the sick-leave statute; that theory, even if it were properly before this Court, is also wrong, as it is premised on a fundamental misreading of the sick-leave statute.

Nothing in the applicable AWS regulations required Walmart to disclose the schedules that associates would work if an AWS were rejected.  The regulations require employers to disclose the effect the "proposed arrangement" (i.e., the AWS itself) would have on employees' work hours, but the schedules that associates would work if an AWS is rejected are, by definition, not part of the "proposed arrangement," since those schedules would only take effect if the proposed arrangement were to be rejected.

Plaintiffs are also wrong to argue that all affected employees did not vote in the AWS election.  The evidence at trial demonstrated that neither Erin Schwartz nor the 33 associates who had yet to commence employment were entitled to vote in the election because neither was part of an affected work unit at the time of the election.

Finally, Plaintiffs' argument that the "work units" were improperly defined is erroneous because the evidence at trial showed that the two work units voted in "shifts"—the 4/10 AWS and the 3/11.25 AWS—as the AWS regulations expressly contemplate.

Because there is no basis to overturn the jury's verdict on Plaintiffs' overtime claim, the Court should also deny Plaintiffs' request for a new trial on their derivative claim for waiting time penalties under California Labor Code section 203.  The section 203 claim is derivative of an underlying claim for wages, and because Plaintiffs' overtime claim has been properly rejected by the jury, they cannot prevail on their claim for waiting time penalties under section 203 either.

In short, nothing in Plaintiffs' renewed motion for judgment as a matter of law or their motion for new trial casts doubt on the factual or legal basis for the jury's verdict on their overtime claim.  As the jury rightly found, there was nothing improper or illegal about the AWS elections here, and as such Plaintiffs' claim for unpaid overtime necessarily fails.

## II.      BACKGROUND

### A.      Statutory Background

California law requires employers to pay overtime to employees that work more than 8 hours per day or more than 40 hours during a traditional 5-day-per week, 8-hour-per-day workweek.  Cal. Lab. Code § 510(a).  Recognizing that both employees and employers may find value in nontraditional schedules that involve longer days but shorter weeks, California law also permits employees to adopt an alternative workweek schedule ("AWS") that "authorizes work by the affected employees for no longer than 10 hours per day within a 40-hour workweek." Cal. Lab. Code §§ 510(a), 511(a).  Under an AWS arrangement, California's overtime-pay requirements do not take effect until after an employee works more than ten hours in one day.  Cal. Lab. Code, § 511(a).  To validly facilitate the enactment of an AWS, an employer must follow certain procedures set out in the California Code of Regulations, including that the AWS "be adopted in a

secret ballot election, before the performance of the work, by at least a two-thirds (2/3) vote of the affected employees in the work unit," that the employer make a "disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits," and that the employer hold a pre-election meeting at least 14 days before voting in order to "discuss[] the effects" of the AWS. 8 Cal. Code Regs. § 11090(3)(C)(2)–(3).[2]

## B.   Factual and Procedural Background

Plaintiffs are former hourly associates of Walmart's eCommerce Fulfillment Center in Chino, California who allege that Walmart violated California's wage-and-hour laws in a variety of ways, including, as relevant to these motions, by failing to pay overtime to associates who worked over 8 hours per day. Dkt. 69 at ¶¶ 53–64. Plaintiffs' overtime claims center on the nature of the shifts worked by Walmart associates at the Chino facility.  From June 2015 (the month the Chino facility first opened) through February 2016, the Chino facility followed standard 5-day, 8-hour shifts, with associates earning overtime pay for all time worked over eight hours.  Dkt. 307 at 575:6-10. However, starting in February 2016 most hourly associates on a day time schedule began working one of two alternative workweek schedules—a "weekday" schedule of 4 days per week, 10 hours per day ("4/10 AWS") or a "weekend" schedule of 3 days per week, 11.25 hours per day ("3/11.25 AWS").   Tr. Ex. 35.   These two schedules were implemented after they were adopted by more than 2/3 of the affected associates during a December 7, 2015 secret-ballot vote.  Dkt. 300 at 680:20–689:13.  Following their implementation, those associates working an AWS did not earn any overtime pay until he or she worked more than ten hours in a day.  Dkt. 307 at 571:16-19, 577:13–578:5.

---

[2] Plaintiffs erroneously rely on Wage Order 7, which applies to "the mercantile industry."  8 Cal. Code Regs. § 11070(1), (2)(H).  Yet it is Wage Order 9 that is applicable here, as it governs "the transportation industry," which includes "warehousing of goods." *Id.* § 11090(1), (2)(N).  Although the two wage orders are materially indistinguishable, for accuracy Walmart cites to Wage Order 9 throughout this opposition motion.

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

Gibson, Dunn &
Crutcher LLP

Throughout this lawsuit Plaintiffs have contended that, notwithstanding the adoption of the AWS, they were entitled to overtime pay on any day they worked between eight and ten hours because the AWS election was supposedly procedurally improper, rendering it "null and void." Dkt. 95 at 6–12; Dkt. 168 at 7–19. After this Court certified a subclass of associates who were allegedly denied proper overtime pay (Dkt. 121 at 26, ¶ 3), Plaintiffs moved for summary judgment on their overtime claim, alleging that the AWS election was procedurally defective for several reasons, including because Walmart failed to make proper disclosures about the effects of the AWS schedules, failed to ensure that all affected associates voted, and did not properly define the "work units" that were voting (Dkt. 168 at 10–19). The Court denied that motion, rejecting each of Plaintiffs' arguments regarding the supposedly deficient AWS election as legally unsupported or contradicted by evidence from Walmart indicating that the AWS election procedures were proper. Dkt. 236 at 18–24.

At trial, the evidence confirmed that Walmart fully complied with the AWS election procedures and that Plaintiffs were therefore not entitled to overtime pay. For example, the evidence demonstrated that on November 20, 2015 Walmart held two pre-election meetings—one for the associates who would vote to adopt a weekday "4/10" AWS schedule and one for the associates who would vote to adopt a weekend "3/11.25" AWS schedule. Dkt. 300 at 689:14–690:22; Dkt. 308 at 709:12–710:1; Dkt. 309 at 1020:14-19. At those meetings, the effects of the proposed schedules were discussed, and written disclosures detailing these changes were distributed to associates. Dkt. 300 at 697:16–698:17, 700:5–701:4; Dkt. 309 at 1013:25–1022:9; Tr. Ex. 34 (weekday shift disclosures); Tr. Ex. 38 (weekend shift disclosures). Seventeen days later, on December 7, 2015, Walmart held the "secret ballot" vote; at that election, the AWS schedules were overwhelmingly approved, with 10 out of 10 associates voting to approve the weekend "3/11.25" AWS schedule, and 45 out of 48 associates voting to approve the weekday "4/10" schedule. Dkt. 300 at 680:20–689:13; Tr. Ex. 35 (certification of election results to the State of California).

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL

Despite this evidence, Plaintiffs orally moved, following the close of Walmart's case-in-chief, for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on their overtime claim.  In that oral motion, Plaintiffs argued that judgment as a matter of law was warranted because the evidence at trial showed that class members working an AWS did not receive overtime pay when they worked between eight and ten hours.  Dkt. 303 at 1195:24–1196:22.  Plaintiffs' Rule 50(a) motion did not address the purported deficiencies with the AWS election, but merely stated that "[i]t's defendants' burden to affirmatively establish that they properly enacted the AWS."  Dkt. 303 at 1196:18-19.  This Court denied Plaintiffs' Rule 50(a) motion "based on the arguments that [it] heard."  Dkt. 303 at 1198:13-14.

The jury returned a special verdict in Walmart's favor on the overtime claim, concluding that Walmart "prove[d] by a preponderance of the evidence that it met the requirements for an Alternative Workweek Schedule election" for both the 4-day weekday shift and the 3-day weekend shift.  Dkt. 286 at 2, 5.  The jury also rejected Plaintiffs' claim for waiting time penalties, which was derivative of their claim for unpaid overtime.  Dkt. 286 at 9–12.

### III.   LEGAL STANDARD

Where a party has made a motion for judgment as a matter of law before the case has been submitted to the jury and the judge defers ruling on or does not grant that motion, a party may renew its motion post-verdict under Rule 50(b).  *EEOC v. Go Daddy Software*, *Inc*., 581 F.3d 951, 961 (9th Cir. 2009); Fed. R. Civ. P. 50(b).  But "[b]ecause it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."  *Id.*  "Thus, a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion."  *Id.* (citation omitted).  In evaluating a Rule 50(b) motion, the Court views "the evidence in the light most favorable to the nonmoving party . . . and draw[s] all reasonable inferences in that party's favor."  *Id.*  The Court may not make credibility determinations, weigh the

evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013). Instead, the jury's verdict must be upheld if supported by "substantial evidence." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

A motion for a new trial may be granted when the jury's verdict "is contrary to the clear weight of evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999); Fed. R. Civ. P. 59(a). Unlike in a Rule 50(b) motion, the Court "can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix LLC v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). But "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007) (quoting *Silver Sage Partners*, 215 F.3d at 819). "Accordingly, if the jury's verdict is not against the clear weight of the evidence . . . a district court abuse[s] its discretion in granting a new trial." *Id.*

## IV.   ARGUMENT

### A.   Plaintiffs' Rule 50(b) Motion Is Procedurally Improper

The Court should deny Plaintiffs' Rule 50(b) motion because none of the arguments asserted in Plaintiffs' Rule 50(b) Motion appeared in their Rule 50(a) motion. This deficiency is fatal to Plaintiffs' efforts to obtain judgment as matter of law because "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Indeed, "Rule 50(a) . . . explicitly requires the moving party to 'specify . . . the law and facts on which [it] is entitled to

Gibson, Dunn & Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

judgment.'" *Waters v. Young*, 100 F.3d 1437, 1440 (9th Cir. 1996) (quoting Fed. R. Civ. P. 50(a)). A "properly made motion under Rule 50(a)" should therefore "inform the non-moving party of the deficiencies in its proof." *Id.* at 1441 (quoting Fed. R. Civ. P. 50(a)(2)). This "obligation[] reflect[s] a major purpose of the motion for judgment as a matter of law, which is to call the claimed deficiency in the evidence to the attention of the court and to opposing counsel at a time when the opposing party is still in a position to correct the deficit." *Id.* (quotation and emphasis omitted). Accordingly, the Ninth Circuit "strictly construe[s] the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." *Tortu v. Las Vegas Met. Police Dept.*, 556 F.3d 1075, 1082 (9th Cir. 2009). A district court therefore commits "reversible error" by "granting judgment as a matter of law" on a basis that does "not correspond with the arguments in [the moving party's] oral motion." *Reed v. Lieurance*, 863 F.3d 1196, 1210 (9th Cir. 2017); *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 927–28 (9th Cir. 2007) (same).

In their Rule 50(b) motion, Plaintiffs contend that they are entitled to judgment as a matter of law on their overtime claim because Walmart supposedly failed to conduct a proper AWS election. Plaintiffs argue that the election was invalid for at least four reasons: (1) Walmart allegedly failed to disclose that employees would receive fewer sick-leave hours under the 3/11.25 AWS (Dkt. 329 at 6–9); (2) Walmart did not disclose what schedules associates would work if the AWS election was rejected (Dkt. 329 at 10–12); (3) Walmart supposedly did not properly define the "work units" that would be voting in the AWS election (Dkt. 329 at 12); and (4) all affected employees purportedly did not vote in the AWS election because one associate, Erin Schwartz, did not attend the pre-election meeting or vote in the AWS election (Dkt. 329 at 13–15).

None of these purported deficiencies was raised by Plaintiffs in their Rule 50(a) motion. Plaintiffs' motion mentioned nothing about sick leave, nothing about the schedules that associates would work if the AWS election was rejected, and not a word about improperly defined work units or Erin Schwartz. In fact, Plaintiffs did not even

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

attempt to argue in their Rule 50(a) motion that the evidence at trial showed that the AWS election was invalid.  Instead, the entirety of Plaintiffs' discussion of the validity of the AWS election was a two-line sentence in which their counsel attempted to foist the burden for proving why *Plaintiffs* are entitled to judgment as a matter of law on *Walmart* by arguing that "[i]t's defendants' burden to prove where they complied with the AWS requirements."  Dkt. 303 at 1196:18-19.

This two-line argument—devoid of any "law and facts" demonstrating why Plaintiffs are "entitled to judgment," *Waters*, 100 F.3d at 1441; Fed. R. Civ. P. 50(a)(2)—is hardly sufficient to preserve the *10 pages* of new argument they now offer in their Rule 50(b) motion.  Nor can Plaintiffs salvage their Rule 50(b) motion by pointing to "motions made pre-trial and during trial," such as motions for summary judgment or motions in limine, where some of these arguments may have been made— such motions are "insufficient to establish a proper [Rule 50(a)] motion."  *Tortu*, 556 F.3d at 1082.  Plaintiffs' failure to raise their Rule 50(b) arguments in their Rule 50(a) motion, by itself, warrants denial of their Rule 50(b) motion.

## B.    The Evidence at Trial Amply Supports the Jury's Finding that Walmart's Alternative Workweek Schedule Election Complied with California Law

Even if Plaintiffs' Rule 50(b) motion was procedurally proper, nothing in that motion or their nearly identically worded motion under Rule 59(a) would require this Court to enter judgment as a matter of law or order a new trial on Plaintiffs' overtime claim.  Plaintiffs' overtime claim centers on the allegation that the AWS election was procedurally defective, thus entitling Plaintiffs and the class to overtime that was not paid to associates on days they worked between eight and ten hours.  But at trial, the evidence demonstrated that Walmart fully complied with the AWS requirements.  On November 20, 2015, Walmart held two pre-election meetings—one for the associates who would vote to adopt a weekday "4/10" AWS schedule and one for the associates who would vote to adopt a weekend "3/11.25" AWS schedule—during which the effects of the AWS election were discussed and written disclosures were distributed.  Dkt. 309

at 1013:25–1022:9; Tr. Exs. 34, 38.    Seventeen days later, on December 7, 2015, Walmart held the "secret ballot" vote; at that election, the AWS schedules were overwhelmingly approved, with 10 out of 10 associates voting to approve the weekend "3/11.25" AWS schedule, and 45 out of 48 associates voting to approve the weekday "4/10" schedule.  Dkt. 300 at 680:20–689:13; Tr. Ex. 35.

Plaintiffs' Rule 59(a) and Rule 50(b) motions take aim at Walmart's AWS election process in three ways:  that Walmart's disclosures were incomplete; that all affected employees were not afforded the opportunity to vote; and that Walmart failed to sufficiently define the "work units" that were voting in the election.  The Court already rejected each of these arguments pre-verdict, Dkt. 236 at 18–25, Dkt. 305 at 10:18–11:4, and it should do so again at this post-trial stage.  Because the evidence at trial overwhelmingly proved that Walmart's AWS election was procedurally proper, there is no basis for the Court to disturb the jury's verdict on this claim, and the Court should, accordingly, deny Plaintiffs' Rule 59(a) and Rule 50(b) motions.

### 1.    Walmart Fully Disclosed the Effects of the AWS Election

Plaintiffs attack Walmart's AWS disclosures in two ways, contending that Walmart failed to disclose that the "3/11.25" AWS would reduce the sick-leave benefits of the associates in that subclass, and that Walmart neglected to convey what the associates' schedules would be if they *rejected* the proposed AWS in the election. Neither argument has a basis in law or fact.

Plaintiffs first contend that Walmart did not inform its associates that voting "yes" on the 3/11.25 AWS would result in those employees "no longer hav[ing] enough sick time to cover three full work days" (Dkt. 329 at 7), and that this lack of disclosure runs afoul of the requirement that employers "disclos[e] in writing . . . the effects of the proposed [AWS] arrangement on the employees' wages, hours, and benefits" (8 Cal. Code Regs. § 11090(3)(C)(3)).  The evidence at trial, however, showed that the AWS election did not change the amount of sick leave that associates received:  associates received the same number of sick hours per year—24—both "before the [AWS] vote"

"[a]nd after the vote[]." Dkt. 308 at 739:16–740:19. Those 24 hours were later increased by Walmart to 30 hours, but the increase in sick-leave time was done independently and not "as a result of the AWS" election. Dkt. 308 at 740:3-11. Plaintiffs' contention that this Court should ignore this evidence and instead credit "Ms. Holden's spontaneous original testimony" suggesting that the AWS election *did* change associates' sick-leave benefits (Dkt. 329 at 9), blatantly misreads that testimony by focusing on an answer to an "imprecise" question that she "[mis]understood," and which she plainly clarified thereafter (Dkt. 308 at 739:2–740:19). Because the number of sick-leave hours remained the same both before and after the AWS election, the AWS had no "effect" on associates' sick-leave benefits. The jury was entitled to credit this substantial evidence demonstrating that associates' sick-leave benefits did not change as a result of the 3/11.25 AWS election, and, accordingly, there is no basis for this Court to disturb the jury's verdict. *Escriba*, 743 F.3d at 1242 (jury's verdict must be upheld if supported by substantial evidence).

Unable to overcome this clear evidence, Plaintiffs spend the majority of their time arguing that Walmart has violated the sick-leave statute—a claim that they have not pleaded (much less proven) and which differs from their nondisclosure theory. Yet even if this argument were relevant to Plaintiffs' nondisclosure claim, it should be rejected because it is premised on a fundamental misreading of the sick-leave statute. Plaintiffs claim that Walmart violated the sick-leave statute because associates selecting the 3/11.25 schedule would supposedly receive "less than [the] 3 days" of sick leave post-election than they should have received (30 hours instead of 33.75 hours). Dkt. 329 at 9. But the sick-leave statute entitles employees to *either* 24 hours "or" three days of paid sick leave per year. Cal. Lab. Code §§ 246(b)(3)-(4), (d). And the uncontested evidence at trial demonstrated that Walmart exceeded these requirements by providing all associates *30 hours* of sick leave per year, which is 6 hours more than the statute requires. Dkt. 308 at 739:16–740:5.

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

1        In arguing otherwise, Plaintiffs point to an opinion letter from California's Department of Labor Standards Enforcement ("DLSE") suggesting that although the sick-leave statute authorizes employers to provide *either* 24 hours *or* three days of sick leave per year, employers should nonetheless be required to select the option that yields "more [time] for an employee." Dkt. 329 at 7. But nothing in the plain language of Labor Code section 246 limits an employers' discretion when choosing between offering 24 hours or three days of sick leave. The DLSE's letter ignores the plain text and instead roots its interpretation of the statute in the broad principle of construing the Labor Code "with an eye to promoting" "worker protection." Letter from Susan A. Dovi, Dept. of Lab. Standards Enforcement, to David D. Blaine at 1 (Aug. 7, 2015). Yet no matter how broadly a statute should be construed, that cannot trump the plain text of a statute and the well-settled meaning of the word "or." *See Hoechst Celanese Corp. v. Franchise Tax Bd.*, 25 Cal. 4th 508, 519 (2001) (where "the statutory language is clear and unambiguous, [a court] . . . need go no further"); *Hogue v. Ford*, 44 Cal. 2d 706, 712 (1955) (in bank) ("In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that'"). The Court need not and should not follow the DLSE opinion letter's counter-textual interpretation of Labor Code section 246. "DLSE opinion letters are not controlling," and "need not be followed if they do not contain persuasive logic or if they unreasonably interpret" a statute, as is the case here. *Cash v. Winn*, 205 Cal. App. 4th 1285, 1302 (2012).

        In addition to their sick-leave-disclosure argument, Plaintiffs also contend that judgment as a matter of law or a new trial is warranted because Walmart's written disclosures did not inform associates "as to the schedule(s) the employees would work if they failed to approve the AWS schedules." Dkt. 329 at 11; Dkt. 330 at 6. Plaintiffs argue that this violates the requirement that employers disclose "the effects of the proposed arrangement on the employees' wages, hours, and benefits," 8 Cal. Code Regs. § 11090(3)(C)(3), but Plaintiffs cite no authority to support this novel theory of liability. They cannot do so for good reason: their theory finds no support in the plain language

17

of the statute.  Section 11090(3)(C)(3) only requires employers to disclose the effects of the "proposed arrangement," which is the AWS.  The schedule that associates would work if they did *not* approve the AWS is, by definition, not part of that "proposed arrangement" (the AWS) because it would only occur if the AWS is rejected.  Nor can Plaintiffs credibly claim that a failure to disclose the schedules that associates would work if the AWS were rejected is "coercive because it creates the impression that employees are required to select one of two schedules without any opportunity to reject them."  Dkt. 329 at 12; Dkt. 330 at 7.  Clearly and prominently displayed as one of the two options on each of the AWS election ballots is the option:  "NO, I vote AGAINST the Alternative Workweek Schedule."  Tr. Ex. 27-15–27-24.

Thus, because there is no basis in law or fact for concluding that Walmart failed to meet the AWS disclosure requirements, Plaintiffs' Rule 59(a) and Rule 50(b) motions should be denied.

### 2. All Affected Employees Were Afforded the Chance to Vote in the AWS Election

Plaintiffs also contend that the evidence at trial shows that the AWS election was flawed because all "affected employees" were not afforded the opportunity to vote in the election and, as a result, this Court should throw out the jury's verdict and either direct judgment as a matter of law for Plaintiffs or order a new trial.  Plaintiffs' argument focuses on two categories of individuals—an associate named Erin Schwartz and 33 unnamed associates who had been conditionally offered jobs prior to the AWS election but who did not start as employees until after that election.  The evidence at trial, however, demonstrated that Erin Schwartz was not an "affected employee" at the time of the AWS election because she was working in a department that would not be impacted by the AWS election.  And this Court has already held, as a matter of law, that the 33 associates were not "affected employees" entitled to vote in the AWS election. Nothing in Plaintiffs' motions warrants this Court revisiting either conclusion.

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL

Plaintiffs first argue that judgment as a matter of law should be entered because an associate named Erin Schwartz did not vote in the AWS election but began working on an AWS shift when those schedules were implemented. Dkt. 329 at 13–15. But the evidence at trial showed that, at the time of the AWS election, Erin Schwartz worked as a "systems operator" and was ineligible to participate in the AWS election because only members of the operations department—a separate department from the one Ms. Schwartz was working in—were voting to enact an AWS. Dkt. 300 at 636:3-20, 650:12-23; Dkt. 301 at 810:7-13; Tr. Ex. 521. While Ms. Schwartz did eventually begin working on an AWS when those schedules were implemented in February 2016, all available evidence demonstrates that Ms. Schwartz switched departments *after* the AWS election, but before the schedules were implemented. Dkt. 308 at 777:10–779:4. As multiple witnesses testified, it was quite common for Walmart associates to change positions during the course of their employment. Dkt 308 at 736:9-17; Dkt. 301 at 810:14-19; Dkt. 309 at 1028:8-19. Plaintiffs attempt to rewrite this factual record by pointing to testimony from David Alvarado in which he acknowledged that an interrogatory response included systems operators on a list of positions that were subject to AWS schedules. Dkt. 329 at 14. Yet Plaintiffs omit the fact that Mr. Alvarado testified moments later that he believed the interrogatory answer to be inaccurate because the list included "a position on there that's not part of the alternative workweek." Dkt. 301 at 848:18–849:3.

Plaintiffs also separately argue that a new trial is warranted because this Court improperly prevented them from presenting evidence of 33 Walmart associates who worked an AWS but did not vote in the December 7, 2015 election because their first day on the job came after the election. Dkt. 330 at 10–17. This Court has already rejected as a matter of law Plaintiffs' theory that these 33 associates were "affected employees" within the meaning of the AWS regulations, Dkt. 305 at 10:18–11:4, 14:7–15:25, and nothing in Plaintiffs' Rule 59(a) motion warrants reconsidering that conclusion, much less ordering a new trial on this question of law. As Walmart has

Gibson, Dunn & Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

previously explained, these 33 associates were not "employees" during the time of the AWS election because they had not yet begun their period of employment, which commenced the day *after* the AWS election.  Dkt. 259.  Plaintiffs nonetheless maintain that the 33 Walmart associates were employees before they began their first day of work because Walmart's "promise" of employment constituted "engage[ment]," of employment as that term is used in the applicable regulations' definition of "employ." Dkt. 330 at 12–13.

The term "engage" in the AWS regulations, however, simply connotes "the common law definition of an employment relationship," which is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Henderson v. Equilon Enters., LLC*, 2019 WL 4942458, at *3–*4 (Cal. Ct. App. Oct. 8, 2019) (quoting *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)).  And while Walmart unquestionably had the right to control those 33 employees upon their *commencement* of employment, Walmart had no such control over those employees *prior to* the start of their employment.  Indeed, because the Candidate Offer form that prospective employees received was, at most, a unilateral contract—a "contract in which the employer promises to pay an employee a wage in return for the employee's work," *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 n.4 (2010)—those employees had not even accepted Walmart's offer of employment until they began performing work.  *See Lehman Bros. Bank, FSB v. Cal. Title Co.*, 2011 WL 13214021, at *2 (C.D. Cal. Mar. 3, 2011) ("A unilateral contract is formed when one side makes a promise that the other side accepts with performance"); *Hunter v. Sparling*, 87 Cal. App. 2d 711, 724 (1948) ("there was an offer to contract which was accepted by the performance of the act required, and . . . the continued service of plaintiff after knowledge of the offer constituted ample consideration").  The fact that these 33 employees may have "passed a drug screening and background check" before their first day of work hardly demonstrates the existence of an employment relationship. Dkt. 330 at 13.  These two criterion were simply conditions precedent to the acceptance

Gibson, Dunn & Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

of the offer, along with the requirement that the prospective employee complete an I-9 form upon commencement of employment.  Tr. Ex. 521.  Because those 33 employees did not commence employment until they filled out I-9 forms and began work on December 8, 2015, there is no basis to conclude that they were "affected employees" entitled to vote in the AWS election on December 7, 2015.

*Laeng v. Workmen's Compensation Appeals Board*, 6 Cal. 3d 771 (1972), is not to the contrary.  Dkt. 330 at 13–14.  There, the California Supreme Court held that a job applicant who was injured during the course of a physical evaluation for a potential job could nonetheless receive benefits under the Worker's Compensation Act ("WCA").  *Id.* at 776–77.  Even though the applicant had not received an offer of employment, the Court reasoned that the applicant would be "considered an 'employee' for purposes of workmen's compensation law" because the WCA broadly defined an employee to include "any person rendering service for another."  *Id.*  This holding, which turned on the particular language, history, and purposes of the WCA and which disclaimed any reliance on "technical contractual or common law conceptions of employment," has little application here, where the WCA is not at issue and contractual and common law conceptions of employment *do* govern—and resolve—the question whether the 33 associates were considered employees before they started.  *Supra* at 20.

Nor can Plaintiffs establish an entitlement to a new trial on the theory that they were prejudiced by this Court precluding them from presenting evidence of the start dates of these 33 employees.  Dkt. 330 at 16–17.  Beyond restating their arguments for why the AWS election was invalid and speculating that evidence of these start dates "could have easily led to the jury finding for Plaintiffs on their unpaid overtime claim," Dkt. 330 at 17, Plaintiffs provide no legal or factual reason for ordering a new trial on this basis.  Because there is simply no basis to conclude that these 33 employees were "affected employees" entitled to vote in the AWS, the jury's verdict should be upheld.

### 3.     Walmart's "Work Units" Were Properly Defined

Plaintiffs also briefly argue that the AWS election should be invalidated, and the jury's verdict overturned, because "all voting employees worked a 5 day-per-week, 8 hour-per-day schedule" and were thus in the same "work unit," but voted to enact two separate AWSs.  Dkt. 329 at 12–13; Dkt. 330 at 7–8.  This supposedly violated the requirement that the AWS be approved by "at least a two-thirds (2/3) vote of the affected employees in the *work unit*."  8 Cal. Code. Regs. § 11090(3)(C)(3) (emphasis added).  The evidence at trial, however, demonstrated that there were two "work units"—a group that would work a weekday "4/10" schedule and a group that would work a weekend "3/11.25" schedule—and that the associates in these two work units voted to approve the AWS by much more than a 2/3 margin.  Indeed, 10 out of 10 associates voted to approve the weekend "3/11.25" AWS schedule, and 45 out of 48 associates voted to approve the weekday "4/10" schedule.  Dkt. 300 at 680:20–689:13; Tr. Ex. 35.  These two work units were unquestionably properly defined, as the applicable regulations permit "work units" to be organized in several ways, including, as relevant here, by "shift."  8 Cal. Code Regs. § 11090(3)(C)(2).

Plaintiffs nonetheless argue that the true "defect" in the AWS election is that associates were allowed to "'self-select' into 'work units,'" because "the division, department, or shift" must "actually exist[] at the time of the vote."  Dkt. 329 at 12–13; Dkt. 330 at 7–8.  But that is not the law, and Plaintiffs cite no legal authority to support this assertion.  Plaintiffs' rule would also make little sense and undermine the very purpose of an AWS:  if a particular shift must exist *before* an AWS vote to adopt that shift, employees could never elect to adopt a different shift than the one they were currently working.  And a group of employees working one shift could *never* choose to adopt two different AWSs.  Because nothing in law or logic compels this result, Plaintiffs' argument should be rejected.

Gibson, Dunn &
Crutcher LLP

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

**C.   Plaintiffs Are Not Entitled to a New Trial on their Derivative Claim for Waiting Time Penalties**

Because Plaintiffs are not entitled to either judgment as a matter of law or a new trial on their overtime claim, *supra* at 12–22, there is also no justification for ordering a new trial on their derivative claim for waiting-time penalties under Labor Code, section 203.  Dkt. 329 at 16–17; Dkt. 330 at 17–18.  "A section 203 claim is purely derivative of an action for the wages from which the penalties arise."  *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016).  Thus, where, as here, the underlying claim fails, so too must the claim for waiting-time penalties.  *Troester v. Starbucks Corp.*, 387 F. Supp. 3d 1019, 1030–31 (C.D. Cal. 2019) (granting summary judgment to defendant on plaintiff's section 203 claim where underlying claim failed).

Even assuming Plaintiffs could prevail on their underlying claim for overtime, however, ordering a new trial on their waiting-time penalties claim would still be unwarranted because Plaintiffs cannot establish an entitlement to waiting time penalties under the statute.  Section 203 entitles an employee to recover penalties when "an employer *willfully* fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits."  Cal. Lab. Code § 203 (emphasis added).  Here, Plaintiffs cannot establish that any supposed nonpayment of overtime was "willful."  "A failure to pay wages is not willful if there is 'a good faith dispute that any wages are due.'"  *Troester*, 387 F. Supp. 3d at 1030 (quoting 8 Cal. Code Regs., § 13520(a)).  And "[a] good faith dispute exists 'when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee.'"  *Id.*  Importantly, "[t]hat a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."  *Id.*  Here, there is unquestionably a good-faith dispute about whether any overtime was due to Plaintiffs because Walmart contends—and the jury found—that its associates enacted a valid AWS that exempts Walmart from paying overtime for employees working an AWS until after the tenth hour of work.  Cal. Lab. Code §§ 510(a), 511(a).  The enactment of a valid AWS by Walmart

Gibson, Dunn &
Crutcher LLP

1  associates thus precludes Plaintiffs from arguing that they are entitled to waiting-time

2  penalties for any "willful" failure to pay overtime.

3  **V.    CONCLUSION**

4      Because Plaintiffs have waived each ground asserted in their Rule 50(b) motion

5  by not raising them in a pre-verdict motion and because the evidence at trial

6  demonstrated that the AWS election complied with applicable law, the Court should

7  deny Plaintiffs' renewed motion for judgment as a matter of law and motion for a new

8  trial.

9  Dated: October 30, 2019            Respectfully submitted,

10

11                                    **GIBSON, DUNN & CRUTCHER LLP**

12

13                                    By:  /s/        Theane D. Evangelis
                                              Theane D. Evangelis

14                                    Attorneys for Defendants WAL-MART
                                      STORES, INC. and WAL-MART
15                                    ASSOCIATES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

WALMART'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION FOR NEW TRIAL