1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHELSEA HAMILTON, et. al.,

Plaintiffs,

v.

WAL-MART STORES, INC., et al.,

Defendants.

Case No. 5:17-CV-01415 AB (KKx)

**ORDER DENYING PLAINTIFFS'
RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
[329]; DENYING PLAINTIFFS'
MOTION FOR A NEW TRIAL [330];
DENYING DEFENDANTS' MOTION
FOR JUDGMENT AS A MATTER OF
LAW [335]; AND DENYING
PLAINTIFFS' MOTION TO AMEND
JUDGMENT [DKT. 328].**

Before the Court are four motions: (1) Plaintiffs Chelsea Hamilton and Alyssa Hernandez's (collectively, "Plaintiffs") Renewed Motion for Judgment as a Matter of Law or, In the Alternative, Motion for New Trial [Dkt. 329] ("Pls.' JMOL"); (2) Plaintiffs' Motion for a New Trial [Dkt. 330] ("Pls.' New Trial Mot."); (3) Defendants Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc.'s (collectively, "Walmart" or "Defendants") Renewed Motion for Judgment as a Matter of Law [Dkt. 335] ("Defs.' JMOL"); and (4) Plaintiffs' Motion to Amend Judgment [Dkt. 328] ("Pls.' Amendment Mot.").

1

Walmart filed a combined opposition to Plaintiffs' motions for judgment as a matter of law and a new trial [Dkt. 329, 330] on October 30, 2019 [Dkt. 338] and a notice of errata on November 8, 2019 [Dkt. 341] with a corrected opposition brief[1] attached as Exhibit A [Dkt. 341-1] which the Court accepts as Walmart's operative opposition ("Defs.' Opp'n"). Plaintiffs replied on November 20, 2019 [Dkt. 344] ("Pls.' Reply").

Plaintiffs opposed Walmart's Renewed Motion for Judgment as a Matter of Law on October 30, 2019 [Dkt. 340] ("Pls.' Opp'n"), and Walmart replied on November 20, 2019 [Dkt. 342] ("Defs.' Reply").

Walmart opposed Plaintiffs' Motion to Amend Judgment on October 30, 2019 [Dkt. 339] ("Defs.' Amendment Mot. Opp'n"), and Plaintiffs replied on November 20, 2019 [Dkt. 342] ("Pls.' Amendment Mot. Reply"). Walmart filed a notice of supplemental authority on January 9, 2020 informing the Court that the California Supreme Court granted review of the case Plaintiffs rely on as new authority requiring an amended judgment. [Dkt. 346].

The Court held oral arguments on January 31, 2020 and took the motions under submission. [Dkt. 349].

Having considered the parties' submissions and argument, the relevant law, and the record in this case, the Court hereby **DENIES** the parties' motions.

---

[1] Each parties' counsel certify compliance with Local Rule 7-3, representing that with respect to each motion they "contact[ed] counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7-3. Yet Walmart filed a notice of errata 9 days after its opposition was due withdrawing its leading opposition argument—that Plaintiffs did not move for judgment as a matter of law under Rule 50(a) on the issues Plaintiffs now raise under Rule 50(b)— because Walmart's counsel reportedly misread the trial transcript and did not see part of Plaintiffs' oral motion under Rule 50(a). Not. Of Errata [Dkt. 341]. This admission shows that counsel failed to comply with the spirit and letter of Local Rule 7-3 with respect to Plaintiffs' grounds for judgment as a matter of law before seeking Court intervention. The Court admonishes counsel for unnecessary filings and withdrawal of arguments that would have been obviated by compliance with Local Rules.

## I.    BACKGROUND

The Court has extensively recited pre-trial procedural and factual background relevant to the instant motions in its order denying the parties' motions for partial summary judgment [Dkt. 236] ("MSJ Order") and its order regarding class certification [Dkt. 121] ("Cert. Order"). The Court incorporates that discussion here and provides the following relevant background.

Plaintiffs, individually and on behalf of a certified class, brought this action against Walmart for alleged violations of the California Labor Code and the Unfair Competition Law ("UCL"), including Walmart's alleged failure to pay overtime to employees who worked over 8 hours per day and its alleged failure to provide employees with duty-free 30-minute meal breaks. Plaintiffs moved for partial summary judgment on their overtime claim, arguing in part that employees who elected to adopt an Alternative Workweek Schedule ("AWS") did so by way of a defective election further discussed below, rendering the subsequently implemented AWS improper. [Dkt. 168 at 10-19]. The Court denied that motion on March 4, 2019. MSJ Order at 18-24.   Walmart likewise moved for partial summary judgment on Plaintiffs' meal break claim to the extent it is premised on the theory that a security check at Walmart impeded or discouraged employees leaving work facilities during their lunch break. [Dkt. 156 at 3-6]. The Court denied that motion in the same March 4, 2019 order. MSJ Order at 6-10.

At the pretrial conference on April 3, 2019, the Court held that Plaintiffs could not present evidence of the start dates of 33 employees who began working after the AWS election or evidence concerning Plaintiffs' theory that 117 employees who purportedly began working between December 8, 2015 and February 6, 2016 should have participated in the AWS election. Trial Tr. 5:16-6:13.

Trial commenced on April 3, 2019.  Following the close of Walmart's case, Plaintiffs orally argued with respect to their overtime claim two motions for judgment as a matter of law pursuant to Rule 50(a) which the Court denied. Following the close of

3

1    Plaintiffs' case, Walmart moved for judgment as a matter of law pursuant to Rule 50(a)
2    on Plaintiffs' meal break claim and the Court denied that motion.

3    After deliberation, the jury returned a special verdict in Walmart's favor on
4    Plaintiffs' overtime claim, finding that Walmart "prove[d] by a preponderance of the
5    evidence that it met the requirements for an Alternative Workweek Schedule election
6    regarding" both 4-day weekday shifts and the 3-day weekend shift.  [Dkt. 286 at 2, 5].
7    The jury returned a verdict in favor of Plaintiffs on their meal break claim and awarded
8    $6,001,599 in damages. [Dkt. 286 at 8-9, 13].

9    On April 19, 2019, Plaintiffs submitted their application for prejudgment interest at
10   the rate of 10% per annum based on Civil Code section 2839.  [Dkt. 291].  On August 12,
11   2019, the Court denied Plaintiffs' request for prejudgment interest after extensive briefing
12   on the issue. [Dkt. 317].

13   Plaintiffs now renew their motion for judgment as a matter of law on their overtime
14   claim and move for a new trial on that claim and its derivate claim for waiting time
15   penalties.  Walmart likewise now renews its motion for judgment as a matter of law on
16   Plaintiffs' meal break claim.  Finally, Plaintiffs now move under Rule 59(e) to amend the
17   judgment to include prejudgment interest at a rate of 7% per annum.

18   **II.    LEGAL STANDARD**

19   **A. <u>Renewed Motion for Judgment as a Matter of Law</u>**

20   A motion under Rule 50(b) challenges the sufficiency of the evidence presented
21   at trial to support the prevailing party's case.  Judgment as a matter of law following a
22   jury verdict is proper "if the evidence, construed in the light most favorable to the
23   nonmoving party, permits only one reasonable conclusion, and that conclusion is
24   contrary to the jury's." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir. 1993).
25   Judgment as a matter of law is improper if there is substantial evidence to support the
26   jury's verdict.  *Transgo, Inc. v. Ajac Transmission Parts, Corp.*, 768 F.2d 1001, 1014
27   (9th Cir. 1985).  "'Substantial evidence' is admissible evidence that reasonable minds
28   might accept as adequate to support a conclusion."  *Davis v. Mason Cnty.*, 927 F.2d

1473, 1486 (9th Cir. 1991).  In considering a motion under Rule 50, the Court does not assess the credibility of witnesses and does not "weigh the evidence, but [instead] draws all factual inferences in favor of the nonmoving party."  *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 (1990).  The "standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation omitted).  Finally, the Court may not substitute its judgment of the facts for the judgment of the jury.  *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 33 (1944).

## B. <u>Motion for a New Trial</u>

Rule 59 governs motions for a new trial.  Pursuant to Rule 59(a)(1), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . , for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Although Rule 59 does not enumerate specific grounds for a new trial, the Ninth Circuit has held that "the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)) (brackets omitted).  A district court "enjoys considerable discretion in granting or denying the motion."  *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003).

When the movant claims that a verdict was against the clear weight of the evidence at trial, a new trial should be granted "[i]f, having given full respect to the jury's findings, the judge . . . is left with the definite and firm conviction that a mistake has been committed."  *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quotations omitted).  A "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

### C. **Motion to Amend Judgment**

Pursuant to Rule 59(e) a party may move to alter or amend the judgment within 28 days after entry of the judgment.  The specific grounds for amendment of judgment are not set forth in Rule 59(e) and the district court has considerable discretion in granting or denying the motion.  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).  "[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir.), *cert. denied*, 135 S. Ct. 21, (2014) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).  "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co.*, 634 F.3d at 1111.

### III.   DISCUSSION

The Court first addresses Plaintiffs' grounds for judgment as a matter of law and for a new trial.[2]

### A. **Plaintiffs Are Not Entitled to Judgment as a Matter of Law or a New Trial.**

Plaintiffs' primary grounds for judgment as a matter of law on their overtime claim and a new trial are alleged defects in the AWS election and pre-election disclosures. Plaintiffs specifically contend that the evidence at trial established that: (1) Plaintiffs worked shifts of more than 8 hours per day for Walmart; (2) Walmart did not pay Plaintiffs

---

[2] Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, In the Alternative, Motion for New Trial [Dkt. 329] and Motion for a New Trial [Dkt. 330] repeat arguments nearly verbatim in support of similar or identical requests for relief. Plaintiffs' duplicative motions improperly circumvent this Court's page limitations and convolute the bases for relief sought specifically as to each motion.  The Court instructs Plaintiffs' counsel to comply with the rules of this Court in future filings.

overtime for hours worked between 8 and 10 hours per shift; and (3) Walmart did not properly disclose the impact of the AWS election or permit all affected employees to participate in that election as further discussed below.  Plaintiffs separately argue that a new trial is necessary because this Court precluded introduction of evidence concerning employees who began working after the AWS election. The Court rejects these arguments.

### 1. Standard for Alternative Workweek Schedules

California Labor Code section 510 establishes default provisions governing what constitutes overtime hours and what rate of pay will apply to various tiers of overtime work.  Under section 510(a), if an employee works more than 8 hours in a day or 40 hours in a week, the employer must pay overtime at one and a half times the regular hourly rate, and if an employee works more than 12 hours in a day, the employer must pay overtime at twice the hourly rate.  Labor Code section 510(a)(1) provides an avenue by which an employee is exempt from the requirements of section 510.

Under sections 510(a)(1) and 511, employees may adopt an alternative workweek schedule that allows for some flexibility in work hours without triggering overtime pay.  Section 511(a) provides that "upon the proposal of an employer" and with "approval in a secret ballot election by at least two-thirds of affected employees," employees may "adopt a regularly scheduled alternative workweek that authorizes work by the affected employees for no longer than 10 hours per day within a 40-hour workweek without the payment to affected employees of an overtime rate of compensation."  The California Code of Regulations states that, "[p]rior to the secret ballot vote, any employer who proposes to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangements on the employees' wages, hours, and benefits."  Cal. Code. Regs. tit. 8, § 11070(3)(C)(3). Like the default provision in section 510, employees who have adopted an AWS under section 511 are not subject to limitations on the maximum number of hours they work. Instead, section 511(b) provides that if an employee works more than the regularly scheduled hours established by the AWS, the employee must be paid overtime wages.

On November 20, 2015, Walmart held two meetings for employees who would vote to adopt a four-day per week 10-hour "weekday" AWS ("the 4/10 AWS") and a three-day per week 11.25-hour day "weekend" AWS ("the 3/11.25 AWS"). *See* Trial Tr. 1013:25-11022:9; Trial Exs. 34, 38. During these meetings, certain prospective impacts of the AWS election were discussed, and written disclosures were distributed. *Id.* On December 7, 2015, Walmart held the "secret ballot" election, with all employees casting a vote approving the 3/11.25 AWS and 45 of 48 employees approving the 4/10 AWS. Trial Tr. 680:20-689:13; Trial Ex. 35. Following enactment of these AWSs, Walmart did not pay overtime compensation to class members working a 4/10 AWS or 3/11.25 AWS for hours worked between eight and ten hours per day. Trial Tr. 578:22-579:1.

Plaintiffs contend that they are entitled to judgment as a matter of law or a new trial on their overtime claim because the evidence at trial purportedly demonstrated that Walmart failed to properly enact an AWS that exempts it from overtime requirements. The Court addresses each claimed defect raised by Plaintiffs below.

### 2. The Evidence at Trial Sufficiently Supports that Walmart Disclosed the Effects of the AWS Election.

Plaintiffs first argue that the AWS election was defective because Walmart purportedly did not disclose "the effects of the proposed arrangement on the employees' wages, hours, and benefits." Pls.' New Trial Mot. at 6 (quoting Cal. Code. Regs. tit. 8 § 11070(3)(C)). According to Plaintiffs, both elections were invalid because Walmart only disclosed the effects of the proposed AWSs if an employee casted a "yes" vote—it did not disclose details regarding an employee's schedule if he or she casted a "no" vote. *Id.; see also* Pls.' JMOL at 11 ("The written disclosures are silent as to the schedule(s) the employees would work if they failed to approve the AWS schedule…").

Plaintiffs cite no authority for the proposition that an employer must distribute pre-election written disclosures detailing schedules "the employees would work if they failed to approve the AWS schedule" and the Court finds no such authority. Section 11090's plain language requires employers proposing an AWS to disclose "the effects of the

8

proposed arrangement"—*i.e.* the anticipated impacts of the proposed AWS if enacted—which Plaintiffs cannot dispute were timely disclosed on November 20, 2015. *See* Trial Tr. 1013:25-1022:9; Trial Exs. 34, 38. The Court declines Plaintiffs' invitation to make new law by invalidating an AWS election in a post-trial order due to lack of information concerning the effect of a "no" vote. The Court likewise rejects Plaintiffs' alternative position that lack of pre-election disclosure regarding the impacts of a "no" vote amounts to coercion invalidating the election "because it creates the impression that employees are required to select one of two schedules without any opportunity to reject them." Pls.' JMOL at 12; Pls.' New Trial Mot. at 7; Pls.' Reply at 2-3. As Walmart notes, the ballots themselves prominently provide as one of two options, "NO, I vote AGAINST the Alternative Workweek Schedule" and the record does not establish the coercion necessary to overturn or throw out the jury's special verdict. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) ("The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.") (citing *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir. 2002)).

Next, Plaintiffs argue that the AWS election is invalid because Walmart failed to disclose that 3/11.25 AWS employees would receive less sick leave, as the maximum amount of sick leave would change from three full eight-hour days—*i.e.* 24 hours—to 30 hours. Pls.' JMOL at 6. As Plaintiffs note on reply, Walmart does not dispute that it did not disclose the effects (if any) the proposed 3/11.25 AWS shifts would have on employees' sick leave benefits but maintains that it presented evidence at trial that the 3/11.25 AWS had *no* effect on employees' sick leave. Pls.' Reply at 6.

The Court previously rejected Plaintiffs' very argument in conjunction with their motion for partial summary judgment based on a failure to disclose sick leave theory—distinct from Plaintiffs' misplaced reliance on an unpled claim under the sick-leave statute—and does so again here due to Plaintiffs' now-repeated failure to cite authority in support of such a theory. *See* MSJ Order at 20 [Dkt. 236]. Moreover, Plaintiffs' evidentiary basis to support that the 3/11.25 AWS changed employees' sick leave is

selective testimony from Jennifer Holden, Walmart's Human Resources Department Manager, that was quickly corrected as shown by a more complete account of the examination:

> **Q:** Did either of the AWS votes change the number of hours of sick time that the associates got?
>
> **A:** Did the vote itself---
>
> **Q:** Yes.
>
> **A:** --change---
>
> **Q:** Yes.
>
> **A:** -- the number of hours? Yes.
>
> **Q:** Okay. How so?
>
> **A:** Well, they got 30 hours, if I am understanding your question correctly. When the vote went into effect and they transitioned to the schedules, instead of getting 24 hours, they would get 30 hours.
>
> **Q:** Okay. My question is a little imprecise.
>
> **A:** Okay.
>
> **Q:** Sorry. So they were getting 24 hours in advance.
>
> **A:** Right.
>
> **Q:** They just got it right?
>
> **A:** Right.
>
> **Q:** The day before the vote; is that right?
>
> **A:** Correct.
>
> **Q:** And after the vote, did they continue to get the 24 hours?
>
> **A:** Yes.
>
> **Q:** All right. So the vote didn't change how many hours of sick time they got?
>
> **A:** No.
>
> **Q:** Later in time, Walmart increased the sick time even more by another six hours; is that right?
>
> **A:** Correct.

**Q:** Did the sick time policy change as a result of the AWS votes?

**A:** No.

**Q:** So the employees got no fewer and no more sick time hours as a result of the AWS vote; is that correct?

**A:** Correct.

**Q:** Am I correct that sick time has always been measured by hours?

**A:** Correct.

**Q:** Were the same number of sick hours given to non-AWS employees as AWS employees?

**A:** Yes.

Trial Tr. 739:2-740:17.

Not only is this testimony insufficient grounds to disturb the jury's verdict and enter judgment for Plaintiffs on their unfounded theory of failure to disclose sick leave, it is affirmative evidence that the increase in sick leave was independent of the AWS election and does not constitute a change that must be disclosed before an AWS election. Plaintiffs relying on the existence of inconsistent testimony and Walmart's purported failure to "refute" all inferences regarding its sick leave policy (*See* Pls.' Reply at 6) as grounds for judgment as a matter of law ignores that the Court may not second-guess the jury's credibility determinations or its weighing of the evidence. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

The Court rejects Plaintiffs' request for judgment as a matter of law or a new trial based on Plaintiffs' theory of failure to disclose sick leave.

### 3. The Evidence at Trial Sufficiently Supports that Affected Employees Had the Opportunity to Vote in the AWS Election.

Plaintiffs argue that the AWS election was invalid because an employee named Erin Schwartz was supposedly an "affected employee" at the time of the election but was not permitted to vote. Pls.' JMOL at 13-15. Plaintiffs rightly contend that evidence at trial showed that Erin Schwartz was excluded from the AWS pre-election meeting and the

AWS vote because she was in the non-AWS position of systems operator, and that she began working the AWS schedule when it was implemented after the election. *Id.* at 13 (citing Trial Tr. 619:17-20:21; 636:3-20; 776:5-780:15; Trial Ex. 570, line 202, column J). Plaintiffs further cite verified interrogatory responses introduced at trial stating that systems operators employed by Walmart were subject to the AWS. *Id.* at 14 (citing Trial Tr. 848:18-850:6; Trial Ex. 560-4, lines 2-13).

In response, Walmart points to testimony in which the individual who verified Plaintiffs' cited interrogatory responses providing that systems operators are subject to AWSs clarified that the subject interrogatory response was erroneous because its list of positions included an employee role "that's not part of the alternative workweek." Defs.' Opp'n at 16 (citing Trial Tr. 848:18-849:3). Walmart also cites testimony supporting that Walmart employees frequently change positions during employment and that Erin Schwartz switched positions after the AWS election. *Id.* (citing Trial Tr. 736:9-17; 777:10-779:4; 810:7-19; 1028:8-19).

Considering the testimony and evidence presented, the Court cannot conclude that the jury reached a seriously erroneous result, as there was sufficient evidence to support that Erin Schwartz's pre-election role of systems operator was not subject to the AWSs and therefore that Erin Schwartz was not an "affected employee" entitled to vote in an AWS election that occurred before she switched positions. *Carrethers v. Bay Area Rapid Transit*, No. 9-cv-01101-EMC, 2012 WL 1004847, at *5 (N.D. Cal. March 26, 2012) ("A district court's discretion is more limited in cases where, as here, there is conflicting evidence on each side and the case turns on credibility issues."). While Plaintiffs' citation of evidentiary ambiguity concerning the timing and nature of Erin Schwartz's evolving employment (*See* Pls.' Reply at 3-5) may raise questions as to her role at Walmart before and after the AWS election, the Court cannot discard reasonable evidence-based inferences drawn by the jury that led to a conclusion contrary to Plaintiffs'. *Cassiday*, 320 F.3d at 918.

Plaintiffs also ask the Court to order a new trial based on the already-rejected legal

argument that 33 employees who began working on December 8, 2015 were "affected employees" entitled to vote in the December 7, 2015 AWS election. *See* Pls.' New Trial Mot. at 10-17. As the Court has previously made clear, it is undisputed that the 33 employees cited by Plaintiffs began working for Walmart after the AWS elections and therefore do not constitute "affected employees" who must participate in elections occurring before commencement of their employment. MSJ Order at 21-22; Dkt. 305 at 10:18-11:4; 14:7-15:25. As at the summary judgment stage, Plaintiffs again cite evidence suggesting opportunism and some level of pre-employment control of prospective employees on Walmart's behalf and reiterate this Court's observation that "Plaintiffs' evidence arguably suggests Walmart engaged in foul play." Pls.' Reply at 8-9. But Plaintiffs again offer no legal grounds—as opposed to suspicions and public policy concerns—for this Court to deem the 33 individuals at issue "employees" before they began working for Walmart, let alone do Plaintiffs point the Court towards trial evidence sufficient to nullify the jury's verdict on Plaintiffs' stated grounds of "subterfuge."

Instead, in urging this Court to reconsider its ruling that individuals are not "affected employees" within the meaning of the AWS regulations before they commence employment, Plaintiffs rely on *Laeng v. Workmen's Comp. Appeals Bd.,* 6 Cal. 3d 771 (1972) where the California Supreme Court held a job applicant was entitled to benefits under the Workers' Compensation Act ("WCA") for injuries he sustained during a physical evaluation for his prospective employer. Pls.' New Trial Mot. at 13-14. But *Laeng* and its subsequent application make clear that the California Supreme Court's liberal interpretation of "employee" was based on and limited to application of the WCA's broad statutory definition of employee, as well as the fact that the injured prospective worker was exposed to the "special risks" of employment the WCA was expressly designed to protect against. 6 Cal. 3d at 782. Here, the 33 individuals' relationship with Walmart was defined by the very "contractual or common law conceptions of employment" and distinct statutory definitions of employment that *Laeng* expressly disclaimed in finding that the "history and fundamental purposes underlying the [WCA]"

compelled the conclusion that plaintiff's pre-employment injury arose from an "'employment' relationship sufficient to bring the act into play." *Id.* at 776-777.

Plaintiffs' reliance on *Laeng* and other inapposite authority and evidence this Court already rejected—and their reference to "liberal interpretation" of the Labor Code and myriad documents evidencing "Defendants' level of control prior to an employee's start date"—provides no statutory or other legal grounds to reconsider this Court's prior holdings, nor does it justify radical expansion of statutory principles grounded in the WCA to other employment contexts.

Hence, the Court declines to grant judgment as a matter of law or order a new trial based on Plaintiffs' argument that "affected employees" were not afforded the opportunity to vote in the AWS election.[3]

### 4. Plaintiffs' Request for Judgment as a Matter of Law and a New Trial Based on "Self-Selecting Work Units" has No Basis in Law.

Plaintiffs request judgment as a matter of law and a new trial based on the argument that "employees self-selected into a 'work unit'" in violation of Cal. Code. Regs. tit. 8, § 11090(3)(C)(3), which requires that an AWS be approved by "at least a two-thirds (2/3) vote of the affected employees in the work unit." Pls.' JMOL at 12; Pls.' New Trial Mot. at 7-8. Plaintiffs contend that because "all voting employees worked a 5-day-per-week, 8 hour-per-day schedule," they were in the same "work unit" but nevertheless voted for two different AWSs according to criteria—*i.e.* the 4/10 and 3/11.25 AWSs—that did not exist at the time of the election, warranting invalidation of that election. Pls.' JMOL at 12; Pls.' New Trial Mot. at 7-8.

Again, however, Plaintiffs do not and cannot cite precedent for their novel

---

[3] Plaintiffs' re-cast alternative argument that the Court should order a new trial based on the Court's preclusion of evidence concerning certain employees' start dates is predicated upon and inextricably intertwined with their argument that these individuals were "affected employees" entitled to vote in the AWS election and fails for the same reasons discussed here and the reasons previously stated by this Court.

proposition that a work shift must pre-exist an AWS election for employees to vote for adoption of that work shift.  No such authority exists, as it would illogically preclude employees from participating in a statutorily-authorized AWS vote to change shifts if a desired shift proposed by their employer differs from a shift the employee is currently working.  And contrary to Plaintiffs' assertions, the jury *did* hear sufficient evidence to support that the AWS election complied with Cal. Code. Regs. tit. 8, § 11090(3)(C)(3)— Walmart demonstrated that two "work units," defined according to the two proposed AWSs, approved the AWSs by a margin exceeding the requisite two-thirds.  Trial Tr. 680:20-689:13; Trial Ex. 35.

Plaintiffs do not persuasively contest this evidence or provide sound legal grounds for their novel definition of "work units."  The Court therefore rejects Plaintiffs' request for judgment as a matter of law and a new trial based on this theory.

### 5.  Disposition of Plaintiffs' Motions

For the foregoing reasons, Plaintiffs are not entitled to judgment as a matter of law on their overtime claim, nor are they entitled to a new trial with respect to that claim. Hence, the Court does not reach Plaintiffs' arguments pertaining to their derivative claim for waiting time penalties under Labor Code, section 203.  *Ling v. P.F. Chang's China Bistro, Inc.,* 245 Cal. App. 4th 1242, 1261 (2016) ("A section 203 claim is purely derivative of an action for the wages from which the penalties arise.").  Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, In the Alternative, Motion for New Trial [Dkt. 329] and Plaintiffs' Motion for a New Trial [Dkt. 330] are therefore **DENIED**.

The Court now turns to Defendants' Renewed Motion for Judgment as a Matter of Law [Dkt. 335].

### B.  <u>Walmart is Not Entitled to Judgment as a Matter of Law.</u>

It is undisputed that Walmart's standard practice was to require class members to pass through a security check if that employee chose to exit the facility during his or her lunch break.  Trial Tr. 497:6-22; 675:7-12; 765:13-20; 917:13-20; 918:15-17; 1044:25-1045:11.  Plaintiffs' meal break claim proceeded to trial on the theory that Walmart's

15

security check impeded or discouraged class members from taking compliant 30-minute meal breaks and the jury agreed, finding that Plaintiffs proved by a preponderance of the evidence that Walmart did not provide class members with the requisite opportunity to take mandatory 30-minute meal breaks.  [Dkt. 286 at 8-9, 12].  Walmart maintains that this verdict was baseless, and that Walmart is entitled to judgment as a matter of law on Plaintiffs' meal break claim because Plaintiffs ostensibly failed to adduce evidence that class members were subjectively discouraged from taking required meal breaks.  Defs.' JMOL at 12-16.  Walmart alternatively argues that the evidence at trial established that at least some of the class members were not discouraged from taking required meal breaks and that awarding these uninjured class members damages violates the Due Process Clause, the Rules Enabling Act, and Article III.  *Id.* at 19.  Walmart also requests that the Court "order decertification of the meal break class in light of the evidence presented at trial showing that persons within the class were not discouraged from taking meal breaks." *Id.* at 18 n.1.  The Court rejects these arguments.

### 1. The Evidence at Trial Sufficiently Supports that Walmart's Security Check Impeded or Discouraged Lunch Breaks.

In *Brinker Restaurant v. Superior Court*, the California Supreme Court explained that the fundamental employer obligation associated with a meal break is "to relieve the employee of all duty and relinquish any employer control over the employee and how he or she spends the time." 53 Cal. 4th 1004, 1038-40 (2012).  "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so."  *Id.* at 1040 (emphasis added).

When applying this controlling authority at the summary judgment stage, this Court rejected Walmart's argument that Plaintiffs must show that the security check "actually prevents employees from taking meal breaks or off-site meal breaks," reasoning that *Brinker* instead mandates that "Plaintiffs need only present evidence from which a jury *could* conclude that the security check impedes or discourages them from doing so."  MSJ

Order at 8 (internal citations and quotations omitted) (emphasis in original); *see also* Cert. Order at 11 ("[T]he emphasis is on the action of the employer, not necessarily whether an employee felt personally discouraged.").

Walmart now revives its contention that "under *Brinker*, if employees are not actually impeded or discouraged from taking an uninterrupted 30-minute break then there has been no violation and an employee has no meal-break claim." Defs.' JMOL at 8. Here, as in summary judgment briefing, Walmart points to evidence that a portion of class members left the facility during meal breaks despite being required to exit through the security check and concludes that such evidence warrants the extreme remedy of judgment as a matter of law on the entirety of Plaintiffs' meal break claim; in this instance, overturning the jury's verdict despite countervailing evidence that at least some class members were in fact discouraged from taking mandatory meal breaks. *Id.* at 10; Trial Tr. 501:19-502:8 (Alyssa Hernandez testifying that she was discouraged from taking meal breaks because "[i]t was just a hassle having to pretty much undress myself to go out of the building."); 917:10-918:7 (Ray Cabrera testifying that he felt discouraged from taking meal breaks due to the need to "clock out, put your equipment down in your locker, get your personal items – cellphone, wallet, keys – go to the security line and empty everything out of your pockets, put on a conveyor belt, go through the metal detector, turn on your phone, show them that's your personal phone" and additionally if he had a bag, "[g]o to the table, show it to the AP, the security officer, and take out everything that's in there and show them that you're not stealing or it's your stuff.").[4]

Walmart characterized such countervailing evidence in its Rule 50(a) motion as "handpicked, anecdotal testimony" that was "highly individualized" because "some class members… admittedly were *not* discouraged from taking duty-free meal breaks." *Id.* at 10-11 (citing Dkt. 276 at 3-6) (emphasis in original). But Walmart ignores that the

---

[4] Mr. Cabrera also testified that he altered his regular work wardrobe due to the extra time it took to pass through Walmart's security check when he wore his preferred clothing—time spent after he clocked out during his meal break. *Id.*

primary relief sought by its Renewed Motion for Judgment as a Matter of Law addressed here is entry of judgment against all class members, including purportedly "anecdotal" class members that Walmart admits expressed actual discouragement stemming from Walmart's security check. *Id.; see also* Trial Tr. 501:19-502:8; 917:10-918:7. Even assuming adoption of Walmart's interpretation of *Brinker* and its progeny, Walmart's claimed evidentiary deficiencies concerning individual class members go to Walmart's alternative relief addressed below—decertification of the meal break class and concerns with compensating allegedly uninjured class members—but do not justify blanket reversal of the jury's verdict under Rule 50(b). *Lakeside–Scott v. Multnomah Cnty.,* 556 F.3d 797, 803 (9th Cir. 2009) (judgment as a matter of law is appropriate when the jury could have only relied on speculation to reach its verdict). As at the summary judgment stage, the Court may not "weigh the evidence" and substitute its judgment of the facts for the judgment of the jury as Walmart requests but must draw "all factual inferences in favor" of Plaintiffs as the nonmoving party. *Lytle*, 494 U.S. at 554. And Walmart provides the Court with no reason to reach a different result than at the summary judgment stage on this issue. *Id.*

Considering the testimony and evidence presented at trial through the lens of the stringent standard in favor of Plaintiffs, this Court cannot find as a matter of law under Rule 50(b) that no reasonable jury could have concluded that Walmart's standard practices, which indisputably applied to all class members, impeded or discouraged meal breaks. *Dunlap v. Liberty Natural Prods., Inc.*, 878 F.3d 794, 797 (9th Cir. 2017) ("A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible.") (quoting *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014)).

### 2. Walmart's Alternative Arguments Offer No Grounds for the Relief Walmart Seeks under Rule 50(b).

Walmart's alternative arguments are based on the Due Process Clause, the Rules Enabling Act, and Article III of the United States Constitution. Defs.' JMOL at 16-18.

According to Walmart, the jury's damages award was so far afield of the evidence presented at trial that it violates: (1) the prohibition on "interpreting Rule 23 to 'abridge, enlarge or modify any substantive right'"; (2) due process by "eliminat[ing] Walmart's defense that many class members" were allegedly uninjured; and (3) Article III by "unconstitutionally enlarg[ing] the jurisdiction of the federal courts," concluding that "[g]iven these significant concerns, the Court should enter judgment as a matter of law for Walmart on Plaintiffs' meal break claim." Defs.' JMOL at 16-18. Walmart does not move to strike any portion of the allegedly inflated damages award it attributes to purportedly uninjured class members—nor did it under Rule 50(a)—but solely requests that the Court overturn the jury completely and award Plaintiffs $0. *Id.;* Walmart's Mot. For J. as a Matter of Law on Pls.' Meal Break Claim under Rule 50(a) [Dkt. 276]. Walmart also asks the Court to decertify the meal break class due to the alleged existence of uninjured class members. *Id.* at 18 n.1.

As Walmart noted in its initial opposition to Plaintiffs' renewed motion for judgment as a matter of law that it later withdrew, a district court commits "reversible error" by "granting judgment as a matter of law" on a basis that does "not correspond with the arguments in the" moving party's Rule 50(a) motion. [Dkt. 338 at 13] (citing *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1082 (9th Cir. 2017) and *Summers v. Delta Air Lines, Inc.,* 508 F.3d 923, 927-28 (9th Cir. 2007)); [*see also id.* at 12-13] ("[a] party cannot raise arguments in in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict motion… Rule 50(a) explicitly requires the moving party to specify the law and facts on which [it] is entitled to judgment.") (citations omitted).

Walmart's Rule 50(a) motion does not move to decertify the meal break class and in no way implicates "law and facts" that could be construed as the same decertification argument now made in Walmart's Rule 50(b) motion. [Dkt. 276]. The Court denies that argument for this reason alone. *Tortu*, 556 F.3d at 1082. Nor does Walmart's Rule 50(a) motion cite the Rules Enabling Act, Article III, or the due process

concerns now raised by Walmart in its 50(b) motion.  [Dkt. 276].

Even if Walmart's Rule 50(b) arguments were procedurally proper, Walmart has not pointed the Court toward any valid legal or evidentiary basis to grant Walmart judgment as a matter of law under Rule 50(b)—it sets forth no evidence or precedent by which the Court could convert the jury's $6,001,599 award to $0, nor has it bothered to substantiate or specifically challenge portions of the damages award it deems excessive due to a purported lack of injury.  *In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-SAB, 2016 WL 8468180, at *6 (E.D. Cal. July 15, 2016) ("Uncertainty of the fact whether any damages were sustained is fatal to recovery, but uncertainty as to the amount is not.") (quoting *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 40 (2014)). Again, even in the event of wholesale adoption of Walmart's *Brinker* interpretation, Walmart's 50(b) motion does not even attempt to account for the class members it admits *were* discouraged by Walmart's security check (whose admitted injuries Walmart asks the Court to leave uncompensated) or seek relief that in any way follows Walmart's claimed evidentiary deficiencies as to individual class members.  *Brinker*, 53 Cal. 4th at 1033 ("An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not… it has violated the wage order and is liable."). The Court therefore finds that Walmart has presented the Court with no legal basis to enter judgment as a matter of law under Rule 50(b) on Plaintiffs' meal break claim.

Defendants' Renewed Motion for Judgment as a Matter of Law [Dkt. 335] is **DENIED**, and the Court turns to Plaintiffs' Motion to Amend Judgment [Dkt. 328].

### C. **Plaintiffs Are Not Entitled to an Amended Judgment.**

Plaintiffs move under Rule 59(e) for an order amending the judgment in this action to include prejudgment interest at a rate of 7% per annum.  *See* Pls.' Amendment Mot.  Plaintiffs' sole grounds for their requested amendment is a September 26, 2019 holding from the California Court of Appeals finding that "Civil Code section 3287 establishes a default interest rate of seven percent for litigants 'entitled to recover

damages certain, or capable of being made certain,'" calculated from the day that the right to recover the damages vests. *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 476 (Ct. App. 2019).

But a "Rule 59(e) motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890. As Walmart notes and Plaintiffs do not contest, Plaintiffs sought pre-judgment interest pursuant to section 3287 for the first time by way of the motion now before the Court and never cited section 3287 in relation to prejudgment interest in prior briefing. Defs.' Amendment Mot. Opp'n at 6. Indeed, Plaintiffs based their unsuccessful Application for Prejudgment Interest exclusively on section 3289. [Dkt. 291 at 1] ("Per California Civil Code Section 3289, Plaintiffs hereby submit their calculations for prejudgment interest at a rate of 10 percent per annum.").

Plaintiffs instead contend that they were relieved from citing section 3287 as a basis for prejudgment interest until filing their Rule 59 motion because "[a]t the time Plaintiffs filed their application for prejudgment interest, there was no authority establishing that a party prevailing on a claim for meal period premiums was entitled to prejudgment interest thereon…" Pls.' Amendment Mot at 2. While *Naranjo* certainly clarified—pending the California Supreme Court's review—that section 3287 establishes a default interest rate of seven percent for qualified litigants, Plaintiffs do not cite pre-*Naranjo* controlling authority holding that litigants are not so entitled.[5] Nor can Plaintiffs explain away that plaintiffs preceding this case—including the plaintiff in *Naranjo*—did raise section 3287 as a colorable basis for prejudgment interest in conjunction with a claim for meal period premiums, as there was no authority

---

[5] As Walmart accurately notes, the "District Court cases denying prejudgment interest on meal period claims" cited by Plaintiffs are consistent with *Naranjo* and focus instead on the distinct issue of whether prejudgment interest was available under Labor Code section 218.6 and Civil Code section 3289. Defs.' Amendment Mot. Opp'n at 7-8.

precluding such a prayer. *See Naranjo,* 40 Cal. App. 5th at 456 (stating that judgment was entered on January 31, 2014); *see also Bernstein v. Virgin Am., Inc.,* 365 F. Supp. 3d 980, 989 n.10 (N.D. Cal. 2019) (denying motion for prejudgment interest on meal period claims under Civil Code section 218.6 and expressly declining to rule whether plaintiff was entitled to prejudgment interest under section 3287 because plaintiff never raised the issue).

Plaintiffs had ample opportunity to raise section 3287 in prior briefing on prejudgment interest, like the plaintiff in *Naranjo* did years before this case's trial. Controlling authority with respect to Rule 59(e) mandates that this Court foreclose Plaintiffs' requested "second bite at the apple." *Weeks v. Bayer,* 246 F.3d 1231, 1236– 37 (9th Cir. 2001). As such, this Court finds in its discretion that the California Court of Appeals' resolution of an unclear issue in what Plaintiffs concede is a hotly contested, ambiguous area of law does not constitute an intervening change in controlling law justifying the drastic remedy of amending the judgment under Rule 59(e).

Plaintiffs' Motion to Amend Judgment [Dkt. 328] is **DENIED.**

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, In the Alternative, Motion for New Trial [Dkt. 329]; Plaintiffs' Motion for a New Trial [Dkt. 330]; (3) Defendants' Renewed Motion for Judgment as a Matter of Law [Dkt. 335]; and (4) Plaintiffs' Motion to Amend Judgment [Dkt. 328].

**IT IS SO ORDERED.**

Dated:  February 11, 2020

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE